**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DENNIS GROMOV, individually and
on behalf of all others similarly situated,

          Plaintiff,

              *v.*

BELKIN INTERNATIONAL, INC.,

          Defendant.

Case No. 1:22-cv-6918

Judge

**CLASS ACTION COMPLAINT**

Plaintiff Dennis Gromov, on behalf of himself and all others similarly situated, alleges as follows:

## I.    NATURE OF CASE

1.    Defendant Belkin International, Inc. ("Belkin") manufactures and sells chargers for portable electronic devices ("PEDs"). The packaging of Belkin's chargers (commonly referred to as "power banks") misrepresents the capacity of their power banks. In fact, the capacity of Belkin's power banks is significantly lower than represented to consumers. The consumers that buy those power banks are harmed by receiving products inferior to what they believe they are buying.

2.    Consumers, as a result of the modern lifestyle, are increasingly dependent on smart phones, tablets, laptop computers, and other PEDs. PEDs give consumers immediate access to information and instant communication with colleagues, friends, and loved ones.

3.    Like any electronic device, PEDs require power. Consumers must periodically recharge their PEDs, which may be difficult if no outlet is available.

1

4.     To solve that problem, technology companies like Belkin market and sell power banks.

5.     Power banks are small, portable power sources that connect to and charge consumers' PEDs. Power banks can be charged at home and then taken on the go.

6.     A power bank's ability to recharge a PED is typically measured and stated in milliampere-hours ("mAh"). A power bank with a higher mAh rating has an enhanced ability to recharge PEDs, as compared with a power bank with a lower mAh rating.

7.     In short, a power bank with a higher mAh rating can deliver more "juice."

8.     A label that represents that a power bank has a certain amount of mAh conveys to reasonable consumers that the power bank is capable of delivering that amount of mAh to charge PEDs.

9.     Power banks are not fashion items or status symbols. Consumers do not buy power banks for intangible factors such as the products' looks, styling, or other soft features. Power banks are not serviced or repaired once sold. There is no significant relationship between the consumer and the company after purchase. The main point of buying a power bank is to have the ability to get more power.

10.     Accordingly, consumers prefer and are willing to pay more for power banks with a higher mAh rating.

11.     Technology companies are aware of this. Belkin is one such company. Belkin markets and sells a variety of models of power banks, including Belkin's Boost Charge, Pocket Power, Power Pack, and Power RockStar lines of power banks.

12.     All models of power banks sold by Belkin (collectively, the "Products") are substantially similar in form and function and all are sold in substantially similar packages with no

material differences other than their respective purported mAh ratings. As described below, all are designed such that the necessarily deliver less power than Belkin claims. Thus, the misrepresentations (overstating the amount of mAh) are substantively identical across all the Products and mislead consumers in the same way regardless of which Product is purchased.

13. All of the Products are sold using a prominent and false representation that they have a certain mAh rating. In fact, all of the Products deliver less mAh to charge PEDs than is represented on the Products or their packaging.

14. Belkin is a key player in the power bank market—a market that generates more than $15 billion in sales each year for the industry as a whole.

15. For greater profit and a larger market share, Belkin exploits consumers' preferences for power banks that provide more mAh. Belkin intentionally deceives consumers by misrepresenting the amount of power its Products can transfer to PEDs. Belkin advertises its Products as more capable of providing more mAh than its Products are able to provide.

16. Plaintiff Dennis Gromov relied on Belkin's misrepresentations when he purchased one of the Belkin Products, the Pocket Power 10000.

17. Belkin represents that the Pocket Power 10000 will deliver 10,000 mAh to charge PEDs. However, the Pocket Power 10000 cannot, and never could, deliver 10,000 mAh. As a result, Mr. Gromov paid a premium for one of Belkin's Products that did not work as represented and warranted.

18. Mr. Gromov purchased the Product from a store located within this judicial district.

19. Other consumers who purchase the Products have been similarly deceived by Belkin's misrepresentations.

20.     Mr. Gromov brings this proposed class action against Belkin individually and on behalf of classes of similarly situated consumers. Mr. Gromov seeks redress for Belkin's unlawful, unjust, unfair, and deceptive practices that misrepresent the amount of mAh the Products can deliver and that, in doing so, violate state law.

## II.    PARTIES

21.     Plaintiff Dennis Gromov is an individual consumer who, at all relevant times, was a citizen and resident of Vernon Hills, Illinois.

22.     Defendant Belkin is a Delaware corporation with its principal place of business at 555 S. Aviation Blvd., Suite 180, El Segundo, CA 90245-4852. Belkin markets and distributes the Products from California throughout the United States.

