**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **DENNIS GROMOV,** individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:22-cv-6918 |
| v. | Hon. Franklin U. Valderrama |
| **BELKIN INTERNATIONAL, INC.,** | |
| Defendant. | |

**PLAINTIFF'S DISCOVERY REQUESTS TO BELKIN**

Plaintiff now serves the following discovery requests on the Defendant, Belkin International, Inc. In construing all of these requests, Plaintiff incorporates the definitions and instructions below.

**DEFINITIONS AND INSTRUCTIONS**

1. Where a term appears in bold in a discovery request, it carries the definition given in this section.

2. A **"power bank"** means any portable battery designed to be carried by a consumer and primarily intended to charge another battery-powered device carried by that consumer. As to Belkin, **power banks** includes the Belkin Pocket Power 10000 but also all include any other device meeting this description and marketed, distributed, sold, or otherwise put out by Belkin.

3. References to a "**power bank**" does not mean only Belkin **power banks**; this term can also include competitors' models and can also include the concept of a **power bank** in the abstract.

1

4. **"Charging statements"** means any representation, made anywhere by Belkin, about the ability of a **power bank** to charge any portable electronic device and how the **power bank**'s charge can affect a portable electronic device's charge. This includes statements: referring to mAh amounts; promising that a certain number of charges can be given to other devices; about **power banks'** ability to operate for a certain amount of time; comparisons to charging ability of competitor **power banks**; and all other statements concerning performance.

5. **"Output energy"** means energy measured in milliampere-hours, or mAh, that a portable electronic device can withdraw from a fully charged **power bank**.

6. **"Stated capacity"** means the amount of energy, measured in mAh, that Belkin represents is a measure of capacity, via any representation concerning its **power banks.** Examples of mAh representations include "10000 mAh," "10,000," or "10K."

7. **"Label"** means all words, pictures, and other symbols placed on the outside of a **power bank**'s package.

8. **"Labeling"** means all written, graphic, or other matter—in any form, including print or electronic—associated with a **power bank,** and created or distributed in any way by Belkin. **Labeling** includes the **label**. **Labeling** includes materials not affixed directly to the package, including marketing materials (brochures, web sites, advertising, etc.).

9. References to Belkin **power banks** are to models that Belkin has manufactured, distributed, sold, or otherwise put out, on or after January 1, 2018. Older models are not included.

10. The limitation on models put out since January 1, 2018 does *not* mean that documents that are relevant but are older than January 1, 2018 should not be produced. For

example, if a 2015 market research report is responsive to a request for production, it should be produced even though it pre-dates January 1, 2018. This is for the common-sense reason that at least *some* events pre-dating January 1, 2018 would have to be relevant to sales made *on* January 1, 2018.

## INTERROGATORIES

1. Identify all **power banks** put out by Belkin since January 1, 2018, including their: name, model number, SKU number, basic characteristics including **stated capacity** and **output energy**, and the first and last month in which the model was distributed to anyone by Belkin.

2. Identify any **power bank** that Belkin described in interrogatory no. 1, which Belkin contends is *not* substantially similar to all other Belkin power banks, with respect to either (1) basic internal design, (2) basis for making **charging statements**, or (3) the fact that **output energy** and **stated capacity** are different.

3. Please state the average retail price and the average wholesale price of each Belkin **power bank**.

4. Did Belkin rely on any industry standards, industry trade association recommendations, competitors' trade practices, or similar factors outside of Belkin, when Belkin determined to publish any **power bank's stated capacity** in any **labeling** rather than its **output energy?** If so, state the name of the outside factor, the name of the Belkin person relying on it, and the date of the reliance.

5. Did Belkin rely on any industry standards, industry trade association recommendations, competitors' trade practices, or similar factors outside of Belkin, when determined to publish **charging statements** in any **labeling**? If so, state the name of the outside factor, the name of the Belkin person relying on it, and the date of the reliance.

6. Has Belkin, or any agent or contractor of Belkin (e.g., market research firms, consultants), ever conducted a focus group, consumer survey, or other market research that elicited, analyzed, or reported on consumer understanding of, or confusion about **power bank stated capacity, output energy, charging statements,** or **labeling?** If so, identify the date and location of each, the name and address of the persons who took part, conducted or analyzed the events, and describe any documents prepared for, during or after each event, including any report or analysis.

7. Identify all industry standards, industry trade association recommendations, competitors' trade practices, or other factors Belkin relies on in determining how to compute and describe **power banks' stated capacity**.

8. Mr. Gromov's Belkin model 10000 bears the name "Pocket Power 10000." Does "10000" have any meaning, such as **stated capacity**?

9. With respect to each Belkin **power bank**, where in the **labeling** does Belkin disclose that **stated capacity**—such as 10,000—reflects a theoretical maximum mAh capacity, not the actual **output energy** available to the consumer?

