SHELDON EISENBERG (SBN 100626)
seisenberg@sullivantriggs.com
ERIN E. McCRACKEN (SBN 244523)
emccracken@sullivantriggs.com
Sullivan & Triggs, LLP
1230 Montana Avenue, Suite 201
Santa Monica, California 90403
Telephone:     (310) 451-8300
Facsimile:     (310) 451-8303

Attorneys for Defendant
BELKIN INTERNATIONAL, INC.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| LENORE MILEY, individually and on behalf of all others similarly situated, | Case No.: 20STCV00033 |
| Plaintiff, | **DEFENDANT BELKIN INTERNATIONAL, INC.'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF INTERROGATORIES** |
| v. | |
| BELKIN INTERNATIONAL, INC., | |
| Defendant. | Judge:  Hon. Carolyn B. Kuhl |
| | Dept.:  12 |
| | Complaint Filed:  January 2, 2020 |

**Propounding Party:**     Lenore Miley

**Responding Party:**     Belkin International, Inc.

**Set No.:**     One -- Amended

Pursuant to California Code of Civil Procedure § 2030.210, Belkin International, Inc. ("Defendant") hereby responds to Plaintiff's Amended First Set of Interrogatories.

## PREFATORY STATEMENT

These responses, while based on the diligent search and efforts by Defendant and its counsel, reflect only the current state of Defendant's knowledge, understanding, and belief relating to the matters about which inquiry has been made.  Discovery and investigation are continuing. Defendant has not yet completed his investigation of the facts relating to this action and may discover facts, information,

evidence, documents and things that are not set forth in these responses but which may be responsive. Accordingly, these responses are neither intended as, nor should in any way be deemed, an admission or representation that further information or documents do not exist.  Defendant anticipates that as this action proceeds, further information or documents may be discovered and, without in any way obligating itself to do so, Defendant reserves the right to modify or supplement these responses, or to produce documents based on subsequently discovered matters.

## RESPONSES TO AMENDED SPECIAL INTERROGATORIES

### AMENDED SPECIAL INTERROGATORY NO. 1:

Identify all POWER BANKS including their: name, model number, stock-keeping unit, general characteristics including STATED CAPACITY and OUTPUT ENERGY, and the first and last month in which the model was distributed to anyone by Belkin.

[As used here, a POWER BANK is any portable battery designed to be carried by a consumer and primarily intended to charge another battery-powered device carried by that consumer, including all "Pocket Power" brand models and "BOOST↑CHARGE" brand models. The "Pocket Power" brand includes, but is not limited to, the specific models 5000, 6600, 10000, 15000, and 20000; As used here, STATED CAPACITY means the amount of energy, measured in mAh, that Belkin represents is a measure of capacity, via any written representation concerning the POWER BANKS. These representations may be found on websites, packaging, labels and in advertisements (television, print and online). Examples of these mAh representations, found in Pl.'s Ex. 002-004, 025 and 028, are: "10000 mAh," "10000mAh," "10 000 mAh," "10,000 mAh," "Pocket Power 10K," and "10K"



2

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica



; As used here, OUTPUT ENERGY means energy measured in milliampere-hours, or mAh, that a portable electronic device can withdraw from a fully charged POWER BANK; The terms "Defendant," "Belkin," "you," or "your," means Belkin International, Inc. and, where indicated, its parent, subsidiary, related, and affiliated entities, and all its current and former officers, employees, directors, principals, owners, agents, independent contractors, representatives, accountants, predecessors, and successors.]

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 1:**

Belkin objects to this Interrogatory to the extent it asks Belkin to identify "all" "Power Banks" "distributed" by Belkin. Based on the information collected by Belkin to date, it has sold 27 different "Power Banks" as defined by the Interrogatory. However, according to the allegations of the Complaint, Plaintiff purchased only one such product, and Plaintiff therefore does not have standing to pursue

claims with respect to the 26 products she did not purchase. As a result, the detailed discovery Plaintiff seeks on products that she did not purchase, and which therefore could not have caused her any loss or injury, is not itself admissible in evidence and does not appear to be reasonably calculated to lead to the discovery of admissible evidence on her individual claim. Moreover, "a proposed class representative may not seek to represent a class claim arising out of products she herself never purchased." See e.g., *Route v. Mead Johnson Nutrition Co*., 2013 WL 658251 at *3 (C.D. Cal. Feb. 13, 2013). In any event, because the pending summary judgment motion is directed towards only Plaintiff's individual claim, products that are not and cannot be the basis of Plaintiff's claim are not relevant to Belkin's defenses to that claim.

Belkin further objects to this Interrogatory to the extent its purported requirement of identifying and providing detailed information regarding 27 different products creates multiple and excessive sub-parts for many of the interrogatories in Plaintiff's Amended First Set of Special Interrogatories in violation of California Code of Civil Procedure sections 2030.060(f) and 2030.030(b). In addition, Plaintiff's request that Belkin provide answers about details on the packaging, advertising, specifications, labels, testing, test results, and other matters relating to 27 different products is unreasonably overbroad and unduly burdensome in the context of the allegations of the Complaint and the matters at issue.

In addition, Belkin objects to the definition of STATED CAPACITY on the grounds that it is vague, ambiguous, and argumentative by defining that phrase to suggest that Belkin uses its description of a product's "mAh" (milliampere hours) as a "representation" of a "measure" of capacity as opposed to a statement of the product's physical properties.

Subject to these objections, Belkin responds to this Interrogatory with respect to the specific product allegedly purchased by Plaintiff as follows:

According to the images reproduced in the Complaint, Plaintiff allegedly purchased a Pocket Power 10K with a model number of F7U020btC00 and a stock-keeping unit number of F7U020 (the "F7U020"). The reference to 10,000 mAh on the package of F7U020 means the amount of energy that can be stored in the Power Bank's lithium polymer battery cells. The amount of OUTPUT ENERGY, as defined by this Interrogatory, provided by the F7U020 is unknowable in the abstract since it is

4

dependent on multiple variables including, but not limited to, the nature of the portable electronic devices that are being charged, the age of the batteries in those portable devices, the cables being used to connect the devices during charging, the temperature of the environment in which the F7U020 is being used, and the age and amount of usage of the F7U020.

F7U020 was first made available for sale in approximately October 2017 and is still available for purchase in the market although Belkin has no remaining internal stock.

**AMENDED SPECIAL INTERROGATORY NO. 2:**

For each POWER BANK, state the actual OUTPUT ENERGY a consumer will receive in typical product usage.

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 2:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Belkin further objects to the phrase "typical product usage" on the grounds that it is inherently vague and ambiguous. Subject to those objections, and as stated above in more detail, it is impossible to know or describe "the actual OUTPUT ENERGY a consumer will receive in typical product usage" because of the multiple variables that will affect the amount of OUTPUT ENERGY including, without limitation, the operation and condition of the consumer's device that is being charged. As a general matter, but subject to the type of variability described above, a POWER BANK can output approximately 80% of its stored energy.

**AMENDED SPECIAL INTERROGATORY NO. 3:**

What is the wholesale price of each POWER BANK?

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 3:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Subject to these objections, the average wholesale price of F7U020 in the United States was $19.39 in 2020. Wholesale prices vary over time and depend on particular customer arrangements.

**AMENDED SPECIAL INTERROGATORY NO. 4:**

Did Belkin rely on any industry standards, industry trade association recommendations, competitors' trade practices, or similar factors outside of Belkin, when Belkin determined to publish POWER BANK's STATED CAPACITY on websites, rather than the OUTPUT ENERGY? If so, state

the name of the outside factor, the name of the Belkin PERSON relying on it, and the date of the reliance.

[As used here, PERSON means any natural person or any business, legal, or governmental entity or association and the officers, directors, employees, representatives, agents and attorneys thereof.]

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 4:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Belkin further objects to the Interrogatory on the grounds that it assumes there are "industry standards" on these issues. Subject to those objections, because the OUTPUT ENERGY of a power bank such as the F7U020 cannot be known or described with any specificity in the abstract, the general industry practice of which Belkin is aware is to identify the size of a power bank by the amount of energy that can be stored in the power bank's lithium polymer battery cells. That is a figure that remains constant notwithstanding the multiple variables that impact the OUTPUT ENERGY. In addition, the International Air Transport Association publishes guidelines on the labeling of, among other things, power banks using lithium battery cells. Published statements on the characteristics of Belkin products are approved by Belkin's Global Product Management department. The head of Global Product Management at the time published statements for F7U020 would have been approved was Fred Gransee.

**AMENDED SPECIAL INTERROGATORY NO. 5:**

Did Belkin rely on any industry standards, industry trade association recommendations, competitors' trade practices, or similar factors outside of Belkin, when Belkin determined to publish POWER BANK's STATED CAPACITY on packaging and labels, rather than the OUTPUT ENERGY? If so, state the name of the outside factor, the name of the Belkin PERSON relying on it, and the date of the reliance.

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 5:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Belkin further objects to the Interrogatory on the grounds that it assumes there are industry standards on these issues and is argumentative in basing the Interrogatory on the implied assumption that Belkin had an obligation to publish a figure for OUTPUT ENERGY. Subject to those objections, because the OUTPUT ENERGY of a power bank such as the F7U020 cannot be known or described with any

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

specificity in the abstract, the general industry practice of which Belkin is aware is to identify the size of a power bank by the amount of energy that can be stored in the power bank's lithium polymer battery cells. That is a figure that remains constant notwithstanding the multiple variables that impact the OUTPUT ENERGY. In addition, the International Air Transport Association publishes guidelines on the labeling of, among other things, power banks using lithium battery cells. Published statements on the characteristics of Belkin products are approved by Belkin's Global Product Management department. The head of Global Product Management at the time published statements for F7U020 would have been approved was Fred Gransee.

**AMENDED SPECIAL INTERROGATORY NO. 6:**

Did Belkin rely on any industry standards, industry trade association recommendations, competitors' trade practices, or similar factors outside of Belkin, when Belkin determined to publish POWER BANK's STATED CAPACITY in advertisements (television, print and online), rather than the OUTPUT ENERGY? If so, state the name of the outside factor, the name of the Belkin PERSON relying on it, and the date of the reliance.

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 6:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Belkin further objects to the Interrogatory on the grounds that it assumes there are industry standards on these issues and is argumentative in basing the Interrogatory on the implied assumption that Belkin had an obligation to publish a figure for OUTPUT ENERGY. Subject to those objections, because the OUTPUT ENERGY of a power bank such as the F7U020 cannot be known or described with any specificity, the general industry practice of which Belkin is aware is to identify the size of a power bank by the amount of energy that can be stored in the power bank's lithium polymer battery cells. That is a figure that remains constant notwithstanding the multiple variables that impact the OUTPUT ENERGY. In addition, the International Air Transport Association publishes guidelines on the labeling of, among other things, power banks using lithium battery cells. Published statements on the characteristics of Belkin products are approved by Belkin's Global Product Management department. The head of Global Product Management at the time published statements for F7U020 would have been approved was Fred Gransee.

**AMENDED SPECIAL INTERROGATORY NO. 7:**

Did Belkin rely on any industry standards, industry trade association recommendations, competitors' trade practices, or similar factors outside of Belkin, when Belkin determined to publish the CHARGING STATEMENTS on websites? If so, state the name of the outside factor, the name of the Belkin PERSON relying on it, and the date of the reliance.

