UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DENNIS GROMOV,** individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:22-cv-6918 |
| *v.* | Judge Valderrama |
| **BELKIN INTERNATIONAL, INC.,** | Magistrate Judge Fuentes |
| Defendant. | |

## MOTION TO COMPEL BELKIN'S ANSWERS TO GROMOV'S DISCOVERY REQUESTS

### I. Procedural history.

Here is the relevant timeline.

- April 21: Gromov served requests for production, interrogatories, and requests for admissions on Belkin. **(Ex. A.)**

- June 5: Belkin responded—timely, pursuant to an agreed extension between the parties. Belkin produced **no** documents on this date. (**Exs. B and C**, Belkin's RFP and interrogatory responses..)

- June 9: Gromov and Belkin conferred on Belkin's responses and objections.

- July 5: Belkin untimely produced just 38 pages of documents. Belkin stood on its position that it was holding back confidential documents for want of a protective order.

- August 2: Gromov filed a motion to compel, putting Belkin on notice of the issues, which the Court denied under Loc. R. 7.1. (ECF Nos. 36, 37.)

- August 10: Gromov and Belkin conferred again using the August 2 motion to compel as the agenda for the call. Belkin did not amend its responses.

- August 29: The Court entered a protective order sought by Belkin.

- Today: Belkin has produced no documents since July 5.

## II.  Argument.

**Issue 1:**   **Belkin still has not completed its document production.**

**Requests at issue:**   **RFPs 2, 3, 5, 13, 14, 16, 18, 20, 24**

As recounted above, Belkin's discovery responses were due June 5 by agreed extension and that included Belkin's documents. On July 5, Belkin produced just 38 pages of documents. To date, Belkin has produced no more.

Belkin's own response acknowledges its production is not complete and promises to finish the production on a "rolling basis." In many of its responses, Belkin claimed that its need for a protective order was a basis to withhold documents—an order Belkin did not even seek until August 17. The Court entered that order on August 29 but the withheld documents have still not been produced.

Belkin's refusal to timely produce documents impacts Gromov's ability to litigate this case, including taking depositions. Belkin should be ordered to complete its production now.

**Issue 2:**   **Belkin did not produce documents from many categories where Gromov knows such documents actually exist.**

**Requests affected:**   **Unknown, but at least RFP 7, 10, 12, and 16**

With respect to at least four categories of documents, those sought in Gromov's RFPs 7, 10, 12, and 16, Belkin stated that no responsive documents exist. For example, Gromov's RFP 7 sought the following: "Any document, including a communication, where Belkin considered changing its charging statements, or the basis for those statements, even if the change was not actually made." Belkin's answer was a few objections and then: "Belkin was unable to locate any non-privileged responsive documents in its possession, custody, or control following a reasonable search." RFP 10, similarly, sought documents evidencing "consumers' understanding or

confusion about stated capacity or charging statements, with respect to any Belkin power bank." Belkin similarly denied that any such documents could be located. All four of these RFPs contain a similar flat denial that "a reasonable search" was performed and that no such documents were found. Belkin did not object that the documents are outside the scope of discovery, or that producing them would be unduly burdensome; it denied that no documents could be found.

But this is not true. Belkin's attorneys produced over a thousand pages of documents in the *Miley* case in California, a very similar power bank case, hundreds of pages of which *are* responsive to these requests. For example, there are consumer complaints, discussions of product labeling decisions, marketing reports, and more. These documents show that Belkin failed to do a reasonable search in *Gromov* for materials that its own lawyers know exist. And it raises a concern: in what other ways is Belkin's document search incomplete?

This is all the more concerning because Gromov's request for admissions no. 1 and its sub-exhibit A—with the entire *Miley* document production attached—*directly put Belkin's counsel on notice* of the existence of the documents here in *Gromov*.

"By signing" a discovery request, "an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," it is consistent with the Rules. Fed. R. Civ. P. 26(g)(3). This Rule mandates an appropriate sanction on the signer, the party, or both, if the response is not consistent with the Rules.

The Court should order Belkin to promptly revisit all of its discovery responses and make them complete. The Court should also consider imposing an appropriate sanction under Rule 26, to include the cost of preparing this motion.

