IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DENNIS GROMOV, individually and on behalf of all other similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BELKIN INTERNATIONAL, INC., )<br>)<br>Defendant. )<br>) | Case No. 1:22-cv-06918<br><br>Hon. Franklin U. Valderrama |

**DEFENDANT BELKIN INTERNATIONAL, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFFS INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Belkin International, Inc., ("***Belkin***"), by and through its undersigned counsel, hereby answers Plaintiff's First Set of Interrogatories (the "***Requests***").

**GENERAL OBJECTIONS**

Belkin makes the following preliminary statement and general objections to each of Plaintiff's Requests (the "***General Objections***"):

1. Belkin objects to the Requests and their definitions and instructions to the extent that they purport to impose any obligation on Belkin in excess of the requirements set forth in any statute, rule, or order as may be applicable to this case and Belkin, including but not limited to the Federal Rules of Civil Procedure. Belkin's responses to these Requests shall not be construed in any way as an admission that any definitions propounded by Plaintiff binds Belkin either factually or legally.

2. Belkin objects to the Requests to the extent they seek information and/or documents that are not relevant to any claim or defense at issue in this dispute, are not

proportional to the needs of the case, or are otherwise irrelevant to the subject matter of this pending action.

3. Belkin objects to the Requests to the extent that they seek information and/or documents protected by any applicable privilege, immunity, or privacy right, including but not limited to the attorney-client privilege and/or the work product doctrines, and other applicable privacy statutes. Nothing contained in Belkin's responses to the Requests is intended to be, nor should be construed as, a waiver of any protected information in response to the Requests.

4. Belkin objects to the Requests to the extent that they explicitly or implicitly characterize facts, events, circumstances, or issues relating to the subject of this litigation. For instance, requests that seek information concerning "industry standards, trade association recommendations, competitors' trade practices, or similar factors" shall not imply the existence or absence of such things.

5. Belkin objects to the Requests to the extent that they require Belkin to provide a response and/or produce documents on behalf of any entity other than Belkin, the entity sued by Plaintiff in this lawsuit and to which these Requests are directed, including but not limited to any parent, subsidiary, or affiliate entities. Belkin responds to these requests on behalf of Belkin only.

6. Belkin objects to the Requests to the extent that they ask Belkin to use more than reasonable diligence, or make more than a reasonable inquiry, to locate responsive information and/or documents.

7. In responding to the Requests, Belkin does not concede the relevancy, competency, materiality, propriety, or admissibility of any of the information sought therein. Belkin's responses to the Requests are made specifically subject to, and without waiver of,

Belkin's reservation of rights to object on any grounds to the use at any hearings or at trial any information furnished in response to these Requests, including but not limited to Belkin's objections as to privilege, relevancy, competency, materiality, propriety, and admissibility of Belkin's information and/or documents.

8.  All of the objections and responses contained herein are based only upon information and documents presently available and specifically known to Belkin.

9.  Belkin incorporates each of the foregoing General Objections into each of its specific responses to the Requests set forth below as if fully set forth therein. Responses to the Requests are not intended as and shall not be deemed a waiver of any applicable specific objection or General Objection to a particular Request for Production.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

10.  Belkin objects to the definition of "power bank" on the grounds that it is vague and ambiguous because, among other things, Plaintiff states that this term "can also include the concept of a power bank in the abstract." The definition is also overly broad, unduly burdensome, seeks information that is not relevant to any claim or defense at issue in this dispute, and is not proportional to the needs of the case, because it encompasses power banks not at issue in this action, including those manufactured by other companies.

11.  Belkin objects to the definition of "Charging statements" on the grounds that it is vague and ambiguous, particularly with respect to the phrase "how the power bank's charge can affect a portable electronic device's charge." The definition is also overly broad, and unduly burdensome because, among other things, it encompasses "all other statements concerning performance."

