# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DENNIS GROMOV, individually and on behalf of all other similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> BELKIN INTERNATIONAL, INC., <br><br> Defendant. | Case No. 1:22-cv-06918 <br><br> Hon. Franklin U. Valderrama <br><br> Magistrate Judge Gabriel A. Fuentes |

## DEFENDANT BELKIN INTERNATIONAL, INC.'S MOTION FOR ENTRY OF PROTECTIVE ORDER

**TABLE OF CONTENTS**

**Page No.**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................... | 1 |
| II. | RELEVANT FACTUAL BACKGROUND ........................................................... | 3 |
| | A. Plaintiff's Complaint and Belkin's Motion to Dismiss ............................. | 3 |
| | B. Plaintiff's Subpoenas to Third Party Retailers .......................................... | 4 |
| III. | LEGAL STANDARD ............................................................................................ | 6 |
| IV. | THE THIRD-PARTY SUBPOENAS SHOULD BE SUBSTANTIALLY NARROWED AND LIMITED BY A PROTECTIVE ORDER ....................... | 7 |
| | A. Discovery Should Be Limited to the Power Bank Plaintiff Purchased Pending Belkin's Motion to Dismiss ......................................................... | 7 |
| | B. Discovery Into Any Non-Belkin Power Banks is Irrelevant and Not Proportional to the Needs of the Case ........................................................ | 8 |
| V. | CONCLUSION ..................................................................................................... | 10 |

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Block v. Abbott Laboratories, Inc.*,
  No. 99C7457, 2001 WL 1539159 (N.D. Ill. Dec. 3, 2001) ........................................................6

*Buonavolanto v. LG Chem., Ltd.*,
  2019 WL 8301068 (N.D. Ill. Mar. 8, 2019) ..............................................................................6

*Cowen v. Bank United of Texas, FSB*,
  70 F.3d 937 (7th Cir. 1995) .......................................................................................................6

*Cusumano v. NRB, Inc.*,
  No. 96 C 6876, 1998 WL 673833 (N.D. Ill. Sept. 23, 1998) ....................................................9

*Deleon-Reyes v. Guevara*,
  No. 1:18-cv-01028, 2020 WL 3050230 (N.D. Ill. June 8, 2020) ..............................................8

*Lopez v. City of Chicago*,
  No. 01 C 1823, 2002 WL 335346 (N.D. Ill. Mar. 1, 2002) ......................................................8

*Mfr. Direct, LLC v. Directbuy, Inc.*,
  No. 2:05CV451, 2007 WL 496382 (N.D. Ind. Feb. 12, 2007) .................................................9

*Murata Mfg. Co. v. Bel Fuse, Inc.*,
  234 F.R.D. 175 (N.D. Ill. 2006) ..............................................................................................10

*Rubin v. Islamic Republic of Iran*,
  349 F. Supp. 2d 1108 (N.D. Ill. 2004) ......................................................................................6

*Steel Co. v. Citizens for a Better Environment*,
  523 U.S. 83 (1998) ....................................................................................................................7

*Stock v. Integrated Health Plan, Inc.*,
  241 F.R.D. 618 (S.D. Ill. 2007) ................................................................................................8

*Winona PVD Coatings, LLC v. Excel Enters., LLC*,
  No. 3:16 Civ. 19, 2016 WL 9347091 (N.D. Ind. Apr. 18, 2016) ............................................10

**Other Authorities**

Fed. R. Civ. P. Rule 26 ...................................................................................................1, 6, 9

Fed. R. Civ. P. Rule 34 ...........................................................................................................6

Fed. R. Civ. P. Rule 45 ......................................................................................................1, 6

Defendant Belkin International, Inc. ("Belkin"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 26(c) and 45(c), hereby moves this Court to enter a protective order barring the production of discovery sought by Plaintiff Dennis Gromov ("Plaintiff") in five third-party subpoenas issued on the following retailers: Amazon.com, Inc., Walmart Inc., Target Corporation, The ODP Corporation, and Best Buy Co., Inc. (the "Third-Party Subpoenas").[1] In the alternative, Belkin respectfully moves this Court to enter a protective order barring the production pending a decision by this Court on Belkin's pending Motion to Dismiss (Dkt. No. 22). In support of its motion, Belkin states as follows:

