UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DENNIS GROMOV,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**BELKIN INTERNATIONAL, INC.,**<br><br>Defendant. | Case No. 1:22-cv-6918<br><br>Judge Valderrama<br><br>Magistrate Judge Fuentes |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
BELKIN'S MOTION FOR A PROTECTIVE ORDER
AS TO THIRD-PARTY SUBPOENAS (ECF NO. 49)**

Plaintiff Dennis Gromov opposes Belkin's motion for a protective order directed at five third-party subpoenas to Amazon, Walmart, Target, Office Depot, and Best Buy. These subpoenas lawfully seek information relevant and necessary for this case—specifically, pricing and sales data *which Belkin itself said it does not have*. Belkin does not claim any proprietary or confidential interest in this information. Indeed, Gromov and some of these retailers were in the process of negotiating these subpoenas before the Court ordered Gromov to halt (an order that Gromov immediately followed). During the negotiations that did take place, some of the retailers had already indicated they were open to producing information. Belkin expresses an unfounded concern for the third parties' "resources," but giant retailers like Amazon and Walmart are more than capable of raising their own objections to subpoenas. The Court should deny this motion and resolve any objections with the subpoenas in the context of a challenge by the retailers themselves—if there is any.

1

I. **Factual allegations.**

Belkin manufactures and sells power banks that are used to charge portable electronic devices. (Compl. ¶¶ 1, 27–28.) The amount of electricity that can be obtained from a power bank to charge devices is measured in milliampere-hours or "mAh." *Id.* ¶ 6. All power banks sold by Belkin contain a representation on their label regarding the amount of mAh they can provide to charge devices. *Id.* 13, 29–31. Gromov, for example, purchased one of Belkin's power banks, the "Pocket Power 10000," with "10000 mAh" displayed prominently on its packaging. *Id.* ¶ 41.

Gromov alleges that Belkin's mAh representations are false and deceptive, because none of Belkin's power banks provide the represented amount of mAh. *Id.* ¶¶ 13, 32, 43, 48, 50. The amount shown as available on the labels is actually only a theoretical maximum capacity which—by design and with Belkin's full knowledge—can never be output to a consumer's devices. The amount missing is about 40% of what's stated on the label.

All of Belkin's power bank models "are substantially similar in form and function and all are sold in substantially similar packaging with no material differences other than their respective purported mAh ratings." *Id.* ¶ 12. Such allegations are further substantiated by testing cited in the Complaint, which shows that the amount of mAh actually delivered by some of Belkin's other power bank models is far lower than what is represented on their labels. *Id.* ¶¶ 33, 51–53; *see also id.* ¶¶ 39, 44–47.

Belkin's misrepresentations are substantially identical across all its products and mislead consumers in the same way regardless of which product was purchased. *Id.* ¶ 12.

II. **Procedural history.**

On January 27, 2023, Belkin filed its motion to dismiss. Gromov opposed it, and Belkin replied. That motion has been fully briefed since March 2023.

On February 27, 2023, the Court set a discovery schedule, setting the close of fact discovery for October 31, 2023. (ECF No. 29.) The Court recently deferred consideration of the parties' stipulation to extend this date, so it remains operative now.

Both parties have engaged in written discovery. As the Court knows, Belkin did not serve a full written production for months (and indeed, its production still is not complete).

On August 24, 2023, Gromov served Belkin with a Notice of Intent to Serve Rule 45 Document Subpoenas, and a copy of the subpoenas. These subpoenas were directed to five national retailers known to carry Belkin's products and power banks that directly compete with Belkin's. The retailers are: The ODP Corp. (Office Depot), Walmart Inc., Target Corporation, Amazon.com, Inc., and Best Buy Co. Inc. All of these subpoenas were served between August 30 and September 5.

The date of production called for in each subpoena was September 22, 2023, which is well before the present close of fact discovery—October 31. Each of the subpoenas requested sales data for Belkin, Anker, Heyday, Mophie, Miady, Tzumi, and Samsung power banks sold by the respective subpoena recipient. These are competitors of Belkin's, some of whom Belkin has identified specifically as such.

Prior to the motion Belkin has filed, Gromov had received responses from each of the five subpoenaed companies, and had held initial conferral calls with Amazon, Walmart and Target; had given Office Depot an extension on response date to October 6; and had a call scheduled with

3

Best Buy for September 25.[1] Specifically, Gromov received a written response from Walmart on September 11; from Target on September 13; from Amazon on September 15; and from Best Buy on September 19. Although no documents were produced by these entities, the conferral calls confirmed that Amazon, Walmart, and Target were willing to produce at least some of the sales data requested, if they got certain product codes (*e.g.*, SKU, UPC, ASIN, DPCI[2]), which they indicated would minimize burden. (Gromov has requested those codes from Belkin via an interrogatory, but Belkin has not yet responded.) No conferral call has taken place yet with Best Buy or Office Depot.

