UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DENNIS GROMOV,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**BELKIN INTERNATIONAL, INC.,**<br><br>Defendant. | Case No. 1:22-cv-6918<br><br>Judge Valderrama<br><br>Magistrate Judge Fuentes |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS
MOTION TO COMPEL BELKIN'S ANSWERS
TO GROMOV'S DISCOVERY REQUESTS (ECF No. 43)**

**I.  Procedural history since the motion was filed.**

Gromov updates the Court with relevant events since this motion was filed.

- September 14: The Court ordered that " 'rolling' document productions need to become 'completed' productions."

- September 19 and 22: Belkin made further productions of documents, including a privilege log.

- September 28: Belkin amended certain interrogatories.

- Today: Belkin's production still is not complete, as will be explained in certain issues below.

Belkin also has failed to provide deposition dates to Gromov despite repeated requests.

- September 14: Gromov requested the depositions of three Belkin employees, two of whom were designated as witnesses in the related *Miley v. Belkin* case in California.

- September 21, 22, 25; October 2, and 4: Gromov followed up with Belkin seeking deposition dates and the contact information of the two witnesses Belkin eventually revealed were no longer Belkin employees.

- October 5: Belkin still has not offered any specific deposition dates.

1

In short, Belkin continues to be dilatory and obstructive.

As to the comments in Belkin's opposition brief, Gromov disagrees with Belkin's assertion that it has been timely and reasonable in making discovery. It is now into October and the fact discovery cutoff is October 31; Belkin has just now produced the bulk of its documents, but still hasn't made a single witness available to depose on any date.

Gromov also disagrees that there was not an adequate meet-and-confer. Gromov will stand on his motion and its certification of all the dates on which the parties conferred.

## II. Argument

**Issue 1:** **Belkin still has not completed its document production.**

**Requests at issue:** RFPs 2, 3, 5, 13, 14, 16, 18, 20, 24

While Belkin finally made a document production, Gromov cannot confirm that it is complete. Gromov intends to take depositions, including a Rule 30(b)(6) deposition, to confirm whether Belkin's production is complete. Gromov does know that Belkin has omitted documents under the objections Belkin asserted, and Gromov turns to those issues below.

**Issue 2:** **Belkin did not produce documents from many categories where Gromov knows such documents actually exist.**

**Requests affected:** Unknown, but at least RFP 7, 10, 12, and 16

Belkin's opposition brief does not respond to Gromov's motion. Issue 2 is not "mooted" by Belkin's untimely production. As Gromov showed, Belkin affirmatively stated back on June 5 that "a reasonable search" was performed, and then stated that there existed *no* documents that responded to RFPs 7, 10, 12, and 16.

This was false, and Belkin's September 19 production of documents shows it, because Belkin did produce such documents after all.

2

While Gromov now has at least some documents, Belkin's reversal did not cure its false certification on June 5. Rule 26(g)(3) mandates a sanction on parties that make false certifications. Gromov still has reason to believe that Belkin's responses are incomplete.

**Issue 3:** **Standing to conduct discovery, and represent a class, of purchasers of substantially similar products.**

**Requests at issue:** RFPs 1–23, interrogatories 1–7, 9–14, 16–17

**Issue 4:** **Belkin did not answer interrogatory number 2, relating to models that are not substantially similar.**

**Requests affected:** Interrogatory 2

Belkin addresses issues 3 and 4 in section IV of its brief, and Belkin's response is essentially a silent concession that Gromov has the better argument.

First, Belkin does not dispute Gromov's legal point that the majority of federal courts in this District, in the Southern District, and indeed nationwide, hold that a plaintiff *does* have Article III standing to represent a class of purchasers of products that are substantially similar to the one the plaintiff purchased. The best Belkin can say is that "a number of courts in this district" have gone the other way.

Second, if the "substantial similarity" test *does* apply (and we think it does), Belkin has said nothing to rebut Gromov's assertion that all Belkin power banks are substantially similar in the way that counts: as Belkin's own witness testified, Belkin uses "common terminology" in labeling all of its power banks; and as Belkin asserted, it follows an industry standard in labeling those power banks. (Mot. 5-6.) Therefore, the products are substantially similar and Belkin has put no fact or argument before the Court to dispute that.

Also, in its recent document production, Belkin produced many documents discussing the Pocket Power 10000 right alongside other models, and Belkin produced dozens of pages of

3

consumer complaints about models other than the Pocket Power 10000. Far from refuting Gromov's factual contention that all models are substantially similar, Belkin has *supported* it.

