**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DENNIS GROMOV, individually and on behalf of all other similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> BELKIN INTERNATIONAL, INC., <br><br> Defendant. | Case No. 1:22-cv-06918 <br><br> Hon. Franklin U. Valderrama <br><br> Magistrate Judge Gabriel A. Fuentes |

**REPLY IN SUPPORT OF DEFENDANT BELKIN INTERNATIONAL, INC.'S
MOTION FOR ENTRY OF PROTECTIVE ORDER**

**TABLE OF CONTENTS**

Page No.

I. INTRODUCTION ........................................................................................................... 1
II. BELKIN'S MOTION IS PROCEDURALLY PROPER AND TIMELY ........................... 2
III. THERE IS GOOD CAUSE TO ISSUE THE PROTECTIVE ORDER .............................. 4
    A. Plaintiff Does Not Address The Burden To Belkin And Thereby Concedes It ...... 4
    B. The Court Should Resolve Belkin's Jurisdictional Challenge Before Opening The Case To Potentially Unnecessary Third-Party Discovery ................................................... 6
    C. Plaintiff Provides No Justification For Discovery Into Non-Belkin Power Banks 8
IV. CONCLUSION ................................................................................................................ 9

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Belcastro v. United Airlines, Inc.*,
  No. 17 C 1682, 2019 WL 1651709 (N.D. Ill. Apr. 17, 2019)......................................................5

*Bonte v. U.S. Bank, N.A.*,
  624 F.3d 461 (7th Cir. 2010) ......................................................................................................4

*Housey v. Procter & Gamble Co.*,
  2022 WL 874731 (S.D.N.Y. Mar. 24, 2022), *aff'd sub nom. Housey v. Proctor
  & Gamble Co.*, 2022 WL 17844403 (2d Cir. Dec. 22, 2022)......................................................7

*Lekkas v. Mitsubishi Motors Corp.*,
  2000 U.S. Dist. LEXIS 12016 (N.D. Ill. Aug. 15, 2000).............................................................8

*LKQ Corp. v. Kia Motors Am., Inc.*,
  No. 21 C 3166, 2023 WL 3455315 (N.D. Ill. May 15, 2023) .....................................................8

*Reed v. Wexford Health Sources, Inc.*,
  No. 20-CV-01139-SPM, 2021 WL 5578076 (S.D. Ill. Oct. 19, 2021).......................................3

*Wojtas v. Capitol Guardian Trust Co.*,
  477 F.3d 924 (7th Cir. 2007) ......................................................................................................5

*Yost v. Carroll*,
  2022 WL 13831548 (N.D. Ill. Oct. 21, 2022)............................................................................3

**Other Authorities**

Fed. R. Civ. P. 26(c) .........................................................................................................................3

Fed. R. Civ. P. 45 .............................................................................................................................3

I.    INTRODUCTION

Plaintiff's opposition identifies no persuasive reason why he should be permitted to forge ahead with wide-ranging, invasive third-party discovery into Power Banks[1] that are not at issue in this case. The Third-Party Subpoenas seek voluminous and wildly-overbroad sales data for dozens of Power Bank models. Only ten of those models are sold by Belkin, and only one of them is the model Plaintiff purchased. While Plaintiff claims he has contacted each of the retailers targeted by the Third-Party Subpoenas, Plaintiffs make no mention as to the numerous Power Bank manufacturers whose products are implicated by the subpoenas, such as Anker and Samsung, whose confidential sales and other data is now at risk. At a minimum, the Court should provide these manufacturers the opportunity to object or otherwise respond before this sensitive information is disclosed.

Misapprehending Belkin's argument on burden, Plaintiff's opposition focuses exclusively on what Plaintiff perceives to be the limited burden to retailers, ignoring Belkin's burden to sort through and process massive sales data that is not its own. Belkin should not be forced to undertake the significant burden of reviewing, analyzing and isolating from any future use a tremendous volume of irrelevant material, much of which may take the form of complex, multi-layered data and historical records comprised of tens of thousands of data points. Indeed, Plaintiff does not even dispute the burden Belkin faces, thereby conceding it. Nor does Plaintiff seriously dispute the risk that such burdensome discovery might strain Belkin's relationships with its customers. Instead, Plaintiff offers frivolous procedural arguments that this Court should reject out of hand.

---

[1] Capitalized terms used herein, and not otherwise defined have the meaning ascribed to them in Belkin's Motion for a Protective Order.

