UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DENNIS GROMOV,** individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:22-cv-6918 |
| *v.* | Judge Valderrama |
| **BELKIN INTERNATIONAL, INC.,** | Magistrate Judge Fuentes |
| Defendant. | |

**JOINT REPORT OF THE PARTIES**

The Court ordered the parties to file a "joint written status report . . . on their progress on the product sampling issues and a timetable for defendant's further compliance with the Order." (ECF No. 55.)

**I.     History of meeting and conferring.**

*Gromov's position:*

The Court's order was issued on October 10. The Court directed Belkin to answer Gromov's interrogatory no. 2 by October 26. The Court also directed the parties to "confer as directed in the Order promptly after 10/26/23." (ECF No. 55.) The Court also ordered:

> "Broadening permissible discovery past the single Pocket Power 10K product changes the landscape of Defendant's discovery responses significantly, and the parties now will need to confer further to develop a limited use of power bank products, other than the Pocket Power 10K, as to which Defendant must respond in discovery. Counsel may have much to discuss, and the conferrals will have to be more in-depth and meaningful than they have been so far."

(ECF No. 56 at 6–7.)

1

Despite these directives to confer, Belkin has repeatedly thwarted Gromov's efforts to confer on these topics. Specifically:

- On October 20, the parties had a meet-and-confer call to discuss the still-not-resolved deposition dates issue. The day before, October 19, Gromov sent Belkin a lengthy e-mail asking Belkin to discuss specific topics raised by the Court's order (chiefly, the product sampling issue and Belkin's supplementation of its responses). **(Ex. P1.)** However, on the October 20 call, Belkin's counsel refused to discuss **any** of these matters, stating that the Court had directed Belkin to serve the new interrogatory response by October 26, that counsel had no duty to confer about anything prior to that, and that Belkin's counsel needed more time to check with their client.

- In a follow-up e-mail to the October 20 call, Gromov wrote to Belkin: "We agreed to set a time for the followup call, but we didn't. So what is your availability on the 27th or 28th for a followup?" Belkin did not respond at all.

- On October 24, Gromov asked again for dates to confer: "Asking again about availability to meet and confer. Never got an answer from you." Belkin did not respond to that e-mail either.

- During a call the parties had on an unrelated matter on October 25, Belkin's counsel again refused to discuss anything about the product sampling issue, saying that it would be "inappropriate" to do so until Belkin served its answer to interrogatory no. 2.

- Also on October 25, Belkin's counsel finally agreed to set a meet-and-confer for October 30.

October 30 finally came, and the parties held a 60-minute phone call. Belkin was not prepared for that session. Essentially, it failed to appear. There was no topic on which Belkin was able or willing to provide any further information.

Belkin also did not come prepared with any answer to the Court's directive that the parties must agree on "a timetable for defendant's further compliance with the Order." Belkin even disputed that this was part of the Court's order until Gromov pointed to the language.

On every topic, Belkin's counsel's response was basically either "we have to check with the client" or "we believe we have nothing left to produce but we're not sure."

Gromov provided a draft of this joint report to Belkin on October 31. Therefore, Belkin had Gromov's full position as of that moment, in writing. This report was updated after the next call.

As for a follow-up call, Belkin made no available time whatsoever available to confer on October 31 other than after business hours, which conflicts with family obligations. On November 1, the only time Belkin made available was 5pm Central Time. That is a pattern, where Belkin offers times that are after hours or literally at the last minute.

So the parties conferred again on November 1. Belkin's counsel had scheduled some other call for 5:30pm, so the call in this case was limited to 30 minutes and the Belkin attorneys ended before we were done. On the November 1 call, Belkin's position was not materially changed. Belkin's counsel continued to state that they were "still checking" with Belkin on various matters.

Belkin's conduct is not serious and not in good faith. With just hours left to go before the Court's deadline to file this report, the parties are no closer to resolving their dispute. Belkin's brinksmanship and gamesmanship indicates a party unwilling to meaningfully confer or follow the orders of this Court. This conduct is designed to run out the clock.

Gromov would welcome the opportunity to have a conference, in person, with the Court.

***Belkin's position:***

Belkin has timely and promptly complied with this Court's orders to meet and confer. As the Court knows, it ordered Belkin to serve its revised response to Interrogatory No. 2, which seeks information regarding which power banks are not substantially similar to the Pocket Power 10K that Plaintiff purchased, by October 26, 2023. The Court acknowledged that Belkin's response to Interrogatory No. 2 would be helpful in guiding the parties toward selection of a sample set of

power banks for purposes of responding to other document requests, and ordered the parties to meet and confer promptly "*after October 26* over the scope and sampling issues on the Motion to Compel." (Dkt. 56, p. 10) (emphasis added). Contrary to Plaintiff's counsel's suggestions otherwise, his attempts to prematurely raise this issue on October 20 and 25 before Belkin responded to Interrogatory No. 2 do not render Belkin's meet and confer efforts untimely. In fact, discussing these issues during the October 20, 2023 meet confer (which was related to deposition scheduling) would have been futile.

