UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS GROMOV, | ) | |
| | ) | Case No. 22 C 6918 |
| Plaintiff, | ) | |
| | ) | District Judge Franklin U. Valderrama |
| v. | ) | Magistrate Judge Gabriel A. Fuentes |
| | ) | |
| BELKIN INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

On November 2, 2023, the parties in this matter were before the Court on a referral including discovery supervision ("11/2/23 Report"; D.E. 28) and submitted a joint status report (D.E. 59) regarding compliance with the Court's order of October 10, which sought to resolve a number of discovery disputes. 10/10/23 Order (D.E. 56). Today's Order supplies the resolution that the parties so far have been unable to achieve on their own.

The 11/2/23 Report indicated that despite the parties' participation in several phone conversations and other attempts to meet and confer, they had not been able to resolve a number of significant issues. On that same day, the Court subsequently informed the parties that it would treat the status report as a fully briefed motion for disposition of the outstanding discovery disputes. ("11/2/23 Order"; D.E. 60.) Thereafter, on November 8, Defendant filed a document purporting to update the Court about the status of the parties' attempts to resolve outstanding issues, indicating, among other things, that some of the disputes listed in the joint status report were now moot. (D.E. 61.) Pursuant to yet another Court order (D.E. 62), Plaintiff filed its own response, which indicated that, in fact, some of the purportedly "moot" issues were still live. (D.E. 63.) After reviewing all

1

of the parties' submissions, and pursuant to our broad discretion to manage discovery, *see Jones v. City of Elkhart, Ind.,* 737 F.3d 1107, 1115-16 (7th Cir. 2013), we rule as follows:

The major issue to be decided is how to identify a "representative sample" of portable power banks for which Defendant must provide other discovery responses as stated in our 10/10/23 and 11/2/23 Orders. Identification of such a sample is related to Plaintiff's Interrogatory No. 2, which asked Defendant to identify "any power bank Belkin described in Interrogatory No. 1 which Belkin contends is not substantially similar to all other Belkin power banks, with respect to either (1) basic internal design, (2) basis for making charging statements, or (3) the fact that output energy and stated capacity are different." (11/2/23 Report, Exh. 2).[1] We acknowledge that in our 10/10/23 Order we denied Plaintiff's request for a complete list of all of Defendant's power banks on the ground that the request was too broad and disproportionate to the needs of the case, and we ordered the parties instead to meet and confer about defining a representative sample, specifically noting that we did not agree that discovery must be limited only to the single product that Plaintiff purchased. But it appears that Defendant has tried to do just that, by informing Plaintiff that the only two power banks it will provide additional discovery for are the Pocket Power 5K and 15K, which appear to be identical to the Pocket Power 10K Plaintiff purchased (other than having a different storage capacity). As Plaintiff explains, Defendant refuses to confirm if the Pocket Power 5K, 10K, and 15K are one model in different sizes or three different models.

According to Plaintiff, without a complete list of Defendant's products and certain basic information about them, Plaintiff is unable to reasonably negotiate what a representative sample of Defendant's power banks looks like and is unreasonably limited in defending against

---

[1] Interrogatory No. 1 says "Identify all power banks put out by Belkin since January 1, 2018, including their: name, model number, SKU number, basic characteristics including stated capacity and output energy, and the first and last month in which the model was distributed to anyone by Belkin.

2

Defendant's contention that the majority of its power banks are not substantially similar (and thus do not need to be included in the representative sample).

For its part, on October 26, 2023, Defendant provided a supplemental response to Interrogatory No. 2, which listed 11 different power bank products[2], all of which it contends are not substantially similar to the Pocket Power 10K model Plaintiff purchased because of one or more differentiating criteria. Defendant points out that it made the determination that none of these power banks are substantially similar to the one purchased by Plaintiff based on the criteria Plaintiff itself listed in Interrogatory No. 2. Specifically, Defendant's response identifies:

- Seven power banks it says are not substantially similar to the Pocket Power 10K because they contain USB-C charging ports;
- Two power banks it says are not substantially similar because they contain lighting charging ports;
- Nine power banks it says are not substantially similar because they contain different electrical components (circuitry board, battery management chips, etc.);
- Ten power banks it says are not substantially similar because the internal design differs; and
- Eleven power banks it says are not substantially similar because the product packaging does not contain the statement "charge up to 3 times."

As we explained above, the only two power banks which Defendant says are substantially similar, and thus has provided any additional discovery at all, are the Pocket Power 5K and the Pocket Power 15K, which appear to be identical to the Pocket Power 10K in every respect other than storage capacity.

