IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DENNIS GROMOV, individually and on behalf of all other similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BELKIN INTERNATIONAL, INC., )<br>)<br>Defendant. )<br>) | Case No. 1:22-cv-06918<br><br>Hon. Franklin U. Valderrama<br><br>Magistrate Judge Gabriel A. Fuentes |

**JOINT STATUS REPORT ON DISCOVERY STATUS**

Pursuant to the Court's Order dated November 17, 2023 (Dkt. 64), Plaintiff, Dennis Gromov, and Defendant, Belkin International, Inc., hereby submit a joint status report on discovery status.

**A. Belkin's Compliance with the Court's October 10 and November 17, 2023 Orders**

**Plaintiff's Position:**

Gromov remains frustrated with the course and speed of discovery on Belkin's part, as well as Belkin's substantive responses to Gromov's reasonable discovery requests—requests the Court has repeatedly upheld. Belkin's disregard for the orders of this Court, and Gromov's right to fair discovery, continues. It is worth noting that we are here on discovery requests that were served in *April* 2023.

As the Court well knows, Gromov seeks discovery as to each of Belkin's models; Belkin has taken the position that discovery should be much narrower. Belkin initially offered to give discovery only as to the specific Pocket Power 10K SKU purchased by Gromov; then broadened its scope to the Pocket Power 5K, 10K, and 15K models. The Court has split the difference, telling the parties to come up with a "representative sampling" of models on which conduct discovery.

1

Back in October, the Court ordered Belkin to confer with Gromov on that representative sampling, but Belkin refused to identify any models from which to draw a sampling. So in November, the Court directed Belkin to do the obvious thing and tender a list of models. The Court set the deadline for Belkin's compliance at Saturday, December 9. That would have given the parties all of this week to confer and, ideally, come back to this Court with an agreement.

The Court also exhorted Belkin not to wait until the last minute: "we urge it to make every effort to produce such responses promptly instead of leaving all production to the December 9, 2023 deadline." (ECF No. 65, at 5.) The Court noted that Belkin had received a "more than generous amount of time" to respond already. *Id.*

Belkin, however, violated even this latest generous deadline. Belkin did not serve any list of models until after hours on Monday, December 11. (Ex. A.) The list Belkin provided is just a bare list of model names and some technical notes. That list did not comply with the specific data the Court ordered Belkin to produce.

In its December 11 e-mail, Belkin stated that it needed more time to finish its production. (Again, this is information that was sought eight months ago.)

Gromov objected to Belkin's compliance and, yesterday, the parties exchanged further e-mails about Belkin's failure to comply with the Court's latest order.

As is the pattern with the joint status reports the Court arranges, Belkin provided more information at the last minute—*today* at 1:06am. Gromov once again has no ability to meaningfully review that information. As Belkin concedes below, it still has failed to completely provide the information that the Court ordered, repeatedly, that Gromov can have. Belkin still gives Gromov and the Court no date certain on which it will be done with this latest "rolling" production.

Gromov had hoped to have the "representative sampling" agreed to by today—or, at least, if the parties couldn't agree, then to be in position to have this joint report contain each side's argument so that the Court could resolve the dispute, tell us what the sampling will be, and then have Belkin go and make a meaningful production of documents from that sample. However, because we *still* do not have Belkin's full compliance with the Court's orders, that isn't possible. And Belkin's 1:06am production isn't useful against today's noon deadline.

(Incidentally, Belkin sent its draft of this report at 1:06am also, after making that production. This leaves Gromov, once again, dealing with a joint report hours before it is due.)

Leaving aside the fact that Belkin isn't done producing whatever it plans to produce, at no point has Belkin ever just proposed its view of which models actually constitute a representative sampling. We still haven't had that discussion. This is despite the Court's clear order, 65 days ago on October 10, that "[b]roadening permissible discovery past the single Pocket Power 10K product changes the landscape of Defendant's discovery responses significantly, . . . . Counsel may have much to discuss, and the conferrals will have to be more in-depth and meaningful than they have been so far." (ECF 56 at 10.) Nothing impeded Belkin from picking up the phone that day or the week after and making a good-faith proposal.

