## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

DENNIS GROMOV, individually and on )        Case No. 1:22-cv-06918
behalf of all others similarly situated, )
                                     )        Hon. Franklin U. Valderrama
      Plaintiff, )
                                      )        Magistrate Judge Gabriel A. Fuentes
      v. )
                                        )
BELKIN INTERNATIONAL, INC., )
                                        )
      Defendant. )

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
## DISCOVERY AND FOR THE ENTRY OF A CONFIDENTIALITY ORDER

Plaintiff Dennis Gromov ("Plaintiff") respectfully submits this opposition to the motion of defendant Belkin International, Inc. ("Defendant" or "Belkin") to compel discovery from Plaintiff and for the entry of second confidentiality protective order.

Defendant asks the Court to do three things: 1) compel Plaintiff to produce his power bank for inspection and testing; 2) compel Plaintiff to produce his personal cell phone for inspection and testing; and 3) enter a second confidentiality protective order.[1] All this relief should be denied on procedural and substantive grounds.

As an initial matter of procedure, Defendant has not complied with L.R. 37.2. Nor is there any representation in Defendant's papers that it has complied with the rule. Defendant also waited an unreasonable number of months before raising these discovery disputes with Plaintiff or the Court. For that reason, Defendant's motion is also untimely.

With respect to Plaintiff's power bank, since June 2023, Plaintiff has stated that he would

---

[1] In its motion papers, Defendant also mentions its request to inspect Plaintiff's charging cables. *See* ECF No. 80 at 1 n.1. However, that request was first made in Defendant's recent January 25, 2024 Third Set of Requests for The Production of Documents and Plaintiff's time to respond to that discovery request has not yet passed.

produce his power bank once Defendant provides an adequate inspection protocol for the examination of the device that will safeguard the physical integrity of the device. Defendant first proposed an "inspection protocol" on January 26, 2024 (annexed as Exhibit 1 to the accompanying Declaration of Bradley F. Silverman). However, that "inspection protocol" is no protocol at all. It provides no details and merely states that unspecified tests will be conducted by unspecified persons in unspecified manners. *See* Silverman Decl. Exhibit 1.

Defendant faults Plaintiff for not providing a substantive response to the "inspection protocol," but, as Plaintiff's counsel has told Defendant's counsel, there is no real protocol to which to respond. Nor is Plaintiff obligated to independently develop an inspection protocol for Defendant's physical testing of an electronic device.

With respect to Plaintiff's cell phone, Plaintiff formally objected to the production of the device on July 10, 2023. Defendant did not raise the issue of Plaintiff's cell phone again until January 26, 2024. Defendant failed to timely seek such discovery. Moreover, Defendant is simply not entitled to Plaintiff's cell phone. To begin, Defendant has made no showing of how its supposed need to examine the cell phone outweighs Plaintiff's privacy interests. The cell phone contains personal information and Defendant has never agreed to take any concrete steps to safeguard that personal information, or provide any protection for Plaintiff's strong privacy interests. Indeed, Defendant proposes to use the same meaningless "inspection protocol" with respect to both Plaintiff's power bank and cell phone. Notably, Defendant does not address Plaintiff's privacy interests in its papers.

Plaintiff's cell phone is also not relevant to the claims asserted in this action. The central issue in this action is whether Defendant's power banks are ***ever*** capable of delivering the amount of milliampere-hours or "mAh" represented on their packaging. In actuality, as discussed in more detail below, as a matter of physics, Defendant's power banks are ***never***

2

capable of delivering the represented amount of mAh. Still, without citation to any authority, Defendant asserts that the type of device being charged may impact a power bank's mAh output. However, such an argument ignores the scientific fact that -- no matter what kind of cell phone Plaintiff may have used -- Defendant's power banks could **never** come close to delivering the amount of mAh represented on their packaging. Thus, Defendant's power banks are falsely and deceptively labeled, regardless of the nature of Plaintiff's cell phone.

