**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| DENNIS GROMOV, individually and on behalf of all other similarly situated, | ) ) ) | Case No. 1:22-cv-06918 |
| Plaintiff, | ) ) | |
| v. | ) ) | Hon. Franklin U. Valderrama |
| BELKIN INTERNATIONAL, INC., | ) ) | Magistrate Judge Gabriel A. Fuentes |
| Defendant. | ) | |

**DEFENDANT BELKIN INTERNATIONAL, INC.'S CONSOLIDATED RESPONSE**
**TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY**
**AND MOTION TO EXTEND CASE DEADLINES**

Defendant Belkin International, Inc. ("Belkin") files this consolidated Response to the Motion to Compel Discovery (Dkt. No. 75) and Motion to Extend Case Deadlines (Dkt. No. 78), filed by Plaintiff Dennis Gromov ("Plaintiff"),[1] and states as follows:

**I.     INTRODUCTION**

The Court should deny Plaintiff's motion to compel because it seeks irrelevant discovery that exceeds the scope of the Federal Rules and this Court's prior Orders. Plaintiff admittedly purchased only one particular model of the many different types of portable power sources ("Power Banks") sold by Belkin and testified under oath at his deposition that he believes two aspects of the label of his Belkin product were misleading.

---

[1] On February 14, 2023, Plaintiff also filed a Motion for Leave to File Under Seal a list of Belkin Power Banks. (Dkt. No. 77). Just hours before filing the motion, Plaintiff's counsel contacted Belkin's counsel to ask whether Belkin still considered the document "confidential." Plaintiff's counsel did not provide adequate time for Belkin's counsel to respond, particularly given that they need to confer with their client in these circumstances. In any event, Belkin does not seek to have this document sealed in connection with this motion.

Notwithstanding this fact, he is seeking an order compelling Belkin to produce documents and information on Power Banks that do not contain the "Charges iPhone 7 (running iOS) up to 3 times on a single charge in internal testing" statement that Plaintiff testified he finds to be misleading.[2]  Plaintiff's testimony alone is dispositive in this matter, rendering any Power Bank that does have a similar statement on its label beyond the bounds of relevant discovery.  Yet, that is the exact discovery Plaintiff's Motion to Compel seeks. And as if Plaintiff's request was not already irrelevant and disproportionate enough, Plaintiff seeks *additional discovery* on wireless Power Banks without articulating how discovery into chargers that are fundamentally different than the one he purchased is within the scope of the Federal Rules and appropriate in this case.

Plaintiff further takes the unsupportable position that an attorneys' eyes only designation in this matter is not necessary—despite a clear Order from this Court on October 10, 2023 to enter into revised confidentiality order—because his counsel has provided assurances to keep Belkin's confidential and competitive sales and pricing data "confidential."  Plaintiff's intentional flouting of this Court's Order should not be rewarded.  The confidentiality order proposed by Belkin almost four months ago, which permits the production of documents under attorneys' eyes only protection, should be entered.

## II.    RELEVANT BACKGROUND

### A.    <u>Plaintiff Admitted that His Challenges in this Case Are Limited to Two Aspects of Belkin's Labels</u>

Plaintiff filed his complaint on December 9, 2022, alleging that the packaging of Belkin's Power Banks misrepresents the Power Banks' capacities. (Dkt. No. 1, p. 1).  During his sworn deposition, Plaintiff confirmed that the two aspects of the label that he found misleading were the milliampere-hour

---

[2] Testimony of Denis Gromov, November 8, 2023, Tr. 83:23 – 84:1 ("Q. Okay. Was there anything else on this label that you felt was misleading? A. Other than the 10,000 milliamps and the charge up to three times, no.")

