**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DENNIS GROMOV, | ) | |
| | ) | Case No. 22 C 6918 |
| Plaintiff, | ) | |
| | ) | District Judge Franklin U. Valderrama |
| v. | ) | Magistrate Judge Gabriel A. Fuentes |
| | ) | |
| BELKIN INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before us is Plaintiff's motion to compel discovery, (D.E. 75), his motion for extension of time to complete discovery (D.E. 78), Defendant's motion to compel (D.E. 80), Plaintiff's response to Defendant's motion (D.E. 82) and Defendant's response to Plaintiff's motions (D.E. 83). We will address Plaintiff's and Defendant's motions separately as they concern wholly different issues.

**I.      Plaintiff's Motion To Compel**

The matters raised in Plaintiff's motion to compel are not new; the parties have been trying to come to agreement on the proper scope of a representative sample of Defendant's power banks for more than six months. Identification of a representative sample is the gatekeeping step needed before further discovery can occur, and the Court has been more than generous with its willingness to allow the parties to try to come to agreement on their own. They have not been able to do so, as evidenced by Plaintiff's recent motion.

According to Plaintiff, the relevant inquiry for discovery purposes is the fact that all of Defendant's power bank/portable charger products contain a representation on their labels as to the amount of milliampere-hours or "mAh" they can deliver to charge electronic devices. Specifically in his complaint, Plaintiff alleges that "[T]he misrepresentations (overstating the amount of mAh) are substantively identical across all the [power bank models] and mislead consumers in the same way regardless of which [power bank model] is purchased." (Cplt. ¶ 12, D.E. 1). Therefore, he seeks discovery about all of Defendant's power banks whose labels or packaging contain a representation about mAh.

Not surprisingly, Defendant disagrees. It points out that at his deposition, Plaintiff testified that there were two aspects of Defendant's packaging he found misleading: the mAh statement and a second statement that the power bank he bought "Charges iPhone 7 (running iOS) up to 3 times on a single charge in internal testing." (Def. Resp. at 7, fn. 6). Therefore, says Defendant, the only power banks that are "substantially similar" to the one Plaintiff purchased, and thus the only ones that should be included in the representative sample, are those whose packaging contains the

statement "Charges iPhone 7 (running iOS) up to 3 times on a single charge in internal testing" statement or something similar. (Def. Response at 7). Those products include only the Pocket Power 5K, Pocket Power 10K (the product Plaintiff purchased), Pocket Power 15K, as well as the Power Pack 6600 and Power RockStar 6600. No other of Defendant's products carry the same or a similar charging statement on their packaging – says Defendant – and thus Defendant argues that no other product is representative. Notably, neither party has explicitly described the various charging statements on Defendant's products and thus the Court has been unable to assess Defendant's contention that most of its products' packages are not substantially similar to the product Plaintiff bought.

Defendant did produce some initial discovery across a wide array of its product line in response to this Court's order, which was intended to be a starting point for the parties to determine which of those products should be included in a representative sample. (D.E. 57, 65). Defendant states in its brief that it has offered to agree to a representative sample from that list that is larger than the three Pocket Power power banks, the Power Pack 6600, and the Power RockStar 6600 discussed above, but that it refuses to produce discovery on products that either do not contain a charging statement (as opposed to an mAh representation) or are wireless. As far as we can tell, wireless products were not part of any of the initial discussions between the parties when they met and conferred over the definition of "representative sample."

Rule 26(b)(1) "allows the parties to engage in broad, liberal discovery" regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *Ye v. Cliff Veissman, Inc.*, No. 14 C 1531, 2016 WL 950948, at *2 (N.D. Ill. Mar. 7, 2016). After considering the parties' arguments, we will not limit discovery to only those products whose packaging contains both an mAh representation **and** an additional charging statement; either type of promise is relevant to Plaintiff's claims about the misleading nature of Defendant's packaging. Plaintiff's complaint states that he was misled by the mAh representation on the package of the power bank he bought, and further alleges that all of Defendant's power banks deliver less mAh to charge personal electronic devices than is represented on their packaging. The fact that Plaintiff later identified a second basis for his claims that some of Defendant's packaging further misrepresents its products' charging ability does not mean that discovery must be limited to only those power banks that contain both allegedly misleading statements, where discovery into each type of misleading statements is both relevant and proportional to the needs of the case, as we find it is.

Therefore, on Plaintiff's motion to compel, we grant the motion by ordering that the representative sample include all of Defendant's non-wireless power banks for which it produced initial discovery, as long as each such bank contains a charging statement or promise on its packaging, including but not limited to representations of mAh and/or the number of times it can charge an electronic device, regardless of how similar the statement is to the language on the product Plaintiff purchased. Products that do not contain any sort of charging statement, or products that are wireless, or both, do not need to be included in the representative sample. Specifically, we exclude

Defendant's wireless products because Plaintiff has not convinced us that discovery into wireless power banks is relevant or proportional to his argument that the packaging on Defendant's other power banks is misleading. It is possible that the parties themselves might have come up with a solution that could be "more" proportional to the needs of the case, but after ample opportunity, they did not. Accordingly, the Court is granting Plaintiff's motion to compel as set forth above.

