# EXHIBIT 9

| | |
|---|---|
| **From:** | Bill Cash <bcash@levinlaw.com> |
| **Sent:** | Thursday, April 25, 2024 10:06 AM |
| **To:** | Boardman, Michael |
| **Cc:** | Sims, Nancy; Totino, Edward; Bradley Silverman (BSilverman@fbfglaw.com); Jason Ibey; Gil Melili |
| **Subject:** | [EXTERNAL] RE: Gromov v. Belkin -- Phone Test |

Mr. Boardman,

You will have to file the motion as an opposed one, and we will oppose it.

**Bill Cash III**
*Of Counsel*

Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr, & Mougey, P.A.
316 South Baylen Street, Suite 600, Pensacola, Florida 32502
Phone: 850-435-7059
www.levinlaw.com

---

**From:** Boardman, Michael <Michael.Boardman@bakermckenzie.com>
**Sent:** Wednesday, April 24, 2024 3:27 PM
**To:** Bill Cash <bcash@levinlaw.com>
**Cc:** Sims, Nancy <Nancy.Sims@bakermckenzie.com>; Totino, Edward <Edward.Totino@bakermckenzie.com>; Bradley Silverman (BSilverman@fbfglaw.com) <BSilverman@fbfglaw.com>; Jason Ibey <jason@kazlg.com>; Gil Melili <gil@kazlg.com>
**Subject:** RE: Gromov v. Belkin -- Phone Test

Bill:

Thank you for confirming that the battery percentage indicator is visible on the locked screen. With that, we are ok with the plan to provide the phone without restoring it to factory settings and will not unlock the device or access its stored data.  As for your concern about battery degradation, your position appears to be that, based on speculation from a random graph, we simply not charge or discharge the phone at all.  Obviously, that is not an option.  Given that you do not know the current state of the battery, how many times it has been charged and discharged, what security features are installed or not installed on the phone or even what operating system is running, we do not understand how the testing would result in prejudice or spoliation.  Likewise, your link to a webpage for a different phone by a different manufacturer and vague statements about the potential effects of "rapid charging" are more of the same speculation and not designed to elicit a productive discussion.

From our perspective, we have reasonably addressed your concerns and plan to ask the Court to enter an order approving the process described in the attached document.  Please let us know whether we can submit the protocol jointly or whether we will have to file an opposed motion.

Thank you,
Michael

---

**From:** Bill Cash <bcash@levinlaw.com>
**Sent:** Friday, April 19, 2024 2:36 PM
**To:** Boardman, Michael <Michael.Boardman@bakermckenzie.com>
**Cc:** Sims, Nancy <Nancy.Sims@bakermckenzie.com>; Totino, Edward <Edward.Totino@bakermckenzie.com>; Bradley Silverman (BSilverman@fbfglaw.com) <BSilverman@fbfglaw.com>; Jason Ibey <jason@kazlg.com>; Gil Melili <gil@kazlg.com>
**Subject:** [EXTERNAL] RE: Gromov v. Belkin -- Phone Test

Mr. Boardman,

Here's the best I can tell you right now.

1. Are you going to be providing the device restored to factory settings or not?

This is not something we are willing to do, no. And the reason includes the burden and hassle; the inability to be sure that "deleted" data will remain deleted and not accessible to your expert; and the fact that this can cause spoliation in that the exact configuration of the OS and its updates can't be restored the same way, as well as other settings that might not be restorable the same way. If the basis of your test is "this is the phone the exact way he was using it," this option does not make sense, so, no.

2. If not, will you be able to certify by video that all apps and security updates have been disabled as we have requested?

This is the first I'm hearing Belkin wants Gromov to roll back any updates to the OS. That is not possible for a consumer to do. We can "disable apps" if you tell us what that means. Frankly, we don't know. I still don't understand how any apps could be running on a phone after a cold reboot. We are willing to do a cold reboot and then turn the phone off (is redundant). If you were to turn it back on, nothing would be running. If you want a video made of someone rebooting and then turning off the phone, we can do that.

3. Is the battery percentage indicator visible from the device's locked screen?

Yes.

4. What OS is currently running on the device?

Android OS and I don't know the version.

5. What OS was used at the time that Plaintiff used the powerbank as alleged in the complaint?

Android OS and I don't think anyone could know the version. He used the phone over a period of months. The base OS has been re-released over the years (e.g., Android 7, 8, 9, . . .) as well as the updates that are put out by Google, by the phone manufacturer, and/or the carrier. We have no great way to tell you which were applied when, nor do we see how that matters. If you have a mechanism to check, let us know.

6. Which "security updates" related to battery performance had been installed at the time that Plaintiff used the powerbank as alleged in the complaint?

We don't know. But if your test hinges on reconstructing the phone the way it was used when it was used with the power bank, that is a problem. Most phones—just like Windows and Mac computers—update their OS automatically. I am sure you're aware that an OS could be updated for security fixes, bug fixes, performance improvements, or even whole new features.

