UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DENNIS GROMOV,** individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **BELKIN INTERNATIONAL, INC.,** <br><br> Defendant. | Case No. 1:22-cv-6918 <br><br><br> Judge Valderrama <br><br> Magistrate Judge Fuentes |

### GROMOV'S RESPONSE TO BELKIN'S MOTION REGARDING TESTING OF PLAINTIFF'S PHONE (ECF No. 109)

Gromov appreciates the Court's invitation for the parties to get straight to the point and avoid lengthy briefs.[1] Gromov aims to do so here in responding to Belkin's motion to inspect Gromov's cell phone. There remain three concerns with the protocol Belkin proposed. They are: (1) privacy; (2) the destructive nature of the test; and (3) the identify of Belkin's expert. To address these common-sense concerns, Gromov respectfully requests that the Court enter an Order modifying Belkin's proposal, and supplies proposed language.

**I.  Privacy**

Gromov's privacy remains the top concern with respect to Belkin's current testing plan. Gromov eventually moved Belkin off the notion of having any unlocked access to Gromov's phone—which was appreciated—and Belkin now no longer wants Gromov to "wipe" the phone so it can get direct access to the settings and files. This is progress.

---

[1] While Gromov maintains an objection to this test because the phone's performance is not what's at issue in the action, Gromov acknowledges having lost that argument.

1

In its motion, Belkin now promises it will not "seek to access any personal data on the phone in any way." (Mot. 5.) However, despite Gromov's repeated requests, Belkin has not guaranteed that in an actual written *protocol*, or shown where *its expert* would be bound by Belkin's promises. This is problematic.

Gromov understands that the data logger at issue—which is an engineer's tool that measures the flow of electricity past a given point—is not capable of "hacking into," "reading," or "getting into" the data on the phone (to use lay terms everyone can understand). If that is all that is ever connected to the phone, and if the expert takes no other extraordinary means to get at Gromov's data, that should solve the issue.

Again, while nothing in the protocol says Belkin's expert will access data on the phone, nothing in the protocol bars it either. So Belkin's expert should be required to promise as much.

Therefore, the Court should modify the protocol by adding this language:

> "Belkin's expert shall not, and shall not attempt to, read any of the files or stored data on the phone.
>
> "Belkin's expert shall not unlock or attempt to unlock the phone.
>
> "Belkin's expert shall maintain a complete video record—from the moment the phone is unsealed from its shipping package until the phone is sealed back into a new package—sufficient to prove that the Hioki data logger is the only device ever connected to the phone.
>
> "Belkin's expert shall provide to Gromov's counsel a sworn declaration verifying that he or she has complied with these provisions."

On the third point, a continuous video record of the entire test is notably something the parties already agreed to in the California examination protocol—which was supposed to be the basis for this round of testing. That provision is missing from Belkin's current protocol (the only

protocol Belkin has ever provided, and only very recently). It should be included in the protocol that applies to the cell phone test.

## II. Destructive testing

Gromov has genuine concerns over the potentially destructive nature of the testing proposed by Belkin, which is fairly characterized as a destructive act affecting the battery cell. The first concern related to irreversible changes to the phone's software or operating system ("OS updates"), and the second concern is due to steady degradation in the battery cell that will occur during Belkin's proposed test.

With respect to the first concern—software updates—that is resolved. This is because Belkin stopped pressing Gromov to "wipe" the phone. Since that the operating system isn't being altered and settings and data are not being "wiped," the phone's operating system no longer has to be restored to a potentially impossible past configuration. (Nor does Gromov incur the burden of restoring anything.)

However, the second concern—the potential for loss of evidence caused by the test, or stated differently, the destructive nature of Belkin's proposed battery test—remains live. Gromov's concern is real and not theoretical. This test involves repeatedly, fully discharging and then fully charging Gromov's phone's battery. That causes damage to the battery every time you do it.

It is indisputable, and common knowledge, that discharging a battery all the way to zero is the hardest thing you can do to a battery. Consumers are told not to do it. It causes chemical buildup of the electrolyte in the battery that isn't fully reversible. Every time a battery is discharged, it comes back weaker for the next cycle.

This is why even "rechargeable" batteries wear out; it is why people pay $100 to have their phone batteries replaced at the mall. Belkin knows this from direct experience as a battery manufacturer (nor does it deny it). Gromov also provided Belkin with the science and multiple lay references illustrating the issue. *E.g.*, Battery University, *How To Prolong Lithium-Based Batteries, available at* https://batteryuniversity.com/article/bu-808-how-to-prolong-lithium-based-batteries, where the following graph appears.