## III.   JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because: (a) the number of members of all proposed plaintiff classes in the aggregate is greater than 100; (b) a member of a class of plaintiffs is a citizen of a State different from Defendant; and (c) the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district. Belkin does substantial business within this district and maintains requisite minimum contacts with Illinois. Belkin's misrepresentations were made within this district to a citizen of this district who purchased the product within this district. Venue also is appropriate in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and (c)(2) because Belkin is subject to this Court's personal jurisdiction with respect to this civil action.

25.    This Court has specific personal jurisdiction over Belkin because this action arises out of and relates to Belkin's contacts with Illinois. Mr. Gromov lives in and purchased the Pocket Power 10000 from Belkin in Illinois. Belkin advertised and marketed the Products within Illinois, selling products both in brick-and-mortar outlets and through the wires and mails and via the Internet to Illinois residents. Belkin knowingly directs activity into this state with the intent to engage in business interactions and has in fact engaged in such interactions. Belkin receives substantial revenues from the sale of the Products in this state and district and it made (and continues to make) the actionable misrepresentations within this state and district. This action thus arises out of and relates to conduct and transactions that occurred within this forum and through Belkin's purposeful cultivation of profitable relationships with customers throughout Illinois. In short, Defendant has been systematically and continuously present within Illinois and has served a market in Illinois for the Products that caused economic injury to Plaintiff and the Class—such that there is a strong relationship among Defendant, this forum, and the litigation.[1]

## IV.    ADDITIONAL FACT ALLEGATIONS

### A.    Belkin is a global technology company that markets its products by deceptively misrepresenting their mAh ratings.

26.    Established in 1983, Belkin is a global technology company. Belkin has offices in places like Australia, Denmark, Canada, Germany, France, Netherlands, Mexico, New Zealand, Spain, Sweden, the UK, and the United States. In 2018, Belkin was acquired by Foxconn Interconnect Technology, which is one of the largest companies in the world.

---

[1] Throughout this Complaint, Plaintiff uses "the Class" to refer to members of the proposed classes.

27.     Belkin is a major manufacturer of power banks and, as such, it occupies a leading position in its field.

28.     Belkin manufactures, markets, and distributes for sale nationwide to consumers a number of models of power banks.

29.     The packaging of the Products uniformly includes representations regarding their mAh capacities.

30.     These representations regarding mAh ratings are prominently displayed on the packaging and Belkin advertising refers to the rating as its "battery capacity."[2]

31.     These representations regarding their mAh ratings include the actual names of the products.

32.     However, those representations are false.

33.     Testing has shown the amount of mAh the Products actually deliver is substantially lower than what is represented on their packaging.

34.     These misrepresentations by Belkin are intentional.

35.     By deceiving consumers about the Products' mAh, Belkin is able to sell more of, and charge more for, the Products than it could if they were labeled accurately. Further, Belkin is incentivized to mislead consumers to take away market share from competing products, thereby increasing its own sales and profits.

---

[2] See, e.g., Belkin Pocket Power 10K on Amazon ("Battery Capacity: 10000 Milliamp Hours): https://www.amazon._com/Belkin-Durable-Portable-Charger-Battery/dp/B071VJJTM8/ref=cm _cr_arp_d_product_top?ie=UTF8.

36.    Plaintiff and the Class have been injured based on the difference in the value of the Products that are capable of delivering the promised mAh and the value of a Product with the actual lesser amount of mAh.

37.    Consumers are willing to pay more for the Products based on their belief that they are capable of delivering the promised mAh. Consumers pay a price premium that is directly caused by Belkin's misleading and deceptive mAh representations. Consumers do not receive the benefit for which they bargained.

38.    All of the Products are marketed, sold, and advertised in a substantially similar manner, and there is no material difference among the Belkin Products other than the differences in their purported mAh ratings.

39.    All Belkin Products deliver electricity to PEDs in the same manner.

40.    The representations on all Products are part of a single unlawful scheme or practice.

41.    Belkin makes prominent representations about the Products' mAh on the packages such as "10000 mAh." For example, the following photo shows the packaging of a Pocket Power 10000 (red indicators superimposed).



42.    Belkin draws attention to its Products' mAh by placing the mAh rating right in the name of the Products, and by prominently displaying the mAh rating on advertising materials and the product package. Furthermore, Belkin promised and warranted, on the Products themselves, that the Products can deliver a specific amount of power, as measured in mAh.

**B.    Belkin's products cannot deliver the full mAh amount to PEDs as advertised.**

43.    Not only is Belkin's manner of representing the Products' respective mAh consistent across all Products, the Products are, by virtue of their very design, incapable of delivering the amount of power represented. Accordingly, Belkin knew at the time it sold the Products that the Products were not capable of delivering the mAh Belkin represented.