10. With respect to each Belkin **power bank**, where in the **labeling** does Belkin tell consumers whether or how much of the **stated capacity** will be consumed by the **power bank** itself?

11. With respect to each Belkin **power bank**, where in the **labeling** does Belkin disclose the **output energy**?

12. Could a consumer compute, based on **charging statements** and/or **stated capacity** that Belkin makes available to the consumer, what a **power bank's** true **output energy** is? How?

13. Could a consumer compute, based on any information on the **label**, what a **power bank**'s true **output energy** is? How?

14. Did Belkin, or an agent or contractor of Belkin, ever test any power bank to determine its **output energy** or to support its **charging statements**? If so, state the date of the test, the names of all persons designing or performing the test, the **power bank** tested, the consumer device (e.g., phone) charged or discharged used in the test, and the results.

15. Which departments or offices inside Belkin are responsible for the factual accuracy of **charging statements** and **stated capacity** on websites, packaging, labels and in advertisements (television, print and online)?

16. Identify all persons, whether or not employed by Belkin that had responsibility with respect to the content of listed **charging statements** and **stated capacity** of **power banks**. Such identification should include such persons' names, positions, and contact information.

17. As to each **power bank,** describe all documents, including test results, industry standards, or other evidentiary support Belkin relies on for the basis of its **charging statements** and **stated capacity**.

## REQUESTS FOR PRODUCTION

Instruction: Rule 34(2)(E)(i) gives a party two options in producing documents: produce them "as they are kept in the usual course of business or . . . organize and label them to correspond to the categories in the request." Therefore, if Belkin produces a bulk of documents not maintained in the way they are maintained in the usual course of business, **Belkin is directed**

**to follow this rule and label each document with the category or categories which the document is responsive to**.

    1.    *For physical inspection and testing:* An exemplar of every **power bank** identified in response to interrogatory no. 1.

    2.    Organizational charts that identify the Belkin departments and employees who have responsibility for labeling, marketing, designing, testing, and manufacturing of **power banks**.

    3.    Documents sufficient to establish the name, model number, SKU number, and product characteristics of all **power bank** models that have been put out by Belkin since January 1, 2018

    4.    Design specifications and drawings, including parts lists, for each Belkin **power bank.**

    5.    All documents—including, but not limited to, test designs, test protocols, raw test data, test results, communications about tests or test results, communications about whether or not to perform tests, meeting agendas and minutes about tests, presentations / PowerPoints / reports about tests, and all billing or accounting documents—relating to actual or proposed tests of Belkin **power banks**, where a variable measured in the test is anything related to **charging statements** or **output energy**.

    6.    All documents showing that Belkin relied on any industry standards, trade association recommendations, competitors' trade practices, or similar factors outside of Belkin, when Belkin determined to publish **stated capacity** rather than **output energy** with respect to any **power bank**.

7. Any document, including a communication, where Belkin considered changing its **charging statements**, or the basis for those statements, even if the change was not actually made.

8. Any document, including a communication, where Belkin considered changing its **stated capacity**, or the basis for representing that value to consumers, even if the change was not actually made.

9. Any document, including a communication, where Belkin, its employees, its representatives, and/or any contractor discussed and/or compared **stated capacity** versus or in relation to **output energy.**

10. All documents, including reports from focus groups, consumer surveys, or other market research, concerning consumers' understanding or confusion about **stated capacity** or **charging statements**, with respect to any Belkin **power bank**.

11. All documents, including reports from focus groups, consumer surveys, or other market research, concerning the value consumers place on **output energy** or **stated capacity**.

12. All documents concerning consumer market research—including conjoint analyses or willingness-to-pay analyses—conducted by Belkin or anyone on Belkin's behalf, relating to Belkin **power banks**, including—for each study or research project—documents concerning:

    a. proposals as to whether or how the study should be performed;

    b. meeting agendas and minutes pertaining to the study;

    c. study enrollment and participant demographics;

    d. study methodology including survey methods;

    e. surveys or other study instruments;

    f. raw data generated in connection with the study including raw survey data;

7

      g.  interim and final study or survey results;

      h.  study or survey reports or summaries;

      i.  all analyses and presentations of data for each and every such study, including analyses and presentations relating to surveys or survey results/data;

      j.  contracts or other agreements with any third-party to participate in or conduct the study; and

      k.  documents reflecting any incentives, inducements, or other consideration provided to study participants.

13.    All **labeling**, for each Belkin **power bank**, that includes the **stated capacity** or **charging statements**. If changes were made to **labeling** during the marketing life of a **power bank**, provide each version of the **labeling**.

14.    A copy of the **label** for each Belkin **power bank**. If the **label** changed during the marketing life of a **power bank**, provide each version of the document.