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 7:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Subject to those objections and its further objection that the phrases "CHARGING STATEMENTS" and "similar factors outside of Belkin" are vague and ambiguous, Belkin responds that its statement that F7U020 "Charges iPhone 7 (running IOS 10) up to 3 times on a single charge" was based in part on the information published by Apple on the battery capacity of its iPhone 7. As stated above, published statements on the characteristics of Belkin products are approved by Belkin's Global Product Management department. The head of Global Product Management at the time published statements for F7U020 would have been approved was Fred Gransee. That date is unknown.

**AMENDED SPECIAL INTERROGATORY NO. 8:**

Did Belkin rely on any industry standards, industry trade association recommendations, competitors' trade practices, or similar factors outside of Belkin, when Belkin determined to publish the CHARGING STATEMENTS on packaging and labels? If so, state the name of the outside factor, the name of the Belkin PERSON relying on it, and the date of the reliance.

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 8:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Subject to those objections and its further objection that the phrases "CHARGING STATEMENTS" and "similar factors outside of Belkin" are vague and ambiguous, Belkin responds that its statement that F7U020 "Charges iPhone 7 (running IOS 10) up to 3 times on a single charge" was based in part on the information published by Apple on the battery capacity of its iPhone 7. As stated above, published statements on the characteristics of Belkin products are approved by Belkin's Global Product Management department. The head of Global Product Management at the time published statements for F7U020 would have been approved was Fred Gransee. That date is unknown.

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

BELKIN00033

**AMENDED SPECIAL INTERROGATORY NO. 9:**

Did Belkin rely on any industry standards, industry trade association recommendations, competitors' trade practices, or similar factors outside of Belkin, when Belkin determined to publish the CHARGING STATEMENTS in advertisements (television, print and online)? If so, state the name of the outside factor, the name of the Belkin PERSON relying on it, and the date of the reliance.

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 9:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Subject to those objections and its further objection that the phrases "CHARGING STATEMENTS" and "similar factors outside of Belkin" are vague and ambiguous, Belkin responds that its statement that F7U020 "Charges iPhone 7 (running IOS 10) up to 3 times on a single charge" for F7U020 was based in part on the information published by Apple on the battery capacity of its iPhone 7. As stated above, published statements on the characteristics of Belkin products are approved by Belkin's Global Product Management department. The head of Global Product Management at the time published statements for F7U020 would have been approved was Fred Gransee. That date is unknown.

**AMENDED SPECIAL INTERROGATORY NO. 10**

Has Belkin, or any agent of Belkin (e.g., market research firms, consultants) ever conducted an in-person focus group, online consumer survey, or other research that included consumer understanding of, or confusion with, POWER BANK STATED CAPACITY, OUTPUT ENERGY or CHARGING STATEMENTS? If so, identify the date and location of each, the name and address of the PERSON(S) who took part, conducted or analyzed the events, and describe any DOCUMENTS prepared for, during or after each event, including any report or analysis.

[As used here, the term DOCUMENTS means and refers to any writing within the meaning of Section 2031 of the California Code of Civil Procedure and includes all of the matters defined in Section 250 of the California Evidence Code, including but not limited to: anything in written form or that is a tangible recording or speech, sounds, pictures, words or symbols, however produced or reproduced, whether writings, papers, correspondence, memoranda, facsimile transmissions, electronic e-mail, notes, schedules, reports, compilations, computer printouts, computer disks, minutes or records of meetings, invoices, financial statements, financial calculations, diaries, jobs diaries, reports of telephone or other

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

conversations, calendars, appointment books, photographs, videotapes, films, motion pictures, tape

recordings, electronic media, and all other writings and recordings of any kind. The terms DOCUMENT

or DOCUMENTS also includes "Electronically Stored Information" as defined in Section 2016.020(e)

of the California Code of Civil Procedure, including information stored by computer or on a computer

disk, diskette, tape or card, as well as any electronic recording, tape recording, photograph, video file,

28      microfilm, or similar recording of words, images, sounds, pictures or information of any kind.]

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 10:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Subject to

these objections, Belkin responds as follows: No.

**AMENDED SPECIAL INTERROGATORY NO. 11:**

Identify all industry standards Belkin used or uses to determine what STATED CAPACITY

should be placed on websites.

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 11:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Subject to

those objections, because the OUTPUT ENERGY of a power bank such as the F7U020 cannot be

known or described with any specificity, the general industry practice of which Belkin is aware is to

identify the size of a powers bank by the amount of energy that can be stored in the power bank's

lithium polymer battery cells. Belkin is not aware of any such published industry standards. However,

the International Air Transport Association publishes guidelines on the labeling of, among other things,

power banks using lithium battery cells.

**AMENDED SPECIAL INTERROGATORY NO. 12:**

Identify all industry standards Belkin used or uses to determine what STATED CAPACITY

should be placed on packaging and labels.

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 12:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Subject to

those objections, because the OUTPUT ENERGY of a power bank such as the F7U020 cannot be

known or described with any specificity, the general industry practice of which Belkin is aware is to

identify the size of a power bank by the amount of energy that can be stored in the power bank's lithium

10

BELKIN00033

polymer battery cells. Belkin is not aware of any such published industry standards. However, the International Air Transport Association publishes guidelines on the labeling of, among other things, power banks using lithium battery cells.

**AMENDED SPECIAL INTERROGATORY NO. 13:**

Identify all industry standards Belkin used or uses to determine what STATED CAPACITY should be placed in advertisements (television, print and online).

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 13:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Subject to those objections, because the OUTPUT ENERGY of a power bank such as the F7U020 cannot be known or described with any specificity, the general industry practice of which Belkin is aware is to identify the size of a power bank by the amount of energy that can be stored in the power bank's lithium polymer battery cells. Belkin is not aware of any such published industry standards. However, the International Air Transport Association publishes guidelines on the labeling of, among other things, power banks using lithium battery cells.

**AMENDED SPECIAL INTERROGATORY NO. 14:**

Pl.'s Ex. 001 shows the statement "Cell Capacity." What does this term mean?



/ / /

/ / /

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 14:**

Cell Capacity refers to the amount of energy that can be stored in the product's lithium polymer battery cells.

**AMENDED SPECIAL INTERROGATORY NO. 15:**

Pl.'s Ex. 003 shows the value "10000 mAh." What does this value REFER to?



[As used herein, REFER or RELATE TO means referring to, constituting, compromising, setting forth, summarizing, reflecting, stating, describing, recording, noting, embodying, mentioning, studying, discussing, or evaluating, directly or indirectly.]

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 15:**

Belkin objects to the term "value" on the grounds it is vague and ambiguous. Subject to that objection, 10000 mAh refers to the amount of energy that can be stored in the Power Bank's lithium polymer battery cells.

**AMENDED SPECIAL INTERROGATORY NO. 16:**

With respect to each POWER BANK model, where on the packaging or in the manual or spec sheet does Belkin disclose that STATED CAPACITY—such as 10000 mAh—reflects a theoretical maximum mAh capacity, and not the actual OUTPUT ENERGY available to the consumer?

/ / /

/ / /

SULLIVAN & TRIGGS, LLP
Attorneys at Law
Santa Monica

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 16:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Subject to those objections and the further objection that the Interrogatory is argumentative and vague and ambiguous by positing that Belkin disclosed or was required to disclose a "theoretical maximum mAh capacity," Belkin responds as follows: the term 10000 mAh on the package for F7U020 describes the physical property of the power bank's lithium polymer battery cells in terms of the amount of energy that they can store. Because the OUTPUT ENERGY of a power bank such as the F7U020 cannot be known or described with any specificity, the package for F7U020 provides an example of the OUTPUT ENERGY that the product can provide by stating that the product can charge an iPhone 7 "up to 3 times" under a certain specified circumstance.

**AMENDED SPECIAL INTERROGATORY NO. 17:**

With respect to each POWER BANK, where on the packaging or in the manual or spec sheet does Belkin tell consumers how much of the STATED CAPACITY will be used by the POWER BANK itself in performing the POWER BANK's functions?

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 17:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Belkin further objects to the Interrogatory on the grounds that it is argumentative in basing the Interrogatory on the implied assumption that Belkin had an obligation to publish such a statement. Subject to those objections, Belkin makes no statements on the amount of energy stored in the product's lithium polymer battery cells used by the power bank's circuitry because that amount depends on multiple variable factors as discussed above in Response to Interrogatory No. 1.

**AMENDED SPECIAL INTERROGATORY NO. 18:**

With respect to each POWER BANK, where on the packaging or in the manual or spec sheet does Belkin disclose the OUTPUT ENERGY?

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 18:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Belkin further objects to the Interrogatory on the grounds that it is argumentative in basing the Interrogatory on the implied assumption that Belkin had an obligation to publish such a statement. Subject to those

objections, it is impossible to know or describe the OUTPUT ENERGY any particular consumer will receive because of the multiple variables that will affect the amount of OUTPUT ENERGY including the operation of the consumer's device that is being charged. As a result, the package for F7U020 provides an example of the OUTPUT ENERGY the product can provide by stating that the product can charge an iPhone 7 "up to 3 times" under a certain specified circumstance.

**AMENDED SPECIAL INTERROGATORY NO. 19:**

How can a reasonable consumer compute, based on the CHARGING STATEMENTS and/or the STATED CAPACITY, what a POWER BANK's true OUTPUT ENERGY is?

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 19:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Belkin further objects to this Interrogatory on the grounds it is argumentative by assuming that a reasonable consumer would want to make such a computation as opposed to knowing how many times she might be able to charge her phone on a single charge. Subject to those objections and the further objection that "true OUTPUT ENERGY" is argumentative and vague and ambiguous by suggesting there is one such figure when that is scientifically impossible, Belkin responds as follows: Neither a hypothetical reasonable consumer nor an electrical engineer can determine the OUTPUT ENERGY by knowing the amount of energy that can be stored by a power bank's lithium polymer battery cells and/or by having an approximation of the amount of charge that can be provided by the power bank in a particular circumstance.

**AMENDED SPECIAL INTERROGATORY NO. 20:**

Identify all statements on websites, packaging, labels and in advertisements (television, print and online) that explain the POWER BANK itself will consume a portion of the energy stored in the internal battery cells.

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 20:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Subject to those objections, Belkin publishes no statements explaining the electrical engineering operation of the internal circuitry of the F7U020.

/ / /

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

14

**AMENDED SPECIAL INTERROGATORY NO. 21:**

Identify all statements on packaging and labels that explain the POWER BANK itself will consume a portion of the energy stored in the internal battery cells.

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 21:**

This Interrogatory is duplicative of Amended Special Interrogatory No. 20. Please see the response to Amended Special Interrogatory No. 20 above.

**AMENDED SPECIAL INTERROGATORY NO. 22:**

Identify all statements in advertisements (television, print and online) that explain the POWER BANK itself will consume a portion of the energy stored in the internal battery cells.

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 22:**

This Interrogatory is duplicative of Amended Special Interrogatory No. 20. Please see the response to Amended Special Interrogatory No. 20 above.

**AMENDED SPECIAL INTERROGATORY NO. 23:**

Pl.'s Ex. 004 shows a CHARGING STATEMENT that REFERS to "the iPhone 7 (running iOS 10)." Why did Belkin use this model of phone for the basis of its statement?



15

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

1  **RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 23:**

2       Belkin is informed and believes that the iPhone 7 was one of the latest phone models in the

3  market during the period in which F7U020 was being developed by Belkin.