**Issue 3:** **Standing to conduct discovery, and represent a class, of purchasers of substantially similar products.**

**Requests at issue:** RFPs 1–23, interrogatories 1–7, 9–14, 16–17

There are at least two dozen Belkin power banks with identical misrepresentations on their packaging. Gromov purchased one such Belkin model called the "Pocket Power 10000." The Complaint alleges a class of consumers who purchased any similar Belkin power bank. Belkin has objected to discovery into any model other than the Pocket Power 10000 on the basis of standing. (E.g., **Ex. B**, Belkin's response to RFP 1.)

Gromov's argument that he does have standing represent purchasers of similar Belkin power banks is supported by a clear majority rule in our District, in Illinois federal courts, and nationally. The test is whether the plaintiff's claims are "substantially similar" to claims held by other class members, where substantial similarity means a similar type of injury based on similar facts.

- **Northern District:** Most judges in our District have endorsed the "substantial similarity" test. In *Curtis v. 7-Eleven, Inc.*, No. 21-CV-6079, 2022 WL 4182384, at *7–9 (N.D. Ill. Sept. 13, 2022), Judge Seeger noted that this is the "majority approach." *See Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 700 (N.D. Ill. 2020); *Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at *6 (N.D. Ill. 2017); *Wagner v. Gen. Nutrition Corp.*, 2017 WL 3070772, at *5 (N.D. Ill. 2017); *Mednick v. Precor, Inc.*, 2014 WL 6574915, at *3 (N.D. Ill. 2014).

- **Southern District:** The Southern District of Illinois has cited cases like these with approval, noting that "a growing majority" of courts "apply a 'substantially similar' standard." *Drake v. Procter & Gamble, Co.*, No. 21-CV-279-DWD, 2021 WL 5359804, at *4 (S.D. Ill. Nov. 17, 2021). *Drake* cites *Kubilius v. Barilla America, Inc.*, 2019 WL 2861886, at *3 (N.D. Ill. July 2, 2019) ("[T]he majority of courts have held that class representatives may represent class members who purchased 'substantially similar products.'").

- **Other Districts:** And as Judge Seeger has noted, "[t]he majority rule here is the majority rule elsewhere" around the Nation. *Curtis*, 2022 WL 4182384 at *8 (collecting cases).

4

Judge Seeger also cited to 1 McLaughlin on Class Actions § 4:28 (18th ed. 2021), a "helpful treatise [which] summarized this majority approach." *Id.* As McLaughlin explains, whether a plaintiff ultimately is a "context-specific analysis" that turns on whether "the products and alleged misrepresentations about a purchased product are substantially similar."

Specifically in the context of power banks, there are two decisions in the *Geske v. PNY* case in this Court that support Gromov's position. Judge Kim ruled on nearly identical interrogatories and requests for production and has compelled the manufacturer, PNY, to produce documents and interrogatory answers as to all 200 PNY power banks. *Geske*, No. 1:19-cv-5170, doc. 102, at 3 (N.D. Ill. Aug. 7, 2023) ("all models of chargers Defendant sold (and sells) are relevant"). Similarly, Judge Seeger held in his published opinion that Geske has standing to bring such claims. *Geske*, 503 F. Supp. 3d 687, 700 (N.D. Ill. 2020).

With respect to Belkin, there is clear evidence that Belkin power banks are designed in the same way and marketed in the same way, so that they are substantially similar and thus subject to inclusion in Gromov's proposed class. Belkin's global product manager testified that Belkin labels all its power bank models in the same misleading way:

> **Q.** . . . In other words, you use the same common terminology with respect to the mAh number on the front; is that true?
>
> **A.** The number represents the cell capacity included in the hardware, yes.
>
> **Q. And that's true for all the Belkin power banks that you're aware of?**
>
> **A. That I'm aware of, yes.**

(**Ex. D**, Von Boode Dep. 33:22–34:12; *see also id.* at 16:7–16:22 (leader of global product management team for mobile power).)

Further, Belkin states that follows an industry standard in labeling its power banks with their theoretical maximum capacity (the figure Gromov says is misleading to him and other consumers). (**Ex. C**, Belkin's response to interrogatory 4.). This is an admission by Belkin that its power banks are all substantially similar in terms of the injury consumers suffer—and that means that Gromov is entitled to discovery on all of them.