12. Belkin objects to the definition of "Output energy" on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, and is not proportionate to the needs of the case, because it is defined as the "energy . . . that a portable electronic device can withdraw from a fully charged power bank." In addition, this definition makes the interrogatories difficult to answer because various factors relevant to "output energy" are unknown, including, but not limited to, the type and model of the portable electronic device being used, the age and condition of that device, and external conditions, such as temperature at the time of use.

13. Belkin objects to the definition of "Stated capacity" on the grounds that it is vague and ambiguous, particularly with respect to the phrase "via any representation."

14. Belkin objects to the definition of "Labeling" on the grounds that is vague and ambiguous, including as to the phrases, "associated with a power bank" and "created or distributed in any way."

## SPECIFIC OBJECTIONS AND INTERROGATORY RESPONSES

1. Identify **all power banks** put out by Belkin since January 1, 2018, including their: name, model number, SKU number, basic characteristics including **stated capacity** and **output energy**, and the first and last month in which the model was distributed to anyone by Belkin.

**RESPONSE:** Belkin incorporates by reference the General Objections set forth above. In addition, Belkin objects to this Request because it is overbroad and unduly burdensome. This Request also seeks information that is neither relevant to the claims or defenses of any party, nor proportional to the needs of the case. Plaintiff alleges that he purchased one Belkin battery pack, the Pocket Power 10K. He therefore lacks standing to assert claims based on any other Belkin battery pack (of which there are over two dozen), and discovery as to these other unpurchased products would be improper. Belkin further objects to this Request because it vague and

4

ambiguous as to the term "basic characteristics." Subject to and without waiving the foregoing objections, Belkin responds as follows: The Complaint alleges that Plaintiff purchased a Pocket Power 10K. (ECF No. 1, ¶ 52.) The model number of this item is F7U020 and the SKU is F7U020btBLK. Relying on the terms as defined by Plaintiff in his Requests, the "output energy" can vary based on multiple factors, such as the type of device being charged, the condition of the battery in that device, the ages of both the device and the Pocket Power 10K, the surrounding temperature, and the cables utilized for charging. This model of power bank originally went on the market in approximately October 2017. Although it may still available for purchase through retailers, Belkin no longer has this item in stock.

2. Identify any **power bank** that Belkin described in interrogatory no. 1, which Belkin contends is *not* substantially similar to all other Belkin power banks, with respect to either (1) basic internal design, (2) basis for making **charging statements**, or (3) the fact that **output energy** and **stated capacity** are different.

RESPONSE: Belkin incorporates by reference the General Objections set forth above. In addition, Belkin objects to this Request because it is overbroad and unduly burdensome. In addition, Belkin objects that the term substantially similar is vague and ambiguous. This Request also seeks information that is neither relevant to the claims or defenses of any party, nor proportional to the needs of the case. Plaintiff alleges that he purchased one Belkin battery pack, the Pocket Power 10K. He therefore lacks standing to assert claims based on any other Belkin battery pack (of which there are over two dozen), and discovery as to these other unpurchased products would be improper.

3. Please state the average retail price and the average wholesale price of each Belkin **power bank**.

RESPONSE: Belkin incorporates by reference the General Objections set forth above.

In addition, Belkin objects to this Request because it is overbroad and unduly burdensome. This Request also seeks information that is neither relevant to the claims or defenses of any party, nor proportional to the needs of the case. Plaintiff alleges that he purchased one Belkin battery pack, the Pocket Power 10K. He therefore lacks standing to assert claims based on any other Belkin battery pack (of which there are over two dozen), and discovery as to these other unpurchased products would be improper. Furthermore, this Request is compound because it seek information regarding "the average retail price and the average wholesale price," which constitute two separate requests. Subject to and without waiving the foregoing objections, Belkin responds as follows: The average wholesale price of the Pocket Power 10K model purported purchased by Plaintiff is $19.45. Belkin lacks visibility into the average retail price, as retailers set their own pricing.