I.  **INTRODUCTION**

As this Court is aware, Plaintiff seeks to represent a putative class against Belkin of individuals who purchased **any** of Belkin's portable power sources ("Power Banks") that charge portable electronic devices ("PEDs"). As Belkin has explained in its pending Motion to Dismiss, Plaintiff—who purchased only one particular model of the many different types of Power Banks sold by Belkin—lacks Article III standing to bring claims based on Power Banks he did not buy. If the Court agrees with Belkin that Plaintiff lacks Article III standing to sue over products he did not purchase, then there is no subject matter jurisdiction to resolve such claims, nor any need to consume significant party and non-party resources conducting discovery into such products.

Despite a motion pending before this Court regarding the threshold, fundamental issue of this Court's subject matter jurisdiction, Plaintiff has chosen not to await this Court's ruling. Instead Plaintiff preemptively seeks voluminous and far reaching discovery from numerous third-parties. Not only does Plaintiff seek the very information that is the subject of the pending motion—other Belkin Power Bank products he did not buy—Plaintiff also seeks information

---

[1] A copy of Plaintiff's Notice of Intent to Serve Rule 45 Subpoenas is attached hereto as **Exhibit A**, which includes the subpoenas to each retailer.

regarding dozens of other Power Bank products from sellers who are not parties to this suit. Plaintiff refuses to defer compliance with the Third-Party Subpoenas until such time as this Court has the opportunity to render its ruling on the pending Motion to Dismiss. Plaintiff should not be permitted to prematurely obtain access to numerous categories of documents before this Court has the opportunity to address whether there is even jurisdiction to entertain claims regarding other Power Bank products.

Further, even apart from Plaintiff's lack of Article III standing, the third-party discovery Plaintiff seeks is overbroad and irrelevant. There is no reason Plaintiff needs to conduct discovery regarding other sellers' Power Bank products to prove his claims regarding Belkin's. Such far-flung discovery is not relevant to any matter in this case and will only place an unnecessary burden on Belkin, which would be forced to review, analyze and isolate from any future use a tremendous volume of irrelevant material at considerable time and expense.

Consequently, the Court should issue a protective order: (1) specifying that the Third-Party Subpoena requests be substantially narrowed and limited to information regarding the specific model Plaintiff purchased; or (2) granting such relief pending the Court's determination as to the proper scope of Plaintiff's Article III standing.[2] In all events, the Court should bar Plaintiff from taking third-party discovery of non-Belkin products.

---

[2] Pursuant to Local Rule 37.2, Belkin attests that it attempted to resolve this discovery dispute with Plaintiff prior to bringing this Motion. Belkin contacted Plaintiff's counsel early on September 20, 2023 to discuss the Third-Party Subpoenas. Counsel responded that he was traveling, but that he had forwarded Belkin's correspondence to his co-counsel to see if anyone else was available for a conference. On September 21, 2023, Belkin followed up with Plaintiff's entire team of seven attorneys to discuss the Third-Party Subpoenas. None of them responded to Belkin's request for a meet and confer conference (although notably they did respond to discuss Plaintiff's requests for depositions of Belkin's witnesses).

II.     **RELEVANT FACTUAL BACKGROUND**

Belkin is a consumer electronics company providing power, protection, productivity, connectivity, audio, security, and home automation solutions for a broad range of consumer electronics and enterprise environments. Among these solutions, Belkin markets and sells a variety of Power Bank products. Compl. ¶ 11.[3] Power Bank products come in different battery capacities, measured in milliampere-hours ("mAh"). *Id.* ¶¶ 6, 29-30. Power Bank products consist of an internal battery cell (or series of batteries cells), which stores energy, and other electronics that convert these batteries' charge to a voltage that PEDs can accept. *Id.* ¶ 44. When energy is transferred from a Power Bank to a PED's battery, some amount of energy loss necessarily occurs because of heat loss, voltage conversion, and other factors. *Id.* ¶ 46. As a result of this energy loss, a Power Bank cannot transfer the entirety of its battery capacity to a PED during the charging process. *Id.* ¶ 47.