On September 20, more than three weeks after having been notified of Gromov's intent to serve these subpoenas and well after they were actually served, Belkin served a letter on only one of Gromov's several attorneys asking to meet and confer immediately. That attorney was off the grid on a hiking trip out of state. Belkin then sent an email to more of Gromov's attorneys near the end of the day on September 21, a date when several other counsel were out of the office. There was no ability to assemble Gromov's team for a call. The next day, September 22, Belkin filed this motion without having met and conferred with Gromov's counsel. That just happened to be the day the retailers' productions were due to Gromov.

### III. Legal standard.

Rule 26 allows parties to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P.

---

[1] That conferral call with Best Buy was taken off calendar, in light of the Court's September 25 Order (Dkt. No. 50). A copy of that Order was also e-mailed by Plaintiff's counsel to each of the five subpoenaed entities that same day.
[2] One of the entities also asked for Plaintiff to provide Belkin's Tax ID to aid in the search for responsive data.

4

26(b)(1). A district court may issue a protective order only "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Generally, parties to litigation lack standing to challenge a subpoena pursuant to Rule 45. *See, e.g., Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 186 (N.D. Ill. 2013) ("[r]elevance, burden or service objections fall to the subpoena's recipient to make"; such objections "are not enough to confer standing to object to [a non-party] subpoena."); *Uppal v. Rosalind Franklin Univ. Med. & Sci.*, 124 F. Supp. 3d 811, 815 (N.D. Ill. 2015) ("[A] number of courts have held that generally, . . . a party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevance or undue burden.") (citing cases); *Allstate Ins. Co. v. Electrolux Home Prod., Inc.*, No. 16-CV-4161, 2017 U.S. Dist. LEXIS 189229, at *7 (N.D. Ill. Nov. 15, 2017) ("As a non-recipient of the subpoena, Plaintiff has no interest in any undue burden that compliance would require, and Plaintiff thus has no standing to object on that basis."). While courts permit a party who lacks standing to challenge a subpoena through a request for protective order under Rule 26, *see, e.g., Allstate Ins. Co.*, 2017 U.S. Dist. LEXIS, at *7, "the party moving for a protective order bears the burden of showing good cause exists." *Id.* at *4.

Importantly, a party does have standing to object to a subpoena that would access information protected by some litigation privilege, or in which the party has a proprietary interest. For example, a subpoena that would access trade secrets held by a third party might be subject to challenge by a party to the lawsuit. But Belkin claims *no* proprietary or confidential interest in the retail sales data sought by Gromov. (Indeed, as shown later, Belkin denies that it has "visibility" into retail prices at all.)

5

### IV. Argument.

Belkin has not shown good cause for a discovery protective order to block the Gromov's subpoenas to the retailers. First, Belkin rehashes arguments already raised in its pending motion to dismiss. As already argued there, Gromov contends that there is Article III standing for substantially similar Belkin products not purchased by Gromov. Belkin argues that "Plaintiff preemptively seeks . . . discovery" and that Gromov should "defer compliance with the Third-Party Subpoenas until such time as this Court has the opportunity to render its ruling on the pending Motion to Dismiss" (Mot. 5–6.) That position is unreasonable for two reasons: First, with the motion to dismiss having been fully briefed for seven months, the Court *has* had the opportunity to rule on it. Second, it is unfair for Gromov and inefficient for all to wait an unknown amount of time on the motion to dismiss when there is a fact discovery deadline of October 31. Essentially, Belkin wishes for Gromov to take a wait-and-see approach to his own potential detriment. It takes time to prepare and serve third-party subpoenas and afford adequate time for a response and document production—time that Gromov took, in Belkin's full view.

Second, as explained below, the categories of documents sought by Gromov from third parties are relevant, and production would not be unduly burdensome or costly. Belkin can only speculate as to the burden on the five retailers—they are in the best position to know what amount of time and expense it would take to comply with the subpoenas, and as noted above, at least some of them are willing to provide sales data.

Therefore, the Court should deny Belkin's motion and refrain from narrowing the scope of the subpoenas. Notably, none of the five retailers filed a motion to quash. The production deadline for each of the subpoenas was September 22.

6

**A. Discovery from third parties is necessary because Belkin does not have the information Gromov seeks.**

The most straightforward reason for these subpoenas seeking retail sales data is: Belkin does not have it; only these retailers have it.