Third, Belkin does nothing to dispel Gromov's arguments as they apply to interrogatories 1 and 2—where Gromov seeks information about Belkin's power bank line and which models might *not* be substantially similar. (These are the answers Judge Kim compelled in *Geske v. PNY*.) Gromov is at least be entitled to discovery as to the basic facts that ostensibly would support Belkin's contentions: each power bank's specifications and any facts Belkin can come up with (under interrogatory no. 2) as to why a given model is *not* substantially similar to the Pocket Power 10000 that Gromov purchased. This is not "voluminous information," (Opp. 5), this is the most basic information on core product specifications. Gromov is entitled to use this information to demonstrate to the Court—as Mr. Von Boode has testified for Belkin—that all models are labeled the same (deceptive) way. If there is any concern that Gromov should have to demonstrate this threshold answer *before* "full discovery" opens on other models, interrogatories 1 and 2 would supply the necessary information. Belkin has no answer to this.

Fourth, Belkin offers no policy reasons, no prudential reasons, why its position is correct. Nothing prevents Gromov from adequately representing purchasers of the Pocket Power 5000, or 15000, or the other power banks that are substantially similar. Any argument that Gromov is an inadequate class representative is premature until the class certification stage.

Fifth and perhaps most important, even if Belkin is right on the law—even if Gromov has Article III standing to represent only a class of Pocket Power 10000 purchasers—Belkin's argument does not carry the day as to the scope of discovery. Discovery into substantially similar non-10000 products is still relevant to establishing Belkin's liability as to its 10000 models. For

4

example, information about consumer confusion on the 5000 model's misleading labeling is directly relevant to Belkin's notice of confusion over the 10000 model. Information about how Belkin resolved those 5000-model complaints is directly relevant to Belkin's approach to the model 10000. (And indeed—Belkin produced dozens of pages of "non-10000" consumer complaints here, and dozens of pages of e-mails and internal communications dealing with its "fix" to the 5000, 10000, and other models.) How Belkin handled the confusion over all of its power bank models—and again, its own senior global product manager testified that they're all labeled the same—is relevant to consumer confusion over Gromov's specific model.

To use an automotive analogy, in a case involving a class of Toyota Camry drivers and defective airbags, discovery into Toyota Corolla airbag complaints is relevant if the two models share a common airbag component. Information about how Toyota selected the component, tested it, and designed it into Corollas can plainly be relevant to how that component harmed Camry drivers. Discovery into Lexus cars (a second Toyota brand) might also be relevant and appropriate, if those cars used the same airbag component. Nothing about the plaintiff's ultimate standing to carry a class controls the scope of discovery up front. Discovery is allowed under Rule 26 if it is relevant to claims or defenses.

For all these reasons, Belkin's arguments that are premised on the notion that Gromov can get discovery only into the Pocket Power 10000 model should be overruled, and Belkin should be ordered to produce discovery as to each model.

5

**Issue 5:** **Belkin withheld necessary engineering documents on grounds of relevance.**

**Requests at issue:** RFP 4

Belkin offers the Court no argument on issue 5, and merely states that Belkin has now "produced documents sufficient to establish the material specifications of the Pocket Power 10K." (Opp. 6.)

Belkin still has not produced internal drawings or a parts list and has made no argument why it cannot do so. Belkin should be ordered to produce such documents. And Belkin should be ordered to answer RFP 4 as to all of its power banks.

**Issue 6:** **Belkin refused to produce any exemplar power banks.**

**Requests at issue:** RFP 1

A week ago and for the first time ever, Belkin now tells the Court and Gromov that it has no exemplars of the Pocket Power 10000 in its possession and therefore cannot produce one. This is news to Gromov, because as far back as April, Gromov has been asking Belkin to produce an exemplar, and as Gromov's motion notes, Belkin agreed to produce one after the August 10 meet and confer session by phone.

And Belkin *does* have exemplars in its possession. Gromov's August 2 motion to compel included a picture of three of them sitting right in Belkin's expert's office. (ECF 36 at 16; ECF 36-24 (expert's report).) These batteries were tested in the California litigation. Either Belkin has since thrown these batteries away—which would constitute spoliation in the California litigation—or Belkin's Chicago lawyers just haven't done enough to ascertain what their client actually has in its custody or control. Belkin should be ordered to search again or certify the disposition of those batteries, physical evidence that Gromov has shown once existed.

Belkin should be ordered to search for and produce an exemplar of every model.