Amplifying the burdensome and harassing nature of the Third-Party Subpoenas is the utter irrelevance of the information sought. Plaintiff attempts to conjure a justification for the remarkable breadth of the Third-Party Subpoenas by claiming the data is needed for a price premium analysis for damages. But much (and perhaps all) of the discovery sought by the Third-Party Subpoenas would be irrelevant to such an analysis. Before proceeding with a price premium analysis, Plaintiff would have to identify products that make different mAh representations than those made by Belkin, but Plaintiff has made no effort to do that. Instead, he seeks financial and sales data on a multitude of products made by numerous manufacturers regardless of what representations were made. Plaintiff has failed to his homework and seeks to shift the burden of this failure to Belkin and its customers. This is improper. Accordingly, most if not all of the massive third-party discovery Plaintiff seeks is entirely irrelevant, even for the sole purpose Plaintiff claims. If the Court is inclined to allow any this discovery to proceed, it should first require Plaintiff to limit the subpoenas to Power Banks that do not contain alleged misrepresentations.

For all these reasons, as set forth in further detail below and in Belkin's moving papers, the Court should issue a protective order: (1) specifying that the Third-Party Subpoena requests be substantially narrowed and limited to information regarding the specific model Plaintiff purchased; or (2) granting such relief pending the Court's determination as to the proper scope of Plaintiff's Article III standing. In all events, the Court should bar Plaintiff from taking third-party discovery of non-Belkin products.

## II. BELKIN'S MOTION IS PROCEDURALLY PROPER AND TIMELY

Plaintiff argues that Belkin's motion fails on procedural grounds because Belkin waited too long to file the motion and did not meet and confer. Plaintiff is wrong on both counts.

2

First, "[t]here is no deadline for filing a motion for a protective order" under Rule 26. *Reed v. Wexford Health Sources, Inc.*, No. 20-CV-01139-SPM, 2021 WL 5578076, at *3 (S.D. Ill. Oct. 19, 2021); *see* Fed. R. Civ. P. 26(c). Plaintiff cites *Yost v. Carroll*, 2022 WL 13831548 (N.D. Ill. Oct. 21, 2022) for the proposition that "[t]imeliness is not optional." *Id.* at *2. But *Yost* concerned a motion for a protective order under Rule 45, which requires the objecting party to raise its objection before "the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(c)(2)(B). Although Federal Rule of Civil Procedure 26 contains no such deadline, Belkin moved by the date set for production in the Third-Party Subpoenas, and thus the motion was timely by any reasonable measure.

Second, Plaintiff's argument regarding Belkin's meet-and-confer efforts misstates the record. On September 20, 2023, counsel for Belkin emailed counsel for Plaintiff to request a telephonic meet and confer. In his Opposition, Plaintiff misleadingly suggests that his counsel did not have the opportunity to review Belkin's meet and confer correspondence because his counsel was "off the grid." Opp. at 4. Actually, counsel for Plaintiff, though purportedly on a trip "off the grid," had email access and responded to Belkin's email on September 20, stating that he had sent Belkin's meet and confer correspondence to his colleagues.[2] Notably, counsel also was available that week to meet and confer with Belkin about the witnesses that he wished to depose.[3]

Plaintiff also misstates the record with his assertion that Belkin's second attempt to meet and confer—an email on September 21, 2023—was sent "near the end of the day." Opp. at 4. That is false. Belkin sent the meet and confer email at 6:38 a.m. Central Time to Plaintiff's team

---

[2] Email from B. Cash to K. VanDoorne and others, dated September 20, 2023, attached hereto as Exhibit A.
[3] Email from B. Cash to K. VanDoorne and others dated September 21, 2023, attached hereto as Exhibit B.

of seven attorneys seeking to meet and confer.[4] Not a single one of Plaintiff's multiple attorneys responded to counsel's request, though later that day, as discussed above, Plaintiff's counsel sent correspondence to discuss Plaintiff's requests for depositions of Belkin's witnesses.[5] Belkin did not file its Motion until the evening of September 22, 2023, allowing Plaintiff's counsel an additional day to respond to its requests for a meet and confer (and they did not do so).

Thus, Plaintiff ignored both of Belkin's requests to meet and confer. Belkin heard nothing, even after filing its Motion when a telephonic meet and confer might have obviated or at least narrowed the parties' dispute. Rather than respond to Belkin's outreach in any way, Plaintiff simply ignored Belkin, then filed an opposition blaming Belkin for not meeting and conferring. But consistent with Local Rule 37.2, Belkin "attempt[ed] to engage in . . . consultation" and those attempts "were unsuccessful due to no fault of counsel's."

### III. THERE IS GOOD CAUSE TO ISSUE THE PROTECTIVE ORDER

#### A. Plaintiff Does Not Address The Burden To Belkin And Thereby Concedes It

As outlined in Belkin's moving papers, the Third-Party Subpoenas would impose significant burdens on Belkin as Belkin would be required to review, analyze and isolate from any future use a tremendous volume of irrelevant material at considerable time and expense. This not only includes the quantity of documents, but the quantity and complexity of data that Belkin would need to process, sort, analyze, and understand. Plaintiff does not dispute that Belkin faces such a burden. In fact, Plaintiff completely ignores the burden to Belkin, thereby conceding the issue. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an

---

[4] Email from K. VanDoorne to B. Cash and others dated September 21, 2023, attached hereto as Exhibit A.
[5] Email from B. Cash to K. VanDoorne and others dated September 21, 2023, attached hereto as Exhibit B.