Plaintiff's counsel often inaccurately recounts the parties' discussions (possibly in an effort to create an inaccurate record favorable to Plaintiff). For example, Plaintiff's counsel claims that Belkin did not respond to his October 20 email, but Belkin's counsel replied the next morning, stating, "in the interest of efficiency" it would "focus on the more immediate issue of deposition scheduling" (which was the subject of the October 20 meet and confer) and table Plaintiff's counsel's misleading and inaccurate summary of the meet and confer for another day~~,.~~ [1]

Consistent with this Court's directives, Belkin served its revised response to Interrogatory No. 2 on October 26, 2023, explaining which power banks it contends ~~were~~are not

---

[1] Plaintiff's counsel has repeated tried to create an inaccurate record, accusing Belkin of, among other things, "last minute" drafts of joint statements. These accusations are misleading. In connection with the last joint statement filed on September 14, 2023, Plaintiff's counsel made no efforts whatsoever to initiate the preparation of the document. In fact, it was Belkin's counsel who first contacted Plaintiff's counsel to initiate discussions on the joint statement, which then led to the parties working up to the deadline to submit the filing. To cast blame on Belkin is simply improper and unfair.

Indeed, in connection with this joint statement, Plaintiff's counsel stated he would circulate a draft on October 30 and, based on that timeline, Belkin agreed to provide its portion of the statement by noon CT on November 1. However, Plaintiff's counsel circulated his draft a day late (on the afternoon of October 31 – on Halloween, which as Plaintiff's counsel noted, conflicts

substantially similar to the Pocket Power 10K Plaintiff purchased and why. Because counsel for Belkin was travelling on Friday, October 27, Belkin offered Monday, October 30, the next business day to meet and confer. In short, Belkin timely served its interrogatory response, and agreed to promptly meet and confer two business days later.

The parties subsequently met and conferred on Monday, October 30. Plaintiff's statement that Belkin "failed to appear" is puzzling, as the parties spoke for an hour, as Plaintiff Plaintiff's counsel acknowledged. During that call, Plaintiff's counsel never asked specific questions about Belkin's interrogatory response, but spent much time complaining about the call not being scheduled earlier. In any event, and as explained below, Plaintiff's counsel sought documents that do not exist and asked Belkin's counsel to commit to time tables to produce documents before the scope of discovery is even confirmed. Stated differently, it is unfair to demand that Belkin commit to a timeline to produce when it remains undetermined what it is supposed to produce. At the end of the call, the parties agreed to set aside more time to continue their discussions.

Plaintiff's counsel also misstates Belkin's meet and confer efforts during the November 1, 2023 call. On that call, Belkin offered a sampling of products which included the Pocket Power 5K, Pocket Power 10K, and Pocket Power 15K, and a reasonable time tables for its compliance with the Court's order, to the extent such time tables are determinable at this time. Plaintiff's counsel rejected this offer. To be clear, Belkin proposed a representative sampling and a timetable for compliance, both of which Plaintiff's counsel rejected, and instead, though this status report,

with family obligations, thereby reducing the time Belkin had to fully prepare its reponse response.

renewed its request for certain discovery on **_all_** power banks on an untenable timeline, three and half months before the discovery cut-off.

Plaintiff's counsel claims that the length of the November 1, 2023 meet and confer was not satisfactory, which is puzzling as it was Plaintiff's counsel who circulated an invitation for 30-minute time frame for the meet and confer. In any event, Belkin's counsel asked Plaintiff's counsel if there were any other matters they would like to discuss before concluding the call and Plaintiff's counsel said no.

## II. Progress on "representative sampling."

### _Gromov's position:_

The "product sampling" issue—the dispute regarding the fair scope of discovery into power banks other than the Pocket Power 10K—is clearly the largest dispute between the parties.

The Court's order was plain:

> "(1) [T]here can be no refusal to provide discovery on power banks other than the single product that Plaintiff says he purchased; (2) there cannot be overbroad discovery into every power bank that Defendant sold, and the parties need to come up with a representative sampling; (3) there are relevant, proportional issues that span different power banks (consumer complaints, or internal documents about charging statements or stated capacity, for example), and discovery must be provided on those issues without limitation to particular power bank products; . . . ."

(ECF No. 56 at 10.) Belkin has fully disregarded the Court's order.

### A. Belkin will not produce discovery except as to one model line.

Despite this clear language, at the October 30 meet-and-confer call, Belkin stated its position that the _only_ appropriate discovery is into the Pocket Power 10K model. Belkin stated that it would refuse to tender any discovery into any other models whatsoever.