---

[2] While there are only 11 unique products listed in Interrogatory No. 2, they encompass 39 different answers because, according to Defendant, some of the products are not substantially similar to the product Plaintiff purchased based on more than one criterion. We hesitate to describe each of these 11 products as a different model of power bank. Defendant has stated that it has "over two dozen" models of power bank, and in reviewing the list of items in its supplemental answer to Interrogatory No. 2, some of the products appear to be a single model whose only difference is storage capacity, i.e., the BoostCharge Power Bank 5K, BoostCharge Power Bank 10K and BoostCharge Power Bank 20K are all listed separately. Moreover, there are two products both called the "BoostCharge Power Bank 5K, but one product name is written as "Boost↑Charge™ Power Bank 5K" without any explanation about how it differs from the BoostCharge Power Bank 5K.

We agree with Plaintiff that the information Defendant has provided so far is insufficient as a representative sample of its power bank product, and that this information does not allow Plaintiff to make an informed argument about why other power banks beyond the Pocket Power 5K and 15K should be included in such a sample. Defendant appears to argue that it should be required to produce discovery on only its two power banks that are nearly identical to the Pocket Power 10K, but we agree with Plaintiff that Plaintiff is entitled to a wider range of discovery as part of its allegations that putative class members purchased power banks that were substantially similar to the one Plaintiff purchased and that they were thus also hurt by the allegedly misleading and incorrect charging information stated on the packaging.

We disagree with Defendant that the term "substantially similar" must be limited by the characteristics Plaintiff initially identified in Interrogatory No. 2. While Defendant states that a full list of all of its products does not exist, it was able to compile a partial list to be able to respond to Interrogatory No. 2, which one would surmise was created with reference to all of Defendant's products. Having given Defendant an ample opportunity to develop a reasonable representative sample of Defendant's products, Court will simply order Defendant to produce the entire list of two dozen power bank products for determination – through further conferral by the parties or, if necessary, by order of Court – which ones properly belong in a representative sample. With respect to the list, Defendant must provide as to each item:

- the products' SKU
- the product's full common name (e.g., "Pocket Power 10K")
- brand family (e.g., "Pocket Power")
- model number (e.g., "10K")
- capacity in milli-Ampere-hours
- a statement of how the mAh figure on the product packaging was computed
- a statement of whether the product contains any wording like "Charges a phone up to X times" and what that wording is
- a statement of any reason why the product is not substantially similar to the Pocket Power 10K

4

- a copy of the exterior of the packaging.

And this raises another issue which has not been squarely addressed by the parties, and that is the applicable sales time frame for which products should be identified. Plaintiff's interrogatories request answers dating back to January 1, 2018, and it is not apparent whether Defendant's "over two dozen" products has been static since that date; we suspect it has not. It is also not apparent how many of the products it listed in answer to Interrogatory No. 2 were available at the time Plaintiff purchased his Pocket Power 10K in July 2019, or whether some of those products are the same as products for sale earlier but which have merely been renamed or rebranded. Therefore, to the extent that the list of products Defendant says encompasses "over two dozen" does not include certain models that it offered for sale at the time Plaintiff purchased his power bank but no longer exist now, Defendant must clarify how many of those products are still offered for sale and for those that are not, must provide the dates they were offered for sale.

There are a number of other possibly outstanding discovery requests that were the subject of our 10/10/23 Order and which the parties indicated continued disagreement about in their 11/2/23 Report, including discovery on the three issues listed on page 20 of the 11/2/23 Report, and Interrogatory Nos. 18 and 19. In their individual supplemental status reports on November 8 and November 9, the parties indicated that such discovery was still ongoing and Plaintiff was unable to evaluate the completeness of Defendant's responses because it had not yet received them all. Therefore, we make no determination with respect to whether and what discovery is still outstanding, but to the extent Defendant has stated that it is producing such discovery responses on a "rolling" basis, we urge it to make every effort to produce such responses promptly instead of leaving all production to the December 9, 2023 deadline. Given the more than generous amount of time Defendant has had to respond to Plaintiff's discovery requests, the Court will not hesitate

to entertain yet another motion to compel from Plaintiff, even after the close of discovery, should it deem one necessary.

Finally, with respect to the scheduled deposition of Norbert Von Boode, which Plaintiff states cannot take place on November 27 as planned unless Defendant produces all relevant discovery before that date in a timely manner that will allow Plaintiff time to review it and prepare, we recognize Plaintiff's frustration. Given that fact discovery does not close until after Mr. Von Boode's deposition, the parties should strongly consider rescheduling it. The Court will consider any necessary, limited extension motion directed at discovery not completed by the December 9 cutoff in whole or in part due to good-faith efforts to resolve disputes and the time needed for judicial intervention when the parties could not reach agreement.

The Court wishes all a joyous Thanksgiving holiday.

**SO ORDERED.**

                **ENTER:**

                **GABRIEL A. FUENTES**
                **U.S. Magistrate Judge**

**Dated: November 17, 2023**