A sanction against Belkin for violating the Court's orders is plainly warranted. Litigating penny-ante disputes such as deposition dates or whether the blue 10K model is substantially similar to the pink 10K model is no lawyer's dream. Belkin ought to have observed the spirit *and* the letter of the Court's orders so that we could move this case. Instead, we are here again.

To get this case back on track, Gromov believes a fair sanction is to revisit the "representative sampling" plan—and do away with it. Belkin has now had several bites at the apple. Because Belkin has chosen to run down the clock, disregard the December 9 deadline, and

not confer with Gromov, a fair sanction on Belkin would be to simply order full production as to each and every Belkin model. That would eliminate the parties' need to confer on a "sampling," which has been a venture to nowhere except delay. Belkin should be ordered to produce everything the Court has allowed, as to each model of Belkin's power banks.

An additional sanction may also be warranted, and that is the in-person appearance of the Belkin in-house lawyer or executive responsible for discovery compliance at a conference at which the parties can work out this dispute and at which Belkin can be ordered to comply with discovery. Obviously, the written orders of this Court are not getting Belkin's respect. That conference could also be used to litigate other challenges, such as resolving the "representative sampling" dispute, hearing Gromov's privilege log challenges, or other matters. The time could be productive.

Finally, Belkin should be given a hard deadline to finish its compliance.

**Defendant's Position:**

1. **Belkin's Production of Documents Responsive to the Requests Expanded to Its Entire Line of Power Banks**

Belkin is in compliance with the Court's prior Order. The only remaining items left for Belkin to complete is the provision of two categories of information on the power banks list. In its October 10, 2023 Order, the Court compelled production for certain requests across Belkin's entire line of power banks. (Dkt. 56). In its November 17, 2023 Order, the Court encouraged Belkin to make rolling productions in response to these requests, and ordered the outstanding discovery responsive to those requests be produced by December 9, 2023.

As Belkin indicated in the prior joint status report filed on November 2, 2023 (Dkt. 59) that it would, it began its production in response to these requests on November 17, 2023, the same day as the Court's order. Plaintiff's counsel appears to take the position that Belkin's production is somehow out of compliance because of the size of the production. As Belkin previously

4

explained, well before the Court's October 10, 2023 Order, Belkin had already voluntarily produced documents responsive to certain requests across its line of power banks; as a result, there was little additional responsive documentation to produce.

Days before the production deadline, on December 6, 2023, Belkin's counsel notified Plaintiff's counsel on that its production with respect to the relevant requests under the October 10 Order was complete and that Belkin was not aware of any further responsive documentation. Belkin deemed its production complete until there was agreement on the representative sampling, an issue which the parties were to discuss after the list of power banks was completed. Despite having days until the production deadline set by the Court, Plaintiff's counsel raised no issues with the production until after Belkin's counsel contacted them to initiate discussions about this status report. If Plaintiff's took issue with Belkin's production, they had ample opportunity to meet and confer before the production deadline, but they failed to do. Therefore, Plaintiff's request for sanctions is unwarranted.

Plaintiff's counsel also distorts and inaccurately represents the timeline and circumstances surrounding this joint status report. Having heard nothing from Plaintiff's counsel about this joint report, *Belkin* is the party that initiated conversations yesterday about this filing. Plaintiff's counsel refused to send his portion of the draft and demanded that Belkin take the lead on preparing the joint report. Counsel indicated that he would be working and available until 11:00 p.m. that evening. Belkin agreed to prepare the initial report and circulated the draft around 8:00 p.m. Belkin asked Plaintiff to send his portion back that evening, if possible, so Belkin could return the updated/final draft first thing today. Plaintiff's counsel did not respond to Belkin's email, and instead circulated Plaintiff's portion of the report at 10:30 am today. Despite this truncated timeline

created by Plaintiff, Belkin has cooperated in filing this report and meeting its discovery obligations.

While the report was underway, Belkin's counsel received a further update from Belkin on the power banks list and promptly provided that information to Plaintiff last night. Belkin also provided with an updated report merely to reference the additional information provided on the power banks list. Plaintiff's counsel complains that he had not had time to review the updated list before the submission of this joint. However, this list is nothing new, as it was already produced previously and now merely updated with additional categories of information.