## I.     DEFENDANT'S MOTION IS PROCEDURALLY IMPROPER AND SHOULD BE DENIED.

Defendant's procedurally improper motion to compel should be denied. All discovery motions before the Court are subject to L.R. 37.2, which provides that:

> To curtail undue delay and expense in the administration of justice, this court shall hereafter refuse to hear any and all motions for discovery and production of documents under Rules 26 through 37 of the Federal Rules of Civil Procedure, unless the motion includes a statement (1) that after consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord, or (2) counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's. Where the consultation occurred, this statement shall recite, in addition, the date, time and place of such conference, and the names of all parties participating therein. Where counsel was unsuccessful in engaging in such consultation, the statement shall recite the efforts made by counsel to engage in consultation.

Where a party fails to comply with L.R. 37.2, the motion should be denied. *See, e.g.,* ECF No. 37 (denying motion to compel without prejudice for failure to comply with the rule). Here, Defendant has made no effort to comply with this local rule. Defendant's motion papers do not include any declaration that the requirements of L.R. 37.2 have been satisfied. *See* ECF No. 80. Nor do Defendant's papers even mention the rule.

Defendant's own (skewed) discussion of the facts further demonstrates that L.R. 37.2 has not been satisfied. Defendant acknowledges that, on July 10, 202, Plaintiff formally objected to 1) the production of Plaintiff's power bank for testing without a protocol in place to protect the

3

physical integrity of the device; and 2) any production of Plaintiff's personal cell phone.  *See* Defendant's Exhibit B ¶¶ 1-2.  Thereafter, by Defendant's own admission that, "[i]n the months that followed, Belkin focused its efforts on other discovery in this matter . . . ."  ECF No. 80 at 2.  Then, ***over six months*** after Plaintiff's objections, "[o]n January 26, 2024, Belkin's counsel provided Plaintiff's counsel with an inspection protocol regarding the Devices [including Plaintiff's power bank and cell phone], and proposed, if the parties could not reach an agreement on the protocol, a meet and confer conference."  *Id*. at 2-3 (citing email chain annexed as Exhibit D to Defendant's papers).

Defendant omits the fact that, on the same day Defendant's counsel contacted them, Plaintiff's counsel responded, stating:

> We are willing to produce the power bank, and always have been. We asked for your inspection protocol ***last summer***. Please let me get it to our expert to review and discuss.

> Regarding Gromov's cell phone, we objected to producing that ***last summer***. We don't see the relevance and it is burdensome on him to make the production. ***We offered to confer with you further, but never heard back. That offer stands open.***

*See* Exhibit D at 6 (emphasis added).

Tellingly, Defendant does not include the referenced "inspection protocol" with its motion papers.  This "inspection protocol," annexed as Silverman Decl. Exhibit 1, is not a real protocol and merely states that unspecified tests will be conducted by unspecified persons in unspecified manners.  *See* Silverman Decl. Exhibit 1.

Then, on January 30, 2024, for the first time ever, Defendant asserted a (meritless) rationale for why Plaintiff's cell phone is relevant.  *See* Exhibit D at 5-6.  On February 6, 2024, the parties agreed to meet and confer on February 8, 2024.  *Id*. at 3-4.  During the meet and confer on February 8, the parties discussed the production of Plaintiff's cell phone.  Plaintiff specifically raised concerns about relevance, the personal information on Plaintiff's cell phone,

4

and Defendant's failure to set any safeguards to protect that personal information.  *Id*. at 1.

With respect to Defendant's demand for a second confidentiality protective order before it would produce any further discovery (despite the fact that a confidentiality protective order was already in place in this action (*see* ECF No. 42)), on Friday, February 9, 2024, Defendant's counsel re-sent a copy of a proposed confidentiality order by email for Plaintiff's counsel's review.  Exhibit D at 2.  In that same email, Defendant set an arbitrary deadline of Monday, February 12, 2024 to respond regarding the production of Plaintiff's cell phone.  *Id*. at 2-3.  However, at that time, Plaintiff was travelling internationally, making it impossible for Plaintiff's counsel to fully respond or reach any agreement before the arbitrary deadline.  *Id*. at 1.