(mAh) figure and the statement, "Charges iPhone 7 (running iOS) up to 3 times on a single charge in internal testing."[3]

**B.** **Despite the Limited Nature of His Challenges, Plaintiff Insists on Broad Sweeping Discovery on All of Belkin's Power Banks Beyond Those that Contain a Charging Statement**

As discovery progressed, Plaintiff's counsel took the expansive position that they were entitled to discovery on every Power Bank that Belkin has ever marketed, distributed or sold. (Dkt. No. 43.) On October 10, 2023, this Court ordered certain discovery across Belkin's entire line of Power Banks (which Belkin subsequently produced), but held that Plaintiff's demand for information as to *all* of Belkin's Power Banks was "too broad and disproportionate to the needs of the case" for a number of the requests. (Dkt. No. 57, p. 7). Instead, the Court instructed the parties to meet and confer on a reasonable sampling of products. In that same Order, the Court stated that "any sales- or pricing-related documents produced in compliance with [the] order" be treated as "attorneys'-eyes-only," and directed the parties to reach an agreement on the contours of that provision. (Dkt. No. 56, p. 8). Belkin's counsel sent Plaintiff's counsel a revised confidentiality order accounting for the exchange of attorneys' eyes only documents on October 31, 2023. (Dkt. No. 80-3).

It was, and remains, Belkin's position that the only Power Banks substantially similar to the Power Bank that Plaintiff purchased are the Pocket Power 5k and Pocket Power 15k, because those Power Banks generally have the same USB outputs as the Power Bank Plaintiff purchased, and because they contain a statement similar to "Charges iPhone 7 (running iOS) up to 3 times on a single charge in internal testing." Nevertheless, consistent with the Court's November 17, 2023 Order, Belkin provided Plaintiff with a list of its Power Banks, identified by name, SKU number, product name, brand family, model number, mAh capacity, "a statement of how the mAh figure on the product packaging was computed," whether the

_____

[3] *Id.*

model contained a statement as to the number of times a phone could be charged, a copy of the exterior of the packaging, and a statement of any reason why the product is not substantially similar to the model purchased by Plaintiff. (Dkt. No. 65).

On December 18, 2023, the Court ordered the parties to meet and confer on discovery. (Dkt. No. 68). Plaintiff makes much of the purported timing under which Belkin completed and provided the list of Power Banks.[4] However, even after the lists were provided, Plaintiff failed to act promptly to utilize the information to further the meet and confer process. Indeed, to advance the parties' meet and confer discussions while the final list was being completed, Belkin provided an interim, partially completed list containing certain of the ten required data points. Plaintiff did nothing with this information. Subsequently, even after the full completed list was provided, Plaintiff still came to the meet and confer discussion four days later without any proposal for a representative sampling. Instead, Belkin was the

---

[4] As usual, Plaintiff's recitation of the procedural history is littered is inaccurate statements in an attempt to malign Belkin in front of this Court. Rather than address every single inaccurate statement, Belkin simply states the following: after the Court's Order, Belkin worked expeditiously to compile the information and create a list of power banks containing the ten data points identified by the Court. As Belkin's counsel repeatedly informed Plaintiff's counsel, this list did not exist in the normal course of business and would need to be created for the purposes of this discovery request. (Dkt. No. 66, p. 7). Belkin allocated resources to collect information on the ten data points on each product from various sources in order to prepare the list. Plaintiff flippantly argues that "[i]t should not have been so difficult for Defendant to simply provide a list of the products that it sells." (Dkt. No. 75, p. 6.) That statement mischaracterizes and oversimplifies what the Court instructed Belkin to provide. If Plaintiff merely wanted a list of the products Belkin sells, he could have obtained that information from Belkin's website; indeed, Plaintiff admitted in his motion that he went to Belkin's website and was able to ascertain the various models of Belkin Power Banks available. (Id., p. 2.) What Plaintiff wanted was more, and it required time and effort on Belkin's part to compile. Belkin fulfilled that obligation. Further, while these efforts were underway, Belkin continued to complete its other discovery obligations. For example, Belkin completed production of information that applied across Belkin's product lines (as set forth under the Court's October 10, 2023 Order) and notified Plaintiff that it was not aware of any further responsive documentation in response to those requests. (Dkt. No. 66, p. 7). In his motion, Plaintiff attempts to distort these facts by stating that "because [Belkin] prevented any agreement on a representative sampling, Defendant deemed its own discovery obligations to be satisfied." (Dkt. No. 75, p. 6). This is untrue. What Belkin stated was, and remains, accurate: its production regarding the discovery requests that the Court order across product lines was complete and that the parties should turn to an agreement on the representative sampling; once the parties should reach agreement on the sampling, Belkin would produce documents relevant to that sampling.