## II. Defendant's Motion to Compel

Next, Defendant's motion to compel asks that the court order Plaintiff to produce both the Pocket Power 10K he purchased (and which is at the heart of this lawsuit) as well as the Samsung Edge cellular phone that was the device he charged with the Pocket Power for inspection and testing. Although Plaintiff previously agreed to produce the Pocket Power if the parties implemented an inspection protocol, he refused production of his cellular phone on the ground that it was irrelevant to the claims in the case and also that it would be burdensome to produce because he used the phone daily. Defendant's motion alleges that it reached out to Plaintiff numerous times throughout January and early February 2024 about discussing these issues, finally culminating in the parties meeting and conferring via telephone on February 8, 2024. (Def. Mot. at 4)

In response to Defendant's motion to compel both items, Plaintiff complains that the request to produce the Pocket Power is now untimely because Defendant waited nearly six months to provide an inspection protocol, that the protocol it did produce is "not really a protocol at all" because it does not explain what Defendant intends to do with the phone. (Pl. Resp. at 2). Moreover, Plaintiff complains that Defendant did not comply with Rule 37.2 before filing its motion. He also continues to refuse to produce his cellular phone on the grounds that it contains personal information, and also because it is irrelevant to Plaintiff's claims that all of the packaging on Defendants' devices is misleading. According to Plaintiff, none of Defendant's power banks are capable of delivering the mAh stated on their packaging, regardless of what kind of cellular phone Plaintiff used.

As an initial matter, we find that both devices (the bank and phone) are relevant and must be produced. While Plaintiff's allegations go beyond the one specific power bank he purchased and how Defendant's products are (or are not) able to live up to the charging promises on their packaging, the natural first step in defending Plaintiff's claims is to investigate how the actual device he purchased worked with the actual device he used with it. The question for the court is now how and under what circumstances Plaintiff must produce, and Defendant may inspect these devices.

Both parties spend a considerable amount of time in their briefs discussing the timeliness of Defendant's motion to compel when compared to its initial requests for inspection of Plaintiff's devices (first made in or around July 2023), and whether the parties have engaged in an adequate Rule 37.2 meet and confer regarding the issues of production of the two devices before Defendant filed its motion. After reviewing both parties' submissions, we find ourselves back in the familiar territory of being tempted to order the parties to sit down and actually come to an agreement on their own. In this case, the agreement would be about the scope and details of an inspection

protocol that will cover both the power bank Plaintiff purchased as well as his Samsung Edge cellular phone. While we understand and appreciate Plaintiff's contention that Defendant has unreasonably delayed pursuing production of these devices after they were first requested, we do not find the amount of time to be unreasonable in light of the other discovery disputes the parties have been working through in the interim, and we give no opinion on which party's characterization of the discussions up until now is accurate. Defendant represents that Plaintiff's attorney has entered into an inspection protocol in a case he brought in the *Miley* matter pending in California that is substantially similar to the one Defendant proposes here, (Def. Mot. at 5), and so the inspection protocol in that case will be sufficient for our purposes here, including addressing any privacy concerns Plaintiff has with respect to his cellular phone, which he apparently no longer uses on a daily basis. As Defendant has requested, *id.*, the Court will give Plaintiff a week (to noon on March 6, 2024) to propose any revisions to that protocol. *Id.* Any further disagreement can be called to the Court's attention, and the Court will simply attempt to resolve any such disagreements promptly as it as sought to do today.

Finally, the parties disagree on the intent behind this court's October 10, 2023, order (D.E. 56), that directed the parties to confer on the scope of a provision to be added to the existing confidentiality order to ensure that it covered certain sales and pricing related documents. Plaintiff contends that the original confidentiality order entered in this case is sufficient to address Defendant's current concerns, and Defendant representing that it provided Plaintiff with a revised confidentiality order on October 31, 2023, to which Plaintiff never responded. Again, we are not interested in parsing out the "who said what and promised what" aspects of this disagreement. Our October 10, 2023, order contemplated that the parties discuss the scope of the confidentiality order and how it might be adjusted to ensure that Defendant's sales and pricing data is adequately protected. We now officially order the parties to have a discussion about this provision as part of the discussions into the inspection protocol discussed above, and if those discussions do not resolve how the foregoing information ought to be treated per the confidentiality order, either party may bring a motion, and the Court will resolve that dispute as well.

### III. Conclusion

Therefore, for the reasons stated herein, Plaintiff's motion to compel (D.E. 75) is granted. Defendant is ordered to produce discovery for a representative sample of its products, which sample comprises all non-wireless power banks that contain either an mAh representation, or some other charging statement, or both, on their packaging. Defendant's motion to compel (D.E. 80) also is granted as stated, with Plaintiff ordered to confer with Defendant by noon on March 6 about any objections or adjustments to the *Miley* protocol, which will permit the production by Plaintiff, as hereby ordered, of both the power bank he purchased as well as his Samsung Edge. The parties further will confer about the confidentiality order in this case as stated above no later than March 6, 2024, with any related motion due by noon on March 13, 2024, to ensure it covers Defendant's confidential sales and pricing data. A joint status report is set for noon on March 14 to discuss the remainder of discovery scheduling, with Plaintiff's motion for an extension of time to complete discovery denied without prejudice in the meantime, with the Court understanding that some form of extension past the current February 28, 2024, cutoff is likely necessary. To the extent the parties

set forth an agreed extension in their March 14 report, the Court will consider such a proposal, or the Court will resolve any disagreement in favor of promoting the just, speedy, and inexpensive determination of this matter. Fed. R. Civ. P. 1.

**SO ORDERED.**

          **ENTER:**

_____
**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: February 28, 2024**