As an example, Google has repeatedly updated the Camera and Photos apps over time with new features including the "Magic Eraser" they advertised in the last Super Bowl. Was that present when he was using it? Probably not. Is it there now or will it be when we turn it on? Maybe.

No consumer tracks this kind of stuff.

7. Have additional updates been installed since that time? If so, which ones?

See previous.

8. What "background applications" cannot be disabled and cause you concern?

You tell us. This was your concern. Belkin's expert wants the "background apps" disabled. What does that mean?

As we've discussed, every modern computer (meaning a cell phone) has numerous background processes. These processes run the cell modem, the TCP/IP stack, garbage collection and file management in the OS, e-mail applications, and in a cell phone any app that is installed could potentially receive a push notification. For example, the Facebook app could be considered a "background app" because it can receive updates from Facebook even if the app is not "running."

You haven't told us what you're looking for or why this matters.

I also don't understand the request to disable them, either. If he had the Facebook app installed when he was using the power bank, and your test is attempting to recreate real-world conditions for him, then how is disabling it a valid test? Once again, we have never seen a protocol from Belkin or an explanation of what this test is intended to do.

To be really clear, we dispute the idea that we have been informed exactly what Belkin plans to test. We still do not have a written protocol and are still asking for one.

9. What information about battery degradation are you relying upon?

Numerous consumer-facing web sites, a few scientific papers I've found, and conversations with my own expert. No battery cell lasts forever. I believe your own witnesses have testified to that in depositions I took.



I don't swear by this graph, nor can I vouch for it, but this is the type of information available showing in the consumer press on how batteries can deplete with use.

And it is just common sense, as anyone who's ever used a rechargeable battery (including a good old-fashioned car battery) will tell you. Batteries wear out.

I attempted to determine the exact make and model of the cell used in this phone. I then figured we could try to get the technical specs for that exact cell and see how the manufacturer rated it. While I was able to find a teardown of the phone and zoom in on an image, I got a part number that appeared to be an internal part number. Googling it led to a bunch of third-party replacement parts, and no spec sheet for the cell. I would have to think the cell is no longer available given the age of the phone.

However, Li-Ion cell technology hasn't had a quantum leap in the last few years. All batteries degrade over time and the worst degradation occurs when you discharge a battery to zero or charge it to full.

In researching this actually I developed a new concern: when "rapid charging" is used, that can accelerate the wear on a battery cell. This is such a problem that current versions of Android deliberately use "slow charging" when the phone thinks it will have plenty of time and doesn't need to rapidly charge. https://support.google.com/pixelphone/answer/6090612?hl=en We have no information from you about whether your expert will use rapid charging, normal charging, or slow charging.

The point of all this is, your test will permanently affect the battery, and the design of the test could be material. It could constitute spoliation if we were to run the same test. Once again, without some explanation of why this test needs to be run, any protocol, or any info about how the results will be interpreted, we are in the dark. But up to 10 cycles out of 200 or 300 lifetime sounds serious.

10. How many times has the battery on the device been completely discharged?

No idea. How could you expect anyone to know that?

What do you want to do now?

**Bill Cash III**
*Of Counsel*

Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr, & Mougey, P.A.
316 South Baylen Street, Suite 600, Pensacola, Florida 32502
Phone: 850-435-7059
www.levinlaw.com

---

**From:** Boardman, Michael <Michael.Boardman@bakermckenzie.com>
**Sent:** Friday, April 19, 2024 4:09 PM
**To:** Bill Cash <bcash@levinlaw.com>
**Cc:** Sims, Nancy <Nancy.Sims@bakermckenzie.com>; Totino, Edward <Edward.Totino@bakermckenzie.com>; Bradley Silverman (BSilverman@fbfglaw.com) <BSilverman@fbfglaw.com>; Jason Ibey <jason@kazlg.com>; Gil Melili <gil@kazlg.com>
**Subject:** RE: Gromov v. Belkin -- Phone Test

Bill:

Thank you for the email, but it does not move this process forward. The Court has ordered that a test of Plaintiff's mobile phone go forward and for the parties to meet and confer regarding the logistics of that test because you have raised various concerns about privacy (and more recently spoliation), not to engage in a back-and-forth regarding the sufficiency of the proposed test or for Plaintiff to comment on its design. To that end, we have provided you with the details of what will be done to the device, including the process for charging/discharging, the type of cables to be used and the model number of the data logger. We are still not clear, however, what Plaintiff is willing to do. The following are open questions to which we have received no clear answers:

1. Are you going to be providing the device restored to factory settings or not?
2. If not, will you be able to certify by video that all apps and security updates have been disabled as we have requested?
3. Is the battery percentage indicator visible from the device's locked screen?
4. What OS is currently running on the device?
5. What OS was used at the time that Plaintiff used the powerbank as alleged in the complaint?
6. Which "security updates" related to battery performance had been installed at the time that Plaintiff used the powerbank as alleged in the complaint?
7. Have additional updates been installed since that time? If so, which ones?
8. What "background applications" cannot be disabled and cause you concern?
9. What information about battery degradation are you relying upon?
10. How many times has the battery on the device been completely discharged?