This graph demonstrates that as a battery goes through successive charge/discharge cycles, its capacity steadily degrades.

There is no hard number to gauge the severity of the issue. Gromov's information is that measurable degradation occurs *every* time a battery fully discharges, and by the 200th full discharge, degradation is significant. No one knows how many times Gromov himself has already discharged his phone, so there's no way to know at what point in the steady degradation curve we are.

The relevance of this issue has evolved during the course of the parties' conferences because Belkin's plans for testing have changed too. During the April 3 call, Belkin flatly refused to say how many times it would discharge the battery, claiming that was protectable expert work product. In a later e-mail, Belkin's proposal was "less than 10" discharges. We have now arrived at the current protocol by Belkin which states "up to 3 times." (Mot. Ex. 1.)

4

The point is that the Court should be aware that Belkin proposes to conduct a test that will degrade the phone's battery's performance, even as that test is intended to measure that very performance. If 200 discharges is significant, then even 3 full discharges could have an impact, because *every* full discharge has an impact. The risk of this damage should be borne by Belkin, not Gromov.

Accordingly, Gromov therefore asks the Court to order as follows:

> "In choosing to perform testing of the cell phone battery in the manner proposed by Belkin, Belkin is estopped from denying that its test will, or is likely to, affect the battery's performance. Further, Belkin is estopped from denying that its proposed testing involves direct, or permanent, manipulation of the battery cell. Gromov may inform the jury that Belkin's test affected the battery."

That language permits Belkin to go forward with its proposed test, but it puts the risk of the test causing damage on Belkin, the party requesting the test.

## III. Identity of Belkin's expert

Belkin has steadily refused to identify who its expert is or what his or her credentials may be. Belkin's position has been, to paraphrase: "Trust us. Would we use someone incompetent?"

Probably not—but as Reagan said, "trust, but verify." No matter how you slice it, the proposed test still involves putting a litigant's device into the hands of an agent of his opponent, and it will still affect, to whatever degree, the permanent functioning of the battery forever. An incompetent expert might damage this piece of evidence that Belkin believes is apparently important to the claims and defenses in this case.

The expert's name and credentials are not state secrets and have to be disclosed eventually. Gromov is entitled to know who the expert is, what capabilities his or her lab has, and what his or her resume shows about his or her credentials *before* the phone's battery is tested.

5

Belkin's overheated rhetoric about preserving its expert privilege or violating the sanctity of the scheduling order should be set aside. No lawyer would send a client off to get a Rule 35 medical exam from someone whose identity and medical credentials are totally unknown, and Gromov's counsel concur with something similar here, where harm to the phone's battery or the phone itself may occur. Belkin has not articulated any harm in early identification of a battery expert, an expert who seeks to perform testing on the phone's battery *now* as opposed to a later stage of the case.

Therefore, the Court should order as follows:

> "Belkin must disclose the expert's identity by immediately providing his or her curriculum vitae to Gromov. Gromov will then have three full business days to review it. If Gromov has an objection to the expert's qualifications to conduct this test, he must confer with Belkin immediately."

Such an order would not inject any delay into the testing, and it will provide Gromov with some reasonable measure of assurance about the appropriateness of the selection of Belkin's expert to perform the physical testing.

Respectfully submitted,

Date: May 3, 2024

/s/ William F. Cash III

William F. Cash III (Ill. Bar No. 6330856)
bcash@levinlaw.com
Matthew D. Schultz (*pro hac vice*)
mschultz@levinlaw.com
Scott Warrick (*pro hac vice*)
swarrick@levinlaw.com
**LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY, P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Phone: 850-435-7059

6

Seyed Abbas Kazerounian (Ill. Bar No. 6316129)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Phone: 800-400-6808

Jason A. Ibey (Bar. No. 16691)
jason@kazlg.com
**KAZEROUNI LAW GROUP, APC**
321 N. Mall Drive, Suite R108
St. George, Utah 84790
Phone: 800-400-6808

D. Greg Blankinship (*pro hac vice*)
gblankinship@fbfglaw.com
Bradley F. Silverman (*pro hac vice*)
bsilverman@fbfglaw.com
**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
1 North Broadway, Suite 900
White Plains, NY 10601
Phone: 914-298-3290

*Attorneys for Plaintiff Dennis Gromov*

7