8

44.    The Products consist of an internal battery cell (or series of batteries cells) and a circuit board that controls the technology. The Products' circuit boards convert the internal batteries' charge to a voltage that PEDs can accept.

45.    The Products then send the voltage to the PEDs to increase the PEDs' battery power.

46.    To convert and distribute the power from the Products to the PEDs, the Products take power from their own internal batteries.

47.    Running the internal circuit board and converting power for charging PEDs is a process that uses a substantial amount of the internal cells' power.

48.    This conversion and distribution necessarily reduces the amount of available mAh. Thus, a power bank represented as delivering "X" mAh will necessarily deliver less than "X" because the circuit board consumes a substantial proportion of the battery cells' mAh capacity in order to convert the internal batteries' charge to a PED-friendly voltage.

49.    Ordinary reasonable consumers such as the Plaintiff read the represented mAh and expect and understand that the Products actually *deliver* that amount of mAh.

50.    Because of the process described above, Belkin knows the Products are technologically incapable of delivering the amount of mAh it claims in the product name, in advertising for the Product, and on the Products and their labels/packaging.

51.    An experienced and reputable outside laboratory performed tests on the same model of Belkin battery Mr. Gromov purchased (Pocket Power 10000), as well as on the 5000 and 6600 mAh models of other Belkin Products. These tests were done in accordance with recognized engineering standards.

52.     100% of the tested Products failed to measure up to Belkin's claims. The outside lab found that Belkin's Products consistently failed to provide the mAh Belkin claimed. Test results for the Belkin Products the lab tested are below.

| mAh Represented | Actual mAh |
| --- | --- |
| 5000 | 3504 |
| 5000 | 3254 |
| 6600 | 4206 |
| 6600 | 4453 |
| 10000 | 6855 |
| 10000 | 6464 |

53.     These independent lab results confirm that the Products consistently fail to provide power equal, or substantially close, to the amount of mAh that Belkin claims, and which ordinary consumers rely upon and reasonably expect.

**C.      Belkin's false representations caused economic harm to Mr. Gromov and the Class.**

54.     In or about July 2019,[3] while in a Target store in Illinois, Mr. Gromov saw and relied on Belkin's mAh representations on the packaging of a Pocket Power 10000.

55.     On Belkin's package, Belkin said that the Pocket Power 10000 had "10000 mAh."

56.     In reliance upon this representation, Mr. Gromov purchased the Pocket Power 10000 for approximately $25.00.

57.     After purchasing the Pocket Power 10000, Mr. Gromov was disappointed to find he was forced to recharge the Pocket Power 10000 more often than he expected.

---

[3] Plaintiff Gromov and Belkin entered into a tolling agreement before the filing of this action.

58.    Through his experiences and based on lab testing, Mr. Gromov is now aware that the Pocket Power 10000 was not capable of delivering 10,000 mAh.

59.    Belkin intended to mislead and in fact misled reasonable consumers—including Plaintiff and the Class—by concealing the fact that power conversion would reduce the amount of mAh actually *delivered* to PEDs and by overtly misrepresenting the amount of available mAh. Belkin did so with the intent to generate and increase sales of the Products, thereby increasing its revenues and its relative share of the power bank market.

60.    It would be reasonable for consumers to rely upon Defendant's representations and omissions—as Plaintiff did—and to believe—as Plaintiff did—that a product advertised and labeled with a specific mAh capacity would in fact be capable of delivering the stated amount of mAh. In other words, Plaintiff, like any ordinary reasonable consumer, was entitled to rely and in fact relied upon Defendant's misrepresentations and omissions in making his purchasing decision.

61.    As a direct and proximate result of Belkin's misrepresentations and omissions, Plaintiff and the Class purchased the Products for personal use.

62.    Belkin's representations and omissions conveyed to any reasonable consumer the impression that the Products' purported mAh capacity carried a particular value and a corresponding price.

63.    Because the Products are not, in fact, capable of delivering the stated amount of mAh, Plaintiff and the Class received products of substantially lesser value—products with a higher effective cost—than Belkin represented.

64.     Accordingly, Plaintiff and the Class did not realize the benefit of the bargain and their expectations were not met.

65.     Mr. Gromov effectively paid a premium in that he paid for a power bank that can deliver 10,000 mAh but received a power bank that cannot deliver 10,000 mAh. The same is true for all Class purchasers of the Products, whatever their stated mAh, as explained above.

66.     The power bank Plaintiff purchased, like all the Products at issue here, had less actual value than the value represented by the price it commanded based on Belkin's misrepresentations and omissions.

67.     Accordingly, Plaintiff and the Class paid more for the Products than they otherwise would have because of the diminished value caused by Belkin's misconduct. In other words, Plaintiff and the Class surrendered more and acquired less in their transactions than they would have if Belkin had disclosed the true mAh capacity for each of the Products.