15.    A clear photo or document showing what is printed on each iteration of each Belkin **power bank** label as each appeared in the marketplace.

16.    All complaints (formal and informal) that Belkin has received from anyone concerning any **power bank's stated capacity, charging statements,** or **output energy**.

17.    All litigation complaints filed against Belkin anywhere in the world where the plaintiff's claim included an allegation that Belkin's **labeling** of a **power bank**'s **stated capacity**, **charging statements**, or **output energy** is not fully accurate.

18.    All documents that describe or reflect Belkin's response to each of the complaints in the previous document requests. Include both internal communications and memos within Belkin as well as any response communicated back to the complainant externally.

19. All documents reflecting an inquiry from a government entity (e.g., Federal Trade Commission, state attorney general) concerning any Belkin power bank **labeling** or regarding any **power bank's stated capacity, charging statements,** or **output energy.**

20. Documents that would show monthly or quarterly sales volume, by units, of each **power bank** Belkin has sold since January 1, 2018, and the income generated by those sales, for each of the states in the proposed class: CA, FL, IL, MA, MO, NJ, NY, NC, OH, WA, and WI.

21. Any documents created by a third party (including, but not limited to IRI and Nielsen) that shows sales or price data for any all **power bank** models.

22. All financial statements, reports, summaries, graphs, tables, spreadsheets, analyses, and other finance documents relating to Belkin's sales and distribution of **power banks,** including, at a minimum, documents that alone or together will demonstrate the following since January 1, 2018, broken down by SKU or other similar product identifier:

   a. total dollar sales revenue generated from **power banks**, broken down by distribution channel, including (i) wholesalers, (ii) distributors, (iii) brick-and-mortar retailers, and (iv) online retailers;

   b. total dollar sales revenue generated from **power banks**, broken down by store (retailer or wholesaler), area, region, district, and state, broken down by distribution channel;

   c. total unit sales of **power banks**, broken down by store (retailer or wholesaler), area, region, district, and state, broken down by distribution channel;

   d. unit price;

   e. unit cost;

   f. cost of goods sold;

   g. profit margin;

   h. MSRP (Belkin's suggested retail price); and

   i. average retail price collected by retailers.

9

23. Documents sufficient to identify all retailers who sold Belkin's **power banks** in the multi-state area in the proposed class, including their names, locations, and sales volume since January 1, 2018, broken down by model of each **power bank**.

24. All documents Belkin contends are relevant to Plaintiff's suitability to serve as a class representative.

25. All documents in Belkin's possession that refer to lawsuits against competitors over their **power banks** and the representations made on their **labeling,** including Belkin's own plans and positions relating to **charging statements** and **stated capacity**.

## REQUESTS FOR ADMISSION

Due to their size, these documents are being made available on an Internet site which Gromov will identify to Belkin.

1. Admit that Belkin produced the documents attached as Exhibit A in discovery in this case: *Miley v. Belkin International, Inc.*, No. 20stcv00033, in the Superior Court of California (L.A. County).

2. Admit that Belkin served the written discovery responses attached as Exhibit B in discovery in *Miley v. Belkin*.

3. Admit that Belkin filed the documents attached as Exhibit C on the docket in *Miley v. Belkin*.

4. Admit that Belkin wrote and sent the letter attached as Exhibit D.

10

| | |
|---|---|
| Date: April 21, 2023 | /s/ William F. Cash III |

William F. Cash III (Ill. Bar No. 6330856)
bcash@levinlaw.com
Matthew D. Schultz (*pro hac vice*)
mschultz@levinlaw.com
Scott Warrick (*pro hac vice*)
swarrick@levinlaw.com
**LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY, P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Phone: 850-435-7059

Seyed Abbas Kazerounian (Ill. Bar No. 6316129)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Phone: 800-400-6808

Jason A. Ibey (Bar. No. 16691)
jason@kazlg.com
**KAZEROUNI LAW GROUP, APC**
321 N. Mall Drive, Suite R108
St. George, Utah 84790
Phone: 800-400-6808

> D. Greg Blankinship (*pro hac vice*)
> gblankinship@fbfglaw.com
> Bradley F. Silverman (*pro hac vice*)
> bsilverman@fbfglaw.com
> **FINKELSTEIN, BLANKINSHIP,**
> **FREI-PEARSON & GARBER, LLP**
> 1 North Broadway, Suite 900
> White Plains, NY 10601
> Phone: 914-298-3290
>
> *Attorneys for Plaintiff Dennis Gromov*

## CERTIFICATE OF SERVICE

I certify that these *Plaintiff's Discovery Requests to Belkin* will be served on Belkin, today, April 21, 2023 by e-mail with Belkin's consent.

/s/ William F. Cash III

12