4  **AMENDED SPECIAL INTERROGATORY NO. 24:**

5       Other than the iPhone 7, what other portable electronic devices have been REFERRED to in

6  POWER BANK CHARGING STATEMENTS? Please indicate which POWER BANKS had

7  CHARGING STATEMENTS related to each portable electronic device.

8  **RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 24**

9       Belkin incorporates herein the objections stated in Response to Interrogatory No. 1.

10  **AMENDED SPECIAL INTERROGATORY NO. 25:**

11       Did Belkin, or an agent of Belkin, ever run any product test to support its CHARGING

12  STATEMENTS? If so, state the date of the test, the names of all PERSONS designing or running the

13  test, the POWER BANK and the device charged or discharged used in the test, and the results.

14  **RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 25:**

15       Belkin incorporates herein the objections stated in Response to Interrogatory No. 1.  Subject to

16  those objections, the statement on F7U020 that it "Charges iPhone 7 (running IOS 10) up to 3 times on a

17  single charge" is supported by the rated capacity for its lithium polymer battery cells contained in the

18  test reports provided by Intertek Testing Services Taiwan Ltd. dated May 3, 2017.

19  **AMENDED SPECIAL INTERROGATORY NO. 26:**

20       Who specifically inside Belkin made the decision to print the CHARGING STATEMENTS on

21  websites, packaging, labels and in advertisements (television, print and online)?

22  **RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 26:**

23       Belkin incorporates herein the objections stated in Response to Interrogatory No. 1.  Subject to

24  those objections, published statements on the characteristics of Belkin products are approved by

25  Belkin's Global Product Management department.  The head of Global Product Management at the time

26  published statements for F7U020 would have been approved was Fred Gransee.

27  / / /

28  / / /

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

16

BELKIN'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF INTERROGATORIES
Case No. 20STCV00033

1    **AMENDED SPECIAL INTERROGATORY NO. 27:**

2         Who specifically inside Belkin made the decision to print the STATED CAPACITY on websites,

3   packaging, labels and in advertisements (television, print and online)?

4    **RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 27:**

5         Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Subject to

6   those objections, published statements on the characteristics of Belkin products are approved by

7   Belkin's Global Product Management department. The head of Global Product Management at the time

8   published statements for F7U020 would have been approved was Fred Gransee.

9    **AMENDED SPECIAL INTERROGATORY NO. 28:**

10        Which departments or offices inside Belkin are responsible for the accuracy and truth of

11   CHARGING STATEMENTS on websites, packaging, labels and in advertisements (television, print and

12   online)?

13    **RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 28:**

14        Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Subject to

15   those objections, published statements on the characteristics of Belkin products are approved by

16   Belkin's Global Product Management department. The head of Global Product Management at the time

17   published statements for F7U020 would have been approved was Fred Gransee.

18    **AMENDED SPECIAL INTERROGATORY NO. 29:**

19        Which departments or offices inside Belkin are responsible for the accuracy and truth of

20   STATED CAPACITY on websites, packaging, labels and in advertisements (television, print and

21   online)?

22    **RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 29:**

23        Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Subject to

24   those objections, published statements on the characteristics of Belkin products are approved by

25   Belkin's Global Product Management department. The head of Global Product Management at the time

26   published statements for F7U020 would have been approved was Fred Gransee.

27   / / /

28   / / /

**AMENDED SPECIAL INTERROGATORY NO. 30:**

Describe all DOCUMENTS, including test results, industry standards, or other evidentiary support Belkin relies on for the basis of the CHARGING STATEMENTS.

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 30:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Subject to those objections, the statement on F7U020 that it "Charges iPhone 7 (running IOS 10) up to 3 times on a single charge" is supported by the rated capacity for its lithium polymer battery cells contained in the test reports provided by Intertek Testing Services Taiwan Ltd. dated May 3, 2017.

**AMENDED SPECIAL INTERROGATORY NO. 31:**

Describe all DOCUMENTS, including test results, industry standards, or other evidentiary support Belkin relies on for the basis of the STATED CAPACITY.

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 31:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Subject to those objections, Belkin relies on the specification provided by the manufacturer of the lithium battery cell (Shenzhen DBK Electronics) entitled "Li-ion polymer battery specification" bearing a date of March 17, 2017.

/ / /

/ / /

/ / /

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

BELKIN'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF INTERROGATORIES
Case No. 20STCV00033

**AMENDED SPECIAL INTERROGATORY NO. 32:**

In Pl.'s Ex. 003, the packaging says "Pocket Power 10K." Who specifically inside Belkin decided on the name "Pocket Power 10k"?



Mikey v. Belkin - Pl.'s Ex. 003

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 32:**

The Global Product Management department in conjunction with Belkin's Marketing team decided on the name of F7U020. Belkin does not have any information at this time on who specifically decided on that name although Fred Gransee was the head of Global Product Management at the time of the release of F7U020 and would have had to approve that name.

Date: January 27, 2021

Respectfully submitted,
SULLIVAN & TRIGGS, LLP

By: _Sheldon Eisenberg_
           Sheldon Eisenberg
           Erin E. McCracken

Attorneys for Defendant
BELKIN INTERNATIONAL, INC.

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

BELKIN'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF INTERROGATORIES
Case No. 20STCV00033

**VERIFICATION**

I, Norbert von Boode, declare:

I have read the foregoing **DEFENDANT BELKIN INTERNATIONAL, INC.'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF INTERROGATORIES** and know its contents. I am informed and believe that the matters therein stated are true and, on that ground, allege that the matters stated therein are true.

I am the Senior Product Manager for Belkin International, Inc. party to this action. I am authorized to make this verification for and on its behalf, and I make this verification for that reason.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 27, 2021, at Los Angeles, California.

Norbert von Boode

BELKIN'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF INTERROGATORIES
Case No. 20STCV00033

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Sullivan & Triggs LLP, 1230 Montana Avenue, Suite 201, Santa Monica, California 90403.

On **January 27, 2021**, I served the foregoing document described as:  **DEFENDANT BELKIN INTERNATIONAL, INC.'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF INTERROGATORIES** on the interested parties in this action as follows:

___X___ **By ELECTRONIC SERVICE** (I electronically served a true and correct copy of the foregoing document using the CASE ANYWHERE System which will send notification of such submission to counsel of record indicated on the attached service list.)

_____ **By PERSONAL SERVICE**

_____ by personally delivering such envelope to the addressee.

_____ by causing such envelope to be delivered by messenger to the office of the addressee.

_____ **By UNITED STATES MAIL** (I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.)

_____ **By OVERNIGHT DELIVERY** (by causing such envelope to be delivered to the office of the addressee by overnight delivery via Federal Express or by other similar overnight delivery service.)

___X___ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **January 27, 2021**, at Santa Monica, California.

_____Shella Anderson_____        _____*Shella Anderson*_____
Name                                                          Signature

---

BELKIN'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF INTERROGATORIES
Case No. 20STCV00033

SULLIVAN & TRIGGS, LLP
Attorneys at Law
Santa Monica

Service List

| | |
|---|---|
| Nathan M. Smith (Ca. Bar No. 255212)<br>Nona Yegazarian (Ca. Bar No. 316458)<br>**BROWN NERI SMITH & KHAN LLP**<br>11601 Wilshire Boulevard, Suite 2080<br>Los Angeles, California 90025<br>Phone: 310-593-9890<br>Fax: 310-593-9980<br>Email: nate@bnsklaw.com<br>Email: nona@bnsklaw.com<br><br>D. Greg Blankinship<br>**FINKELSTEIN, BLANKINSHIP,<br>　FREI-PEARSON & GARBER, LLP**<br>445 Hamilton Ave, Suite 605<br>White Plains, NY 10601<br>Phone: 914-298-3290<br>Email: gblankinship@fbfglaw.com<br><br>William F. Cash<br>Matthew D. Schultz<br>Brenton J. Goodman<br>**LEVIN, PAPANTONIO, THOMAS,<br>　MITCHELL, RAFFERTY &<br>PROCTOR, P.A.**<br>316 South Baylen Street, Suite 600<br>Pensacola, FL 32502<br>Phone: 850-435-7059<br>Fax: 850-435-7020<br>Email: bcash@levinlaw.com<br>Email: mschultz@levinlaw.com<br>Email: bgoodman@levinlaw.com | Attorneys for Plaintiff Lenore Miley |

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

1   SHELDON EISENBERG (SBN 100626)
    seisenberg@sullivantriggs.com
2   ERIN E. McCRACKEN (SBN 244523)
    emccracken@sullivantriggs.com
3   Sullivan & Triggs, LLP
    1230 Montana Avenue, Suite 201
4   Santa Monica, California 90403
    Telephone:     (310) 451-8300
5   Facsimile:       (310) 451-8303

6   Attorneys for Defendant
    BELKIN INTERNATIONAL, INC.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| LENORE MILEY, individually and on behalf of all others similarly situated, | Case No.: 20STCV00033 |
|                       Plaintiff, | **DEFENDANT BELKIN INTERNATIONAL, INC.'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF REQUESTS FOR ADMISSIONS** |
|     v. | |
| BELKIN INTERNATIONAL, INC., | |
|                  Defendant. | Judge: Hon. Carolyn B. Kuhl |
| | Dept.: 12 |
| | Complaint Filed: January 2, 2020 |

**Propounding Party:**       Lenore Miley

**Responding Party:**       Belkin International, Inc.

**Set No.:**               One -- Amended

        Pursuant to California Code of Civil Procedure § 2033.220, Belkin International, Inc.

("Defendant") hereby responds to Plaintiff's Amended First Set of Requests for Admission.

## **PREFATORY STATEMENT**

        These responses, while based on the diligent search and efforts by Defendant and its counsel,

reflect only the current state of Defendant's knowledge, understanding, and belief relating to the matters

about which inquiry has been made. Discovery and investigation are continuing. Defendant has not yet

completed his investigation of the facts relating to this action and may discover facts, information,

1

evidence, documents and things that are not set forth in these responses but which may be responsive. Accordingly, these responses are neither intended as, nor should in any way be deemed, an admission or representation that further information or documents do not exist. Defendant anticipates that as this action proceeds, further information or documents may be discovered and, without in any way obligating itself to do so, Defendant reserves the right to modify or supplement these responses, or to produce documents based on subsequently discovered matters.

## RESPONSES TO AMENDED REQUESTS TO ADMISSIONS

**AMENDED REQUEST NO. 1:**

Admit that Pl.'s Ex. 001-002 appear to be photos of a POWER BANK, specifically, the Pocket Power 10000 model.

**RESPONSE TO AMENDED REQUEST NO. 1:**

Admitted.

**AMENDED REQUEST NO. 2:**

Admit that Pl.'s Ex. 003-004 appear to be photos of the packaging that was shipped with the Pocket Power 10000 model.

**RESPONSE TO AMENDED REQUEST NO. 2:**

Admitted.

**AMENDED REQUEST NO. 3:**

Admit that Pl.'s Ex. 005-014 and 020-029 are copies of websites that Belkin has published.

**RESPONSE TO AMENDED REQUEST NO. 3:**

Admitted that the referenced exhibits appear to pages from websites that Belkin has published.

**AMENDED REQUEST NO. 4:**

Admit that Pl.'s Ex. 015-016 are a copy of the letter Deputy General Counsel Anilisa Lunger, on behalf of Belkin, sent to Plaintiff's Counsel on August 5, 2019 regarding Plaintiff's "Notice and Demand for Corrective Action Dated June 7. 2019."