Finally, there are dozens of consumer complaints in the California *Miley* document production where consumers complain about misleading mAh values, and they do not come just from the model 10000 units.

The Court should overrule this objection of Belkin's in all of the discovery responses where it appears. And the Court should order Belkin to make discovery as to each of its power banks.

**Issue 4:** **Belkin did not answer interrogatory number 2, relating to models that are not substantially similar.**

**Requests affected:** **Interrogatory 2**

Gromov anticipated that Belkin might argue that certain power banks in its range are not substantially similar to the Pocket Power 10000. This contention interrogatory asks Belkin to explain why not. Belkin refused to answer it on the basis of standing (Gromov's issue 3).

The Court should find for Gromov on issue 3 and then direct Belkin to answer interrogatory 2 for the same reasons. Judge Kim did the same in *Geske* on a nearly identical interrogatory. *Geske*, No. 1:19-cv-5170, doc. 102, at 3 (N.D. Ill. Aug. 7, 2023) ("This is another straightforward INT designed to investigate the potential size of the class.").

**Issue 5:    Belkin withheld necessary engineering documents on grounds of relevance.**

**Requests at issue: RFP 4**

Gromov sought "design specifications and drawings, including parts lists, for each Belkin power bank." Belkin objected, stating that "Plaintiff's claims in this case relate to the representations on the labels/packaging and advertisement. It is unclear how the battery pack's design specifications, drawings, and parts list relate to these issues."

The need for such documents is obvious. This is an electronic product that consists of big battery cells and a small circuit board that manages the charge and discharge of those cells into an external device like a phone. The job of the circuit board is to put out a steady amount of power in a safe way so that the device does not overheat or explode. Manufacturers, electronics experts, and some lawyers know—but consumers generally *don't* know—that this circuit board consumes energy on its own. In other words, the consumer can't ever get 10000 mAh "out" of the cells in a "Belkin 10000" power bank because the circuit board eats up some of the "juice" for itself.

Gromov is entitled to Belkin's disclosure of the components inside its power banks because Belkin has made that information the basis of its product labeling decisions. *I.e.,* **Ex. C,** Belkin's Interrogatory 4, that "the general industry practice is to identify the size of the power pack by the amount of energy that can be stored in its lithium battery polymer battery cells." Ergo, Belkin must disclose what those cells actually are.

Belkin should be ordered to answer RFP 4.

**Issue 6:    Belkin refused to produce any exemplar power banks.**

**Requests at issue:        RFP 1**

Gromov's RFP no. 1 sought "an exemplar of every power bank" identified in interrogatory no. 1, which in turn asked Belkin for the name of "all power banks put out by Belkin since January

1, 2018." In its written response, Belkin refused to produce any power banks. After the August 10 meet and confer session, Belkin finally agreed to produce just one Pocket Power 10000 model, but it has yet to do that. Gromov has demanded the power bank several times. Belkin should be ordered to produce the one it finally agreed to produce. Further, Belkin should also be ordered to produce an exemplar from every line in its range.

**Issue 7:** **Belkin did not fully answer interrogatory 1, regarding product characteristics.**

**Requests affected:** **Interrogatory 1**

Interrogatory 1 sought basic performance characteristics about Belkin's power banks: their "name, model number, SKU number, basic characteristics including stated capacity and output energy, and the first and last month in which the model was distributed to anyone by Belkin."

Belkin only answered this as to the Pocket Power 10000. Belkin refused to produce any information about other models.

Also, Belkin did not provide the stated capacity or the output energy for this device—which is something Belkin has tested, and which is a core question in this action, because Gromov's theory is that the output energy is much lower than the stated capacity. Belkin has this relevant information and should be ordered to produce it.

Belkin also did not provide the end date of distribution for this product, which is relevant to class definition issues.

Belkin should be required to answer this interrogatory fully and to do so as to each of its models. In *Geske*, Judge Kim directed PNY to answer a similar interrogatory in full and as to all of PNY's models. *Geske*, No. 1:19-cv-5170, doc. 102, at 3 (N.D. Ill. Aug. 7, 2023) ("This is a straightforward INT about Defendant's line of portable chargers").