4. Did Belkin rely on any industry standards, industry trade association recommendations, competitors' trade practices, or similar factors outside of Belkin, when Belkin determined to publish any **power bank's stated capacity** in any **labeling** rather than its **output energy?** If so, state the name of the outside factor, the name of the Belkin person relying on it, and the date of the reliance.

**RESPONSE**: Belkin incorporates by reference the General Objections set forth above. In addition, Belkin objects to this Request because it is overbroad and unduly burdensome. This Request also seeks information that is neither relevant to the claims or defenses of any party, nor proportional to the needs of the case. Plaintiff alleges that he purchased one Belkin battery pack, the Pocket Power 10K. He therefore lacks standing to assert claims based on any other Belkin battery pack (of which there are over two dozen), and discovery as to these other unpurchased products would be improper. Belkin also objects to this Request as vague, ambiguous, argumentative, as well assuming facts not in evidence, as to the implication that Belkin was

"determined to publish any power bank's stated capacity in any labeling rather than its output energy." Further, this Request is compound because it includes two separate questions. Subject to and without waiving the foregoing objections, Belkin responds as follows: With respect to the Pocket Power 10K that Plaintiff alleges he purchased, the "output energy" can vary depending on multiple factors and circumstances, including the type of device being charged, the condition of the battery in that device, the ages of both the device and the Pocket Power 10K, the surrounding temperature, and the cables utilized for charging. As a result, the general industry practice is to identify the size of the power pack by the amount of energy that can be stored in its lithium battery polymer battery cells. The International Air Transport Association ("IATA") publishes guidelines on the labeling of power banks using lithium battery cells, which are accessible at the IATA's website. Belkin provides further context to consumers by giving an example of the "output energy" by stating that product can charge an "iPhone 7 (running IOS 10) up to 3 times."

5.      Did Belkin rely on any industry standards, industry trade association recommendations, competitors' trade practices, or similar factors outside of Belkin, when determined to publish **charging statements** in any **labeling**? If so, state the name of the outside factor, the name of the Belkin person relying on it, and the date of the reliance.

**RESPONSE**: Belkin incorporates by reference the General Objections set forth above. In addition, Belkin objects to this Request because it is overbroad and unduly burdensome. This Request also seeks information that is neither relevant to the claims or defenses of any party, nor proportional to the needs of the case. Plaintiff alleges that he purchased one Belkin battery pack, the Pocket Power 10K. He therefore lacks standing to assert claims based on any other Belkin battery pack (of which there are over two dozen), and discovery as to these other unpurchased

products would be improper. Further, Belkin objects to this Request as vague, ambiguous, argumentative, as well assuming facts not in evidence, as to the implication that Belkin was "determined to publish charging statements in any labeling." Subject to and without waiving the foregoing objections, Belkin responds as follows: With respect to the Pocket Power 10K that Plaintiff alleges he purchased, the "output energy" can vary depending on multiple factors and circumstances, including the type of device being charged, the condition of the battery in that device, the ages of both the device and the Pocket Power 10K, the surrounding temperature, and the cables utilized for charging. As a result, the general industry practice is to identify the size of the power pack by the amount of energy that can be stored in its lithium battery polymer battery cells. The IATA publishes guidelines on the labeling of power banks using lithium battery cells, which are accessible at the IATA's website. Belkin provides further context to consumers by giving an example of the "output energy" by stating that product can charge an "iPhone 7 (running IOS 10) up to 3 times."

6. Has Belkin, or any agent or contractor of Belkin (e.g., market research firms, consultants), ever conducted a focus group, consumer survey, or other market research that elicited, analyzed, or reported on consumer understanding of, or confusion about **power bank stated capacity, output energy, charging statements,** or **labeling?** If so, identify the date and location of each, the name and address of the persons who took part, conducted or analyzed the events, and describe any documents prepared for, during or after each event, including any report or analysis.