A.      **Plaintiff's Complaint and Belkin's Motion to Dismiss**

In this action, Plaintiff alleges that Belkin advertised Power Banks in a deceptive manner because a Power Bank's battery capacity, as measured in mAh, "conveys to reasonable consumers that the power bank is capable of delivering that amount of mAh to charge PEDs." *Id.* ¶ 8. Though Plaintiff purchased only a single, specific type of Belkin Power Bank—a Pocket Power 10K—Plaintiff seeks to represent a class of individuals in Illinois and nine other states who purchased **any** of the numerous types of Power Bank products sold by Belkin. Plaintiff claims he purchased the Belkin Pocket Power 10K in reliance on Belkin's representation that the Pocket Power 10K "had '10000 mAh.'" *Id.* ¶ 55. Although it is true that the Pocket Power 10K has a battery capacity of 10,000 mAh, Plaintiff alleges that he "was forced to recharge the Pocket

---

[3] Belkin references Plaintiff's Complaint for purposes of this Motion, but disputes the allegations therein.

3

Power 10000 more often than he expected." *Id.* ¶ 57. Plaintiff does not allege Belkin ever represented that the Pocket Power 10K transfers 10,000 mAh to PEDs or that no conversion loss occurs during transfer. Nor does Plaintiff otherwise identify any false statement made by Belkin in marketing the Pocket Power 10K. *See generally id.*

On January 27, 2023, Belkin filed a Motion to Dismiss the Complaint on numerous grounds. (Dkt. No. 22). These included that the product packaging for the Pocket Power 10K makes clear that the 10,000 figure refers to the capacity of the product's internal battery, and that Plaintiff lacks Article III standing to bring claims based on Power Bank products that he did not purchase.

**B.     Plaintiff's Subpoenas to Third Party Retailers**

Rather than await this Court's decision regarding the proper scope of this case, Plaintiff seeks to engage in premature, wide-ranging third-party discovery—much of which is irrelevant regardless of how the Court rules on the Motion to Dismiss. In late-August and early-September 2023, Plaintiff served document subpoenas on Amazon.com, Inc., Walmart Inc., Target Corporation, The ODP Corporation, and Best Buy Co., Inc. The subpoenas would require these companies to produce detailed sales information regarding sixty different power bank products, only ten of which appear to be Belkin products, and only one of which is the Pocket Power 10K. Specifically, the subpoenas to each third-party retailer contain the following virtually identical request for each state at issue in this action:

**Document Request No. 1**:

For each Power Bank you sold in Illinois for the period December 9, 2018 through the present, please produce data or documents sufficient to identify the following: (1) Date of sale; (2) Price customer paid, excluding tax, delivery charges, or other fees or charges other than the purchase price; (3) Brand; (4) Model Number; (5) Stock-Keeping Unit; (6) City and state to which the Power Bank was shipped; (7) MilliAmpere hours (mAh) stated in specifications and labels; (8) Voltage stated in specifications and labels; (9) Connector type (e.g., Micro USB); (10) Weight of the device (excluding cables, cords, or other accessories). All data shall be produced in the form it is usually maintained in or a reasonable usable form, i.e., a form that is electronically searchable and sortable.

"Sold in Illinois" means Power Banks that were delivered to an address in Illinois.