In its response to Gromov's interrogatory no. 3, Belkin provided an average wholesale price for the Pocket Power 10000 model, then stated: "Belkin lacks visibility into the average retail price, as retailers set their own pricing." (Ex. A at 6.)

This is a straightforward admission that, to get retail price data, subpoenas are necessary. That's why Gromov issued them.

That argument goes double for the price data of competing products. While Belkin may know its own wholesale prices, it does not have that data as it relates to competitors.

While Belkin claims the subpoenas are burdensome on the retailers (some of whom already have agreed to produce data), Belkin points to no other place Gromov can get the information. There is none.

**B. Discovery should extend to all Belkin models in the class definition, not just the Pocket Power 10000.**

As much as anything else, Belkin's motion here is an attempt to bar Gromov from developing evidence related to Belkin products other than the Pocket Power 10000. That issue has already been joined several times—in the fully-briefed motion to dismiss from January 2023, and in Gromov's currently-pending motion to compel dated September 14 (ECF No. 43). Gromov respectfully directs the Court to his briefs in those motions. Whatever Belkin may say on this motion, the Court has *not* ruled that Gromov can have discovery only as to the Pocket Power 10000 model purchased by Gromov.

7

Here, Gromov's class involves "Products" defined as "[a]ll models of power banks sold by Belkin[.]" (Compl. ¶ 12.) Gromov also alleges that all of Belkin's power bank models "are substantially similar in form and function and all are sold in substantially similar packaging with no material differences other than their respective purported mAh ratings." *Id.* And the Complaint further substantiates such allegations by citing to a test performed on the Pocket Power 10000 as well as two of Belkin's other power banks, which all resulted in the same conclusion—Belkin's products consistently do not provide the mAh Belkin claims. *Id.* ¶¶ 51–52. Gromov does claim that all of Belkin's power banks are implicated in this lawsuit, and that all of them make the same misrepresentation and suffer from similar mAh shortcomings.

That argument is backed up by Belkin documents and testimony where Belkin employees have stated that Belkin labels all of its products the same way. Gromov presented this argument, with supporting exhibits, to the Court on August 2. (ECF 36 at 11–13.) And Belkin's global product manager for batteries testified that the mAh number on Belkin's packages is calculated the same way "for all the Belkin power banks that [he is] aware of." (**Ex. B**, Von Boode Dep. 33:22–34:12.)

Gromov's subpoenas seek information about the specifications of Belkin's power bank products and related sales data from ten states implicated by the proposed class definition, as well as competing products in that category. In doing so, Gromov is seeking information relevant to his claim that all of Belkin's power banks suffer from the same misrepresentations.

As a final point, even if the Court did ultimately hold that Gromov has no Article III standing to represent a class of "all Belkin models," Gromov should still be allowed to get discovery into non-Pocket Power 10000 models, because that information is relevant to

8

performing an appropriate price-premium analysis. Indeed, "courts have allowed discovery to include non-accused products where a party either demonstrate relevance of the non-accused products to the allegations or their reasonable similarity to the accused product." *LKQ Corp. v. Kia Motors Am., Inc.*, No. 21 C 3166, 2023 U.S. Dist. LEXIS U.S. Dist. LEXIS 84551, at *6 (N.D. Ill. May 15 2023) (evaluating competing approaches in the patent litigation context); *see also Lekkas v. Mitsubishi Motors Corp.*, No. 97 C 6070, 2000 U.S. Dist. LEXIS 12016, at *8-9 (N.D. Ill. Aug. 15, 2000) (collection of cases relating to design defects).

Therefore, discovery should not be limited to the power bank model purchased by Gromov.

### C. Discovery should include competitors' power banks too.

Belkin's other big argument to limit the scope of discovery is that Gromov cannot have discovery into *non*-Belkin models—again, supposedly as a matter of looking out for these five retailers' best interests in conserving their resources. Belkin also argues that this suit is only about Belkin power banks, so information about competing products is just not relevant.

That position is untenable. Data about competing power banks, including their specifications and their prices, is essential for Gromov's expert to conduct a price-premium analysis. It is absolutely relevant to learn whether Belkin charges $X for a mislabeled 10000 mAh power bank, whereas Belkin's #1 competitor can charge only $Y for a fairly and accurately labeled power bank.

Moreover, Belkin's effort to deny Gromov access to this information via subpoena is inconsistent with Belkin's own practices—Belkin itself monitors competing products and attempts to follow their retail prices. Gromov knows this from Belkin's marketing documents.