6

**Issue 7:    Belkin did not fully answer interrogatory 1, regarding product characteristics.**

**Requests affected:    Interrogatory 1**

Despite Belkin serving an amended response (**Ex. A**) on September 28, Belkin still has not answered the "basic characteristics including stated capacity and output energy" of the Pocket Power 10000. Belkin's response hedges its answer by saying that the output energy of the model "can vary based on multiple factors."

In fact, this is a specific, measureable value that Belkin *has* measured and tested. Belkin hired a testing company, Intertek, to assess the number, which Belkin then printed on the device itself. For the Pocket Power 10000, the value was stated to be 6,070 mAh. Gromov is entitled to have this answer admitted under oath in response to his interrogatory.

Why is this value so important? Because it is a key value in establishing that the product labeling is misleading. Gromov observed the 10000 mAh figure on the box, while Belkin retained the true 6,070 mAh to itself. The jury can readily compare these two figures to determine whether Belkin's labeling is misleading. Belkin should be required to admit the value in this interrogatory.

Further, as with the other issues, Belkin should provide a full answer to interrogatory 1 for every power bank in its line.

**Issue 8:    Belkin refused to produce sales or financial information.**

**Requests affected:    RFP 20–23**

Gromov does not concede that Belkin has satisfied these issues, but intends to test them at deposition and confer with Belkin further as necessary.

7

**Issue 9:** Belkin's reference to IATA guidelines, without producing them or identifying them, is meaningless.

**Requests at issue:** RFP 6; interrogatories 4, 5, 7

Belkin did produce certain IATA documents, but it is not clear which of those documents apply to power banks.

Moreover, Belkin simply still has not answered interrogatories 4, 5, or 7 and does not tell the Court otherwise. Belkin should be directed to answer these interrogatories.

**Issue 10:** Belkin gives answers "subject to and without waiving" objections. Belkin must either answer or object and cannot have it both ways.

**Requests at issue:** Generally all, because Belkin relies on "general objections" throughout;
Specifically: RFPs 1–3, 5–20, 24, interrogatories 1, 3–17

Belkin's argument does not respond to Gromov's motion, which is clear enough. Gromov will stand on his motion.

**Issue 11:** Belkin makes boilerplate objections that lack basis in the real world and are not substantiated with facts.

**Requests at issue:** RFPs 1–23, interrogatories 1–7, 9–14, 16–17

Belkin's argument here does not respond to Gromov's motion. Belkin's entire response is essentially directed to the "substantial similarity" arguments above (issues 3 and 4) and ignores Gromov's actual argument. Gromov argued that boilerplate assertions of "burdensome" and "overbroad" should be overruled unless the responding party comes forward with specific facts demonstrating the burden on the party. Belkin does not dispute that it carries the burden to make this showing. Belkin offers no facts to do so. Its objections should be overruled.

8

**Issue 12: Belkin asserts privileges that have no basis in law and fails to support its privilege assertions.**

**Requests at issue:** All, because of general objections
Specifically: RFP 5–13, 19–20, 22

Belkin finally served a privilege log one week ago on September 28 (four months late). Gromov has not completed his review of the log, but has gotten far enough along to predict he will challenge the log as inadequate to ascertain the basis for Belkin's claims. Gromov will withdraw issue 12 today and may re-file a motion directed to Belkin's privilege assertions after the parties have conferred.

**[There was no issue 13.]**

**Issue 14: Belkin served general objections to defined terms, which are clear and unambiguous.**

**Requests affected:** All

Belkin's argument does not respond to Gromov's motion. The terms Gromov employed are clear and not ambiguous; they are terms Belkin itself uses. Gromov will stand on his motion.

9

Respectfully submitted,

Date: October 5, 2023  /s/ William F. Cash III

William F. Cash III (Ill. Bar No. 6330856)
bcash@levinlaw.com
Matthew D. Schultz (*pro hac vice*)
mschultz@levinlaw.com
Scott Warrick (*pro hac vice*)
swarrick@levinlaw.com
**LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY, P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Phone: 850-435-7059

Seyed Abbas Kazerounian (Ill. Bar No. 6316129)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Phone: 800-400-6808

Jason A. Ibey (Bar. No. 16691)
jason@kazlg.com
**KAZEROUNI LAW GROUP, APC**
321 N. Mall Drive, Suite R108
St. George, Utah 84790
Phone: 800-400-6808

D. Greg Blankinship (*pro hac vice*)
gblankinship@fbfglaw.com
Bradley F. Silverman (*pro hac vice*)
bsilverman@fbfglaw.com
**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**
1 North Broadway, Suite 900
White Plains, NY 10601
Phone: 914-298-3290

*Attorneys for Plaintiff Dennis Gromov*

10