4

argument . . . results in waiver."); *Wojtas v. Capitol Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) ("failure to offer any opposition to [Defendant's argument] constituted a waiver").

Rather than address the burden to Belkin of sorting through and reviewing potentially tens of thousands of irrelevant documents, Plaintiff speculates as to the purported lack of burden on the retailers he subpoenaed. *See* Opp. at 5, 9. But, Belkin does not raise any burden arguments on behalf of the retailers, and does not challenge the Third-Party Subpoenas under Federal Rule of Civil Procedure 45. Accordingly, Plaintiff's speculation regarding the supposed lack of any burden to retailers is irrelevant to Belkin's motion. And because the burden to retailers is not at issue in this motion, Plaintiff's reliance on *Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 WL 1651709 (N.D. Ill. Apr. 17, 2019), is misplaced. In *Belcastro*, the court explained that a party objecting to producing documents on burden grounds must "state . . . what documents would have to be reviewed, what costs would be incurred, or how long it would take to respond." *Id.* at *4. Belkin need not provide that level of specificity because it is not the party producing the documents.

While Belkin cannot quantify the precise number of documents at issue, there is no doubt that the voluminous, complex information and data sought in the Third-Party Subpoenas will require dozens of hours by multiple individuals, sorting through, processing, reviewing, analyzing, and isolating multiple, data-intensive productions comprised of potentially tens of thousands of complex data aggregations. Each Third-Party Subpoena seeks from retailers such as Amazon and Best Buy voluminous and wildly-overbroad sales data—down to the "connector type" and weight of the device—for dozens of Power Bank models. Only ten of those models are made by Belkin, and only one of them is the model Plaintiff purchased. The Third-Party Subpoenas seek this massive amount of data for more than fifty Power Bank models

5

manufactured by other companies, including Anker, Heyday, Mophie, Tzumi, and Samsung. While the parties cannot completely avoid the burdens of document discovery, there is no reason to force Belkin to incur those costs for documents that have absolutely no relevance to this case.

While Plaintiff claims some of the retailers are prepared to produce some amount of responsive documents, Plaintiff is conspicuously silent as to the Power Bank companies themselves. Plaintiff does not say whether it has contacted any of these manufacturers or whether they are otherwise aware that their proprietary sales data may end up in the hands of Plaintiff and their competitor, Belkin. If the Court is inclined to permit Plaintiff's third-party discovery to go forward in any capacity, it should at least require Plaintiff to give the manufacturers notice and an opportunity to object or seek other appropriate relief, as Belkin certainly would if it were a third party to this case. Besides being irrelevant, much of the data Plaintiff seeks is highly sensitive, competitive information.

Plaintiff also gives short shrift to Belkin's legitimate, reasonable concerns that Plaintiff's invasive discovery will strain Belkin's relationship with retailers that sell its products. *See* Opp. at 10. Plaintiff does not dispute that the subpoenas might interfere with Belkin's customer relationships. As explained below, the voluminous, wide-ranging discovery sought by the Third-Party Subpoenas has no possible relevance to this case. Given the scant potential relevance of the discovery sought, the only plausible explanation for the Third-Party Subpoenas is that they are designed to exert pressure on Belkin by straining its relationships with customers.

### B. The Court Should Resolve Belkin's Jurisdictional Challenge Before Opening The Case To Potentially Unnecessary Third-Party Discovery

Plaintiff does not dispute that Belkin's Article III standing argument presents a threshold question as to this Court's subject matter jurisdiction. Precisely because this Court may not have jurisdiction over claims concerning Belkin products other than the one Plaintiff brought, Belkin

6

sensibly proposed staying discovery as to these other products. A stay could spare the Court and parties expending resources conducting discovery that Belkin's Motion to Dismiss may render unnecessary. Plaintiff nevertheless argues that onerous third-party discovery should move forward in full, immediately because the Motion to Dismiss has been pending for seven months. Opp. at 6. But the pendency of the Motion to Dismiss only underscores the finite resources this Court has to attend to hundreds of cases on its docket. The parties should not add to that burden by engaging in potentially unnecessary third-party discovery.

Plaintiff also argues that it is "unfair" and "inefficient" to await the Court's decision on the Motion to Dismiss because the fact discovery deadline is October 31. Opp. at 6. This concern can be easily addressed by the Court through the parties' joint request for a discovery extension, which the parties raised in the Joint Report of the Parties filed on September 14, 2023. (Dkt. 44). Moreover, had Plaintiff bothered to respond to Belkin's meet-and-confer efforts, the parties could have discussed solutions such as stipulations regarding the discovery cut-off that addressed Plaintiff's purported concerns. Instead, Plaintiff opted for the most inefficient course possible—refusing to meet and confer and forcing motion practice and this Court's intervention.