The *only* flexibility Belkin stated on this point was that it would consider supplementing if information about the Pocker Power 10K had been withheld on the basis of product color. Belkin manufactured the product in three colors under slightly different SKUs—constituting three separate "models." And so, "to the extent necessary," Belkin stated it would review its past discovery responses and supplement them in the event documents or interrogatories were withheld because they referred only to one of the three colors. In reality, Belkin has not withheld anything on the basis of color—that would be an absurd position to take—and Belkin did not identify anything that was. Thus, this is totally illusory on Belkin's part.

Therefore, as of October 30, Belkin was completely stonewalling in the face of a clear order from this Court conferring in bad faith.

On the November 1, 5pm call, Belkin offered to "expand" its discovery responses to cover the Pocket Power 5K, 10K, and 15K. This is not a significant expansion at all. The Pocket Power 5K, 10K, and 15K were conceived and designed at the same time. Belkin has already produced some documents that mention all three sizes (*e.g.*, documents showing the three units' design specifications, customer complaints about the devices' misleading capacity sizes), while producing other documents that relate only to the 10K (*e.g.*, lab test results). The amount of new material that would be produced as to the 5K and 15K would be minimal.

More importantly, Belkin could not state whether it considers the Pocket Power 5K, 10K, and 15K to be *one* model or *three*. Belkin has already stated in discovery on file with this Court that there are "over two dozen" models. (ECF No. 43-4 at Interrogatory No. 1 and throughout.) On November 1, Belkin could not say whether its 5K/10K/15K offer constitutes just one model out of the "over two dozen," or three.

Finally, while Belkin will tell the Court it is now being cooperative, on the November 1 call Belkin again stated it had "no duty" to share any information with Gromov's counsel during this confer process. Specifically, Gromov asked for Belkin's copy of the exterior of the 5K and 15K packages so that they could be attached to this report (Gromov has the 10K package already). That information, shared in good faith, would assist Gromov in showing the Court how similar the products are. And this is exactly 2 pages of new information. Belkin refused.

### B. Belkin has not produced a complete list of its models and so there is no way to determine if a sampling is "representative."

Either way, it is not possible for the parties to follow the Court's order and come up with a "representative sampling" of power banks until the parties have shared a reasonably complete list of the models produced. To select a sampling that is "representative" of the line means knowing what is being represented. Belkin has repeatedly frustrated Gromov's attempts to learn even that much.

Gromov asked Belkin—on October 19—to come forward with a list of Belkin power banks. (**Ex. P1**, e-mail to Belkin: "Belkin has stated in papers filed in this case that there are 'over two dozen' models. We would like you to tell us what those over two dozen models are, so we can confer as to what's representative.")

However, even today, Belkin refuses to state even how many models it has or what their characteristics are. This leaves Gromov unable to confer with Belkin on a representative sample.

On the October 30 call, Belkin initially stated it had "no duty" any other model in the product line. Ultimately, Belkin's counsel stated that she would "check" with Belkin (on Oct. 30) to determine "if" Belkin maintains such information. That means that, 20 days after the Court's order and 11 days after Gromov sought the information, Belkin's counsel hadn't even conferred

with Belkin about models that might constitute a representative sampling. Belkin's counsel also referred to last week's deposition, in which the deponent vaguely stated he didn't remember if there was a single document complete list of Belkin products. This deponent had, to put it politely, a lot of memory issues.

On the November 1, 5pm call, Belkin's counsel stated that "there is no one list" of power bank models, and complained that Gromov sought data that is allegedly unavailable. Belkin stated that it "might" be in position, by the due date of this report, to tell Gromov *when* a list of its models could be available for review.

This is bad faith conferring. How are the parties to meaningfully confer and select a representative sampling if the party with the information refuses to produce it?

Gromov has asked Belkin to explore other sources of information to help identify the total number of Belkin models. For example, every Belkin SKU (stockkeeping unit) is distinct. Has Belkin searched its own database of past SKUs to identify models? We asked, and Belkin refused to say. Has Belkin searched past product packaging to identify model names? We asked, and Belkin refused to say.

The parties also discussed the source of information Belkin must have used in supplying its October 26 answer to interrogatory no. 2. That answer discloses certain Belkin model names— therefore, it must have come from some place inside of Belkin that contains at least a partial list of power banks. Gromov asked: "What was the source of that answer?" Belkin stated that the source of the information was "attorney-client privileged."

This is absolutely game-playing. Belkin's communication with its lawyers is privileged, but the *location* of discoverable information is *not* privileged. In fact, Rule 26 requires the parties to

confer *and disclose* the locations of information that may be relevant to the action. Belkin just refuses to say. These are bad faith tactics.

Gromov also asked Belkin how it could state in its discovery responses, that it has produced "over two dozen" models. Certainly, Belkin must have some idea of the scope of its product line if it can swear that under oath. Belkin's lawyer stated that she was not part of that response.

Plaintiff does not have complete information about the full scope of Belkin's product line. Whether or not that information is contained in a single document or not is irrelevant. Belkin *does* know which products it has designed, manufactured, labeled, sold, and profited from. There is no way to determine if power banks are representative, and then agree to a reasonable sampling, unless Belkin shares some information. Belkin is absolutely not conferring in good faith.