Belkin was communicative and made productions in compliance with this Court's orders and sanctions are not warranted.

2. **List of Power Banks**

In the Court's November 17, 2023 Order (Dkt. 65), the Court ordered Belkin to produce a list of its power bank models which includes:

- o the products' SKU
- o the product's full common name (e.g., "Pocket Power 10K")
- o brand family (e.g., "Pocket Power")
- o model number (e.g., "10K")
- o capacity in milli-Ampere-hours
- o a statement of how the mAh figure on the product packaging was computed
- o a statement of whether the product contains any wording like "Charges a phone up to X times" and what that wording is
- o a statement of any reason why the product is not substantially similar to the Pocket Power 10K
- o a copy of the exterior of the packaging.

The Court also ordered Belkin to clarify how many of those products are still offered for sale and for those that are not, provide the dates they were offered for sale. This information has not been pending since April 2023 or "eight months" as Plaintiff claims, and is not part of the

discovery requests that the Court ruled on in October 2023. Instead, the list was first ordered less than a month ago in the Court's November 2023 order.

Under the Court's Order, by December 9 2023, Belkin was required to supplement and expand its responses to certain discovery requests to include other power banks other than the 10K Pocket Power purchased by Plaintiff. Belkin complied with this aspect of the Order earlier than required, as discussed above. However, Belkin did not interpret the Court's Order to impose the same deadline with respect to the list of power banks. The Court explained that the December 9 deadline applied to discovery responses that Belkin was making on rolling basis. (Dkt. 65, p. 5). The section of the Court's order regarding the power bank list *does not* contain a deadline. (*Id.*, pp. 4-5).

As Belkin has repeatedly explained to Plaintiff's counsel, this information necessary to create the list is not readily available and must be compiled by Belkin personnel from various information sources. Belkin has worked diligently since the Court issued its order to create the full list. In fact, in an effort to advance the parties' discussions, after a portion of the list containing product SKU numbers and descriptions (including the model number of the power banks, the mAh, and distinguishing characteristics such as USB ports) was ready, Belkin provided that list to Plaintiff. Belkin explained that it will supplement the list as soon with the balance of the information is compiled. Belkin also offered to meet and confer based on the information in the list already provided (which is not immaterial) regarding a representative sampling of Belkin's products. Plaintiff's counsel did not take Belkin up on this offer and instead claims that Belkin has made no offers related to the sampling. In light of the foregoing, any argument that Belkin has not communicated with Plaintiff's counsel is, once again, untrue.

Belkin continued to make progress on the list, and did indeed follow up just a few days later with a substantially updated list which included the products' SKUs, the product's full common name (e.g., "Pocket Power 10K"), brand family (e.g., "Pocket Power"), model number (e.g., "10K"), capacity in milliampere hours, a statement of how the mAh figure on the product packaging was computed, a statement of whether the product contains any wording like "Charges a phone up to X times" and what that wording is, a statement of any reason why the product is not substantially similar to the Pocket Power 10K, and the dates the products were first offered for sale. Belkin is working diligently to compile the balance of the information for the list of power banks (which is the product labels and last date of distribution by Belkin, where applicable) and expects that it will be able to produce that soon. However, there is no reason why the parties cannot begin their meet and confer discussion, as Belkin has offered, based on the versions of the list already produced, which contain a substantial amount of the information ordered by the Court. Belkin is compliance with the Court's Order, so any request for sanctions is unwarranted and should be denied.

B. **Deposition Progress**

**Plaintiff's Position:**

Depositions have really fared no better. Belkin never offered adjacent deposition dates for the three witnesses, so Gromov's counsel threw up his hands and has made separate trips to Los Angeles in an effort to move the case. At least one more trip will be needed. Both of Belkin's witnesses were studiously unprepared. Despite working at Belkin for years, Nick Kalra claimed to have trouble remembering the names of almost any co-workers, the location of relevant documents and data, and even to recall his own e-mails in an issue he worked on for months (and on which

8

he offered an affidavit in the California *Miley* case). He was under no obligation to bone up on his testimony, but he certainly offered very little in terms of a working memory.