On February 12, 2024, Plaintiff's counsel wrote Defendant's counsel, reiterating concerns regarding the absence of any detailed protocol for examination of Plaintiff's devices and Defendant's failure to establish any safeguards for the protection of personal information on Plaintiff's cell phone.  *Id*. at 1.  That email also made clear that Plaintiff was out of the country at that time.  *Id*.  With respect to a second confidentiality protective order, Plaintiff's counsel's email also noted that Defendant still had not explained why the existing confidentiality protective order (ECF No. 42) was insufficient to protect whatever materials Defendant ultimately produces.  *Id*.

Defendant never responded with any further details regarding how the inspections of Plaintiff's power bank and cell phone would be conducted, or how Plaintiff's privacy interests would be protected.  Nor has Defendant ever explained why the existing confidentiality protective order is insufficient.  To that end, despite Defendant's suggestion to the contrary, any failure by Plaintiff, in the first instant, to independently develop detailed inspection protocols (where Defendant had not) does not satisfy the requirements of L.R. 37.2.  Ultimately, nothing in Defendant's papers demonstrates that it has complied with L.R. 37.2.  Indeed, the timing of this

motion, made on the heels of Plaintiff's pending motion to compel discovery (ECF No. 75), suggests that this is just another retaliatory motion by Defendant.[2]

## II.    DEFENDANT'S UNREASONABLE DELAY IN BRINGING THE MOTION TO COMPEL WARRANTS AN EXERCISE OF DISCRETION TO DENY THE MOTION AS UNTIMELY.

Defendant waited **_over seven months_** to bring its motion to compel after Plaintiff objected to the inspection requests on July 10, 2023, and waited **_over six months_** before even providing its so-called "inspection protocol" to Plaintiff.  Defendant also did not raise any dispute concerning its desire to inspect Plaintiff's power bank or cell phone in any submissions to the Court prior to this motion to compel.  Defendant's motion to compel was also filed less than two weeks before the current fact discovery cut-off of February 28, 2024, even though Defendant opposes any extension of that of fact discovery.[3]

Under these circumstances, the Court may and should exercise its discretion to deny Defendant's motion to compel due to Defendant's unreasonable delay in raising the issues with the Court. "This [C]ourt has broad discretion in ruling on a motion to compel discovery, and that discretion extends to the determination of whether a motion to compel is timely." *Africano v. Atrium Med. Corp.*, 2019 U.S. Dist. LEXIS 234079, at *4 (N.D. Ill. Jul. 3, 2019) (internal citation omitted).  *See also Feit Elec. Co. v. CFL Techs. LLC*, 2023 U.S. Dist. LEXIS 83685, at *21-23 (N.D. Ill. May 12, 2023) (denying motion to compel where movant unreasonably waited

---

[2] In the Court's October 10, 2023 Order (ECF No. 56), the Court suggested that a motion for a protective order by Defendant made shortly after a motion to compel discovery by Plaintiff may have been a "retaliatory motion."  ECF No. 56 at 3.

[3] In contrast with Defendant's dilatory efforts, with respect to Plaintiff's pending motion to compel discovery (ECF No. 75), as discussed in detail in Plaintiff's papers in support of that motion, Plaintiff repeatedly and persistently raised the issues that underlie his motion to compel with Defendant and with the Court over the course of this litigation.  *See* ECF No. 75 at 3-7; *see also* ECF Nos. 36, 43, 44, 57, 59, 63, 66, 70 (submissions to the Court where Plaintiff raised issues underlying his present motion to compel).

nine months to compel the discovery); *Sanchez v. Hargan*, 334 F.R.D. 180, 181 (N.D. Ill. 2020) (denying the motion to compel after a five-month delay); *Mizyed v. Travelers Home & Marine Ins. Co.*, 2013 U.S. Dist. LEXIS 204916, at *12-13 (C.D. Ill. Apr. 9, 2013) (denying motion to compel filed after an eight-month delay).