party left to propose a sampling; Belkin suggested that the representative sampling be limited to Power Banks with labels that contained the "Charges iPhone 7 (running iOS) up to 3 times on a single charge in internal testing" statement or something similar, because Plaintiff testified it was the mAh figure and the charging statement that he felt was misleading. Based on this reasoning, Belkin proposed that the representative sampling in this case include the Pocket Power 5K, Pocket Power 10K, Pocket Power 15K, as well as the Power Pack 6600 and Power RockStar 6600. As the list of Power Banks demonstrates, very few of Belkin's Power Banks actually contain a "Charges iPhone 7 (running iOS) up to 3 times on a single charge in internal testing" statement or similar statement on the label. Plaintiff's counsel rejected Belkin's proposal, but did not come prepared with a different offer.

Plaintiff's counsel stated that they would subsequently provide a counter-proposal. After two weeks of radio silence, Belkin followed up on the status of the counter-proposal. It was only after Belkin's nudging that Plaintiff's counsel finally responded with a proposed sampling that included both models that do not contain a so-called charging statement ("Charges iPhone 7 (running iOS) up to 3 times on a single charge in internal testing") and wireless chargers. It remained Belkin's position that a relevant sampling should be limited to Power Banks that contained charging statements; however, as a concession to reach a compromise to conserve the Court's and parties' time, during the negotiations, Belkin offered to agree to a larger sampling that encompassed more models but still excluding the wireless Power Banks (which accounted for only seven of devices). Notwithstanding Belkin's offer, Plaintiff's counsel rejected the proposal.[5]

---

[5] Plaintiff wrongly claims that Belkin is "preventing" an agreement on the representative sample. Plaintiff has similarly refused to accept Belkin's suggested sampling. Both parties have rejected the other side's proposals and, as a result, have been unable to reach an agreement over the scope of the representative sample. The parties now merely seek the guidance of this Court for a reasonable compromise and resolution.

While Belkin's counsel continued to work with Plaintiff's counsel regarding a potential representative sample, Belkin's counsel reminded Plaintiff's counsel that certain information would be subject to an attorneys' eyes only confidentiality order, and Belkin had been waiting nearly four months for a response.  Despite the Court's directive on this issue, Plaintiff's counsel later responded stating that in his "experience," there is "nothing that requires information like sales data to be held to a[n attorneys' eyes only] standard" and that his assurances to maintain the documents as "confidential" should be sufficient.  (Dkt. No. 80-4, p. 1).

On February 14, 2024, Plaintiff filed a motion to compel seeking Power Banks that do not contain a charging statement on the label, as well as wireless charges.  In the alterative, Plaintiff's counsel renewed their request for discovery across all of Belkin's Power Banks, despite this Court's previous denial of the same request.  (Dkt. No. 75).  In the same motion, Plaintiff asks the Court to reject any confidentiality order that seeks attorneys' eyes only protection.  (*Id.*)  Plaintiff also filed a Motion to Extend the Case Deadline by 60 days.  (Dkt. No. 78).

## III.    LEGAL STANDARD

"In ruling on a motion to compel, the discovery standard set forth in Rule 26(b) applies."  *Mendez v. City of Chi.*, 18-cv-6313, 2020 WL 4736399, at *3 (N.D. Ill. Aug. 14, 2020).  Federal Rule of Civil Procedure 26(b)(1) states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Permissible discovery is not without limitations, and discovery should not serve as a fishing expedition.  *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, Case No. 15 C 10340, 2018 WL

946396, at *4 (N.D. Ill. Feb. 20, 2018).  Unless the requesting party can demonstrate the relevancy of the materials sought, judges "should not hesitate to exercise appropriate control over the discovery process . . . 'fishing expeditions' in discovery are prohibited because the information being sought is ultimately not 'relevant.'"  *BankDirect Capital Fin.*, 2018 WL 946396 at *4.