We also cannot provide the exact number of charges and discharges at this time without having access to the device first, but it will not exceed 10 and more than likely not exceed 5. We can discuss these issues on Monday if necessary, but a response in writing first would be helpful to guide that discussion so that we do not continue to speak in generalities about your concerns.

Thank you,
Michael

---

**From:** Bill Cash <bcash@levinlaw.com>
**Sent:** Wednesday, April 17, 2024 12:52 PM
**To:** Boardman, Michael <Michael.Boardman@bakermckenzie.com>
**Cc:** Sims, Nancy <Nancy.Sims@bakermckenzie.com>; Totino, Edward <Edward.Totino@bakermckenzie.com>; Bradley Silverman (BSilverman@fbfglaw.com) <BSilverman@fbfglaw.com>; Jason Ibey <jason@kazlg.com>; Gil Melili <gil@kazlg.com>
**Subject:** [EXTERNAL] RE: Gromov v. Belkin -- Phone Test

Hello,

Thanks for the sentiments and the e-mail. I'm back at work for the most part.

Our feelings on this are that we still don't have sufficient information regarding the test. We still do not have anything at all from Belkin the way of a written protocol. I assume you will want to submit one to the court for joint approval. When will we get it? We have asked for this a few times.

The number of discharges, which is brand new information, is concerning. We have brought this up repeatedly, including on the April 3 call. My information is that a battery cell can handle only 200-300 discharges before its performance degrades significantly. Your ciient—an expert in the field—knows this better than most. You have now told us "less than 10," but no hard number. (Again, a written protocol would clearly state the number and no good expert would conduct a test without writing up his planned test protocol first—so why can't we see this?) 10 discharges out of 200 or 300 available for the lifetime of the device is material. That means that the test Belkin wants to conduct will have permanent effects on the device, and again, that means we would not have the ability to conduct our own rebuttal test on the same phone as it exists today: your test will have altered the device.

This might yet be workable if Belkin actually explained why this kind of testing is necessary and what Belkin thinks it will accomplish. Then at least we could discuss whether the clear fact of spoliation matters to us or not. Perhaps we won't care to do a rebuttal test because we think your test isn't relevant to an issue in the case—but you have to go first and tell us. Or perhaps there is a way to devise a joint test so that the spoliation problem affects both sides equally. But Belkin refuses to explain what it wants to do and why, and we still do not understand Belkin's choice to hold that information back. You have called it "attorney work product" or a premature disclosure of expert work product, but I think practicality prevails here.

There remain other issues that we have brought out and simply not gotten a response or one that we can work with. I am happy to go through those with you again.

I am available all morning tomorrow (CDT) to discuss further.

**Bill Cash III**
*Of Counsel*

Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr, & Mougey, P.A.
316 South Baylen Street, Suite 600, Pensacola, Florida 32502
Phone: 850-435-7059
www.levinlaw.com

---

**From:** Boardman, Michael <Michael.Boardman@bakermckenzie.com>
**Sent:** Tuesday, April 16, 2024 4:17 PM
**To:** Bill Cash <bcash@levinlaw.com>
**Cc:** Sims, Nancy <Nancy.Sims@bakermckenzie.com>; Totino, Edward <Edward.Totino@bakermckenzie.com>; Bradley Silverman (BSilverman@fbfglaw.com) <BSilverman@fbfglaw.com>; Jason Ibey <jason@kazlg.com>; Gil Melili <gil@kazlg.com>
**Subject:** Gromov v. Belkin -- Phone Test

> **CAUTION:** This email message is **EXTERNAL.**

Bill:

As you likely saw, the Court granted our request for an extension of the deadline to file a motion regarding Belkin's inspection of Plaintiff's phone. We previously provided the information you requested, but your last communication on this issue indicated that you had additional questions that you wished to raise or discuss. We are sensitive to your family issues, but want to wrap up this process. Please let us know what, if any, additional issues need to be discussed and when we can have that conversation.

Thank you.

**Michael Boardman**
Associate
10250 Constellation Blvd
Suite 1850
Los Angeles, CA 90067
Tel: +1 310 201 4728
Fax: +1 310 201 4721
michael.boardman@bakermckenzie.com



bakermckenzie.com | Facebook | LinkedIn | Twitter

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to

advise the sender of the error and then immediately delete this message. Please visit
www.bakermckenzie.com/disclaimers for other important information concerning this message.