68.     For these reasons, every Product is worth less than Plaintiff and the Class paid.

69.     In short, the cost of every Product at issue here would have been lower absent Defendant's misconduct and concealment.

70.     While Plaintiff and the Class lost money as a result of Belkin's misconduct, Belkin realized a commensurate unearned gain because it did not deliver to Plaintiff and the Class what they reasonably expected to receive in exchange for the money they paid.

71.     Plaintiff and the Class detrimentally altered their positions and suffered damages in an amount no less than the difference in value between what they reasonably believed they were paying for, i.e., the Products as represented, and what they actually received.

72.     If Belkin's power banks delivered the represented mAh or were priced appropriately, Plaintiff would purchase Belkin's power banks in the future. In other words, because Mr. Gromov regularly uses PEDs, he would purchase Belkin's Products in the future if he could trust the representations on the Products regarding mAh capacity.

73.     However, it is impossible to determine from looking at the Products whether the mAh representations are accurate.

74.     Mr. Gromov cannot rely on those representations without some kind of assurance that they are accurate, such as an Order of this Court.

75.     On May 3, 2022, Mr. Gromov's counsel sent Belkin a letter informing them of the harm caused by Belkin's deceptive acts. Belkin has not remedied the situation for Mr. Gromov or the Class.

76.     The value of Defendant's mAh representations/omissions—i.e., the value that a reasonable consumer would place on the Products' purported mAh capacity—can be determined and expressed in terms of dollar value. Accordingly, damages are capable of determination on a classwide basis.

## V.     CLASS ALLEGATIONS

77.     Mr. Gromov brings this action individually and pursuant to Fed. R. Civ. P. 23 on behalf of similarly situated individuals in the State of Illinois (the "Illinois Class") and within certain other states whose laws are consonant with those of the State of Illinois (the "Multistate Class"), defined as follows:

> **Illinois Class.** All consumers who purchased the Products in the State of Illinois.

> **Multistate Class.** All consumers who purchased the Products in Florida, Massachusetts, Missouri, New Jersey, New York, North Carolina, Ohio, Washington, and Wisconsin.

78.     For simplicity, Plaintiff refers to the Illinois and Multistate Classes collectively as "the Class" except where they are expressly distinguished.

79.     Excluded from the Class are (a) any of Belkin's officers, directors, or employees; officers, directors, or employees of any entity in which Belkin currently has or has had a controlling interest; and Belkin's legal representatives, heirs, successors, and assigns; (b) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; (c) class counsel; and (d) any person who timely and properly excludes himself or herself from the Class.

80.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class and Subclass members would use to prove those elements in individual actions alleging the same claims.

81.     Mr. Gromov reserves the right amend or modify the Multistate Class and Illinois Class definitions, including but not limited to adding additional sub-classes.

82.     The Illinois Class and Multistate Class are ascertainable because the class members can be identified as a class by objective criteria: the purchase of a Product, during the applicable class period. Notice can readily be provided to class members through reasonable effort.

83.     **Numerosity—Fed. R. Civ. P. 23(a)(1).** At this time, Plaintiff does not know the exact number of members of each proposed Class, but based upon market research and publicly available information, Belkin maintains a substantial share in a market that generates multibillion

dollar annual revenues and it touts itself as a "global consumer electronics leader."[4] In 2018, Belkin announced it "reigns as number one third party brand in [the] mobile power category," in the United States.[5]

84. Plaintiff thus avers on information and belief that Class members are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.

85. The true size of the Class may be ascertained through Defendant's business records—which would show its brick-and-mortar wholesale and/or retail unit sales in the relevant geographic areas as well as its direct online retail sales at Belkin.com and through third-party retail outlets like Amazon.com—as well as those of its authorized retailers, and by other means, including notice publication.

86. **Typicality—Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of other Class members' claims. Mr. Gromov purchased a Belkin Product bearing the claim that the Product's mAh is greater than it really is. All purchased Products that are substantially similar in design—including the Products' inherent inability to deliver stated mAh—and all were labeled and marketed based upon overstated mAh capacity.

87. Plaintiff and the Class all were exposed to the same or substantially similar misrepresentations (overstated mAh capacity) and to the same omissions (concealment of the Products' inherent inability to deliver the promised mAh), i.e., Belkin systematically

---

[4] Belkin International Announces Key Leadership and Organization Changes: https://www.belkin.com /us/pressreleases/belkin-international-announces-key-leadership-and-organization-changes/ (1/7/21).