**RESPONSE TO AMENDED REQUEST NO. 4:**

Admitted.

/ / /

SULLIVAN & TRIGGS, LLP
Attorneys at Law
Santa Monica

2

**AMENDED REQUEST NO. 5:**

Admit that Pl.'s Ex. 017-019 are a copy of the letter received by Belkin from Plaintiff's counsel regarding "Notice and Demand for Corrective Action under Applicable Laws."

**RESPONSE TO AMENDED REQUEST NO. 5:**

Admitted.

**AMENDED REQUEST NO. 6:**

Admit that, taking into account the variation in sizes, the STATED CAPACITY numbers seen in Pl.'s Ex. 003 and 004 are given in the same manner on all other POWER BANK models.

**RESPONSE TO AMENDED REQUEST NO. 6:**

Belkin objects to this Request to the extent it asks Belkin to respond with respect to "all other Power Bank models" sold by Belkin. Based on the information collected by Belkin to date, it has sold 27 different "Power Banks." However, according to the allegations of the Complaint, Plaintiff purchased only one such product, and Plaintiff therefore does not have standing to pursue claims with respect to the 26 products she did not purchase. As a result, the detailed discovery Plaintiff seeks on products that she did not purchase, and which therefore could not have caused her any loss or injury, is not itself admissible in evidence and does not appear to be reasonably calculated to lead to the discovery of admissible evidence on her individual claim. Moreover, "a proposed class representative may not seek to represent a class claim arising out of products she herself never purchased." See e.g., *Route v. Mead Johnson Nutrition Co*., 2013 WL 658251 at *3 (C.D. Cal. Feb. 13, 2013). In any event, because the pending summary judgment motion is directed towards only Plaintiff's individual claim, products that are not and cannot be the basis of Plaintiff's claim are not relevant to Belkin's defenses to that claim.

Belkin further objects to this Request to the extent it would require Belkin to provide a response based on matters relating to 27 different products on the grounds that is unreasonably overbroad and unduly burdensome in the context of the allegations of the Complaint and the matters at issue.

In addition, Belkin objects to Plaintiff's definition of STATED CAPACITY on the grounds that it is vague, ambiguous, and argumentative by defining that phrase to suggest that Belkin uses its description of a product's "mAh" (milliampere hours) as a "representation" of a "measure" of capacity

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

3

BELKIN'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF REQ. FOR ADMISSION
Case No. 20STCV00033

as opposed to a statement of the product's physical properties. Belkin also objects to the phrase "in the same manner" on the grounds that it is vague and ambiguous.

Subject to these objections, Belkin responds as follows:

Belkin admits because the OUTPUT ENERGY of a power bank such as the F7U020 cannot be known or described with any specificity in the abstract, the general industry practice of which Belkin is aware (and in which it participates) is to identify the size of a power bank by the amount of energy that can be stored in the power bank's lithium polymer battery cells. Except as expressly admitted herein, the Request is denied.

**AMENDED REQUEST NO. 7:**

Admit that, other than the type of portable electronic device or actual numbers used, the CHARGING STATEMENTS seen in Pl.'s Ex. 003-004, 025 and 028 are similar to CHARGING STATEMENTS made for other POWER BANKS.

**RESPONSE TO AMENDED REQUEST NO. 7:**

Belkin incorporates herein the objections stated, to the extent applicable, in Response to Amended Request No. 9. Belkin further objects to this Request on the grounds that "are similar to" is vague and ambiguous and makes it impossible to provide an admission or denial.

**AMENDED REQUEST NO. 8:**

Admit that OUTPUT ENERGY is not equal to STATED CAPACITY.

**RESPONSE TO AMENDED REQUEST NO. 8:**

Belkin objects to Plaintiff's definition of STATED CAPACITY on the grounds that it is vague, ambiguous, and argumentative by defining that phrase to suggest that Belkin uses its description of a product's "mAh" (milliampere hours) as a "representation" of a "measure" of capacity as opposed to a statement of the product's physical properties. Based on Belkin's objections set forth in Response to Amended Request No. 6, Belkin construes this Request as requiring a response with respect to F7U020.

Subject to these objections, Belkin admits that the reference to 10,000 mAh on the package of F7U020 means the amount of energy that can be stored in the Power Bank's lithium polymer battery cells. Belkin further admits that the amount of OUTPUT ENERGY, as defined by Plaintiff, provided by the F7U020 is unknowable in the abstract since it is dependent on multiple variables including, but

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

4

BELKIN'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF REQ. FOR ADMISSION
Case No. 20STCV00033

not limited to, the nature of the portable electronic devices that are being charged, the age of the batteries in those portable devices, the cables being used to connect the devices during charging, the temperature of the environment in which the F7U020 is being used, and the age and amount of usage of the F7U020.    Belkin further admits that as a general matter and subject to the multiple variables described above, a power bank such as F7U020 can output approximately 80% of its stored energy.

**AMENDED REQUEST NO. 9:**

Admit that Belkin does not state the OUTPUT ENERGY on any Pocket Power 10K packaging.

**RESPONSE TO AMENDED REQUEST NO. 9:**

Subject to the objections set forth in Response to Amended Request No. 6, Belkin admits that because the OUTPUT ENERGY of a power bank such as the F7U020 cannot be known or described with any specificity in the abstract, the package for F7U020 provides an example of the OUTPUT ENERGY the product can provide by stating that the product can charge an iPhone 7 "up to 3 times" under a certain specified circumstance.  Except as expressly admitted herein, the Request is denied.

**AMENDED REQUEST NO. 10:**

Admit that Belkin does not state the OUTPUT ENERGY on any Pocket Power 10K label.

**RESPONSE TO AMENDED REQUEST NO. 10:**

Subject to the objections set forth in Response to Amended Request No. 6, Belkin admits that because the OUTPUT ENERGY of a power bank such as the F7U020 cannot be known or described with any specificity in the abstract, Belkin's published statements regarding F7U020 provide an example of the OUTPUT ENERGY the product can provide by stating that the product can charge an iPhone 7 "up to 3 times" under a certain specified circumstance.  Except as expressly admitted herein, the Request is denied.

**AMENDED REQUEST NO. 11:**

Admit that Belkin does not state the OUTPUT ENERGY on any Pocket Power 10K advertising.

**RESPONSE TO AMENDED REQUEST NO. 11:**

Subject to the objections set forth in Response to Amended Request No. 6, Belkin admits that because the OUTPUT ENERGY of a power bank such as the F7U020 cannot be known or described with any specificity in the abstract, Belkin's published statements regarding F7U020 provide an example

of the OUTPUT ENERGY the product can provide by stating that the product can charge an iPhone 7 "up to 3 times" under a certain specified circumstance. Except as expressly admitted herein, the Request is denied.

**AMENDED REQUEST NO. 12:**

Admit that Belkin does not state the OUTPUT ENERGY on any POWER BANK's packaging.

**RESPONSE TO AMENDED REQUEST NO. 12:**

Subject to the objections set forth in Response to Amended Request No. 6, Belkin admits that because the OUTPUT ENERGY of a power bank such as the F7U020 cannot be known or described with any specificity in the abstract, Belkin's published statements regarding F7U020 provide an example of the OUTPUT ENERGY the product can provide by stating that the product can charge an iPhone 7 "up to 3 times" under a certain specified circumstance. Except as expressly admitted herein, the Request is denied.

**AMENDED REQUEST NO. 13:**

Admit that Belkin does not state the OUTPUT ENERGY on any POWER BANK's labels.

**RESPONSE TO AMENDED REQUEST NO. 13:**

Subject to the objections set forth in Response to Amended Request No. 6, Belkin admits that because the OUTPUT ENERGY of a power bank such as the F7U020 cannot be known or described with any specificity in the abstract, Belkin's published statements regarding F7U020 provide an example of the OUTPUT ENERGY the product can provide by stating that the product can charge an iPhone 7 "up to 3 times" under a certain specified circumstance. Except as expressly admitted herein, the Request is denied.

**AMENDED REQUEST NO. 14:**

Admit that Belkin does not state the OUTPUT ENERGY on any POWER BANK's advertisements.

**RESPONSE TO AMENDED REQUEST NO. 14:**

Subject to the objections set forth in Response to Amended Request No. 6, Belkin admits that because the OUTPUT ENERGY of a power bank such as the F7U020 cannot be known or described with any specificity in the abstract, Belkin's published statements regarding F7U020 provide an example

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

of the OUTPUT ENERGY the product can provide by stating that the product can charge an iPhone 7 "up to 3 times" under a certain specified circumstance. Except as expressly admitted herein, the Request is denied.

**AMENDED REQUEST NO. 15:**

Admit that if a consumer expects to withdraw 10,000 mAh from a POWER BANK with a "10,000 mAh" STATED CAPACITY, that POWER BANK's package does not tell the consumer this is impossible.

**RESPONSE TO AMENDED REQUEST NO. 15:**

Belkin objects to the definition of STATED CAPACITY for the reasons set forth in Response to Amended Request No. 6. Belkin also objects to this Request on the grounds that it posits a hypothetical situation without factual foundation and requires Belkin to speculate. Belkin further objects on the grounds that the language on the packaging of F7U020 is not in dispute, speaks for itself, and the Request is argumentative.

**AMENDED REQUEST NO. 16:**

Admit that nowhere on a POWER BANK's packaging does it say that the STATED CAPACITY is higher than the available OUTPUT ENERGY.

**RESPONSE TO AMENDED REQUEST NO. 16:**

Belkin objects to the definition of STATED CAPACITY for the reasons set forth in Response to Amended Request No. 6. Belkin also objects to this Request on the grounds that the language on the packaging of F7U020 is not in dispute, speaks for itself, and the Request is argumentative.

Date: January 27, 2021

Respectfully submitted,
SULLIVAN & TRIGGS, LLP

By: _____
Sheldon Eisenberg
Erin E. McCracken

Attorneys for Defendant
BELKIN INTERNATIONAL, INC.

**VERIFICATION**

I, Norbert von Boode, declare:

I have read the foregoing **DEFENDANT BELKIN INTERNATIONAL, INC.'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF REQUESTS FOR ADMISSIONS** and know its contents. I am informed and believe that the matters therein stated are true and, on that ground, allege that the matters stated therein are true.

I am the Senior Product Manager for Belkin International, Inc. party to this action. I am authorized to make this verification for and on its behalf, and I make this verification for that reason.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 27, 2021, at Los Angeles, California.

_____
Norbert von Boode

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

## **PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

      I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Sullivan & Triggs LLP, 1230 Montana Avenue, Suite 201, Santa Monica, California 90403.

      On **January 27, 2021**, I served the foregoing document described as: **DEFENDANT BELKIN INTERNATIONAL, INC.'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF REQUESTS FOR ADMISSIONS** on the interested parties in this action as follows:

  X    **By ELECTRONIC SERVICE** (I electronically served a true and correct copy of the foregoing document using the CASE ANYWHERE System which will send notification of such submission to counsel of record indicated on the attached service list.)

\_\_\_\_  **By PERSONAL SERVICE**

    \_\_\_\_  by personally delivering such envelope to the addressee.

    \_\_\_\_  by causing such envelope to be delivered by messenger to the office of the addressee.

\_\_\_\_  **By UNITED STATES MAIL** (I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.)

\_\_\_\_  **By OVERNIGHT DELIVERY** (by causing such envelope to be delivered to the office of the addressee by overnight delivery via Federal Express or by other similar overnight delivery service.)