**Issue 8:**     **Belkin refused to produce sales or financial information.**

**Requests affected:**          **RFP 20–23**

These requests sought sales data of Belkin units (RFP 20), sales data created by third parties (RFP 21), financial reports and other sales information about Belkin power banks (RFP 22), and information about retailers' names and sales volumes (RFP 23). Belkin promised to produce certain unit sales data (RFP 20) under a protective order, but never did, and Belkin has refused to produce any of the other documents. All of Belkin's objections should be overruled.

Gromov alleges a large, multi-state class. It will be incumbent on Gromov, at the class certification stage, to come forward with sufficient evidence to establish that class. Moreover, the sales information sought is relevant to establishing classwide damages. Finally, Gromov's damages expert will use this data to compute a fair price assuming that Belkin had accurately labeled its products. This militates production of the sales information demanded by RFPs 20–23.

Regarding the names of retailers, their geographic distribution, and the units sold, that information is relevant to overall sales as well as discovering the average retail price. Retail price is something Belkin expressly disclaimed having. (**Ex. C**, response to interrogatory 3: "Belkin lacks visibility into the average retail price, as retailers set their own pricing.") Therefore, Belkin should be ordered to give Gromov the retailer data sought by RFP 23. Gromov would subpoena those retailers, and in fact has already begun that with several of the largest retailers in the U.S.

**Issue 9:**     **Belkin's reference to IATA guidelines, without producing them or identifying them, is meaningless.**

**Requests at issue: RFP 6; interrogatories 4, 5, 7**

RFP 6 sought "industry standards" Belkin uses in labeling its products. Among Belkin's objections was this response: "The International Air Transport Association ('IATA') publishes

9

guidelines on the labeling of power banks using lithium battery cells, which are accessible at the IATA's website." But Belkin refused to produce these standards. It should be ordered to do so.

Similarly, Belkin's answers to interrogatories 4, 5, and 7 are so vague as to be useless. While Belkin gestures at "guidelines," Belkin refused to state what they are.

As it stands, Belkin claims to comply with guidelines, but won't say which ones. Belkin should be ordered to serve a response sufficient to identify those industry standards or guidelines.

Judge Kim ruled for Geske on this same issue. *Geske*, No. 1:19-cv-5170, doc. 102, at 4 (N.D. Ill. Aug. 7, 2023) ("This is another straightforward INT seeking to investigate whether Defendant relied on any standards promulgated by others outside the organization").

**Issue 10:   Belkin gives answers "subject to and without waiving" objections. Belkin must either answer or object and cannot have it both ways.**

**Requests at issue:        Generally all, because Belkin relies on "general objections" throughout;
Specifically: RFPs 1–3, 5–20, 24, interrogatories 1, 3–17**

In all of these responses, Belkin serves one or more objections, stands on them, and then attempts to give an answer "subject to and without waiving" all of those objections. As an example, interrogatory 10 is objectionable, Belkin says, because its phrasing makes it "vague and ambiguous." Nevertheless, Belkin goes on to answer the interrogatory.

The problem with "subject to and without waiving"-type answers is that they are too slippery to mean anything. Gromov is entitled to fair answers to his fair requests. If any discovery request is *truly* vague or ambiguous, Belkin has no business answering it. Belkin must object.

The Rules do not allow a party to both object ***and*** answer. Rule 33(b)(3) and (4); Rule 34(b)(2)(B) ("the response must either state that inspection and related activities will be permitted as requested ***or*** state with specificity the grounds for objecting to the request, including

10

the reasons"); Rule 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection.").

The following authorities support the Plaintiffs:

- "A party cannot object to an interrogatory or request for production, and, at the same time, answer the request for production in the same response. If a party does this, the objection is waived. There is no authority in the Federal Rules of Civil Procedure for reserving objections. Parties have a duty either to answer discovery or object to it." *Jones v. Forrest City Grocery, Inc.,* No. 4:06CV00944 (E.D. Ark. Mar. 16, 2007).

- Wright, Miller & Marcus, *Federal Practice and Procedure: Civil* § 2173: "A voluntary answer to an interrogatory is also a waiver of the objection."