**RESPONSE**: Belkin incorporates by reference the General Objections set forth above. In addition, Belkin objects to this Request because it is overbroad and unduly burdensome. This Request also seeks information that is neither relevant to the claims or defenses of any party, nor proportional to the needs of the case. Plaintiff alleges that he purchased one Belkin battery pack,

8

the Pocket Power 10K. He therefore lacks standing to assert claims based on any other Belkin battery pack (of which there are over two dozen), and discovery as to these other unpurchased products would be improper. Further, this Request is compound because it seek information regarding "power bank stated capacity, output energy, charging statements, or labeling" which, according to Plaintiff's own definitions, are four different things, and thus should be the subject of separate requests. Subject to and without waiving the foregoing objections, Belkin responds as follows: No.

7. Identify all industry standards, industry trade association recommendations, competitors' trade practices, or other factors Belkin relies on in determining how to compute and describe **power banks' stated capacity**.

**RESPONSE**: Belkin incorporates by reference the General Objections set forth above. In addition, Belkin objects to this Request because it is overbroad and unduly burdensome. This Request also seeks information that is neither relevant to the claims or defenses of any party, nor proportional to the needs of the case. Plaintiff alleges that he purchased one Belkin battery pack, the Pocket Power 10K. He therefore lacks standing to assert claims based on any other Belkin battery pack (of which there are over two dozen), and discovery as to these other unpurchased products would be improper. Subject to and without waiving the foregoing objections, Belkin responds as follows: With respect to the Pocket Power 10K that Plaintiff alleges he purchased, the "output energy" can vary depending on multiple factors and circumstances, including the type of device being charged, the condition of the battery in that device, the ages of both the device and the Pocket Power 10K, the surrounding temperature, and the cables utilized for charging. As a result, the general industry practice is to identify the size of the power pack by the amount of energy that can be stored in its lithium battery polymer battery cells. The IATA

9

publishes guidelines on the labeling of power banks using lithium battery cells, which are accessible at the IATA's website. Belkin provides further context to consumers by giving an example of the "output energy" by stating that product can charge an "iPhone 7 (running IOS 10) up to 3 times."

8. Mr. Gromov's Belkin model 10000 bears the name "Pocket Power 10000." Does "10000" have any **meaning**, such as **stated capacity**?

**RESPONSE**: Belkin incorporates by reference the General Objections set forth above. In addition, Belkin objects to this Request because it is vague and ambiguous as to the term "model 10000." Subject to and without waiving the foregoing objections, Belkin responds as follows: 10000 mAh refers to the capacity of the power bank's internal lithium polymer battery cell.

9. With respect to each Belkin **power bank**, where in the **labeling** does Belkin disclose that **stated capacity**—such as 10,000—reflects a theoretical maximum mAh capacity, not the actual **output energy** available to the consumer?

**RESPONSE**: Belkin incorporates by reference the General Objections set forth above. In addition, Belkin objects to this Request because it is overbroad and unduly burdensome. This Request also seeks information that is neither relevant to the claims or defenses of any party, nor proportional to the needs of the case. Plaintiff alleges that he purchased one Belkin battery pack, the Pocket Power 10K. He therefore lacks standing to assert claims based on any other Belkin battery pack (of which there are over two dozen), and discovery as to these other unpurchased products would be improper. Further, this Request is vague and ambiguous, including as to the term "theoretical maximum mAh capacity." Finally, this Request is argumentative to the extent the phrase,

"where in the labeling does Belkin disclose," implies that there was a need or obligation to disclose. Subject to and without waiving the foregoing objections, Belkin responds as follows: The reference to 10000 mAh on the packaging of the Pocket Power 10K describes the physical property of the power bank's internal lithium polymer battery cells. The packaging specifically references a "10,000 mAh Battery Pack" and "Cell Capacity 10,000 mAh." Because the "output energy" of the Pocket Power 10K can vary depending on multiple factors, the product packaging provides an example of the "output energy" by stating that product can charge an "iPhone 7 (running IOS 10) up to 3 times."