For purposes of this request, the term "Power Bank" includes:

Belkin Portable Power Bank Charger 5K; Belkin Portable Power Bank Charger 10K; Belkin Portable Power Bank Charger 20K; Belkin Boost Charge Power Bank 5K; Belkin Boost Charge Power Bank 10K; Belkin Boost Charge Power Bank 20K; Belkin Pocket Power 5K Power Bank; Belkin Pocket Power 10K Power Bank; Belkin Boost Charge Magnetic Wireless Power Bank 2.5K; Belkin Boost Charge Power Bank 2K; Anker PowerCore 5000; Anker PowerCore 10000; Anker PowerCore 13000; Anker PowerCore 20000; Anker PowerCore 20100; Anker PowerCore 26800; Anker PowerCore II 10000; Anker PowerCore II 20000; Anker PowerCore III 10K Wireless; Anker PowerCore III Sense 10K; Anker PowerCore III 19K; Anker PowerCore III Elite 25600; Anker PowerCore Essential 20000; Anker PowerCore Slim 10000; Anker PowerCore+ 26800; Heyday 4000mAh Powerbank; Heyday 6000mAh Powerbank; Heyday 8000mAh Powerbank; Heyday 10000mAh Powerbank; Heyday 20000mAh Powerbank; Mophie Powerstation plus; Mophie Power boost; Mophie Powerstation XL; Mophie Powerstation; Mophie Powerstation PD; Mophie Powerstation mini; Mophie Powerstation pro; Mophie Power boost XL; Mophie Powerstation XXL; Mophie Powerstation plus XL; Mophie Power boost XXL; Mophie Powerstation plus mini; Mophie Powerstation plus mini; Morphie Powerstation plus XL; Miady 5000mAh Portable Charger; Miady 10000mAh Portable Charger; Miady 15000 mAh Portable Charger; Miady 20000mAh Portable Charger; Miady 26800mAh Portable Charger; Tzumi PocketJuice Endurance AC 12K; Tzumi 20000 MAh; Tzumi PocketJuice Endurance AC 10K; Tzumi PocketJuice Endurance AC 12K; Tzumi PocketJuice Endurance AC 6K; Tzumi PocketJuice Endurance AC 8K; Samsung 10000Mah Portable Charger Battery Pack; Samsung Battery Pack 10000mAh; Samsung Battery Pack 2200mAh; Samsung Battery Pack 5100mAh; Samsung Battery Pack 10200mAh.

*See e.g.*, Exhibit A at p. 7.

**III.     LEGAL STANDARD**

Fed. R. Civ. P. 26(c)(1) provides that any party may move the Court for a protective order, and that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense …." The "good cause" requirement of Rule 26(c) is satisfied by showing the irrelevance of the proposed discovery. *See Block v. Abbott Laboratories, Inc.*, No. 99C7457, 2001 WL 1539159, at *2, 4 (N.D. Ill. Dec. 3, 2001) (granting motion for protective order where "the Court f[ound] that such discovery would be irrelevant"); *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1113-14 (N.D. Ill. 2004). The Court also has discretion to control the pace and scope of discovery as part of its case management powers. *See Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 944 (7th Cir. 1995).

Further, the Court may "prescrib[e] a discovery method other than the one selected by the party seeking discovery" and "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(C), (D). The 2015 amendments to Rule 26 emphasize that "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26, Advis. Comm. Notes for 2015 Amendments. The limits set forth under Rule 26(b) apply to non-party subpoenas under Rule 45. *See Buonavolanto v. LG Chem., Ltd.*, 2019 WL 8301068, at *2 (N.D. Ill. Mar. 8, 2019) (citing Fed. R. Civ. P. 45, Advis. Comm. Notes for 1991 Amendments ("The non-party witness is subject to the same scope of discovery under this [R]ule as that person would be as a party to whom a request is addressed pursuant to Rule 34.") (alteration in original)).

In sum, discovery requests to third parties must not only be relevant, but also proportional to the needs of the case. The Third-Party Subpoenas fail to meet either standard.