9

Gromov alleges that "[b]y deceiving consumers about the Products' mAh, Belkin is able to sell more of, and charge more for, the Products than it would if they were labeled accurately. Further, Belkin is incentivized to mislead consumers to take away market share from competing products, thereby increasing its own sales and profits." (Compl. ¶ 35.) The evidence sought under subpoena will prove this point.

Regarding the burden on the five mega-retailers here—some of whom, again, indicated a willingness to produce the requested data—Belkin has no idea what burden these subpoenas would impose. Significantly, in asserting such burden objection, Belkin itself bears the burden of showing, with specific facts and not speculation, how disclosure of the requested data and information would be particularly burdensome for the non-parties. *Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 U.S. Dist. LEXIS 65847, at *15 (N.D. Ill. Apr. 17, 2019) (overruling all of defendant's proportionality objections because they failed to make a specific showing of the burden to be endured and why discovery was disproportionate to the needs of the case).

Belkin only *speculates* here that the subpoenas would be unduly burdensome and costly. The only purported burden Belkin identifies is the mere possibility that the subpoenas would strain Belkin's ongoing relationship with its customers by interfering with Belkin's customer relations and harassing its customers. *Id.* at 14. That is far from sufficient to meet Belkin's burden of proof.

The cases cited to by Belkin in support of its contention are distinguishable. For instance, in *Murata Mfg. Co. v. Bel Fuse, Inc.*, the parties had already entered a protective order which "precluded [plaintiff] from contacting any of [defendant's] customers to discuss [the] lawsuit." 234 F.R.D. 175, 176 (N.D. Ill. 2006). Similarly, in *Winona Pvd Coatings v. Excel Enters.*, while the court noted customer relations as a relevant factor, it also noted that the subpoenaing party had

10

failed to demonstrate that the subpoenaed parties were the only source of the discovery requested. No. 3:16-cv-19, 2016 U.S. Dist. LEXIS 199120, at *9 (N.D. Ill. Apr. 18, 2016).

In any event, Belkin has failed to satisfy its burden of showing that discovery into non-Belkin power banks would be irrelevant or not proportional to the needs of this class action.

### D. Belkin unreasonably delayed in bringing this motion and failed to meet and confer.

Aside from failing on the merits, Belkin's motion fails on procedural grounds.

"Timeliness is not optional," and courts have faulted parties for waiting to the last minute to object to a subpoena. *See, e.g., Yost v. Carroll*, No. 20 C 5393, 2022 U.S. Dist. LEXIS 192350, at *6 (N.D. Ill. Oct. 21, 2022) (faulting a party for waiting a month and a half to object to a subpoena). LR 37.2 provides that a moving party should at least make a "good faith" attempt to meet and confer before bringing a motion on discovery. *See* LR 37.2; Fed. R. Civ. P. 37(a)(1).

As Gromov has shown, the train left the station and is already most of the way down the tracks. Belkin knew that Gromov intended to subpoena these retailers when it got Gromov's notice on August 24. Gromov made service of the first subpoena on August 30. Belkin knew that the production due date was September 22. Gromov and the five retailers engaged in discussions and are in the process—currently frozen—of negotiating the production of the sought-after data. Belkin knew that was going on.

Yet Belkin said *nothing* until September 21, and did not file this motion until September 22. Belkin never conferred with Gromov's counsel, due to its own choice to wait until the last minute. A simple objection to the notice of intent to subpoena, sent on August 25, followed by a prompt phone meeting, would have been the right thing to do. Belkin should not be permitted to

11

benefit now from its own dilatory conduct. Belkin's dilatory behavior has been a theme throughout this action.

Respectfully, the Court should deny Belkin's motion on timeliness grounds alone.

Respectfully submitted,

Date: September 29, 2023 /s/ William F. Cash III

William F. Cash III (Ill. Bar No. 6330856)
bcash@levinlaw.com
Matthew D. Schultz (*pro hac vice*)
mschultz@levinlaw.com
Scott Warrick (*pro hac vice*)
swarrick@levinlaw.com
**LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY, P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Phone: 850-435-7059

Seyed Abbas Kazerounian (Ill. Bar No. 6316129)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Phone: 800-400-6808

Jason A. Ibey (Bar. No. 16691)
jason@kazlg.com
**KAZEROUNI LAW GROUP, APC**
321 N. Mall Drive, Suite R108
St. George, Utah 84790
Phone: 800-400-6808

        D. Greg Blankinship (*pro hac vice*)
gblankinship@fbfglaw.com
Bradley F. Silverman (*pro hac vice*)
bsilverman@fbfglaw.com
**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**
1 North Broadway, Suite 900
White Plains, NY 10601
Phone: 914-298-3290

*Attorneys for Plaintiff Dennis Gromov*