Finally, Plaintiff argues that that even if Belkin prevails on its Article III standing argument, discovery on other Belkin models is still relevant to performing a "price-premium analysis." Opp. at 8-9. It is far from apparent how Belkin models that are not at issue in this case could be relevant to a price-premium analysis. *See, e.g., Housey v. Procter & Gamble Co.*, 2022 WL 874731, at *8 (S.D.N.Y. Mar. 24, 2022), *aff'd sub nom. Housey v. Proctor & Gamble Co.*, 2022 WL 17844403 (2d Cir. Dec. 22, 2022) (rejecting price premium theory comparing Crest's Charcoal Toothpastes to the "Crest + Scope Outlast Complete Whitening Toothpaste" product line, explaining that "Plaintiff cannot compare the toothpaste at issue to a completely different

7

product in order to manufacture a price premium"). Plaintiff does not explain his proposed analysis so the Court should reject it as a basis for discovery.

Rather than offer any argument relevant to his pricing premium theory, Plaintiff directs this Court to *LKQ Corp. v. Kia Motors Am., Inc.*, No. 21 C 3166, 2023 WL 3455315 (N.D. Ill. May 15, 2023); and *Lekkas v. Mitsubishi Motors Corp.*, 2000 U.S. Dist. LEXIS 12016 (N.D. Ill. Aug. 15, 2000). Neither case has any bearing here. In *LKQ*, which was a patent infringement case, the court held that the claimant could seek discovery regarding un-accused product parts from defendant "as long as discovery [was] narrowly tailored to the specific parts that could infringe." 2023 WL 3455315, at *4. In *Lekkas*, which was a product liability case, the court held that "prior accidents involving different but similar products are relevant in products liability litigation to show notice to the defendant 'of the danger and cause of the accident.'" 2000 U.S. Dist. LEXIS 12016, at *9. Neither of these cases has anything to do with price premium theories, damages, class actions, or even third-party discovery.

## C. **Plaintiff Provides No Justification For Discovery Into Non-Belkin Power Banks**

Plaintiff argues that data regarding non-Belkin Power Banks is "essential" to a price-premium analysis. Plaintiff does not argue that such data is necessary to conduct market surveys or calculate an inherent value for the Pocket Power 10K. Instead, Plaintiff confirms that his approach would compare the price of the Pocket Power 10K with products that do not contain allegedly false representations regarding mAh capacity. *See* Opp. at 9 ("It is absolutely relevant to learn whether Belkin charges $X for a mislabeled 10000 mAh power bank, whereas Belkin's #1 competitor can charge only $Y for a fairly and accurately labeled power bank."). But Plaintiff has failed to do his homework.

8

Even a cursory review of retailer websites such as Amazon and Target confirms that every Power Bank, regardless of the brand, lists its mAh capacity and thus is not "fairly and accurately labeled" according to Plaintiff's theory of the case unless they contain some additional disclaimer. As the Complaint alleges, conversion loss is unavoidable. *See* Compl. ¶ 48 ("This conversion and distribution necessarily reduces the amount of available mAh."). Thus, under Plaintiff's theory, **every** Power Bank model that references its mAh capacity, unless it contains a disclaimer, misrepresents the amount of power delivered. Plaintiff's price premium analysis, to the extent it is based on other Power Bank models with the same alleged "misrepresentation" is untenable, and data regarding these models is irrelevant.

## IV. CONCLUSION

Belkin respectfully requests that the Court enter a protective order limiting Plaintiffs' Third-Party Subpoenas to information regarding the specific model Plaintiff purchased; or, alternatively, to limit the Third-Party Subpoenas to information regarding the specific model Plaintiff purchased pending the Court's decision on Plaintiff's Article III standing, and to bar Plaintiff from taking third-party discovery of other manufacturers' Power Banks.

Dated: October 5, 2023          Respectfully submitted,

         By: */s/ Katelyn VanDoorne*
            Katelyn VanDoorne
            BAKER & MCKENZIE LLP
            300 East Randolph Street, Suite 5000
            Chicago, IL 60601
            Telephone: (312) 861-3700
            katelyn.vandoorne@bakermckenzie.com

            Edward Totino (admitted *pro hac vice*)
            Nancy Nguyen Sims (admitted *pro hac vice*)
            BAKER & MCKENZIE LLP
            10250 Constellation Blvd., Ste. 1850
            Los Angeles, CA 90067
            Telephone: (310) 210-4725
            edward.totino@bakermckenzie.com
            nancy.sims@bakermckenzie.com

            *Counsel for Defendant Belkin International, Inc.*