## C. Belkin has not substantiated any real differences between its models that would justify withholding discovery.

Belkin did answer the interrogatory the Court directed it to, Interrogatory No. 2, which asked Belkin to explain which models are not substantially similar to the Pocket Power 10K. **(Ex. P2.)** Despite the parties' extensive briefing of this issue, Belkin objected that it did not understand interrogatory no. 2, objecting to it as "vague and ambiguous" (but then serving an answer "subject to and without waiving" that objection, which remains improper).

In the answer, Belkin for the first time ever listed certain product models by name—but not all of them—and methodically denied that every Belkin power bank on the list is substantially similar to Gromov's Pocket Power 10K.

All of the reasons given why products are not substantially similar are frivolous. For example, Belkin says certain products have USB-C or Apple Lightning-type ports instead of standard USB-A ports. Or Belkin claims, without any evidence, that "they contain different

electrical components (circuitry board, battery management chips, etc.)" or "the internal design differs." Or, Belkin claims that "the product packaging does not contain the statement 'charge up to 3 times.'" These are all minor differences:

- USB-A, USB-C, and Apple Lightning are different connectors but they all use the same voltage and do the same thing. The power bank functions the same way. There is no evidence that USB-C users are better informed or use their power banks differently from USB-A users. Moreover, Belkin itself makes simple cables that convert from one type of port to the other.

- As to the different components, while those may be different, they all perform the same function: charging and discharging a power bank safely.

- The argument that "the product packaging does not contain the statement 'charge up to 3 times'" is particularly risible. Belkin gives extremely similar alternative statements for its products. For example, the web site for the Pocket Power 5K says: "Charges iPhone 7 (running iOS10) up to 1.5 times on a single charge in internal testing."[2] "Charges up to X times" is a common marketing feature of Belkin products even if X is a different number.

And above all, Belkin does not deny that *all* of its power banks share essential features:

- They all are portable battery packs that consumers can use to charge other devices.

- Their packages are all labeled with what Belkin calls "cell capacity," which is a theoretical maximum amount of power that no consumer can ever receive.

- Belkin did not dispute the testimony of its own global product manager that every one of its power banks is labeled with this misleading value. (ECF No. 43 at 5 (citing Von Boode Dep., ECF No. 43-4 at 33:22–34:12).)

Belkin did not include at least one model, the Pocket Power 15K, on this list. That means that Belkin has conceded that the Pocket Power 10K and 15K *are* substantially similar. At the very least, Belkin should agree to tender discovery as to this product.

---

[2] *Available at* https://www.belkin.com/my/pocket-power-5k-power-bank-aka-portable-charger/P-F7U019.html.

On October 30, the parties discussed another model, the Pocket Power 5K. The only reason Belkin stated that this model is not discoverable is that its product labeling is supposedly different. When Gromov asked Belkin to produce even this one package—which Belkin's counsel clearly has, in order to make that representation—Belkin refused.

On the November 1, 5pm call, Belkin continued its opposition that each model is so distinct and so different that no information on any other model should be discoverable.

**D.    Belkin is not operating in good faith and the Court should order full discovery.**

Gromov has tried—for months—to confer and overcome Belkin's objections. The record demonstrates Belkin's total disregard for the Court's order that "there can be no refusal to provide discovery on power banks other than the single product that Plaintiff says he purchased." This sentence is being typed in the morning hours of November 2. As of this moment, Belkin still has not said if it will ever produce a reasonable list of the models it has produced, nor when it could ever produce such a list to Gromov.

As Gromov sees it, Belkin was entitled to answer interrogatory no. 2, which asked which Belkin power banks are not "substantially similar" to the Pocket Power 10K, in any truthful manner it liked. However, the Court has already made clear that the answer to this question does not then control the scope of further discovery. Belkin is entitled to argue that its power banks are all distinct, but Gromov is still entitled to reasonable discovery to test Belkin's assertion. The Court has set the scope of that discovery as a "representative sampling" of the Belkin products. And Gromov is entitled, at the class certification stage, to use the fruits of that discovery to attempt to convince the Court that he has standing to represent purchasers of different, but substantially similar, power banks.

Because Belkin has wholly refused to even make a good-faith offer in light of the Court's order and because Belkin has produced no honest limiting principle for making less than full discovery, Gromov asks again that the Court simply order Belkin to make discovery into all of its power banks. Belkin has been ordered to meaningfully confer with Gromov and simply has chosen not to, and there should be a penalty for that.