Belkin remains dilatory when it comes to deposition dates. Gromov asked for a new date to depose Norbert Von Boode in an e-mail sent November 21. Belkin did not respond to it until December 6. Given that Gromov first sought this deposition in September, it's hard to see why it would take Belkin 15 days to propose a date. This is Belkin's dilatory conduct.

Gromov has taken the Court's suggestion to put Norbert Von Boode's deposition off until the parties work out the document production that was ordered 65 days ago. Likewise, Gromov would also like to take a Rule 30(b)(6) deposition, but does not want to use up his one chance to do so without having sufficient documents. At a point in the past, Gromov asked whether Belkin would entertain having two (b)(6) depositions directed at non-overlapping topics; Belkin refused.

Gromov would like to get Belkin's production complete before engaging in these two depositions. Gromov is looking for other witnesses who can be deposed in the meantime.

**Defendant's Position:**

Plaintiff again misrepresents what transpired concerning the depositions. What counsel demanded was that all three witnesses be provided on consecutives days within the immediate coming weeks. That would have been a difficult task to accomplish in any case given the busy schedules of both the witnesses and the parties' counsel. But it was especially challenging given that two of these witnesses are no longer employed by Belkin and, as a result, have obligations to their current employers. Belkin offered to look for dates further out that would allow the depositions to be grouped together, but Plaintiff was steadfast in the depositions occurring as immediately as possible and chose to proceed with them separately.

In any event, Plaintiff has deposed Jen Wei and Nick Kalra (a former Belkin employee), and Belkin's counsel has deposed Plaintiff Mr. Gromov. Plaintiff's counsel has also asked to

9

depose Norbert von Boode (a former Belkin employee). Belkin originally offered November 27, 2023 for the deposition of Mr. von Boode. Plaintiff's counsel subsequently notified Belkin that they wanted to defer Mr. von Boode's deposition and asked for his availability the week of December 11, 2023.

Belkin offered December 15, 2023 for the deposition of Mr. von Boode. After not receiving confirmation, Belkin followed up to confirm the date. It was only then that Plaintiff's counsel notified Belkin that they intended to defer Mr. von Boode's deposition.

Belkin will continue to work with Plaintiff's counsel to schedule the deposition of Mr. von Boode, who is a former Belkin employee. It is Belkin's position that parties are working jointly on scheduling this deposition.

Belkin has not had a communication with Plaintiff's counsel about splitting the 30(b)(6) deposition and, as result, has no idea what Plaintiff is referring to in this regard.

Date: December 14, 2023     /s/ William F. Cash III

William F. Cash III (Ill. Bar No. 6330856)
bcash@levinlaw.com
Matthew D. Schultz (*pro hac vice*)
mschultz@levinlaw.com
Scott Warrick (*pro hac vice*)
swarrick@levinlaw.com
**LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY, P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Phone: 850-435-7059

10

Seyed Abbas Kazerounian (Ill. Bar No. 6316129)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Phone: 800-400-6808

Jason A. Ibey (Bar. No. 16691)
jason@kazlg.com
**KAZEROUNI LAW GROUP, APC**
321 N. Mall Drive, Suite R108
St. George, Utah 84790
Phone: 800-400-6808

D. Greg Blankinship (*pro hac vice*)
gblankinship@fbfglaw.com
Bradley F. Silverman (*pro hac vice*)
bsilverman@fbfglaw.com
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
1 North Broadway, Suite 900
White Plains, NY 10601
Phone: 914-298-3290

*Attorneys for Plaintiff Dennis Gromov*

/s/ *Katelyn VanDoorne*

Katelyn VanDoorne
**BAKER & MCKENZIE LLP**
300 E. Randolph St., Suite 5000
Chicago, IL 60601
Telephone: (312) 861-8000
katelyn.vandoorne@bakermckenzie.com


Edward Totino (admitted pro hac vice)
Nancy Nguyen Sims (admitted pro hac vice)
**BAKER & MCKENZIE LLP**
10250 Constellation Blvd., Ste. 1850
Los Angeles, CA 90067
Telephone: (310) 210-4725
edward.totino@bakermckenzie.com
nancy.sims@bakermckenzie.com

*Counsel for Defendant Belkin International, Inc.*