### III.    DEFENDANT HAS NOT PROVIDED ANY DETAILED PROTOCOL FOR THE TESTING OF PLAINTIFF'S POWER BANK, MUCH LESS ONE THAT SAFEGUARDS THE PHYSICAL INTEGRITY OF THE DEVICE.

Defendant now asserts an immediate need for the inspection and testing of Plaintiff's power bank.  Yet, Defendant felt no need to inspect the device until only a few weeks ago.  ***Over seven months ago***, on July 10, 2023, Plaintiff responded to Defendant's Second Set of Requests for the Production of Documents.  That response (annexed as Exhibit B to Defendant's motion papers) states:

> Gromov is willing to produce the battery for inspection ***if Belkin will propose a protocol for inspection which safeguards the integrity of the device***. Gromov explained this to Belkin on June 12 (see Exhibit). Belkin agreed to do so on June 13 (see Exhibit). No further response was received.

Exhibit B ¶ 1 (emphasis added).  Following this discovery response, Defendant did not provide any inspection protocol or make any effort to obtain Plaintiff's power bank.  The issue of Plaintiff's power bank was also not raised by Defendant in any submission to the Court prior to Defendant's present motion to compel.

Defendant first provided an "inspection protocol" (for both Plaintiff's power bank and cell phone) on January 26, 2024.  But it was no real protocol at all.  *See* Silverman Decl. Exhibit 1.  It provides no details and merely says that unspecified tests will be conducted by unspecified persons in unspecified manners.  *Id.*  Nor does it provide any safeguards for the physical integrity of Plaintiff's power bank.

Nevertheless, Defendant's papers attempt to place the blame on Plaintiff for not

"provid[ing] a substantive response to Belkin's proposed inspection protocol." ECF No. 80 at 5. Indeed, Defendant alternatively requests that Plaintiff be directed to "substantively respond to the inspection protocol with proposed revisions." *Id*. But there is no real protocol to which to respond.

Defendant wants to test Plaintiff's power bank without indicating what testing will be done, where the testing will be performed, who will be performing the testing, whether such persons are qualified to perform such tests, and whether any safeguards will be put in place to protect the physical integrity of the device. It is not Plaintiff's obligation, in the first instant, to design a meaningful protocol for such testing where Defendant has not. Nor does the fact that Plaintiff has not created such a new protocol satisfy the requirements of L.R. 37.2 placed on Defendant.

Defendant further notes that Plaintiff's counsel had agreed to "a substantially similar inspection protocol in a similar case against Belkin." *Id*. However, in that case[4] (where Defendant is represented by different counsel) the parties agreed to a detailed protocol that set the specifics of all testing and the safeguards that would be employed. A copy of that protocol from the *Miley* action is annexed as Silverman Decl. Exhibit 2. Attachment C to that protocol provides a comprehensive testing plan developed by an engineering firm that had been retained by counsel for Defendant in the *Miley* action. *See* Silverman Decl. Exhibit 2, Attachment C. Tellingly, Defendant discusses the protocol from the *Miley* action in its papers, but does not provide a copy to the Court.

Thus, given Defendant's failure to offer any meaningful inspection protocol, together with its failure to satisfy L.R. 37.2 and its inexplicable months-long delay since Plaintiff's formal

---

[4] *Miley v. Belkin International, Inc*., Case No. 20STCV00033 (Cal. Super. Ct., L.A. County).

objection to that inspection request, Defendant's motion to compel inspection and testing of Plaintiff's power bank should be denied.