## IV.  DISCOVERY ON POWER BANKS OTHER WIRED POWER BANKS WITH "CHARGING STATEMENTS" ON THE LABEL WOULD BE IMPROPER

Plaintiff testified that, in his view, the two aspects of the Belkin product label that were misleading were: (1) the milliampere-hour (mAh) figure, and (2) the statement that the device "[c]harges iPhone 7 (running iOS) up to 3 times on a single charge in internal testing."[6]  Consistent with these allegations, Belkin's counsel proposed that the representative sampling in this case include the Pocket Power 5K, Pocket Power 10K, Pocket Power 15K, as well as the Power Pack 6600 and Power RockStar 6600, based on the position that the sampling should be limited to products which contain a statement similar to "Charges iPhone 7 (running iOS) up to 3 times on a single charge in internal testing," like the Power Bank that Plaintiff purchased.  Belkin's counsel also explained that this proposed sample covered various product families and mAh capacities across Belkin's line of Power Banks and, thus, is a fair representative sampling.

Plaintiff claims that the fact the allegations of his complaint only refer to the "mAh" representation on the label is sufficient to obtain discovery across Belkin's line of Power Banks.  But Plaintiff should not be permitted to walk back his sworn testimony that it was the mAh figure *and* the charging statement that caused him to feel misled.  Moreover, the standard that the Court has articulated in this case is that the products subject to discovery need to contain the "allegedly misleading and incorrect charging information

---

[6] Testimony of Denis Gromov, November 8, 2023, Tr. 83:23 – 84:1 ("Q. Okay. Was there anything else on this label that you felt was misleading? A. Other than the 10,000 milliamps and the charge up to three times, no.").

stated on the packaging." (*See* Dkt. No. 65, p. 4). If permitted, Plaintiff's discovery would serve as nothing more than an improper fishing expedition into Belkin's Power Banks that have no bearing on the alleged misrepresentations present in this case. *See BankDirect Capital*, 2018 WL 946396 at *4. Such discovery would be disproportionate to the needs in the case. For these reasons, the Court should deny Plaintiff's Motion to Compel and limit the representative sampling to Belkin's initial offer (the Pocket Power 5K, Pocket Power 10K, Pocket Power 15K, Power Pack 6600 and Power RockStar 6600—all of which contain labels with representations that are similar to those on the Power 10K that Plaintiff purchased).

## V. IN THE ALTERNATIVE, PLAINTIFF IS ONLY ENTITLED TO DISCOVERY ON WIRED POWER BANKS

At a minimum, the Court should deny Plaintiff's request for wireless charges. His request for wireless chargers strays even further from the relevance standards that control discovery. *See* Fed. R. Civ. P. 26. None of Belkin's wireless chargers contain a "Charges iPhone 7 (running iOS) up to 3 times on a single charge in internal testing," or similar statement. Moreover, wireless models, which deliver power through inductive charging, are functionally different products than the wired power bank that Plaintiff purchased. Plaintiff once again improperly seeks to escape his sworn testimony as to the relevant issues in this case to obtain broad, disproportionate, and irrelevant discovery on Belkin's Power Banks.

Plaintiff argues that he should be entitled to discovery on wireless charges because, according to him, "a third of the models that Defendant advertises on its website have charging capabilities." (Dkt. No. 75, p. 2.) This, however, is the not the applicable standard for discovery. The mere fact that the products are available on Belkin's website do not establish the minimum requirement of relevancy. *BankDirect Capital Fin.*, 2018 WL 946396 at *4 (noting it is the requesting party's burden to demonstrate relevancy). If availability on Belkin's website alone was sufficient, Plaintiff's counsel would have presumably included a wall charger in their representative sampling proposal. (Dkt. No.75-3). Yet, perhaps

recognizing that they are different products than the Power Bank that Plaintiff purchased, Plaintiff's counsel did not, further evidencing Plaintiff's request for wireless chargers is an improper fishing expedition into Power Banks that have no bearing on the alleged misrepresentations present in this case. *BankDirect Capital*, 2018 WL 946396 at *4. Moreover, *none* of Belkin's wireless Power Banks Plaintiff included in his proposal contain a statement similar to "Charges iPhone 7 (running iOS) up to 3 times on a single charge in internal testing," and thus, for the reasons set forth above, are not within the proper scope of discovery in this matter.[7] Plaintiff has failed to establish that wireless charges are relevant to his allegations in this case. (*See generally* Dkt. No. 75.) For these reasons, the Court should deny Plaintiff's Motion to Compel and any discovery into Belkin's wireless chargers.