[5] Belkin Reigns as Number One Third Party Brand in Mobile Power Category at CES 2018: https://www.belkin.com/us/pressreleases/belkin-number-1-third-party-brand-mobile-power-category-ces-2018/ (citing NPD Group retail data reports).

misrepresented the Products to all prospective consumers, including Plaintiff and all Class members.

88.   Plaintiff and the Class suffered economic damages that are calculable on a classwide basis. The claims all arise from the same manner of misconduct and each Class member would make similar legal and factual arguments to establish Belkin's liability were they to proceed on an individual basis.

89.   There are no defenses available that are unique to Plaintiff.

90.   **Commonality—Fed. R. Civ. P. 23(a)(2) & 23(b)(3).** Plaintiff and the Class are united by a community of interest in obtaining appropriate remedies, including damages capable of determination on a classwide basis, potential injunctive relief, and, alternatively, restitution. This action involves questions of law and fact that are common to the Class that are susceptible to common answers and that predominate over any individual questions specific to any Class members. These include:

   a.   whether the Products are capable of delivering the power, as measured in mAh, that Belkin claims;

   b.   whether the Products actually deliver the power, as measured in mAh, that Belkin claims;

   c.   whether Belkin misrepresented the Products' mAh ratings;

   d.   whether Belkin's conduct was unfair and/or deceptive;

   e.   whether Belkin has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Belkin to retain the benefits conferred upon Belkin by Mr. Gromov and the Class;

   f.   whether Belkin's conduct constitutes a breach of express warranty;

   g.   whether Belkin violated state consumer protection laws;

   h.   whether Mr. Gromov and the Classes have sustained damages and, if so, the proper measure thereof;

      i.     whether Mr. Gromov and the Classes are entitled to restitution, and if so, the proper measure thereof; and

      j.     whether Belkin should be enjoined from continuing to sell the Products as currently labeled.

91.    These common issues will drive the resolution of the litigation in that their determination will resolve in one stroke issues that are central to the validity of each Class member's claims.

92.    The factual and legal issues identified above (a) remain common to the Class, (b) arise from a common course of conduct and systematic policy decisions made by Defendant, (c) predominate in number and importance over questions that may not be common to the class, and (d) preclude neither class-wide calculation of damages nor the methodological determination of how such damages should be allocated among Class members.

93.    **Adequate Representation—Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class members. Plaintiff commits to protecting the interests of the Class without exercising personal interest or otherwise acting in a manner inconsistent with the best interests of the Class generally. Plaintiff has retained attorneys with exceptional experience in complex litigation, including extensive class action experience and experience in handling consumer protection cases.

94.    **Superiority.** A class action is superior to any other means available to the Class to obtain relief. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such individual litigation, the court system could not. Thus, making the

Class whole in the absence of a class action is unlikely and impracticable, and it would be virtually impossible for Class members to obtain an effective remedy.

95.   Were it otherwise, denial of class treatment would run the risk of piecemeal litigation establishing incompatible standards of conduct for Defendant or, alternatively, discouraging the prosecution of meritorious but small claims and otherwise substantially impairing the ability of Class members (and Defendant) to protect their rights and interests.

96.   Defendant has no facially plausible interest in defending against separate, geographically dispersed claims and, in fact, that would be more burdensome to Defendant than defending against all potential claims in a single forum and proceeding.

97.   Likewise, the judicial system has no interest in burdening a number of courts when the claims of this highly cohesive class can be fairly and efficiently concentrated and managed by this Court.

98.   The class action procedure presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.

99.   **Injunctive and Declaratory Relief—Fed. R. Civ. P. 23(b)(2).** The prerequisites to maintaining a class action for injunctive or equitable relief are met, as Belkin has acted or refused to act on grounds generally applicable to the members of the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

100.   Belkin's conduct is generally applicable to the Class as a whole and Mr. Gromov seeks, among other things, equitable remedies with respect to the Class. As such, Belkin's systematic policies and practices make declaratory relief with respect to the Class appropriate.

101.   **Particular Issues—Fed. R. Civ. P. 23(c)(4).** Any or all of the issues identified above are appropriate for certification pursuant to Rule 23(c)(4) because each is particular and common to the Class and the resolution of each or all would materially advance the disposition of this action and the parties' interests.

102.   Plaintiff knows of no difficulty to be encountered in this  action that would preclude its maintenance as a class action.

## VI.   CLAIMS FOR RELIEF

### COUNT ONE
### Violation of Illinois' Consumer Fraud and Deceptive Business Practices Act
### (On Behalf of the Illinois Class)

103.   Plaintiff incorporates by reference and re-alleges herein all preceding paragraphs.

104.   Belkin is engaged in "trade" and "commerce" when it offers the Products at retail or distributes the Products to retail stores for sale to consumers in Illinois.