  X    (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

\_\_\_\_  (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

      Executed on **January 27, 2021**, at Santa Monica, California.

_____Shella Anderson_____      *Shella Anderson*
Name                        Signature

9

SULLIVAN & TRIGGS, LLP
Attorneys at Law
Santa Monica

Service List

| | |
|---|---|
| Nathan M. Smith (Ca. Bar No. 255212)<br>Nona Yegazarian (Ca. Bar No. 316458)<br>**BROWN NERI SMITH & KHAN LLP**<br>11601 Wilshire Boulevard, Suite 2080<br>Los Angeles, California 90025<br>Phone: 310-593-9890<br>Fax: 310-593-9980<br>Email: nate@bnsklaw.com<br>Email: nona@bnsklaw.com<br><br>D. Greg Blankinship<br>**FINKELSTEIN, BLANKINSHIP,<br>  FREI-PEARSON & GARBER, LLP**<br>445 Hamilton Ave, Suite 605<br>White Plains, NY 10601<br>Phone: 914-298-3290<br>Email: gblankinship@fbfglaw.com<br><br>William F. Cash<br>Matthew D. Schultz<br>Brenton J. Goodman<br>**LEVIN, PAPANTONIO, THOMAS,<br>  MITCHELL, RAFFERTY &<br>PROCTOR, P.A.**<br>316 South Baylen Street, Suite 600<br>Pensacola, FL 32502<br>Phone: 850-435-7059<br>Fax: 850-435-7020<br>Email: bcash@levinlaw.com<br>Email: mschultz@levinlaw.com<br>Email: bgoodman@levinlaw.com | Attorneys for Plaintiff Lenore Miley |

BELKIN'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF REQ. FOR ADMISSION
Case No. 20STCV00033

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

1 | SHELDON EISENBERG (SBN 100626)
seisenberg@sullivantriggs.com
2 | ERIN E. McCRACKEN (SBN 244523)
emccracken@sullivantriggs.com
3 | Sullivan & Triggs, LLP
1230 Montana Avenue, Suite 201
4 | Santa Monica, California 90403
Telephone:     (310) 451-8300
5 | Facsimile:     (310) 451-8303

6 | Attorneys for Defendant
BELKIN INTERNATIONAL, INC.

7

8

9 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10 | **COUNTY OF LOS ANGELES**

11

| | |
|---|---|
| 12 | LENORE MILEY, individually and on behalf of all others similarly situated,  ) Case No.: 20STCV00033 |

LENORE MILEY, individually and on behalf of all others similarly situated, )

Case No.: 20STCV00033

Plaintiff, )

**DEFENDANT BELKIN INTERNATIONAL, INC.'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

v. )

BELKIN INTERNATIONAL, INC., )

Defendant. )

Judge: Hon. Carolyn B. Kuhl
Dept.: 12

Complaint Filed: January 2, 2020

19 | **Propounding Party:**      Lenore Miley

20 | **Responding Party:**      Belkin International, Inc.

21 | **Set No.:**                        One -- Amended

22 |         Pursuant to California Code of Civil Procedure § 2031.210, Belkin International, Inc.

23 | ("Defendant") hereby responds to Plaintiff's Amended First Set of Requests for Production of

24 | Documents.

25 | **PREFATORY STATEMENT**

26 |         These responses, while based on the diligent search and efforts by Defendant and its counsel,

27 | reflect only the current state of Defendant's knowledge, understanding, and belief relating to the matters

28 | about which inquiry has been made.  Discovery and investigation are continuing.  Defendant has not yet

1

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

BELKIN'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCS
Case No. 20STCV00033

completed its investigation of the facts relating to this action and may discover facts, information, evidence, documents and things that are not set forth in these responses but which may be responsive. Accordingly, these responses are neither intended as, nor should in any way be deemed, an admission or representation that further information or documents do not exist. Defendant anticipates that as this action proceeds, further information or documents may be discovered and, without in any way obligating itself to do so, Defendant reserves the right to modify or supplement these responses, or to produce documents based on subsequently discovered matters.

## RESPONSES TO AMENDED REQUESTS

**AMENDED REQUEST NO. 1:**

  Organizational charts that identify the Belkin departments and employees who have responsibility for labeling, marketing, designing, testing, and manufacturing POWER BANKS.

**RESPONSE TO AMENDED REQUEST NO. 1:**

  Without waiving any objections on the purported scope of Plaintiff's First Set of Requests for Production of Documents, Belkin will produce organizational charts sufficient to identify the Belkin departments and employees who have responsibility for, to the extent applicable, labeling, marketing, designing, testing, and manufacturing Belkin power bank products.

**AMENDED REQUEST NO. 2:**

  DOCUMENTS sufficient to establish the name, stock-keeping unit, and product characteristics of each POWER BANK.

**RESPONSE TO AMENDED REQUEST NO. 2:**

  Belkin objects to this Request to the extent it appears to ask Belkin to produce documents relating to "each" "Power Bank" sold by Belkin. Based on the information collected by Belkin to date, it has sold 27 different "Power Banks." However, according to the allegations of the Complaint, Plaintiff purchased only one such product, and Plaintiff therefore does not have standing to pursue claims with respect to the 26 products she did not purchase. As a result, the detailed discovery Plaintiff seeks on products that she did not purchase, and which therefore could not have caused her any loss or injury, is not itself admissible in evidence and does not appear to be reasonably calculated to lead to the discovery of admissible evidence on her individual claim. Moreover, "a proposed class representative

2

1  may not seek to represent a class claim arising out of products she herself never purchased." See e.g.,

2  *Route v. Mead Johnson Nutrition Co.*, 2013 WL 658251 at *3 (C.D. Cal. Feb. 13, 2013). In any event,

3  because the pending summary judgment motion is directed towards only Plaintiff's individual claim,

4  products that are not and cannot be the basis of Plaintiff's claim are not relevant to Belkin's defenses to

5  that claim.

6       Belkin further objects to the Request on the grounds that requiring Belkin to produce materials

7  relating to the characteristics of 26 different products not properly at issue in this case given the

8  allegations of the Complaint is unreasonably overbroad and unduly burdensome.

9       Subject to these objections, Belkin will produce the requested documents in its possession,

10  custody, and control with respect to the power bank product allegedly purchased by Plaintiff based on

11  the allegations of the Complaint and the images reproduced therein (hereinafter referred to as

12  "F7U020"—the product's stock-keeping unit number).

13  **AMENDED REQUEST NO. 3:**

14       Results of all tests performed that substantiate the CHARGING STATEMENTS.

15  **RESPONSE TO AMENDED REQUEST NO. 3:**

16       Belkin incorporates by this reference the objections set forth in its Response to Request No. 2.

17  Belkin further objects to this Request on the grounds that the defined term "CHARGING

18  STATEMENTS" is vague and ambiguous to extent that definition incorporates the clause "how the

19  POWER BANK charge can affect the portable electronic device's charge." Belkin also objects to the

20  extent it purports to require the production of test results that support the "Charging Statements" that are

21  not in the possession, custody, or control of Belkin.

22       Subject to these objections, Belkin will produce reports of tests performed by Belkin with respect

23  to F7U020 that are in its possession, custody, or control.

24  **AMENDED REQUEST NO. 4:**

25       All DOCUMENTS concerning tests performed that substantiate the CHARGING

26  STATEMENTS, such as correspondence of emails stating that tests should be performed.

27  / / /

28  / / /

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

**RESPONSE TO AMENDED REQUEST NO. 4:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. Belkin further objects to this Request on the grounds that the defined term "CHARGING STATEMENTS" is vague and ambiguous to extent that definition incorporates the clause "how the POWER BANK charge can affect the portable electronic device's charge." Belkin also objects to the extent it purports to require the production of documents that support the "Charging Statements" that are not in the possession, custody, or control of Belkin.

Subject to these objections, Belkin will produce any such documents with respect to F7U020 that are in its possession, custody, or control.

**AMENDED REQUEST NO. 5:**

All tests performed that measure the OUTPUT ENERGY of any POWER BANK.

**RESPONSE TO AMENDED REQUEST NO. 5:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. Belkin further objects to this Request on the grounds that the defined term "OUTPUT ENERGY" is vague and ambiguous to extent that definition uses the phrase "that a portable electronic device can withdraw from a fully charged POWER BANK." Belkin also objects to the extent it purports to require the production of test results that are not in the possession, custody, or control of Belkin.

Subject to these objections, Belkin will produce reports of tests performed by Belkin with respect to F7U020 that are in its possession, custody, or control.

**AMENDED REQUEST NO. 6:**

All DOCUMENTS concerning tests performed that measure the OUTPUT ENERGY of any POWER BANK.

**RESPONSE TO AMENDED REQUEST NO. 6:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. Belkin further objects to this Request on the grounds that the defined term "OUTPUT ENERGY" is vague and ambiguous to extent that definition uses the phrase "that a portable electronic device can withdraw from a fully charged POWER BANK." Belkin also objects to the extent it purports to require the production of documents that are not in the possession, custody, or control of Belkin.

4

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

BELKIN'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCS
Case No. 20STCV00033

Subject to these objections, Belkin will produce any such documents with respect to F7U020 that are in its possession, custody, or control.

**AMENDED REQUEST NO. 7:**

All DOCUMENTS showing that Belkin relied on any industry standards, trade association recommendations, competitors' trade practices, or similar factors outside of Belkin, when Belkin determined to publish a POWER BANK's STATED CAPACITY, rather than its OUTPUT ENERGY, on websites, product packaging, labels and in advertisements (television, print and online).

**RESPONSE TO AMENDED REQUEST NO. 7:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. In addition, Belkin objects to the definition of STATED CAPACITY on the grounds that it is vague, ambiguous, and argumentative by defining that phrase to suggest that Belkin uses its description of a product's "mAh" (milliampere hours) as a "representation" of a "measure" of capacity as opposed to a statement of the product's physical properties. Belkin further objects to the Request on the grounds that it assumes there are "industry standards" on these issues and that Belkin had an obligation to publish information on the amount of energy that F7U020 could deliver to a particular portable electronic device. Belkin also objects to the Request to the extent it seeks documents that are privileged from discovery by the attorney-client privilege or attorney work product doctrine. Subject to those objections, because the OUTPUT ENERGY of a power bank such as the F7U020 cannot be known or described with any specificity in the abstract, the general industry practice of which Belkin is aware is to identify the size of a powers bank by the amount of energy that can be stored in the power bank's lithium polymer battery cells. That is a figure that remains constant notwithstanding the multiple variables that impact the OUTPUT ENERGY. In addition, the International Air Transport Association ("IATA") publishes guidelines on the labeling of, among other things, power banks using lithium battery cells. Other than the IATA guidelines, which are equally available to Plaintiff on the IATA website, Belkin is not presently aware of any non-privileged documents in its possession, custody, or control that are responsive to this Request.

**AMENDED REQUEST NO. 8:**

All DOCUMENTS showing that Belkin relied on any industry standards, trade association

SULLIVAN & TRIGGS, LLP
Attorneys at Law
Santa Monica

1  recommendations, competitors' trade practices, or similar factors outside of Belkin, when Belkin

2  determined to publish a POWER BANK's STATED CAPACITY, rather than its OUTPUT ENERGY,

3  on product packaging and labels.