- "[T]he practice of responding to interrogatories and documents requests 'subject to' and/or 'without waiving' objections is 'manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure.'" Heller v. City of Dallas, 303 F.R.D. 466, 486–87 (N.D. Tex. 2014).

- "Without this information, Plaintiff is left guessing as to whether Defendant has produced all documents, or only produced some documents and withheld others on the basis of privilege." *Pro Fit Mgmt., Inc. v. Lady of Am. Franchise Corp.*, No. 08-CV-2662, 2011 WL 939226, at *9 (D. Kan. Feb. 25, 2011).

Belkin should be ordered to amend all of these responses in line with the Rules—either with clear answers, or with valid objections, but not both.

### Issue 11:    Belkin makes boilerplate objections that lack basis in the real world and are not substantiated with facts.

**Requests at issue:**          RFPs 1–23, interrogatories 1–7, 9–14, 16–17

In all of these discovery responses, Belkin reiterates boilerplate in these words: "In addition, Belkin objects to this Request because it is overbroad and unduly burdensome. This Request also seeks information that is neither relevant to the claims or defenses of any party, nor proportional to the needs of the case."

There is no real-world factual basis to assert any of these boilerplate objections. And there is not sufficient information presented with these objections to sustain them. They should be

overruled. A naked assertion of burdensomeness, without a showing as to the scope of the burden, is insufficient. "On the contrary, the party resisting the discovery 'must show specifically . . . how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive'." *Joseph v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982). This simply isn't done here.

Gromov's requests are not burdensome or disproportionate. Just as to the three related models—the Pocket Power 5000, 10000, and 15000—Belkin estimated annual sales of 650,000 units. Even ignoring the "two dozen" other models Belkin discloses in every objection to this discovery, that is easily millions of units sold at a retail cost of perhaps $20–35—with total revenue to Belkin, over the model life of these units in the tens of millions. The case is substantial and Belkin has not demonstrated an undue burden.

Belkin's final objection here is to relevance, but that argument lacks connection to reality. Consider RFP 5, seeking testing data. This is directly relevant to product underperformance, which is the whole basis of this action. Plainly Belkin's internal tests are relevant to the action. But Belkin says they are not.

Consider also RFP 4, where Belkin says the claims in the case "relate to the representations on the labels/packaging and advertisement. It is unclear how the battery pack's design specifications, drawings, and parts list relate to these issues." This makes no sense; *of course* the composition of the power bank, including its design and parts, relate to the action. Belkin takes the position that the "10000" in the model name "refers to the capacity of the power bank's internal lithium polymer battery cell." (Interrogatory 8.) But yet, Belkin objects to producing documents under RFP 4 that would describe that cell as "irrelevant."

All of the boilerplate objections identified here should be overruled.

12

**Issue 12:**   **Belkin asserts privileges that have no basis in law and fails to support its privilege assertions.**

**Requests at issue:**   **All, because of general objections**
**Specifically: RFP 5–13, 19–20, 22**

In these responses, Belkin expressly states that one or more privileges is a bar to producing documents. For example, RFP 5 asked about external factors, such as industry standards, which led Belkin to label its power banks as it does. Belkin objected "to the extent the term, '[a]ll documents,' seeks to elicit information subject to and protected by the attorney-client privilege and/or the attorney work-product doctrine and/or other applicable privilege." In several other requests other than the ones listed in the header, Belkin refers to producing "non-privileged" documents, again implying that it has a privilege to defend. And as to *all* requests, Belkin served its General Objection No. 3, which is a generic defense of privilege also.

But Belkin failed to "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed" sufficient to assess any privilege from discovery. Rule 26(b)(5)(ii). In fact Belkin has never produced a privilege log, despite at least four separate requests by Gromov.

Given Belkin's failure to make the claim of privilege, or to substantiate it, the Court should now order that Belkin has waived all privileges and that all claims of privilege are struck. The Court should also overrule General Objection No. 3. Otherwise, Belkin's current answers will leave Gromov guessing whether the production of documents he will ultimately get has had documents withheld on the basis of some unnamed privilege.

**Issue 14:** **Belkin served general objections to defined terms, which are clear and unambiguous.**

**Requests affected:** **All**

All of Belkin's responses were served subject to General Objections, Nos. 10–14, to terms that Gromov defined. (Gromov's definitions were defined in **Ex. A**, at 1–3.) Each of those objections is meritless. These objections should be overruled.