10. With respect to each Belkin **power bank**, where in the **labeling** does Belkin tell consumers whether or how much of the **stated capacity** will be consumed by the **power bank** itself?

**RESPONSE**: Belkin incorporates by reference the General Objections set forth above. In addition, Belkin objects to this Request because it is overbroad and unduly burdensome. This Request also seeks information that is neither relevant to the claims or defenses of any party, nor proportional to the needs of the case. Plaintiff alleges that he purchased one Belkin battery pack, the Pocket Power 10K. He therefore lacks standing to assert claims based on any other Belkin battery pack (of which there are over two dozen), and discovery as to these other unpurchased products would be improper. The Request is also vague and ambiguous, including as the phrase, "consumed by the power bank itself," as, among other things, that will vary with use. Finally, this Request is argumentative to the extent the phrase, "where in the labeling does Belkin tell consumers," implies that there was a need or obligation to disclose. Subject to and without waiving the foregoing objections, Belkin responds as follows: Because the "output energy" of the Pocket Power 10K can vary depending on multiple factors, the amount of "stated capacity" used can vary case by case. As a result, it would be difficult, if not impossible, to state on the

printed packaging how much of the "stated capacity" would be used. However, the packaging does clearly describe to consumers the physical property of the power bank's internal lithium polymer battery cell. Specifically, the packaging references a "10,000 mAh Battery Pack" and "Cell Capacity 10,000 mAh." It provides further context by giving an example of the "output energy" by stating that product can charge an "iPhone 7 (running IOS 10) up to 3 times."

11. With respect to each Belkin **power bank**, where in the **labeling** does Belkin disclose the **output energy**?

**RESPONSE**: Belkin incorporates by reference the General Objections set forth above. In addition, Belkin objects to this Request because it is overbroad and unduly burdensome. This Request also seeks information that is neither relevant to the claims or defenses of any party, nor proportional to the needs of the case. Plaintiff alleges that he purchased one Belkin battery pack, the Pocket Power 10K. He therefore lacks standing to assert claims based on any other Belkin battery pack (of which there are over two dozen), and discovery as to these other unpurchased products would be improper. Finally, this Request is argumentative to the extent the phrase, "where in the labeling does Belkin disclose," implies that there was a need or obligation to disclose. Subject to and without waiving the foregoing objections, Belkin responds as follows: Because the "output energy" of the Pocket Power 10K can vary depending on multiple factors and circumstances, it would be difficult, if not impossible, to state the amount of "output energy" on the printed packaging. However, the packaging does clearly describe to consumers the physical property of the power bank's internal lithium polymer battery cell. Specifically, the packaging references a "10,000 mAh Battery Pack" and "Cell Capacity 10,000 mAh." It provides further context by giving an example of the "output energy" by stating that product can charge an "iPhone 7 (running IOS 10) up to 3 times."

12. Could a consumer compute, based on **charging statements** and/or **stated capacity** that Belkin makes available to the consumer, what a **power bank's** true **output energy** is? How?

**RESPONSE**: Belkin incorporates by reference the General Objections set forth above. In addition, Belkin objects to this Request because it is overbroad and unduly burdensome. This Request also seeks information that is neither relevant to the claims or defenses of any party, nor proportional to the needs of the case. Plaintiff alleges that he purchased one Belkin battery pack, the Pocket Power 10K. He therefore lacks standing to assert claims based on any other Belkin battery pack (of which there are over two dozen), and discovery as to these other unpurchased products would be improper. The Request is also vague, ambiguous, unintelligible, and argumentative, including with respect to the terms, "true" and "true output energy," which implies that there is one such definitive and universal figure. Further, this Request is compound because it seek information regarding "charging statements and/or stated capacity" which, according to Plaintiff's own definitions, are two different things, and thus should be the subject of separate requests." Subject to and without waiving the foregoing objections, Belkin responds as follows: The "output energy" of the Pocket Power 10K can vary depending on multiple factors and circumstances, including the type of device being charged, the condition of the battery in that device, the ages of both the device and the Pocket Power 10K, the surrounding temperature, and the cables utilized for charging. Accordingly, solely having the charging statements and/or stated capacity would not be enough to calculated the "output energy" because, among other things, it is also necessary to know certain specific and individualized facts associated with the consumer (*e.g.*, the age and condition of the consumer's device, the temperature of the location where the Pocket Power 10K is being used) that are relevant to the

13

assessment.