## IV. THE THIRD-PARTY SUBPOENAS SHOULD BE SUBSTANTIALLY NARROWED AND LIMITED BY A PROTECTIVE ORDER

A federal court does not have subject matter jurisdiction over a claim brought by a plaintiff who lacks Article III standing to bring the claim. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998). Pending before this Court is a fully-briefed Motion to Dismiss that will resolve whether there is subject matter jurisdiction over claims concerning products Plaintiff did not purchase. Rather than wait for the Court to decide this critical, threshold matter, Plaintiff seeks numerous categories of documents on products he did not purchase, and products Belkin does not sell. If the Court agrees that Plaintiff lacks Article III standing to sue over products he did not purchase, the costly and burdensome third-party discovery contemplated by Plaintiff will be rendered entirely moot. But even if the Court concludes there is subject matter jurisdiction over such claims—and there is not—much of the discovery Plaintiff seeks would still be irrelevant. Accordingly, regardless of what happens with respect to the Motion to Dismiss, the Third-Party Subpoenas must be substantially narrowed.

### A. Discovery Should Be Limited to the Power Bank Plaintiff Purchased Pending Belkin's Motion to Dismiss

Each Third-Party Subpoena seeks from retailers such as Amazon and Best Buy voluminous and wildly-overbroad sales data—down to the "connector type" and weight of the device—for dozens of Power Bank models. Only ten of those models are sold by Belkin, and only one of them is the model Plaintiff purchased. The Third-Party Subpoenas also set out a non-exhaustive list of fifty more models sold by other companies, including Anker, Heyday, Mophie, Tzumi, and Samsung, about which Plaintiff seeks extensive information and sales data. Because this list is non-exhaustive, presumably Plaintiff expects these retailers to provide exhaustive sales

data for **every** type and variation of Power Bank sold, not just from the brands specifically enumerated in the Third-Party Subpoenas.

The Court's ruling on the pending Motion to Dismiss has the potential to significantly limit the scope of discovery in this matter to a single Belkin model. The gravamen of Plaintiff's putative class action is that Belkin marketed its Power Banks as being able to transfer their entire battery capacity as measured in mAh to PEDs without any conversion loss. But the packaging for the single product Plaintiff purchased makes no such representation—not even close. Plaintiff should not be permitted to rummage through Belkin's proprietary sales data and those of Belkin's competitors—in an effort to backfill the Complaint and discover potential violations of the Illinois Consumer Fraud and Deceptive Business Practices Act for which he has no standing to sue. Plaintiff's decision to serve its Third-Party Subpoenas before this Court has an opportunity to address the proper scope of Plaintiff's Article III standing is, at a minimum, premature. *See Lopez v. City of Chicago*, No. 01 C 1823, 2002 WL 335346, at *3 (N.D. Ill. Mar. 1, 2002) (deferring discovery requests where requests sought "a large quantity of information and documentation that may not ultimately be needed").

B. **Discovery Into Any Non-Belkin Power Banks is Irrelevant and Not Proportional to the Needs of the Case**

Even aside from Plaintiff's Article III standing, a subpoena is improper if the information it seeks is wholly irrelevant and not proportional to the needs of the case. *See Deleon-Reyes v. Guevara*, No. 1:18-cv-01028, 2020 WL 3050230, at *11-12 (N.D. Ill. June 8, 2020). The Seventh Circuit "has long recognized that the courts have wide discretion in limiting the scope of discovery to topics of ultimate relevance." *Stock v. Integrated Health Plan, Inc.*, 241 F.R.D. 618, 621 (S.D. Ill. 2007) (citation and quotation omitted) The district court may limit third-party subpoenas when the information sought is irrelevant. *Id.* Even if Plaintiff had Article III standing

8

to sue over other Belkin Power Banks—and he does not—the exhaustive sales records Plaintiff regarding Power Banks sold by *other* sellers has no possible relevance to claims against Belkin and is not proportional to the needs of the case.