Barring that, Gromov asks the Court for the following:

- An order requiring Belkin to provide a complete list of the power banks it has distributed in the United States. Belkin should be directed to identify these characteristics:

  - the products' SKU;

  - full common name (e.g., "Pocket Power 10K");

  - brand family (e.g., "Pocket Power"); model number (e.g., "10K");

  - capacity in milli-Ampere-hours;

  - a statement of how the mAh figure on the product packaging was computer (e.g., "cell capacity"—the misleading theoretical maximum, "rated capacity"—Belkin's tested and much lower number, or something else);

  - a statement of whether the product contains any wording like "Charges a phone up to X times" and what that wording is;

  - a statement of any reason why the product is not substantially similar to the Pocket Power 10K; and

  - a copy of the exterior of the packaging.

- This list to be produced within 7 days.

- An in-person status conference with the Court to discuss Belkin's compliance with the orders of the Court.

***Belkin's position:***

As Belkin explained during the parties' meet and confer, and as reflected in its response to Interrogatory No. 2, any power pack that does not have similar charging ports, electrical

components, internal design, and/or language on the packaging containing the statement "Charge up to 3 times," is not substantially similar to the Pocket Power 10K that Mr. Gromov purchased. Plaintiff's counsel claims these differentiators are "frivolous" but these are in fact the differentiators that Plaintiff himself requested in his Interrogatory ("Identify any power bank that Belkin described in interrogatory no. 1, which Belkin contends is *not* substantially similar to all other Belkin power banks, with respect to either (1) basic internal design, (2) basis for making charging statements, or (3) the fact that output energy and stated capacity are different.")

That said, Belkin ~~understand~~understands that the Court has issued discovery in this case which expands beyond the Pocket Power 10K that Plaintiff purchased. While Belkin maintains there are no power banks that are substantially similar to the Power Pocket 10K that Plaintiff purchased, it ~~is willing to expand discovery too~~offered a representative sampling of ~~other~~ products~~,~~ ~~but~~ (Pocket Power 5K, Pocket Power 10K, Pocket Power 15K), which Plaintiff's counsel rejected. Belkin's counsel explained that these power banks are the most similar to the power bank that Plaintiff's purchased because they contain the same charging ports, which impact the output of the device. They also have the most similar circuitry. Yet, Plaintiff's counsel has failed to propose any products for a sampling. ~~Instead, his goal appears to be to create a discovery dispute,~~ evidenced by Plaintiff's counsel renewed ask for ~~Court resolution.~~discovery on all of Belkin's power banks.

———— This point is highlighted by Plaintiff's counsel's requests, which are attempts to obtain discovery which was not ordered by this Court under the guise that it is necessary to agree to a representative sampling. For example, Plaintiff makes hay that he has not seen a complete list of Belkin's power bank models products and that Belkin should be required to produce one. Setting aside the fact that Belkin has no obligation to produce such a list, the evidence makes clear that no

such list exists. Plaintiff deposed Belkin's former product manager, Nick Kalra, and questioned him about the existence of such a list.  Mr. Kalra testified under oath that he was not aware of the existence of this list.  Belkin's counsel also has repeatedly confirmed this fact to Plaintiff's counsel. Nevertheless, as part of Belkin's efforts to cooperate in this matter, it is investigating what the burden would be to create the list and how long that project would take.  The week turnaround demanded by Plaintiff  is not adequate timing. Plaintiff's counsel's argument is, effectively, that they wish they could have a document that they are not otherwise entitled to faster. In any event, Belkin is making efforts to work with Plaintiff's counsel on this request. The production of this list will also eliminate any questions Plaintiff's counsel has regarding the number of power bank models Belkin has sold and clarify any purported concerns Plaintiff's counsel has regarding Belkin's count of these products in prior discovery responses.

Similarly, during the November 1, 2023 meet and confer, Plaintiff's counsel asked Belkin to produce its sales data so Plaintiff's counsel could determine all of Belkin's power bank models and SKUs—despite the fact that this Court ordered Belkin to only produce such data with respect to the agreed-upon representative sample, and under an Attorneys' Eyes Only designation.[3]  Again, Plaintiff's counsel is using this opportunity to fish around in Belkin's documents to obtain more information than ordered by the Court.

Plaintiff's counsel suggests certain documents "must" exist based on Belkin's response to Interrogatory No. 2. Plaintiff's counsel conflates two issues. First, the list Plaintiff's counsel seeks does not exist and Plaintiff's counsel attempts to use Belkin's response to Interrogatory No.

---

[3] As detailed below. Belkin provided a proposed amended confidentiality order to Plaintiff's counsel in this matter, but Plaintiff's counsel has not responded.

2 to claim that it must—that is simply untrue. Second, Belkin has never stated that its response to Interrogatory No. 2 was based on documents. Belkin is unaware of any obligation on it to explain to Plaintiff's counsel its process for responding to verified interrogatory responses and sources of that information where such disclosure would implicate the attorney-client privilege and work-product doctrine (and frankly, would not be serving its clients best interests if it did so). It appears that Plaintiff's counsel's goal is simply to create a discovery dispute for Court resolution.