## IV. DEFENDANT IS NOT ENTITLED TO PLAINTIFF'S CELL PHONE.

As with Plaintiff's power bank, Defendant made no effort to obtain the production of Plaintiff's cell phone until only a few weeks ago. With respect to Defendant's original request for the production of the cell phone, ***over seven months ago***, on July 10, 2023, Plaintiff objected stating:

> Producing this phone is irrelevant to the claims asserted in the action. The action involves fraudulent marketing and design of the battery pack, and not any particular end user's device. Any device with a resistive load can test the battery pack; this particular phone is not needed. Producing Gromov's phone for inspection also imposes an undue burden on Gromov for an unknown length of time, as he uses the phone daily. Producing the phone also involves overbreadth because it contains information not relevant to the claims or defenses in this action, and also contains attorney-client communications. Belkin has produced no inspection protocol relating to any production of the phone.
>
> Gromov explained all this to Belkin on June 12 (see Exhibit). Belkin agreed to respond further on June 13 (see Exhibit). No further response was received.

Exhibit B ¶ 2; *see also* ECF No. 80-2 at pp. 4 of 6 to 5 of 6 (email chain from June 2023 in which Plaintiff's counsel explains in further detail why Defendant is not entitled to the production of Plaintiff's cell phone). Defendant never raised the issue of Plaintiff's cell phone again until January 26, 2024. *See* Exhibit D at 6-7 (emails between counsel).

### A. Plaintiff's Privacy Interests Outweigh Any Need Defendant May Have To Access Plaintiff's Cell Phone.

Cell phones contain a wealth of personal information. Plaintiff's cell phone is no different. Defendant has presented no reason why Plaintiff's privacy interests should be disregarded. Indeed, Defendant's motion papers make no mention of Plaintiff's privacy interests with respect to the contents of his cell phone - - even though Plaintiff's counsel previously raised this issue multiple times.

"Numerous courts have also recognized this need to 'guard against undue intrusiveness' and to be 'cautious in requiring' the forensic inspection of electronic devices, in order to protect privacy interests." *Hespe v. City of Chi*., 2016 U.S. Dist. LEXIS 173357, at *11-12 (N.D. Ill. Dec. 15, 2016) (quoting *John B. v. Goetz*, 531 F.3d 448, 459-60 (6th Cir. 2008)). "Courts outside the Northern District of Illinois similarly have been reluctant to compel forensic examinations of personal devices, mindful of the intrusiveness of this type of search and the broad range of personal and private information the search could yield." *Johns v. Chemtech Servs*., 2021 U.S. Dist. LEXIS 191976, at *7 (N.D. Ill. Aug. 27, 2021) (Fuentes, J.). "'As the Supreme Court has recognized, "[m]odern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans the privacies of life."'" *Id*. (citations omitted).

Defendant offers no means of mitigating such privacy concerns in this action. To that end, with respect to Plaintiff's cell phone, Defendant proposes applying the same substance-less "inspection protocol" that it proposes for Plaintiff's power bank. Again, that "inspection protocol" provides zero detail about what Defendant would do with Plaintiff's cell phone. *See* Silverman Decl. Exhibit 1. It certainly provides no protections for personal information on the cell phone. Nothing in the "inspection protocol" precludes Defendant from accessing Plaintiff's text messages, e-mails, photos, and other materials (some of which may be privileged). None of those materials are relevant to this action and Defendant does not even suggest that they are relevant. Yet, all of Plaintiff's personal information would be at Defendant's fingertips. The "inspection protocol" also provides no safeguards to protect the physical integrity of Plaintiff's cell phone. As with the request for Plaintiff's power bank, Defendant seeks to test Plaintiff's cell phone without indicating what testing will be done, where the testing will be performed, who will be performing the testing, whether such persons are qualified to perform

such tests, whether any safeguards will be put in place to protect the physical integrity of the device, and whether any safeguards will be put in place to protect Plaintiff's privacy interests with respect to the data on the cell phone.

To that end, Defendant alternatively requests that Plaintiff be compelled to "substantively respond to the inspection protocol with proposed revisions." It is not Plaintiff's obligation in the first instant to independently create protocols to protect his own strong privacy interests or to protect the physical integrity of his cell phone - - where Defendant has not. Moreover, the fact that Plaintiff has not independently created such a new protocol does not satisfy the requirements of L.R. 37.2 placed on Defendant.