## VI. THE COURT SHOULD ENTER THE ATTORNEYS' EYES ONLY CONFIDENTIALITY PROPOSED BY BELKIN

On February 15, 2024, Belkin filed a Motion to Compel, which sought, among other things, an order entering the proposed revised confidentiality order that Belkin sent Plaintiff nearly four months ago. (Dkt. No. 80). The Court's October 10, 2023 Order is clear that Belkin's sales and pricing data should be produced as attorneys' eyes only. Plaintiff's counsel not only ignored Belkin's proposal for a revised confidentiality order for nearly four months, but now takes the position that an attorneys' eyes only designation is not necessary in light of their assurances to keep the information "confidential." Plaintiff's intentional flouting of this Court's order should not be tolerated, and the confidentiality order should be entered.

---

[7] In fact, only one Belkin wireless product on the Power Bank List contains a charging statement similar to the one on the label of the Power Bank Plaintiff allegedly purchased. That product is designed to be used in connection with the Apple Watch and it was not included in the sampling proposed by Plaintiff.

**VII.    BELKIN TAKES NO POSITION ON PLAINTIFF'S MOTION TO EXTEND THE CASE DEADLINES**

On October 10, 2023, the Court issued an order extending the fact discovery cutoff to February 28, 2024, but declared the extension final. (Dkt. No. 55). In the same order, the Court ordered expert reports to be exchanged no later than March 29, 2024 at 5:00 p.m. and expert depositions no later than April 24, 2024. (*Id.*). Last week, on February 14, 2024, Plaintiff filed a Motion to Extend the Case Deadlines by 60 days. (Dkt. No. 78.) Belkin does not join, nor does it oppose this motion. That said, Belkin does request that, if the Court is inclined to extend the discovery deadlines, they should be extended for both parties in fairness and equity.[8]

**VIII.    CONCLUSION**

WHEREFORE, Belkin respectfully requests that the Court deny Plaintiff's Motion to Compel Discovery and grant Belkin's Motion to Compel Production of Plaintiff's Power Bank and Cell Phone, and for Entry of An Attorneys' Eyes Only Confidentiality Order.

---

[8] In light of Plaintiff's continuing efforts to mischaracterize the facts and portray Belkin as causing delay, it is important to note that Plaintiff has not been diligent in his prosecution of this case. For example, as Plaintiff noted in his motion, the topic of a 30(b)(6) deposition first came up in the Fall of 2023. (Dkt. No. 75, p. 6, n.1). Since October 2023, Belkin has requested a list of the topics on which Plaintiff would like testimony. Belkin's counsel repeated this request multiple times both verbally during meet and confer discussions and in writing. (See *e.g.*, Dkt. No. 80-4, p. 3). After the most recent prodding by Belkin during a meet and confer call on February 8, 2024, Plaintiff's counsel finally provided its list of 30(b)(6) topics last week, which consisted of 36 different categories. Although Plaintiff argues that he was prevented from taking depositions because the representative sampling documents has not yet been produced, a review of Plaintiff's 30(b)(6) topics reveal that only a handful of the 36 topics potentially implicate the anticipated document production. At a minimum, Plaintiff could have proceeded on the other topics, such as initiating meet and confer discussions on them with Belkin as required under Rule 30(b)(6). But Plaintiff did no such thing. Now he seeks to excuse his neglect by casting blame on Belkin. The Court should see through these efforts.

Dated:  February 22, 2024         Respectfully submitted,

By: */s/ Katelyn VanDoorne*

Katelyn VanDoorne
BAKER & MCKENZIE LLP
300 East Randolph Street, Suite 5000
Chicago, IL 60601
Telephone: (312) 861-3700
katelyn.vandoorne@bakermckenzie.com

Edward Totino (admitted *pro hac vice*)
Nancy Nguyen Sims (admitted *pro hac vice*)
BAKER & MCKENZIE LLP
10250 Constellation Blvd., Ste. 1850
Los Angeles, CA 90067
Telephone: (310) 210-4725
edward.totino@bakermckenzie.com
nancy.sims@bakermckenzie.com

*Counsel for Defendant Belkin International, Inc.*