105.   Belkin's representations about the mAh of the Products were material to all ordinary reasonable consumers and were likely to affect consumer decisions and conduct.

106.   Indeed, the amount of mAh is *the principal* material factor in making a purchasing decision, because the function of the power bank is to provide power, and more is better at a given price point.

107.   Belkin has used and employed, and continues to use and employ, unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

108.   Belkin's acts and practices were immoral, unethical, oppressive and unscrupulous.

109.   Belkin's conduct was substantially injurious to consumers. Such conduct has caused and continues to cause substantial injury to consumers because consumers would not have paid as

high a price for the Products, or bought the products at all, but for Belkin's false promotion of the Products' mAh.

110. But for its deceptive mAh representations, Belkin could not have charged as high a price as it did, and neither Mr. Gromov nor the Class would not have paid as much as they did.

111. Mr. Gromov and the other class members have overpaid for the Products, and such injury is not outweighed by any countervailing benefits.

112. Belkin's conduct does not benefit consumers. Because ordinary reasonable consumers cannot verify mAh before purchase and because they are deceived by Belkin's mAh representations, they are injured as a result and could not have reasonably avoided such injury.

113. Belkin's practices constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §§ 505/1, *et seq.*

114. Belkin's unfair and deceptive practices directly, foreseeably, and proximately caused Mr. Gromov and the Illinois Class to suffer ascertainable losses.

115. Accordingly, Plaintiff and the Illinois Class seek all available relief requested below.

**COUNT TWO**
**Breach of Express Warranty**
**(On Behalf of the Illinois Class)**

116. Plaintiff incorporates by reference and re-alleges paragraphs 1-102.

117. Purchase of the Products by Plaintiff and the Illinois class are transactions in goods.

118. Belkin's representations regarding the Products' mAh constitute affirmations of fact.

119.    Belkin's representations that the Products' mAh are greater than they really are relate to the goods and became part of the basis of the bargain between Belkin and purchasers of the Products, including Plaintiff and the Illinois Class.

120.    Belkin's representations—made in writing on the face of the packaging as to a material term of the transaction—pertained to the character and quality of the Products and were made contemporaneously with and as part of the sale of the Products.

121.    Belkin's representations thus constitute an express warranty.

122.    Plaintiff and members the Illinois Class purchased the Products believing that they conformed to the express warranties pertaining to the Products' mAh.

123.    Belkin breached its express warranties because the Products' actual mAh was lower than Belkin represented and the Products therefore did not comply with the warranty.

124.    Had Mr. Gromov and the Illinois Class known the true facts, they either would not have purchased the Products, or would not have been willing to pay the price Belkin charged for the Products.

125.    Plaintiff and the Illinois Class did not receive the benefit of the bargain and have suffered economic harm as a result of Belkin's breaches.

126.    As a direct result of Belkin's breaches of its express warranty, Plaintiff and the Illinois Class were damaged in the amount of the purchase price they paid for the Products or, at a minimum, by the difference between the value of the goods accepted and the value they would have had if they had been as warranted, i.e., had the Products possessed the mAh represented and warranted by Belkin.

127.    Accordingly, Plaintiff and the Illinois Class seek all available relief requested below.

## COUNT THREE

**Violation of Various States' Consumer Fraud and Deceptive Business Practices Acts**
**(On Behalf of the Multistate Class)**

128.   Plaintiff incorporates by reference and re-alleges herein paragraphs 1-102.

129.   Plaintiff brings this claim on behalf of Class members in states whose laws prohibit the same conduct that Illinois law prohibits, all of whom suffered economic injury identical to Plaintiff's due to Belkin's substantively identical misrepresentations across all of the Products.

130.   Plaintiff alleges violations of the following nine states' deceptive and unfair trade practices acts, the substantive and procedural laws and the requisite proof of loss being substantially similar and reconcilable for each: Florida, Massachusetts, Missouri, New Jersey, New York, North Carolina, Ohio, Washington, and Wisconsin.

131.   Belkin's unfair methods of competition and its deceptive and unfair trade practices—all of which were conducted in the course of its business, trade, and commerce—have caused actual damages to Plaintiff and the Multistate Class, as described herein, and such practices include the misrepresentations and omissions described with respect to the marketing, packaging, labeling, and sale of the Products.

132.   Belkin course of business, trade, and commerce includes offering the Products at retail and distributing the Products to retail outlets, including online outlets, for sale to consumers in each the states identified below.

133.   Belkin's representations about the mAh of the Products were material to all ordinary reasonable consumers and were likely to affect consumer purchasing decisions. They had a tendency to deceive and in fact deceived Plaintiff and the Multistate Class by deliberately

representing the Products as having characteristics they did not possess, i.e., overstating the amount of mAh.