4  **RESPONSE TO AMENDED REQUEST NO. 8:**

5       Belkin incorporates by this reference the objections set forth in its Response to Request No. 2.

6  In addition, Belkin objects to the definition of STATED CAPACITY on the grounds that it is vague,

7  ambiguous, and argumentative by defining that phrase to suggest that Belkin uses its description of a

8  product's "mAh" (milliampere hours) as a "representation" of a "measure" of capacity as opposed to a

9  statement of the product's physical properties.  Belkin further objects to the Request on the grounds that

10  it assumes there are "industry standards" on these issues and that Belkin had an obligation to publish

11  information on the amount of energy that F7U020 could deliver to a particular portable electronic

12  device. Belkin also objects to the Request to the extent it seeks documents that are privileged from

13  discovery by the attorney-client privilege or attorney work product doctrine.   Subject to those

14  objections, because the OUTPUT ENERGY of a power bank such as the F7U020 cannot be known or

15  described with any specificity in the abstract, the general industry practice of which Belkin is aware is to

16  identify the size of a powers bank by the amount of energy that can be stored in the power bank's

17  lithium polymer battery cells.  That is a figure that remains constant notwithstanding the multiple

18  variables that impact the OUTPUT ENERGY.  In addition, the International Air Transport Association

19  ("IATA") publishes guidelines on the labeling of, among other things, power banks using lithium battery

20  cells.   Other than the IATA guidelines, which are equally available to Plaintiff on the IATA website,

21  Belkin is not presently aware of any non-privileged documents in its possession, custody, or control that

22  are responsive to this Request.

23  **AMENDED REQUEST NO. 9:**

24       All DOCUMENTS showing that Belkin relied on any industry standards, trade association

25  recommendations, competitors' trade practices, or similar factors outside of Belkin, when Belkin

26  determined to publish a POWER BANK's STATED CAPACITY, rather than its OUTPUT ENERGY,

27  in advertisements (television, print and online).

28  / / /

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

BELKIN'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCS
Case No. 20STCV00033

**RESPONSE TO AMENDED REQUEST NO. 9:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. In addition, Belkin objects to the definition of STATED CAPACITY on the grounds that it is vague, ambiguous, and argumentative by defining that phrase to suggest that Belkin uses its description of a product's "mAh" (milliampere hours) as a "representation" of a "measure" of capacity as opposed to a statement of the product's physical properties. Belkin further objects to the Interrogatory on the grounds that it assumes there are "industry standards" on these issues and that Belkin had an obligation to publish information on the amount of energy that F7U020 could deliver to a particular portable electronic device. Belkin also objects to the Request to the extent it seeks documents that are privileged from discovery by the attorney-client privilege or attorney work product doctrine. Subject to those objections, because the OUTPUT ENERGY of a pow er bank such as the F7U020 cannot be known or described with any specificity in the abstract, the general industry practice of which Belkin is aware is to identify the size of a powers bank by the amount of energy that can be stored in the power bank's lithium polymer battery cells. That is a figure that remains constant notwithstanding the multiple variables that impact the OUTPUT ENERGY. In addition, the International Air Transport Association ("IATA") publishes guidelines on the labeling of, among other things, power banks using lithium battery cells. Other than the IATA guidelines, which are equally available to Plaintiff on the IATA website, Belkin is not presently aware of any non-privileged documents in its possession, custody, or control that are responsive to this Request.

**AMENDED REQUEST NO. 10:**

All technical standards (e.g., IEEE, ANSI, or other) that Belkin relied on when making the decision to place the STATED CAPACITY rather than the OUTPUT ENERGY on websites.

**RESPONSE TO AMENDED REQUEST NO. 10:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. In addition, Belkin objects to the definition of STATED CAPACITY on the grounds that it is vague, ambiguous, and argumentative by defining that phrase to suggest that Belkin uses its description of a product's "mAh" (milliampere hours) as a "representation" of a "measure" of capacity as opposed to a statement of the product's physical properties. Belkin further objects to the Interrogatory on the grounds

that it assumes there are "technical standards" on these issues and that Belkin had an obligation to publish information on the amount of energy that F7U020 could deliver to a particular portable electronic device.

Subject to these objections, Belkin is not presently aware of any non-privileged documents in its possession, custody, or control that are responsive to this Request.

**AMENDED REQUEST NO. 11:**

All technical standards (e.g., IEEE, ANSI, or other) that Belkin relied on when making the decision to place the STATED CAPACITY rather than the OUTPUT ENERGY on packaging and labels.

**RESPONSE TO AMENDED REQUEST NO. 11:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. In addition, Belkin objects to the definition of STATED CAPACITY on the grounds that it is vague, ambiguous, and argumentative by defining that phrase to suggest that Belkin uses its description of a product's "mAh" (milliampere hours) as a "representation" of a "measure" of capacity as opposed to a statement of the product's physical properties. Belkin further objects to the Interrogatory on the grounds that it assumes there are "technical standards" on these issues and that Belkin had an obligation to publish information on the amount of energy that F7U020 could deliver to a particular portable electronic device.

Subject to these objections, Belkin is not presently aware of any non-privileged documents in its possession, custody, or control that are responsive to this Request.

**AMENDED REQUEST NO. 12:**

All technical standards (e.g., IEEE, ANSI, or other) that Belkin relied on when making the decision to place the STATED CAPACITY rather than the OUTPUT ENERGY in advertisements (television, print and online).

**RESPONSE TO AMENDED REQUEST NO. 12:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. In addition, Belkin objects to the definition of STATED CAPACITY on the grounds that it is vague, ambiguous, and argumentative by defining that phrase to suggest that Belkin uses its description of a

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

BELKIN'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCS
Case No. 20STCV00033

product's "mAh" (milliampere hours) as a "representation" of a "measure" of capacity as opposed to a statement of the product's physical properties. Belkin further objects to the Request on the grounds that it assumes there are "technical standards" on these issues and that Belkin had an obligation to publish information on the amount of energy that F7U020 could deliver to a particular portable electronic device.

Subject to these objections, Belkin is not presently aware of any non-privileged documents in its possession, custody, or control that are responsive to this Request.

**AMENDED REQUEST NO. 13:**

All technical standards (e.g., IEEE, ANSI, or other) that Belkin relied on when making the decision to place the CHARGING STATEMENTS on websites.

**RESPONSE TO AMENDED REQUEST NO. 13:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. Belkin further objects to this Request on the grounds that the defined term "CHARGING STATEMENTS" is vague and ambiguous to extent that definition incorporates the clause "how the POWER BANK charge can affect the portable electronic device's charge."

Subject to these objections, Belkin is not presently aware of any non-privileged documents in its possession, custody, or control that are responsive to this Request.

**AMENDED REQUEST NO. 14:**

All technical standards (e.g., IEEE, ANSI, or other) that Belkin relied on when making the decision to place the CHARGING STATEMENTS on packaging and labels.

**RESPONSE TO AMENDED REQUEST NO. 14:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. Belkin further objects to this Request on the grounds that the defined term "CHARGING STATEMENTS" is vague and ambiguous to extent that definition incorporates the clause "how the POWER BANK charge can affect the portable electronic device's charge."

Subject to these objections, Belkin is not presently aware of any non-privileged documents in its possession, custody, or control that are responsive to this Request.

/ / /

**AMENDED REQUEST NO. 15:**

All technical standards (e.g., IEEE, ANSI, or other) that Belkin relied on when making the decision to place the CHARGING STATEMENTS in advertisements (television, print and online).

**RESPONSE TO AMENDED REQUEST NO. 15:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. Belkin further objects to this Request on the grounds that the defined term "CHARGING STATEMENTS" is vague and ambiguous to extent that definition incorporates the clause "how the POWER BANK charge can affect the portable electronic device's charge."

Subject to these objections, Belkin is not presently aware of any non-privileged documents in its possession, custody, or control that are responsive to this Request.

**AMENDED REQUEST NO. 16:**

All technical standards (e.g., IEEE, ANSI, or other) which Belkin contends are the basis to communicate to anyone that the proper measure of a POWER BANK's capacity is the STATED CAPACITY rather than the OUTPUT ENERGY.

**RESPONSE TO AMENDED REQUEST NO. 16:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. In addition, Belkin objects to the definition of STATED CAPACITY on the grounds that it is vague, ambiguous, and argumentative by defining that phrase to suggest that Belkin uses its description of a product's "mAh" (milliampere hours) as a "representation" of a "measure" of capacity as opposed to a statement of the product's physical properties. Belkin further objects to the Interrogatory on the grounds that it assumes there are "technical standards" on these issues and that Belkin had an obligation to publish information on the amount of energy that F7U020 could deliver to a particular portable electronic device.

Subject to these objections, Belkin is not presently aware of any non-privileged documents in its possession, custody, or control that are responsive to this Request.

**AMENDED REQUEST NO. 17:**

Any DOCUMENT, including an e-mail, where Belkin considers changing its CHARGING STATEMENTS, or the basis for those statements, even if the change was not actually made.

**RESPONSE TO AMENDED REQUEST NO. 17:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. Belkin further objects to this Request on the grounds that the defined term "CHARGING STATEMENTS" is vague and ambiguous to extent that definition incorporates the clause "how the POWER BANK charge can affect the portable electronic device's charge." Belkin also objects to the Request to the extent it seeks documents that are privileged from discovery by the attorney-client privilege or attorney work product doctrine.

Subject to these objections, Belkin is not presently aware of any non-privileged documents in its possession, custody, or control that are responsive to this Request.

**AMENDED REQUEST NO. 18:**

Any DOCUMENT, including an e-mail, where Belkin considers changing its STATED CAPACITY, or the basis for representing that value to consumers, even if the change was not actually made.

**RESPONSE TO AMENDED REQUEST NO. 18:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. In addition, Belkin objects to the definition of STATED CAPACITY on the grounds that it is vague, ambiguous, and argumentative by defining that phrase to suggest that Belkin uses its description of a product's "mAh" (milliampere hours) as a "representation" of a "measure" of capacity as opposed to a statement of the product's physical properties. Belkin further objects that the term "value" is vague and ambiguous in the context of this Request. Belkin also objects to the Request to the extent it seeks documents that are privileged from discovery by the attorney-client privilege or attorney work product doctrine.

Subject to these objections, Belkin is not presently aware of any non-privileged documents in its possession, custody, or control that are responsive to this Request.

**AMENDED REQUEST NO. 19:**

All marketing DOCUMENTS, including reports from focus groups, consumer surveys, or other market research, concerning the understanding of ordinary consumers about the STATED CAPACITY or CHARGING STATEMENTS.

**RESPONSE TO AMENDED REQUEST NO. 19:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. In addition, Belkin objects to the definition of STATED CAPACITY on the grounds that it is vague, ambiguous, and argumentative by defining that phrase to suggest that Belkin uses its description of a product's "mAh" (milliampere hours) as a "representation" of a "measure" of capacity as opposed to a statement of the product's physical properties. Belkin further objects to this Request on the grounds that the defined term "CHARGING STATEMENTS" is vague and ambiguous to extent that definition incorporates the clause "how the POWER BANK charge can affect the portable electronic device's charge."

Subject to these objections, Belkin is not presently aware of any non-privileged documents in its possession, custody, or control that are responsive to this Request.

**AMENDED REQUEST NO. 20:**

All marketing DOCUMENTS, including reports from focus groups, consumer surveys, or other market research, concerning any confusion expressed by any consumer regarding the STATED CAPACITY or CHARGING STATEMENTS.