At the outset, the Court could most efficiently resolve this issue by simply striking all of Belkin's general objections, as Judge Kim did in *Geske*, No. 1:19-cv-5170, doc. 81 (N.D. Ill. Mar. 5, 2023). Belkin's general objections as they stand now infect every one of Belkin's responses, such that Gromov cannot rely on any of them. Belkin's objections are not defensible.

For example, in General Objection No. 10, Belkin objected to the term "power bank" as vague or ambiguous. This objection is nonsensical in light of Belkin's repeat admission that it manufactures "over two dozen" models. Belkin knows what a power bank is; everyone does.

In General Objection No. 11, Belkin objects to the term "charging statements" as vague and ambiguous. There is nothing vague or ambiguous about this definition. The phrase "how the power bank's charge can affect a portable electronic device's charge" refers to the core function of a power bank: to charge another device.

In General Objection No. 12, Belkin objected to the term "output energy." This definition was clear. Moreover, Belkin's objection claims that "output energy" varies based on the device being charged and therefore Belkin can't answer the interrogatories. That is plainly not so. A Duracell AA battery will output the same amount of energy before it dies, whether it is used in a calculator, a Walkman, or a flashlight. This term is unambiguous.

14

In General Objection No. 13, Belkin objected to the term "stated capacity" as vague and ambiguous. It simply is not and this objection is meritless. The same is true about General Objection No. 14, to the terms "label" and "labeling." These definitions are clear. (They also track Federal Trade Commission definitions of the same words.)

The Court should overrule all of these general objections and direct Belkin to answer interrogatories and RFPs that relied on such general objections. This would particularly affect the answer to interrogatories 4, 5, 7, 9–13, all of which contain hedges about "output energy" that Gromov's definition was intended to forestall.

## III.  Conclusion.

Gromov seeks the relief stated in each issue listed above in the form of an order compelling Belkin to make discovery.

Respectfully submitted,

Date: September 14, 2023

/s/ William F. Cash III

William F. Cash III (Ill. Bar No. 6330856)
bcash@levinlaw.com
Matthew D. Schultz (*pro hac vice*)
mschultz@levinlaw.com
Scott Warrick (*pro hac vice*)
swarrick@levinlaw.com
**LEVIN, PAPANTONIO, RAFFERTY,
PROCTOR, BUCHANAN, O'BRIEN, BARR
& MOUGEY, P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Phone: 850-435-7059

Seyed Abbas Kazerounian (Ill. Bar No. 6316129)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Phone: 800-400-6808

Jason A. Ibey (Bar. No. 16691)
jason@kazlg.com
**KAZEROUNI LAW GROUP, APC**
321 N. Mall Drive, Suite R108
St. George, Utah 84790
Phone: 800-400-6808

D. Greg Blankinship (*pro hac vice*)
gblankinship@fbfglaw.com
Bradley F. Silverman (*pro hac vice*)
bsilverman@fbfglaw.com
**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
1 North Broadway, Suite 900
White Plains, NY 10601
Phone: 914-298-3290

*Attorneys for Plaintiff Dennis Gromov*

**CERTIFICATE UNDER LOCAL RULE 37.2**

Gromov and Belkin conferred on the issues raised in this motion by phone on June 9, 2023 for about two hours. The attendees were Scott Warrick, representing Gromov, and Nancy Sims, Patricia Mathy, and Ed Totino, representing Belkin. This conference consisted of good-faith attempts to resolve the differences, but the parties were unable to reach an accord.

Belkin says this was a full conference: "The parties spent over an hour discussing the perceived deficiencies in each side's discovery responses. The call ended cordially with both sides agreeing to look into certain issues before reverting back." (ECF 34, Joint Status Report, at 3.)

The parties have also conferred on other issues, such as the ones discussed on pages 1–2, and on Belkin's request for a protective order.

Belkin did not provide any substantive response after the June 9 conference, nor has it amended any of its answers or produced any documents since July 5.

The parties then conferred further on August 10. Belkin has refused to supplement or amend any of its responses.

/s/ William F. Cash III