13. Could a consumer compute, based on any information on the **label**, what a **power bank**'s true **output energy** is? How?

**RESPONSE**: Belkin incorporates by reference the General Objections set forth above. In addition, Belkin objects to this Request because it is overbroad and unduly burdensome. This Request also seeks information that is neither relevant to the claims or defenses of any party, nor proportional to the needs of the case. Plaintiff alleges that he purchased one Belkin battery pack, the Pocket Power 10K. He therefore lacks standing to assert claims based on any other Belkin battery pack (of which there are over two dozen), and discovery as to these other unpurchased products would be improper. The Request is also vague, ambiguous, unintelligible, and argumentative, including with respect to the terms, "true" and "true output energy," which implies that there is one such definitive and universal figure. Subject to and without waiving the foregoing objections, Belkin responds as follows: The "output energy" of the Pocket Power 10K can vary depending on multiple factors and circumstances, including the type of device being charged, the condition of the battery in that device, the ages of both the device and the Pocket Power 10K, the surrounding temperature, and the cables utilized for charging. Accordingly, having the information on the label alone would not be enough to calculated the "output energy" because, among other things, it is also necessary to know certain specific and individualized facts associated with the consumer (*e.g.*, the age and condition of the consumer's device, the temperature of the location where the Pocket Power 10K is being used) that are relevant to the assessment.

14. Did Belkin, or an agent or contractor of Belkin, ever test any power bank to determine its **output energy** or to support its **charging statements**? If so, state the date of the test, the

names of all persons designing or performing the test, the **power bank** tested, the consumer device (e.g., phone) charged or discharged used in the test, and the results.

**RESPONSE:** Belkin incorporates by reference the General Objections set forth above. In addition, Belkin objects to this Request because it is overbroad and unduly burdensome. This Request also seeks information that is neither relevant to the claims or defenses of any party, nor proportional to the needs of the case. Plaintiff alleges that he purchased one Belkin battery pack, the Pocket Power 10K. He therefore lacks standing to assert claims based on any other Belkin battery pack (of which there are over two dozen), and discovery as to these other unpurchased products would be improper. In addition, this Request is compound because it seeks information regarding "output energy" and "charging statements" which, according to Plaintiff's own definitions, constitute two different things and should be included as separate requests. Subject to and without waiving the foregoing objections, Belkin responds as follows: The statement on the packaging of the Pocket Power 10K that it "Charges iPhone 7 (running IOS 10) up to 3 times on a single charge" is supported by Belkin's own internal testing. In addition, the statement is supported by the rated capacity for its internal lithium polymer battery cells contained in the test reports provided by third party, Intertek Testing Services Taiwan Ltd., dated May 3, 2017.

15. Which departments or offices inside Belkin are responsible for the factual accuracy of **charging statements** and **stated capacity** on websites, packaging, labels and in advertisements (television, print and online)?

**RESPONSE:** Belkin incorporates by reference the General Objections set forth above. In addition, his Request is compound because it seeks information regarding "charging statements and stated capacity" which, according to Plaintiff's own definitions, constitute two different things and should be included as separate requests. Subject to and without waiving the

15

foregoing objections, Belkin responds as follows: Belkin's Global Product Management Department approved published statements concerning Belkin products, including for the Pocket Power 10K that Plaintiff alleges he purchased.