Under Rule 401 of the Federal Rules of Evidence, evidence is relevant if it "has any tendency" to make a fact of consequence "more or less probable than it would be without the evidence." Fed. R. Evid. 401(a)-(b). In seeking discovery regarding other sellers' Power Banks, the Third-Party Subpoenas far exceed the bounds of relevancy under Rule 26(b)(1) because the information sought does not and cannot have any impact on any fact of consequence concerning Belkin's alleged marketing. *See Mfr. Direct, LLC v. Directbuy, Inc.*, No. 2:05CV451, 2007 WL 496382, at *2-4 (N.D. Ind. Feb. 12, 2007) (granting Defendant's motion for a protective order barring the discovery sought by Plaintiffs third-party subpoena because the discovery sought lacked relevance to any of the remaining issues in the litigation); *Cusumano v. NRB, Inc.*, No. 96 C 6876, 1998 WL 673833, at *4 (N.D. Ill. Sept. 23, 1998) (affirming Magistrate's entry of a protective order prohibiting the third-party discovery sought by Plaintiff).

Under Rule 26(b)(1), discovery must be "proportional to the needs of the case," which, in turn, includes considering "whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26. The burden to search for voluminous sales data, and the effort required to review and analyze such data, for Power Banks that were never manufactured by Belkin, the only defendant in this case, outweighs any theoretical benefit to Plaintiff, if any.

Even if the requested records could somehow be deemed relevant, they are still grossly overbroad. The alleged misrepresentation at issue concerns charging capacity as measured in

9

mAh. Voluminous data regarding voltage, connector type, weight and so forth is not reasonably tailored to the allegations in this case.

Given the irrelevant and overbroad information sought by Plaintiffs, it is clear the Third-Party Subpoenas would do little more than interfere with Belkin's customer relationships and harass many of Belkin's most important retail customers. Indeed, the Third-Party Subpoenas threaten to strain Belkin' ongoing relationships with these customers, as the subpoenas require the retailers to engage in a burdensome search, collection, and production of sensitive business records, even for non-Belkin products. A subpoena that interferes with a party's business relationships while harassing a party's customers and harming its relationships is good cause for a protective order, particularly where there is no need for the information sought. *See e.g., Winona PVD Coatings, LLC v. Excel Enters., LLC*, No. 3:16 Civ. 19, 2016 WL 9347091, at *3 (N.D. Ind. Apr. 18, 2016) (granting motion to quash and protective order where subpoenas of non-party customers interfered with business relationships and burdened non-parties); *Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 182 (N.D. Ill. 2006) (denying motion to vacate protective order barring plaintiff from contacting defendant's customers because "[i]t is easy to see that customers might turn elsewhere for their needs").

In sum, the Court should limit the Third-Party Subpoenas only to the information relevant to Belkin's litigation-specific conduct, which concerns the Pocket Power 10K. In the alternative, at least pending this Court's threshold determination of its own subject matter jurisdiction, the Court should limit the Third-Party Subpoenas to records concerning only the Pocket Power 10K. And in all events, the Court should narrow the Third-Party Subpoenas to only Belkin's products.

**V.     CONCLUSION**

Belkin respectfully requests that the Court enter a protective order limiting Plaintiffs' Third-Party Subpoenas to information regarding the specific model Plaintiff purchased; or,

alternatively, to limit the Third-Party Subpoenas to information regarding the specific model Plaintiff purchased pending the Court's decision on Plaintiff's Article III standing, and to bar Plaintiff from taking third-party discovery of other sellers' Power Banks.

Dated: September 22, 2023          Respectfully submitted,

By: */s/ Katelyn VanDoorne*
    Katelyn VanDoorne
    BAKER & MCKENZIE LLP
    300 East Randolph Street, Suite 5000
    Chicago, IL 60601
    Telephone: (312) 861-3700
    katelyn.vandoorne@bakermckenzie.com

    Edward Totino (admitted *pro hac vice*)
    Nancy Nguyen Sims (admitted *pro hac vice*)
    BAKER & MCKENZIE LLP
    10250 Constellation Blvd., Ste. 1850
    Los Angeles, CA 90067
    Telephone: (310) 210-4725
    edward.totino@bakermckenzie.com
    nancy.sims@bakermckenzie.com

    *Counsel for Defendant Belkin International, Inc.*