Further, there is also no obligation at this time for Belkin to piece-meal produce labels, like the Pocket Power 5K label, for power banks other than the one that Plaintiff purchased. Indeed, this is one of Plaintiff's Requests for Production, on which the Court has ordered narrowed discovery. *See* Dkt. 56, p. 7 (limiting Request No. 13 which seeks "All labeling, for each Belkin power bank, that includes the stated capacity or charging statements."). Per the Court's order, Belkin will produce the applicable labels once the universe of products to be sampled is agreed upon.

It is Belkin's position that it has complied with the Court's order in good faith and that the parties may still reach an agreement on this issue and Belkin would ask the Court for an additional week to meet and confer. If the Court feels differently, however, Belkin would be happy to attend a status hearing if the Court would find it helpful. Belkin respectful requests the opportunity to brief this issue prior to such a hearing.

## III. Sales information

### *Gromov's position:*

The Court ordered Belkin to make production of sales data. Belkin came to the October 30 meet-and-confer with no offer to provide this information. Belkin stated it did not even know

what type of data is available to produce, despite the Court's order of 20 days earlier and despite its duty to search for discoverable information, which attached months ago.

Belkin's lawyers also refused to give a timeframe on which they could supplement discovery, despite the Court ordering the parties to confer and agree on a date.

Belkin objected that it was "premature" to discuss anything about sales data until the parties agreed on the scope of products which make up the "representative sampling" of Belkin power banks. We disagree. Belkin's counsel should at least have been in position to identify the types of sales data that are available. We would note that we have gotten farther in conferring with *the third-party retailers under subpoena*, and in less time, than with Belkin itself.

Gromov gave Belkin all of the language above in a draft of this report on October 31. On the November 1, 5pm call, Belkin had nothing to add regarding this topic, including any timeframe for the production of sales information. Once again, we believe that represents bad faith conferring.

The Court also ordered the parties to observe an "attorney's eyes only" level of confidentiality as to sales data and ordered the parties to confer on language binding the parties. Belkin is the party that seeks confidentiality. Belkin tendered its language on October 31. Belkin improperly seeks to amend the protective order to create a new "attorney's eyes only" level of confidentiality that can govern information *other than* sales data. This is not what the Court ordered. Gromov is committed to resolving this matter with Belkin and will seek a separate conference with Belkin to discuss alternative language.

### Belkin's position:

Belkin has again complied to the extent possible with the Court's order. On October 10, 2023, the Court stated that it "disagrees that Defendant should have to produce [sales- and pricing-

related] data exhaustively for all power banks it sold. The parties must discuss and confer on a reasonable time frame and a reasonable sampling of products." (Dkt. 56, p. 7). This ruling applies specifically to Requests for Production Nos. 20-22. Belkin simply cannot provide an estimate for producing this data without knowing which power banks will be part of discovery, and ~~Plaintiff has~~Plaintiff's counsel have not meaningfully met and conferred on that topic.

Moreover, Plaintiff's counsel's request that Belkin explain the types of data available is beyond the scope of the request. Once the parties agree on the relevant power banks, Belkin will produce non-privileged, responsive documents. Plaintiff's counsel can then review that information. The request for Belkin to explain what data is available is simply Plaintiff's counsel's improper attempt to preview Belkin's response before its time for compliance. There is no pending order from the Court to identify the types of data available.

Consistent with the Court's October 10, 2023 order, Belkin prepared a revised Confidentiality Order which contemplates the exchange of sales- and pricing-data marked "Attorneys' Eyes Only" and sent it to Plaintiff's counsel on October 31, 2023. Belkin's counsel has not yet received a response from Plaintiff's counsel.

## IV. Belkin's other responses to be supplemented.

The Court also ordered that Belkin must review and supplement its discovery responses. Specifically, the Court ordered that: "Defendant must complete its production, and Plaintiff may then present, after conferral, whatever issues it may have on motion practice with the sufficiency of these responses." (ECF No. 56, at 7.) And again, the Court ordered that the parties "must confer . . . promptly after 10/26/23 so that they may file a joint written status report . . . on . . . a timetable for defendant's further compliance with the Order." (ECF No. 55.)

***Gromov's position:***

On the October 30 call, Belkin came wholly unprepared to discuss anything about the timetable the Court ordered the parties to confer on. There was no topic on which any Belkin lawyer stated a further production would be forthcoming.

By the time of the November 1, 5pm call, Belkin had suggested the deadlines for itself that are stated below: November 10 for certain information to be supplemented, and December 9 for other unspecified information. Given Belkin's history of delay, this is not acceptable to Gromov. Gromov asked Belkin to complete its supplementation and production by November 16.

November 16 is a reasonable date for Belkin to comply with the discovery requests Gromov issued to Belkin on *April 21*. Belkin's failure to timely produce documents—and continuing failure to timely produce witnesses—has already necessitated extensions to the discovery schedule.