**B. Plaintiff's Cell Phone Is Not Relevant
To The Claims Asserted In This Action.**

Plaintiff alleges in the Complaint (ECF No. 1) that all of Defendant's power banks are represented as being capable of delivering a certain amount of milliampere-hours or mAh to charge electronic devices, but none of Defendant's power banks are actually capable of delivering the represented amount of mAh. *See* ECF No. 1 ¶¶ 13, 17, 29-33, 43-50. The central issue in this action is whether Defendant's power banks are ***ever*** capable of delivering the amount of mAh represented on their packaging. In actuality, as a matter of physics, they are ***never*** capable of delivering that amount of mAh.

The amount of mAh listed on Defendant's products is actually the capacity of the power bank's internal battery, and not the power bank's output capacity that can actually be delivered to charge electronic devices. It is a scientific fact that a power bank cannot deliver the full amount of its internal battery capacity, and can only deliver a much smaller amount of mAh. Attached as Silverman Decl. Exhibit 3 is the expert report of Dr. Michael Pecht that was submitted in the *Miley* action. Dr. Pecht explains in great detail why it is scientifically impossible for Defendant's

11

power banks to deliver anywhere near the amount of mAh represented on their packaging. *See* Silverman Decl. Exhibit 3 ¶¶ 23-46. Defendant has not, and cannot, dispute this scientific fact. Nor can the nature of Plaintiff's cell phone alter this scientific fact.

Nevertheless, without citation to any authority, Defendant asserts that "several factors that can impact the output of a power bank device including, but not limited to, the type and model of the portable electronic device being used with the device, as well as the age and condition of that device." ECF No. 80 at 6. Even if this were true, the type of device that may be charged with one of Defendant's power banks has no bearing of whether the power bank is ever *capable* of delivering the amount of mAh represented on its packaging. With respect to the charging of *any* electronic device, Defendant's power banks can *never* deliver the represented amount of mAh. Therefore, nothing about Plaintiff's cell phone is relevant to the underlying issues in this case.

Lastly, Defendant asserts, without citation, that Plaintiff's cell phone is relevant because "Plaintiff[] alleg[es] that he was not able to charge his Samsung Edge as he desired using the Pocket Power he purchased." ECF No. 80 at 6. However, no such allegation appears in the Complaint. In fact, Plaintiff's cell phone is not mentioned once in the Complaint. *See* ECF No. 1.

For all these reasons, the Court should deny Defendant's motion to inspect and test Plaintiff's cell phone.

## V. THERE IS NO NEED FOR A SECOND CONFIDENTIALITY PROTECTIVE ORDER.

Defendant has erected yet another unnecessary barrier to the production of materials to which Plaintiff is entitled. On August 29, 2023, the Court entered a Confidentiality Order (ECF No. 42) that, *inter alia*, allows the parties to designate certain materials as "Confidential" and provides protections against the dissemination of such materials. The provisions of the

Confidentiality Order should protect any sensitive information produced by Defendant.  Yet, Defendant now demands that a second confidentiality protective order must be entered before it will produce materials relating to its power bank models.  *See* Exhibit D at 2 ("Belkin will not produce sales data until an agreement is in place."). Defendant does so without basis.

In the Court's October 10, 2023 Order (ECF No. 56), it stated that: "any sales- or pricing-related documents produced in compliance with this order are hereby directed to be treated as 'attorneys'-eyes-only,' with the parties conferring further as to the scope and contours of that provision, but with the Court's intent being to shield the information from the eyes of persons from Defendant's competitors by limiting review only to attorneys and to experts as necessary, with experts executing a form of agreement that they will not share or use the information outside of the litigation."  ECF No. 56 at 8 n.2.  However, the existing Confidentiality Order should be adequate to "shield the information from the eyes of persons from Defendant's competitors."  Defendant has never articulated why another order is needed to satisfy the Court's stated intent.  Rather, Defendant's insistence on another confidentiality protective order seems designed to further delay Defendant's production of documents.