134.   Indeed, the amount of mAh is *the principal* material factor in making a purchasing decision, because the function of the power bank is to provide power, and more is better at a given price point.

135.   Any objectively reasonable consumer acting reasonably in the circumstances would have been deceived by Defendant's acts and practices.

136.   But for Belkin's unfair methods of competition and its deceptive acts and practices, no consumer would have purchased the Products at their offered price.

137.   Belkin's acts and practices—including its intentional and deliberate misrepresentations regard mAh—were willful, unfair, immoral, unethical, unconscionable, oppressive, unscrupulous, contrary to public policy, and injurious to consumers. Its acts and practices were actuated by bad faith, lack of fair dealing, and actual malice, and Belkin was motivated solely by the desire for financial gain.

138.   Belkin's conduct was substantially injurious to consumers. Such conduct has caused and continues to cause substantial injury to consumers because consumers would not have paid as high a price for the Products, or bought the Products at all, but for Belkin's false promotion of the Products' mAh.

139.   But for its deceptive mAh representations, Belkin could not have charged as high a price as it did, and neither Mr. Gromov nor the Multistate Class would have paid as much as they did and, as a direct result, they have suffered ascertainable losses.

140.    Mr. Gromov and the Multistate Class overpaid for the Products and their injury is not outweighed by any countervailing benefits.

141.    Belkin's conduct does not benefit consumers. Because ordinary reasonable consumers cannot verify mAh before purchase and because they are deceived by Belkin's mAh representations, they are injured as a result and could not have reasonably avoided such injury.

142.    Belkin's injurious practices constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of the following state consumer protection statutes, all of which are consonant with the substantive and procedural requirements of Illinois' Consumer Fraud and Deceptive Business Practices Act:

      a.    Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 Fla. Stat., *et seq.*

      b.    Massachusetts Regulation of Business Practices for Consumers' Protection Act, Mass. Gen. Laws Ann. ch. 93A, §§ 1 *et seq.*

      c.    Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, *et seq.*

      d.    New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.*

      e.    New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.*

      f.    North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1, *et seq.*

      g.    Ohio Consumers Sales Practices Act, Ohio Rev. Code §§ 1345.01, *et seq.*

      h.    Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.010, *et seq.*

      i.    Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et seq.*

143.    Belkin's unfair and deceptive practices directly, foreseeably, and proximately caused Plaintiff and the Multistate Class to suffer ascertainable losses and their losses are capable of determination on a classwide basis.

144. Accordingly, Plaintiff and the Multistate Class seek all available relief set forth below under the respective laws of the states identified above.

## COUNT FOUR
### Breach of Express Warranty
### (On Behalf of the Multistate Class)

145. Plaintiff incorporates by reference and re-alleges paragraphs 1-102.

146. Plaintiff brings this claim on behalf of Class members in states whose laws prohibit the same conduct that Illinois law prohibits, all of whom suffered economic injury identical to Plaintiff's due to Belkin's substantively identical misrepresentations across all of the Products.

147. Plaintiff alleges violations of following nine states' laws on breach of express warranty, the substantive and procedural laws and the requisite proof of loss being substantially similar and reconcilable for each: Florida, Massachusetts, Missouri, New Jersey, New York, North Carolina, Ohio, Washington, and Wisconsin.

148. Purchase of the Products by Plaintiff and the Multistate Class are transactions in goods.

149. Belkin's representations regarding the Products' mAh constitute affirmations of fact.

150. Belkin's representations that the Products' mAh are greater than they really are relate to the goods and became part of the basis of the bargain between Belkin and purchasers of the Products, including Plaintiff and the Multistate Class.

151. Belkin's representations—made in writing on the face of the packaging as to a material term of the transaction—pertained to the character and quality of the Products and were made contemporaneously with and as part of the sale of the Products.

152. Belkin's representations thus constitute an express warranty.

153.    Plaintiff and members the Multistate Class purchased the Products believing that they conformed to the express warranties pertaining to the Products' mAh.

154.    Belkin breached its express warranties because the Products' actual mAh was lower than Belkin represented and the Products therefore did not comply with the warranty.

155.    Had Mr. Gromov and the Multistate Class known the true facts, they either would not have purchased the Products, or would not have been willing to pay the price Belkin charged for the Products.

156.    Plaintiff and the Multistate Class did not receive the benefit of the bargain and have suffered economic harm as a result of Belkin's breaches.

157.    As a direct result of Belkin's breaches of its express warranty, Plaintiff and the Multistate Class were damaged in the amount of the purchase price they paid for the Products or, at a minimum, by the difference between the value of the goods accepted and the value they would have had if they had been as warranted, i.e., had the Products possessed the mAh represented and warranted by Belkin.