**RESPONSE TO AMENDED REQUEST NO. 20:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. In addition, Belkin objects to the definition of STATED CAPACITY on the grounds that it is vague, ambiguous, and argumentative by defining that phrase to suggest that Belkin uses its description of a product's "mAh" (milliampere hours) as a "representation" of a "measure" of capacity as opposed to a statement of the product's physical properties. Belkin further objects to this Request on the grounds that the defined term "CHARGING STATEMENTS" is vague and ambiguous to extent that definition incorporates the clause "how the POWER BANK charge can affect the portable electronic device's charge."

Subject to these objections, Belkin is not presently aware of any non-privileged documents in its possession, custody, or control that are responsive to this Request.

/ / /

/ / /

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

**AMENDED REQUEST NO. 21:**

All marketing documents, including reports from focus groups, consumer surveys, or other market research, concerning the relative value consumers place on OUTPUT ENERGY or STATED CAPACITY compared with other POWER BANK characteristics.

**RESPONSE TO AMENDED REQUEST NO. 21:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. In addition, Belkin objects to the definition of STATED CAPACITY on the grounds that it is vague, ambiguous, and argumentative by defining that phrase to suggest that Belkin uses its description of a product's "mAh" (milliampere hours) as a "representation" of a "measure" of capacity as opposed to a statement of the product's physical properties. Belkin further objects to the Request on the grounds that it is vague and ambiguous to the extent it uses the phrase "the relative value consumers place on OUTPUT ENERY or STATED CAPACITY compared with other POWER BANK characteristics."

Subject to these objections, Belkin will produce the sole non-privileged document in its possession, custody, or control that may be responsive to this Request.

**AMENDED REQUEST NO. 22:**

All documents concerning a correlation between a manufacturer's ability to charge a higher price for POWER BANKS where the STATED CAPACITY, CHARGING STATEMENTS or OUTPUT ENERGY are higher values.

**RESPONSE TO AMENDED REQUEST NO. 22:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. In addition, Belkin objects to the definition of STATED CAPACITY on the grounds that it is vague, ambiguous, and argumentative by defining that phrase to suggest that Belkin uses its description of a product's "mAh" (milliampere hours) as a "representation" of a "measure" of capacity as opposed to a statement of the product's physical properties. Belkin further objects to this Request on the grounds that the defined term "CHARGING STATEMENTS" is vague and ambiguous to extent that definition incorporates the clause "how the POWER BANK charge can affect the portable electronic device's charge."

/ / /

SULLIVAN & TRIGGS, LLP
Attorneys at Law
Santa Monica

Subject to these objections, Belkin is not aware of any documents that may be responsive to this Request in its possession, custody, or control.

**AMENDED REQUEST NO. 23:**

An exemplar of all marketing materials, including on websites, packaging, labels and in advertisements (television, print and online), for each POWER BANK, that includes the STATED CAPACITY or CHARGING STATEMENTS. If changes were made to the marketing materials during the marketing life of a POWER BANK, provide each version of the marketing materials.

**RESPONSE TO AMENDED REQUEST NO. 23:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2.

Subject to these objections, Belkin will provide such material for F7U020 in its possession, custody, or control.

**AMENDED REQUEST NO. 24:**

A copy of the packaging for each POWER BANK. If the packaging changed during the marketing life of a POWER BANK, provide each version of the DOCUMENT.

**RESPONSE TO AMENDED REQUEST NO. 24:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2.

Subject to these objections, Belkin will provide such material for F7U020 in its possession, custody, or control.

**AMENDED REQUEST NO. 25:**

A copy of the manual or spec sheet shipped inside the packaging of each POWER BANK. If the manual or spec sheet changed during the marketing life of a POWER BANK, provide each version of the DOCUMENT.

**RESPONSE TO AMENDED REQUEST NO. 25:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2.

Subject to these objections, Belkin will provide such material for F7U020 in its possession, custody, or control.

**AMENDED REQUEST NO. 26:**

A clear photo or DOCUMENT showing what is printed on each POWER BANK.

14

**RESPONSE TO AMENDED REQUEST NO. 26:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2.

Subject to these objections, Belkin will provide such material for F7U020 in its possession, custody, or control.

**AMENDED REQUEST NO. 27:**

All complaints you have received from anyone regarding any POWER BANK's STATED CAPACITY, CHARGING STATEMENTS or OUTPUT ENERGY.

**RESPONSE TO AMENDED REQUEST NO. 27:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. In addition, Belkin objects to the definition of STATED CAPACITY on the grounds that it is vague, ambiguous, and argumentative by defining that phrase to suggest that Belkin uses its description of a product's "mAh" (milliampere hours) as a "representation" of a "measure" of capacity as opposed to a statement of the product's physical properties. Belkin further objects to this Request on the grounds that the defined term "CHARGING STATEMENTS" is vague and ambiguous to extent that definition incorporates the clause "how the POWER BANK charge can affect the portable electronic device's charge."

Subject to these objections, and other than the correspondence relating to Plaintiff which is already in Plaintiff's possession, Belkin will provide such material, if any, for F7U020 in its possession, custody, or control.

**AMENDED REQUEST NO. 28:**

All DOCUMENTS that describe or reflect Belkin's response to each of the complaints in the previous DOCUMENT request. Include both internal COMMUNICATIONS and memos within Belkin as well as any response communicated back to the complainant externally.

**RESPONSE TO AMENDED REQUEST NO. 28:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. In addition, Belkin objects to the definition of STATED CAPACITY on the grounds that it is vague, ambiguous, and argumentative by defining that phrase to suggest that Belkin uses its description of a product's "mAh" (milliampere hours) as a "representation" of a "measure" of capacity as opposed to a

statement of the product's physical properties. Belkin further objects to this Request on the grounds that the defined term "CHARGING STATEMENTS" is vague and ambiguous to extent that definition incorporates the clause "how the POWER BANK charge can affect the portable electronic device's charge." Belkin also objects to the Request to the extent it seeks documents that are privileged from discovery by the attorney-client privilege or attorney work product doctrine.

Subject to these objections, and other than the correspondence relating to Plaintiff which is already in Plaintiff's possession, Belkin will provide such material, if any, for F7U020 in its possession, custody, or control.

**AMENDED REQUEST NO. 29:**

All DOCUMENTS reflecting an inquiry from a government entity (e.g., Federal Trade Commission, state attorney general) regarding any POWER BANK's STATED CAPACITY.

**RESPONSE TO AMENDED REQUEST NO. 29:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. In addition, Belkin objects to the definition of STATED CAPACITY on the grounds that it is vague, ambiguous, and argumentative by defining that phrase to suggest that Belkin uses its description of a product's "mAh" (milliampere hours) as a "representation" of a "measure" of capacity as opposed to a statement of the product's physical properties. Belkin further objects to this Request on the grounds that the defined term "CHARGING STATEMENTS" is vague and ambiguous to extent that definition incorporates the clause "how the POWER BANK charge can affect the portable electronic device's charge." Belkin also objects to the Request to the extent it seeks documents that are privileged from discovery by the attorney-client privilege or attorney work product doctrine.

Subject to these objections, Belkin will provide such non-privileged material, if any, for F7U020 in its possession, custody, or control.

**AMENDED REQUEST NO. 30:**

All DOCUMENTS reflecting an inquiry from a government entity (e.g., Federal Trade Commission, state attorney general) regarding any CHARGING STATEMENTS.

**RESPONSE TO AMENDED REQUEST NO. 30:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2.

16

Belkin further objects to this Request on the grounds that the defined term "CHARGING STATEMENTS" is vague and ambiguous to extent that definition incorporates the clause "how the POWER BANK charge can affect the portable electronic device's charge." Belkin also objects to the Request to the extent it seeks documents that are privileged from discovery by the attorney-client privilege or attorney work product doctrine.

Subject to these objections, Belkin will provide such non-privileged material, if any, for F7U020 in its possession, custody, or control.

**AMENDED REQUEST NO. 31:**

All DOCUMENTS reflecting an inquiry from a government entity (e.g., Federal Trade Commission, state attorney general) regarding any OUTPUT ENERGY.

**RESPONSE TO AMENDED REQUEST NO. 31:**

Belkin incorporates by this reference the objections set forth in its Response to Request No. 2. Belkin also objects to the Request to the extent it seeks documents that are privileged from discovery by the attorney-client privilege or attorney work product doctrine.

Subject to these objections, Belkin will provide such non-privileged material, if any, for F7U020 in its possession, custody, or control.


Date: January 27, 2021

Respectfully submitted,
SULLIVAN & TRIGGS, LLP


By: _____
Sheldon Eisenberg
Erin E. McCracken

Attorneys for Defendant
BELKIN INTERNATIONAL, INC.

**VERIFICATION**

I, Norbert von Boode, declare:

I have read the foregoing **DEFENDANT BELKIN INTERNATIONAL, INC.'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** and know its contents.  I am informed and believe that the matters therein stated are true and, on that ground, allege that the matters stated therein are true.

I am the Senior Product Manager for Belkin International, Inc. party to this action.  I am authorized to make this verification for and on its behalf, and I make this verification for that reason.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 27, 2021, at Los Angeles, California.

Norbert von Boode

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Sullivan & Triggs LLP, 1230 Montana Avenue, Suite 201, Santa Monica, California 90403.

      On **January 27, 2021**, I served the foregoing document described as:  **DEFENDANT BELKIN INTERNATIONAL, INC.'S RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** on the interested parties in this action as follows:

  **X**  **By ELECTRONIC SERVICE** (I electronically served a true and correct copy of the foregoing document using the CASE ANYWHERE System which will send notification of such submission to counsel of record indicated on the attached service list.)

  \_\_\_\_  **By PERSONAL SERVICE**

      \_\_\_\_  by personally delivering such envelope to the addressee.

      \_\_\_\_  by causing such envelope to be delivered by messenger to the office of the addressee.

  \_\_\_\_  **By UNITED STATES MAIL** (I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.)

  \_\_\_\_  **By OVERNIGHT DELIVERY** (by causing such envelope to be delivered to the office of the addressee by overnight delivery via Federal Express or by other similar overnight delivery service.)