16. Identify all persons, whether or not employed by Belkin that had responsibility with respect to the content of listed **charging statements** and **stated capacity** of **power banks**. Such identification should include such persons' names, positions, and contact information.

**RESPONSE:** Belkin incorporates by reference the General Objections set forth above. In addition, Belkin objects to this Request because it is overbroad and unduly burdensome. This Request also seeks information that is neither relevant to the claims or defenses of any party, nor proportional to the needs of the case. Plaintiff alleges that he purchased one Belkin battery pack, the Pocket Power 10K. He therefore lacks standing to assert claims based on any other Belkin battery pack (of which there are over two dozen), and discovery as to these other unpurchased products would be improper. This Request is compound because it seeks information regarding "charging statements and stated capacity" which, according to Plaintiff's own definitions, constitute two different things and should be included as separate requests. Subject to and without waiving the foregoing objections, Belkin responds as follows: Belkin's Global Product Management Department approved published statements concerning Belkin products, including for the Pocket Power 10K that Plaintiff alleges he purchased. At the time the published statements associated with the Pocket Power 10K were approved, the Senior Product Manager in charge of this product was Norbert von Boode.

17. As to each **power bank,** describe all documents, including test results, industry standards, or other evidentiary support Belkin relies on for the basis of its **charging statements** and **stated capacity**.

16

**RESPONSE:** Belkin incorporates by reference the General Objections set forth above. In addition, Belkin objects to this Request because it is overbroad and unduly burdensome. This Request also seeks information that is neither relevant to the claims or defenses of any party, nor proportional to the needs of the case. Plaintiff alleges that he purchased one Belkin battery pack, the Pocket Power 10K. He therefore lacks standing to assert claims based on any other Belkin battery pack (of which there are over two dozen), and discovery as to these other unpurchased products would be improper. This Request is compound because it seeks information regarding "charging statements and stated capacity" which, according to Plaintiff's own definitions, constitute two different things and should be included as separate requests. Subject to and without waiving the foregoing objections, Belkin responds as follows: The statement on the packaging of the Pocket Power 10K that it "Charges iPhone 7 (running IOS 10) up to 3 times on a single charge" is supported by internal testing conducted by Belkin. In addition, the device was also sent to third party, Intertek Testing Services Taiwan Ltd., for testing, which resulted in a report dated May 3, 2017. Belkin also relies on the specification provided by the manufacturer of the lithium battery cell, Shenzhen DBK Electronics, entitled "Li-ion polymer battery specification," dated March 17, 2017.

Dated: June 5, 2023   Respectfully submitted,

By: */s/Patricia Mathy*
Patricia Mathy
BAKER & MCKENZIE LLP
300 East Randolph Street, Suite 5000
Chicago, IL 60601
Telephone: (312) 861-2885
patricia.mathy@bakermckenzie.com

17

Edward Totino (*admitted pro hac vice*)
Nancy Nguyen Sims (*admitted pro hac vice*)
BAKER & MCKENZIE LLP
10250 Constellation Blvd., Ste. 1850
Los Angeles, CA 90067
Telephone: (310) 210-4725
edward.totino@bakermckenzie.com
nancy.sims@bakermckenzie.com

*Counsel for Defendant Belkin International, Inc.*

## **VERIFICATION**

I, Melody Tecson, certify and declare that I have been authorized to make this verification by Defendant Belkin International, Inc. ("Defendant"). I have read the foregoing document, "**DEFENDANT BELKIN INTERNATIONAL, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS INTERROGATORIES**" and know the contents thereof. To the extent that I have personal knowledge of the factual information contained in the Interrogatory Responses, the same is true and correct. Insofar as said facts are based on a composite of information from computerized records, other records, or information obtained from employees of Defendant, I do not have personal knowledge concerning all of the information contained in said responses, but I am informed and believe that the information set forth therein for which I lack personal knowledge is true and correct.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Los Angeles County, CA on June 5, 2023.

*/s/ Melody Tecson*

**Melody Tecson**