There is also a lack of clarity as to what Belkin will actually be producing. Much is missing. Note that Belkin continues to tell the Court below that it will produce documents "should they even exist." The professed ignorance as to whether discoverable evidence "even exists" or not is a stonewalling tactic. Gromov's discovery requests were served over six months ago. Belkin should know what exists.

Gromov seeks Belkin's compliance with *all* of the topics in the Court's order. The parties specifically discussed these three:

- **Industry standards.** Belkin refused to amend its interrogatory to answer which industry standards it purportedly complied with. The Court ordered Belkin to provide this answer. (ECF No. 56 at 8, discussing Interrogatory Nos. 4, 5, and 7.)

- **Other litigation involving the same issues.** The Court granted this request too. (ECF No. 56 at 9, discussing RFP No. 17.) Belkin's counsel was not prepared to discuss

whether or not any such materials even exist. In its half of this report below, Belkin or its lawyers concede that they still don't have an answer to this.

- **Marketing data.** At Mr. Kalra's deposition taken last week, he testified that he was one of only a few product managers with battery pack responsibilities during the period 2017–2021. And although Belkin stated in its discovery responses that it has no insight into retail pricing, Mr. Kalra testified that he would make regular visits to stores to observe the retail pricing, store display, and other elements of Belkin and other manufacturers' products. According to Mr. Kalra, Belkin also conducted consumer market research and tracked competitor models. Belkin's counsel stated she had not reviewed whether Belkin had this information available. Belkin has been under a litigation hold since January 2, 2020 when the *Miley* action was filed in California. Belkin gave no timeframe for its compliance.

Gromov again faces a party that refuses to canvas its own files and refuses to meaningfully confer on discovery. Belkin should be ordered again to promptly make discovery.

**_Belkin's position:_**

In its October 10, 2023 Order, the Court ordered Belkin to produce responsive documents and information with respect to Request Nos. 2, 6-10, 16, 18, 19, 23, and Interrogatory Nos. 4-7 and 14, across its array of power banks. With respect to this discovery (Request Nos. 2, 6-10, 16, 18, 19, 23, and Interrogatory Nos. 4-7 and 14), Belkin is in the process reviewing its prior responses and expects to provide supplemental responses on or before November 10, 2023. To the extent applicable, Belkin will produce additional non-privileged, responsive documentation thereafter, but ~~no~~ later than December ~~9~~8, 2023. Belkin has not refused to amend its interrogatory responses, and as stated above, is in the process of doing so.

~~As~~ Moreover, December 8, 2023 is a reasonable time frame. Indeed, is not inconsistent with what Plaintiff suggested during the parties' meet and confer discussion. Belkin's position is that December 8 would be a backstop for substantial completion of the production on these particular requests and it would start productions earlier. Belkin's counsel is willing commence

rolling productions starting on November 17, 2023 for these particular requests and ending no later than December 8, 2023.

Under Fed. R. Civ. P., Belkin's production can be completed at a "reasonable time specified in the response." This Court's Order broadening discovery came out just weeks ago. In addition to working to comply with the Court's order, Belkin has also focused on scheduling and preparing for depositions, meeting and conferring regarding the Court's order, and responding to other discovery requests issued by Plaintiff's counsel. In addition, the Thanksgiving holiday is upcoming, which involves travel by counsel and the parties. Plaintiff's counsel has not articulated how production nearly three months before the end of fact discovery is anything but reasonable. It is also unclear what Plaintiff's counsel means when he says he "lack of clarity as to what Belkin will actually be producing." It is quite clear Belkin will be responding to the discovery requests where the Court ordered discovery across Belkin's array of power banks, and Belkin is not aware of any rule or obligation which would require it to preview what it plans to produce to Plaintiff's counsel prior to the date of production.

Further, as Plaintiff's counsel knows, Mr. Kalra testified that he would visit retail stores and understood the display of competitors, but he could not recall if he even shared his thoughts in writing with the company. Indeed, Mr. Kalra testified that he did not recall creating a document, other than notes for himself. Belkin's counsel reminded Plaintiff's counsel of this during the meet and confer. Nevertheless, Belkin agreed to confirm that its prior searches would have captured

21

responsive documents regarding retail pricing, should they even exist, and that they had been produced.

Plaintiff's counsel also misstates Belkin's response with respect to other litigations, which this Court narrowed to U.S. only litigation going back five years. Belkin's counsel explained their understanding is there are no other litigations other than the *Miley* matter, which Plaintiff's counsel is well aware of, as he serves as counsel for plaintiff in that matter as well. Nevertheless, Belkin's counsel offered to reconfirm its understanding, and as explained herein, is in the process of doing so.

**V.   Interrogatories no. 18 and 19.**

Gromov served interrogatories nos. 18 and 19 on Belkin on September 27 and Belkin responded on October 26. This information was requested by some of the retailers who received third-party subpoenas (*i.e.*, Amazon, Best Buy, Office Depot, Walmart, and Target).