Notably, prior to its present motion, Defendant never mentioned the need for a second confidentiality order in any submission to the Court.  Indeed, Defendant's proposed second confidentiality protective order does nothing more to "shield the information from the eyes of persons from Defendant's competitors" than the existing Confidentiality Order.[5]  In fact, before the entry of the existing Confidentiality Order, on June 29, 2023, Defendant advised the Court that such a confidentiality protective order based on the Court's model protective order would be sufficient to protect Defendant's sales data.  *See* ECF No. 34 at 4 ("[A] protective order is

_____

[5] The use of the term "Attorneys Eyes Only" instead of the term "Confidential" provides no meaningful additional protection.

necessary for certain sales data that Belkin intends to produce in response to Gromov's discovery requests. As conveyed to Gromov, Belkin proposed using the Court's model protective order, which is not likely to be deemed controversial by either side."); *see also* ECF No. 40 (Minute Entry granting Defendant's motion for the entry of a confidentiality order in part and ruling that "[t]he parties are to modify the proposed order as discussed and directed to submit a revised order"). All this further demonstrates that Defendant has no real need for another confidentiality protective order.

The Court should also be skeptical of any purported need Defendant might really have to designate materials for such protections. Indeed, Defendant previously designated as "Confidential" the information in Exhibit A to the Declaration of Bradley F. Silverman submitted in support Plaintiff's pending motion to compel. *See* ECF Nos. 76-77. Yet this Court has already stated that "the document (doc. # 76) appears to be no more than a listing of product names, numbers and descriptions, with no trade secret information apparent." *See* ECF No. 79. Entering a second unnecessary confidentiality order would only encourage Defendant to further abuse its right to designate documents for protection.

Ultimately, as discussed in Plaintiff's papers in support of his pending motion to compel, the sudden urgent need for a second confidentiality protective order is nothing but another roadblock that Defendant is attempting to erect to delay the production of relevant materials to Plaintiff. *See* ECF No. 75 at 9-10.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety and grant Plaintiff such other and further relief as the Court deems just and proper.

Dated: February 22, 2024                         Respectfully submitted,

                                                 */s/ Bradley F. Silverman*
                                                 D. Greg Blankinship (*pro hac vice*)
                                                 gblankinship@fbfglaw.com
                                                 Bradley F. Silverman (*pro hac vice*)
                                                 bsilverman@fbfglaw.com
                                                 **FINKELSTEIN, BLANKINSHIP,**
                                                 **FREI-PEARSON & GARBER, LLP**
                                                 1 North Broadway, Suite 900
                                                 White Plains, NY 10601
                                                 Phone: 914-298-3290

                                                 Jason A. Ibey (Bar. No. 16691)
                                                 jason@kazlg.com
                                                 **KAZEROUNI LAW GROUP, APC**
                                                 321 N. Mall Drive, Suite R108
                                                 St. George, Utah 84790
                                                 Phone: 800-400-6808

                                                 Seyed Abbas Kazerounian (Ill. Bar No. 6316129)
                                                 ak@kazlg.com
                                                 **KAZEROUNI LAW GROUP, APC**
                                                 245 Fischer Avenue, Unit D1
                                                 Costa Mesa, CA 92626
                                                 Phone: 800-400-6808

                                                 William F. Cash III (Ill. Bar No. 6330856)
                                                 bcash@levinlaw.com
                                                 Matthew D. Schultz (*pro hac vice*)
                                                 mschultz@levinlaw.com
                                                 **LEVIN, PAPANTONIO, RAFFERTY,**
                                                 **PROCTOR, BUCHANAN, O'BRIEN, BARR &**
                                                 **MOUGEY, P.A.**
                                                 316 South Baylen Street, Suite 600
                                                 Pensacola, FL 32502
                                                 Phone: 850-435-7059

                                                 *Attorneys for Plaintiff Dennis Gromov*