158.    Accordingly, Plaintiff and the Multistate Class seek all available relief requested below.

## COUNT FIVE

### Unjust Enrichment
### (On Behalf of the Illinois Class and the Multistate Class)

159.    Plaintiff incorporates by reference and re-alleges paragraphs 1-102.

160.    Plaintiff brings this claim on behalf of the Illinois Class and the Multistate Class (referred to collectively as "the Class") pursuant to their respective state laws on unjust

enrichment, the substantive and procedural laws and the requisite proof of loss being substantially similar and reconcilable for each.

161.   This Count is alleged in the alternative to Plaintiff's claims for legal relief.

162.   Plaintiff and the Class conferred a monetary benefit on Belkin by purchasing the Products and by paying a greater price for them than they would have paid had Belkin truthfully represented the Products' mAh.

163.   Belkin was aware of this benefit, voluntarily accepted it, and has retained and appreciated this benefit, to which it is not entitled, at the expense of Plaintiff and the Class.

164.   Belkin's representations that the mAh of the Products is greater than it actually is constitutes an affirmation of fact that is part of the basis of the bargain between Belkin and purchasers of the Products.

165.   Belkin either knew or should have known that payments rendered by Plaintiff and the Class were given and received with the expectation that the Products would deliver the mAh represented on the packaging; but the Products uniformly failed to do so.

166.    It is inequitable for Belkin to retain the benefit of payments under these circumstances.

167.   Belkin was enriched at the expense of Mr. Gromov and the Class, thereby creating a quasi-contractual obligation on Belkin to restore those ill-gotten gains to Mr. Gromov and the Class.

168.   Under the circumstances, it would be inequitable, unfair, and unconscionable to permit Belkin to retain the full amount of the benefit conferred upon it by Plaintiff and the Class ill-gotten, and fairness demands that Belkin pay for the benefit.

169. Belkin must make appropriate restitution to Mr. Gromov and the Class.

170. Belkin has wrongfully retained, at a minimum, an amount commensurate with the difference between the reasonable or fair market value of the Products for which Plaintiff and the Class paid, and the actual value of the Class Products that Defendant delivered. Stated differently, Belkin wrongfully retained an amount not less than the difference between the value of the goods accepted and the value they would have had if they had been as represented, i.e., had the Products possessed the mAh represented by Belkin.

171. Plaintiff accordingly seeks restitution individually and on behalf of the Class, including an order of this Court that proportionally disgorges all profits, benefits, and other compensation unjustly obtained by Defendant from its wrongful conduct and that establishes a constructive trust from which Plaintiff and Class may seek restitution.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Mr. Gromov demands judgment on behalf of himself and each of the Classes all of the following relief that is available:

a. an order certifying the proposed Classes; appointing Mr. Gromov as the representative of each Classes; and appointing Mr. Gromov's undersigned counsel as Class counsel for each Class;

b. an order declaring Belkin's conduct alleged herein to be unlawful;

c. a declaration that Belkin is financially responsible for notifying members of the Classes of the pendency of this action;

d. an order requiring proper, complete, and accurate labeling of the Products, including a corrective advertising campaign;

e.  all available actual damages including money and other available compensatory

damages, liquidated damages, statutory damages and penalties in the maximum amount

provided by law, and punitive damages;

f.  injunctive relief, restitution, and all other relief available in equity;

g.  pre- and post-judgment interest;

h.  an order awarding Plaintiff and the Classes the reasonable costs and expenses of this

action, including their attorney's fees; and

i.  any further relief available in law or equity that the Court may deem appropriate.

## VIII.  DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury

on all issues so triable.


Date: December 9, 2022                    Respectfully submitted,

                                          /s/ William F. Cash III
                                          William F. Cash III (Ill. Bar No. 6330856)
                                          bcash@levinlaw.com
                                          Matthew D. Schultz*
                                          mschultz@levinlaw.com
                                          Scott Warrick*
                                          swarrick@levinlaw.com
                                          **LEVIN, PAPANTONIO, RAFFERTY,
                                          PROCTOR, BUCHANAN, O'BRIEN, BARR
                                          & MOUGEY, P.A.**
                                          316 South Baylen Street, Suite 600
                                          Pensacola, FL 32502
                                          Phone: 850-435-7059

Seyed Abbas Kazerounian (Ill. Bar No. 6316129)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Phone: 800-400-6808

D. Greg Blankinship*
gblankinship@fbfglaw.com
Bradley F. Silverman*
bsilverman@fbfglaw.com
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
1 North Broadway, Suite 900
White Plains, NY 10601
Phone: 914-298-3290

*Attorneys for Plaintiff Dennis Gromov*

* PHV application forthcoming