  **X**  (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

  \_\_\_\_  (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

      Executed on **January 27, 2021**, at Santa Monica, California.

| | |
|---|---|
| _____Shella Anderson_____ | \_\_\_\_\_*Shella Anderson*\_\_\_\_\_ |
| Name | Signature |

19

SULLIVAN & TRIGGS, LLP
Attorneys at Law
Santa Monica

Service List

| Nathan M. Smith (Ca. Bar No. 255212)<br>Nona Yegazarian (Ca. Bar No. 316458)<br>**BROWN NERI SMITH & KHAN LLP**<br>11601 Wilshire Boulevard, Suite 2080<br>Los Angeles, California 90025<br>Phone: 310-593-9890<br>Fax: 310-593-9980<br>Email: nate@bnsklaw.com<br>Email: nona@bnsklaw.com<br><br>D. Greg Blankinship<br>**FINKELSTEIN, BLANKINSHIP,**<br>    **FREI-PEARSON & GARBER, LLP**<br>445 Hamilton Ave, Suite 605<br>White Plains, NY 10601<br>Phone: 914-298-3290<br>Email: gblankinship@fbfglaw.com<br><br>William F. Cash<br>Matthew D. Schultz<br>Brenton J. Goodman<br>**LEVIN, PAPANTONIO, THOMAS,**<br>    **MITCHELL, RAFFERTY &**<br>**PROCTOR, P.A.**<br>316 South Baylen Street, Suite 600<br>Pensacola, FL 32502<br>Phone: 850-435-7059<br>Fax: 850-435-7020<br>Email: bcash@levinlaw.com<br>Email: mschultz@levinlaw.com<br>Email: bgoodman@levinlaw.com | Attorneys for Plaintiff Lenore Miley |

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

1  SHELDON EISENBERG (SBN 100626)
   seisenberg@sullivantriggs.com
2  GILLIAN KUHLMANN (SBN 316241)
   gkuhlmann@sullivantriggs.com
3  NAIRI SHIRINIAN (SBN 335909)
   nshirinian@sullivantriggs.com
4  Sullivan & Triggs, LLP
   1230 Montana Avenue, Suite 201
5  Santa Monica, California 90403
   Telephone:    (310) 451-8300
6  Facsimile:    (310) 451-8303

7  Attorneys for Defendant
   BELKIN INTERNATIONAL, INC.

8

9

10              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                    **COUNTY OF LOS ANGELES**

12  LENORE MILEY, individually and on behalf of    )   Case No.: 20STCV00033
    all others similarly situated,                  )
13                                                   )   **DEFENDANT BELKIN INTERNATIONAL,**
                                                     )   **INC.'S AMENDED RESPONSE TO**
14                         Plaintiff,                )   **PLAINTIFF'S AMENDED FIRST SET OF**
           v.                                        )   **INTERROGATORIES**
15  BELKIN INTERNATIONAL, INC.,                      )
                                                     )
16                         Defendant.                )
                                                     )   Judge: Hon. Carolyn B. Kuhl
17                                                   )   Dept.: 12
                                                     )
18                                                   )   Complaint Filed: January 2, 2020
                                                     )
19

20  **Propounding Party:**      Lenore Miley

21  **Responding Party:**       Belkin International, Inc.

22  **Set No.:**                One -- Amended

23         Pursuant to California Code of Civil Procedure § 2030.210 and California Rules of Court, Rule

24  3.1000, Belkin International, Inc. ("Defendant") hereby amends its responses to Plaintiff's Amended

25  First Set of Interrogatories.

26                        **PREFATORY STATEMENT**

27         These responses, while based on the diligent search and efforts by Defendant and its counsel,

28  reflect only the current state of Defendant's knowledge, understanding, and belief relating to the matters

                                              1

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

about which inquiry has been made.  Discovery and investigation are continuing. Defendant has not yet completed his investigation of the facts relating to this action and may discover facts, information, evidence, documents, and things that are not set forth in these responses but which may be responsive. Accordingly, these responses are neither intended as, nor should in any way be deemed, an admission or representation that further information or documents do not exist.  Defendant anticipates that as this action proceeds, further information or documents may be discovered and, without in any way obligating itself to do so, Defendant reserves the right to modify or supplement these responses, or to produce documents based on subsequently discovered matters.

**AMENDED RESPONSES TO AMENDED SPECIAL INTERROGATORIES**

**AMENDED SPECIAL INTERROGATORY NO. 7:**

Did Belkin rely on any industry standards, industry trade association recommendations, competitors' trade practices, or similar factors outside of Belkin, when Belkin determined to publish the CHARGING STATEMENTS on websites? If so, state the name of the outside factor, the name of the Belkin PERSON relying on it, and the date of the reliance.

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 7:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1.  Subject to those objections and its further objection that the phrases "CHARGING STATEMENTS" and "similar factors outside of Belkin" are vague and ambiguous, Belkin responds that its statement that F7U020 "Charges iPhone 7 (running IOS 10) up to 3 times on a single charge" was based in part on the information published by Apple on the battery capacity of its iPhone 7.   As stated above, published statements on the characteristics of Belkin products are approved by Belkin's Global Product Management department.  The head of Global Product Management at the time published statements for F7U020 would have been approved was Fred Gransee.  That date is unknown.

**AMENDED RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 7:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1.  Subject to those objections and its further objection that the phrases "CHARGING STATEMENTS" and "similar factors outside of Belkin" are vague and ambiguous, Belkin responds that its statement that F7U020 "Charges iPhone 7 (running IOS 10) up to 3 times on a single charge" was based in part on the iPhone 7

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

phone specifications widely published by third-party sources after the iPhone 7 was announced.  As stated above, published statements on the characteristics of Belkin products are approved by Belkin's Global Product Management department.  The head of Global Product Management at the time published statements for F7U020 would have been approved was Fred Gransee.  That date is unknown.

**AMENDED SPECIAL INTERROGATORY NO. 8:**

Did Belkin rely on any industry standards, industry trade association recommendations, competitors' trade practices, or similar factors outside of Belkin, when Belkin determined to publish the CHARGING STATEMENTS on packaging and labels? If so, state the name of the outside factor, the name of the Belkin PERSON relying on it, and the date of the reliance.

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 8:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1.  Subject to those objections and its further objection that the phrases "CHARGING STATEMENTS" and "similar factors outside of Belkin" are vague and ambiguous, Belkin responds that its statement that F7U020 "Charges iPhone 7 (running IOS 10) up to 3 times on a single charge" was based in part on the information published by Apple on the battery capacity of its iPhone 7.  As stated above, published statements on the characteristics of Belkin products are approved by Belkin's Global Product Management department.  The head of Global Product Management at the time published statements for F7U020 would have been approved was Fred Gransee.  That date is unknown.

**AMENDED RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 8:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1.  Subject to those objections and its further objection that the phrases "CHARGING STATEMENTS" and "similar factors outside of Belkin" are vague and ambiguous, Belkin responds that its statement that F7U020 "Charges iPhone 7 (running IOS 10) up to 3 times on a single charge" was based in part on the iPhone 7 phone specifications widely published by third-party sources after the iPhone 7 was announced.  As stated above, published statements on the characteristics of Belkin products are approved by Belkin's Global Product Management department.  The head of Global Product Management at the time published statements for F7U020 would have been approved was Fred Gransee.  That date is unknown.

///

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

**AMENDED SPECIAL INTERROGATORY NO. 9:**

Did Belkin rely on any industry standards, industry trade association recommendations, competitors' trade practices, or similar factors outside of Belkin, when Belkin determined to publish the CHARGING STATEMENTS in advertisements (television, print and online)? If so, state the name of the outside factor, the name of the Belkin PERSON relying on it, and the date of the reliance.

**RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 9:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Subject to those objections and its further objection that the phrases "CHARGING STATEMENTS" and "similar factors outside of Belkin" are vague and ambiguous, Belkin responds that its statement that F7U020 "Charges iPhone 7 (running IOS 10) up to 3 times on a single charge" for F7U020 was based in part on the information published by Apple on the battery capacity of its iPhone 7. As stated above, published statements on the characteristics of Belkin products are approved by Belkin's Global Product Management department. The head of Global Product Management at the time published statements for F7U020 would have been approved was Fred Gransee. That date is unknown.

**AMENDED RESPONSE TO AMENDED SPECIAL INTERROGATORY NO. 9:**

Belkin incorporates herein the objections stated in Response to Interrogatory No. 1. Subject to those objections and its further objection that the phrases "CHARGING STATEMENTS" and "similar factors outside of Belkin" are vague and ambiguous, Belkin responds that its statement that F7U020 "Charges iPhone 7 (running IOS 10) up to 3 times on a single charge" was based in part on the iPhone 7 phone specifications widely published by third-party sources after the iPhone 7 was announced. As stated above, published statements on the characteristics of Belkin products are approved by Belkin's Global Product Management department. The head of Global Product Management at the time published statements for F7U020 would have been approved was Fred Gransee. That date is unknown.

///

///

///

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

4

BELKIN'S AMENDED RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF INTERROGATORIES
Case No. 20STCV00033

Date: May 24, 2021

Respectfully submitted,
SULLIVAN & TRIGGS, LLP

By: _____
        Sheldon Eisenberg
        Gillian Kuhlmann
        Nairi Shirinian

Attorneys for Defendant
BELKIN INTERNATIONAL, INC.

5

BELKIN'S AMENDED RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF INTERROGATORIES
Case No. 20STCV00033

**VERIFICATION**

I, Norbert von Boode, declare:

I have read the foregoing **DEFENDANT BELKIN INTERNATIONAL, INC.'S AMENDED RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF INTERROGATORIES** and know its contents. I am informed and believe that the matters therein stated are true and, on that ground, allege that the matters stated therein are true.

I am the Senior Product Manager for Belkin International, Inc. party to this action. I am authorized to make this verification for and on its behalf, and I make this verification for that reason.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 24, 2021, at Los Angeles, California.

Norbert von Boode

BELKIN'S AMENDED RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF INTERROGATORIES
Case No. 20STCV00033

SULLIVAN &
TRIGGS, LLP
Attorneys at Law
Santa Monica

## **PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

  I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Sullivan & Triggs LLP, 1230 Montana Avenue, Suite 201, Santa Monica, California 90403.

  On **May 24, 2021**, I served the foregoing document described as:  **DEFENDANT BELKIN INTERNATIONAL, INC.'S AMENDED RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF INTERROGATORIES** on the interested parties in this action as follows:

 __X__ **By ELECTRONIC SERVICE** (I electronically served a true and correct copy of the foregoing document using the CASE ANYWHERE System which will send notification of such submission to counsel of record indicated on the attached service list.)

_____ **By PERSONAL SERVICE**

  _____ by personally delivering such envelope to the addressee.

  _____ by causing such envelope to be delivered by messenger to the office of the addressee.

_____ **By UNITED STATES MAIL** (I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.)

_____ **By OVERNIGHT DELIVERY** (by causing such envelope to be delivered to the office of the addressee by overnight delivery via Federal Express or by other similar overnight delivery service.)

 __X__ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

  Executed on **May 24, 2021**, at Santa Monica, California.

_____Shella Anderson_____     ____*Shella Anderson*____
Name               Signature

7

BELKIN'S AMENDED RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF INTERROGATORIES
Case No. 20STCV00033

SULLIVAN & TRIGGS, LLP
Attorneys at Law
Santa Monica

Service List

| Nathan M. Smith (Ca. Bar No. 255212)<br>Nona Yegazarian (Ca. Bar No. 316458)<br>**BROWN NERI SMITH & KHAN LLP**<br>11601 Wilshire Boulevard, Suite 2080<br>Los Angeles, California 90025<br>Phone: 310-593-9890<br>Fax: 310-593-9980<br>Email: nate@bnsklaw.com<br>Email: nona@bnsklaw.com<br><br>D. Greg Blankinship<br>**FINKELSTEIN, BLANKINSHIP,**<br>   **FREI-PEARSON & GARBER, LLP**<br>445 Hamilton Ave, Suite 605<br>White Plains, NY 10601<br>Phone: 914-298-3290<br>Email: gblankinship@fbfglaw.com<br><br>William F. Cash<br>Matthew D. Schultz<br>Brenton J. Goodman<br>**LEVIN, PAPANTONIO, THOMAS,**<br>   **MITCHELL, RAFFERTY &**<br>**PROCTOR, P.A.**<br>316 South Baylen Street, Suite 600<br>Pensacola, FL 32502<br>Phone: 850-435-7059<br>Fax: 850-435-7020<br>Email: bcash@levinlaw.com<br>Email: mschultz@levinlaw.com<br>Email: bgoodman@levinlaw.com | Attorneys for Plaintiff Lenore Miley |

8

BELKIN'S AMENDED RESPONSE TO PLAINTIFF'S AMENDED FIRST SET OF INTERROGATORIES
Case No. 20STCV00033