Interrogatory no. 18 sought part numbers—like SKUs, UPCs and other ID numbers that the retailers asked for. This will help them find shipments from Belkin. Belkin objected to producing this information, stating that it was publicly available and already in Gromov's possession via an earlier document production. Belkin did not direct Gromov to that information.

Interrogatory no. 19 sought Belkin's TIN number. Belkin objected on the sole ground that this information is publicly available. ~~One~~Plaintiff asserts and informed Belkin for the first time during the meet and confer that one of the third-party retailers asked Gromov for that TIN number to aid in locating data responsive to Gromov's subpoena.

***Gromov's position:***

These are not serious objections by Belkin. Even if information is "publicly available" (and it is not clear how a Taxpayer ID Number is public), Gromov is entitled to answers. The burden on Belkin is slight and the retailers have asked for it, as well as for other product IDs such as SKUs, UPCs and the like.

Further, "just Google it," as Belkin says below, is not fair play. Gromov is entitled to Belkin's sworn answers so that there is no dispute about the veracity of the information. A party cannot sidestep the Federal Rules of Civil Procedure any time the discoverable information is on Google.

Belkin's objections to providing even the smallest pieces of information demonstrate the contempt Belkin displays to this Court and the discovery process. Belkin waited until after business hours on the last possible day to serve these objections. A substantive answer would move the case. It should not take a full month to learn that Belkin won't share easy information like its own TIN.

***Belkin's position:***

Plaintiff ignores the primary objection to Interrogatory No. 18 and 19, which is that the parties have not agreed on a representative sampling, such that Belkin cannot provide the requested information for yet-to-be identified products. With respect to the Pocket Power 10K that Plaintiff purchased, Belkin has already provided the requested information through its prior discovery responses and productions. Plaintiff's counsel essentially asks Belkin to search the information,

such as product SKUs and UPCs already in counsel's possession so he does not have to. The burden on Belkin to do so is the same as the burden on Plaintiff's counsel.

Similarly, entity Taxpayer ID numbers are easily available from online sources, for free, by way of a simple Google search. Again, Plaintiff's counsel provides no explanation as to why Belkin is required to provide information that equally available to Plaintiff. . In any event, Belkin agrees to provide Belkin's Taxpayer ID number as part of its supplemental responses on November 10, 2023.

## VI. Compliance with the Court's order with respect to narrowed discovery.

### *Gromov's position:*

Belkin added this section to the parties' joint report. Gromov has discussed these matters elsewhere.

### *Belkin's position:*

The Court ordered Belkin to respond to certain Requests for Production and Interrogatories but only as to the sampling of products selected by the parties.

It is Belkin's position that it cannot determine its timetable for compliance with these portions of the narrowed scope of discoveryCourt's Order until that narrowed scopethe representative sampling has been confirmed. At that point, Belkin's counsel can discuss the specific information needed with Belkin personnel and get an accurate forecast of the timeframe needed to gather and provide the information.   Although it cannot do so now, Belkin agrees to provide a time table for compliance no more than 5 business days after the parties reach an agreement on the scope of discovery.representative sampling.

Date: November 2, 2023       /s/ William F. Cash III

William F. Cash III (Ill. Bar No. 6330856)
bcash@levinlaw.com
Matthew D. Schultz (*pro hac vice*)
mschultz@levinlaw.com
Scott Warrick (*pro hac vice*)
swarrick@levinlaw.com
**LEVIN, PAPANTONIO, RAFFERTY,
PROCTOR, BUCHANAN, O'BRIEN, BARR
& MOUGEY, P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Phone: 850-435-7059

Seyed Abbas Kazerounian (Ill. Bar No. 6316129)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Phone: 800-400-6808

Jason A. Ibey (Bar. No. 16691)
jason@kazlg.com
**KAZEROUNI LAW GROUP, APC**
321 N. Mall Drive, Suite R108
St. George, Utah 84790
Phone: 800-400-6808

D. Greg Blankinship (*pro hac vice*)
gblankinship@fbfglaw.com
Bradley F. Silverman (*pro hac vice*)
bsilverman@fbfglaw.com
**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
1 North Broadway, Suite 900
White Plains, NY 10601
Phone: 914-298-3290

*Attorneys for Plaintiff Dennis Gromov*

/s/ ~~DRAFT~~*Katelyn VanDoorne*

Katelyn VanDoorne
**BAKER & MCKENZIE LLP**
300 E. Randolph St., Suite 5000
Chicago, IL 60601
Telephone: (312) 861-8000
katelyn.vandoorne@bakermckenzie.com


Edward Totino (admitted pro hac vice)
Nancy Nguyen Sims (admitted pro hac vice)
**BAKER & MCKENZIE LLP**
10250 Constellation Blvd., Ste. 1850
Los Angeles, CA 90067
Telephone: (310) 210-4725
edward.totino@bakermckenzie.com
nancy.sims@bakermckenzie.com

*Counsel for Defendant Belkin International, Inc.*