# EXHIBIT 1

2024 WL 3673719

2024 WL 3673719
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

ADAM SORKIN, individually and on behalf
of all others similarly situated, Plaintiff,
v.
THE KROGER CO., Defendant.

23 C 14916
|
Filed: 08/06/2024

**MEMORANDUM OPINION**

Charles P. Kocoras United States District Judge

 ***1** Plaintiff Adam Sorkin, like many others, is concerned about the ethical treatment of farm animals. When he purchased eggs at the grocery store, he opted for a more expensive brand of eggs labeled and packaged as "Farm Fresh Eggs," envisioning "hens living on farms, with open green space, grass, hay and straw," "pecking and playing in the fields." In his mind, "farm fresh" and "cage free" are one and the same. So, imagine Sorkin's surprise when he learned that the "farm fresh" eggs he purchased were produced by hens in cages in industrial confinement, with no access to the outdoors and no ability to engage in natural hen activities, like "pecking and rolling in dust" and "spreading their wings." He was so troubled by this revelation that he went to the federal courthouse and filed a lawsuit.

Sorkin brings this action on behalf of himself and a putative class of purchasers of the "Farm Fresh Eggs," claiming a violation the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.* Before the Court is Defendant The Kroger Co.'s ("Kroger") motion to dismiss Sorkin's amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

**BACKGROUND**

The following facts come from the amended complaint and are assumed true for the purposes of this motion. All reasonable inferences are drawn in Sorkin's favor.

The ethical treatment of farm animals is an increasing concern for Americans, including Sorkin. However, labeling related to animal welfare and production methods are not directly observable in the same ways as information about a product's characteristics, such as price, size, and color. Since eggs produced from hens living on "real" farms will appear and taste like those from caged facilities, consumers lack any ability to confirm what they are told by those products' labeling.

Kroger is a grocer with retail stores throughout the country. Kroger's subsidiary, Roundy's, operates Mariano's Fresh Market stores in Illinois, where Roundy's sells eggs under its private-label "Roundy's" brand. Roundy's private-label eggs include eggs that come from caged hens, as well as eggs that come from hens that are not caged.[1]

Between October 2020 and October 2023, Sorkin purchased Roundy's eggs packaged and labeled as "Farm Fresh Eggs." Sorkin believed "farm fresh" meant eggs produced by hens living on farms, with open green space, grass, hay, and straw. He did not expect "farm fresh" to describe eggs produced by hens in industrial confinement, in cages, where they lack access to outdoors and the activities and behaviors they naturally exhibit. Sorkin believed and expected eggs labeled as "farm fresh" were from hens not confined in cages. Sorkin paid a premium price for the eggs; he would have paid less or not purchased the eggs at all if he had known about the misleading nature of the term "farm fresh."

 ***2** According to Sorkin, consumers understand a "farm" as "a small agricultural system, including a traditional barn and abundant hay." Dkt. # 19, ¶ 31. And the term "farm fresh" directly and indirectly tells purchasers the eggs they are buying were produced by hens living a natural life on a farm, pecking and playing in the fields. "Farm fresh" is misleading because the eggs labeled with this term are not produced on anything consumers would consider a farm, but in large-scale industrial confinement. As a result of the false and misleading representations, Roundy's eggs labeled as "farm fresh" are sold at premium price, approximately not less than $1.49 for a dozen large white eggs, excluding tax.

A "recent independent study from Data for Progress," titled "*Cracking Down on Kroger*," confirmed that purchasers are misled by eggs sold under Kroger's store brands, which are labeled as "farm fresh."[2] This is because such eggs are not produced on anything consumers would consider a farm, but in large-scale industrial confinement. According to the

"*Cracking Down*" study, in a survey of 646 Kroger customers, when asked whether they thought a label that said "Farm Fresh Eggs" referred to eggs that come from hens in cages or not in cages, 41% said they thought that "farm fresh" meant cage-free, 45% said they didn't know, and 14% said they thought the hens were confined in cages.

Sorkin claims the product's labeling and packaging violated the Federal Trade Commission Act ("FTC Act") and thereby violated the ICFA because it expressly stated that the eggs were "farm fresh" when they did not originate on a farm as consumers understand the term, because the term impliedly suggests the eggs were produced by hens living on farms, and because "Farm Fresh Eggs" created the "erroneous impression the eggs were produced by hens living on farms, enjoying time playing in the grass and dirt, spreading their wings, etc." Dkt. # 19, ¶¶ 84–86.

Sorkin filed his complaint on behalf of himself and a putative class on October 14, 2023. His amended complaint, filed on March 8, 2024, contains a single count alleging a violation of the ICFA. Kroger moves to dismiss the amended complaint for failure to state a claim, arguing that Sorkin's allegations fail to establish plausible deception because nothing in the term "farm fresh eggs" nor the label suggests anything about whether the egg-laying hens were caged, the term is true, USDA guidance precludes Sorkin's interpretation, and context confirms "farm fresh eggs" does not mean free-roaming hens on a pasture.

### LEGAL STANDARD

A motion to dismiss for failure to state a claim challenges the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Because Sorkin pleads deceptive conduct under the ICFA, he faces the heightened pleading standard of Rule 9(b). *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) ("If the [ICFA] claim rests on allegations of deceptive conduct, then [Rule] 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud.") (cleaned up). That standard requires that he "state with particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b). Sorkin must describe the "who, what, when, where, and how" of Kroger's deception. *See AnchorBank*, 649 F.3d at 615 (citation omitted); *see also Benson*, 944 F.3d at 646. The complaint needs to paint "a sufficiently detailed picture of the alleged scheme." *See AnchorBank*, 649 F.3d at 615.

### DISCUSSION

**\*3** The ICFA is "a regulatory and remedial statute" intended to protect consumers against "fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416–17 (2002). Deceptive or unfair practices include any "misrepresentation or the concealment, suppression or omission of any material fact." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019) (quoting 815 ILCS 505/2). A practice is deceptive if it "creates a likelihood of deception or has the capacity to deceive a reasonable consumer." *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 322 (7th Cir. 2021) (cleaned up). Unfair conduct "offends public policy; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to consumers." *Id.* (cleaned up).

While Sorkin's amended complaint focuses solely on deceptive conduct, he attempts to change his tune in response to Kroger's motion to dismiss, now claiming "Plaintiff's claims are based on Defendant's unfair conduct." Dkt. # 23, at 18 (cleaned up). However, Sorkin's claim is premised on the use of purportedly deceptive and misleading term "farm fresh," and so the Court interprets it solely as a deceptive practices claim. *See, e.g., Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) ("Although Haywood brings one ICFA claim alleging unfair practices, that claim still sounds in fraud because it relies upon the same baseline allegation that Massage Envy intentionally misled consumers by hiding information on the length of massage time."); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (addition of "unfairness"

language did not change ICFA claim "entirely grounded in fraud" to an unfairness claim); *Pirelli Armstrong Tire Cor. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011) (pleading premised on intentional concealment appropriately interpreted as deceptive practices claim subject to Rule 9(b), not unfair practices claim subject to Rule 8).

"A deceptive-practice claim under the ICFA has five elements: (1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade and commerce; (4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately caused by the deception." *Newman v. Met. Life Ins. Co.*, 885 F.3d 992, 1001 (7th Cir. 2018). "[T]he facts alleged in a complaint attempting to show fraud under the ICFA must show not just the mere possibility of a fraud, but that fraud is a '*necessary or probable inference* from the facts alleged.' " *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016) (quoting *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473, 491 (1992)). A plaintiff must plead that "the relevant labels are likely to deceive reasonable consumers," which "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020) (quoting *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972–73 (7th Cir. 2020)). In other words, "to adequately plead an ICFA claim, it is not enough to allege that the product misled a particular plaintiff. Idiosyncratic readings and unreasonable interpretations of a label don't cut it. What matters is how a reasonable consumer would read the packaging." *Matthews v. Polar Corp.*, 2023 WL 4534543, at *6 (N.D. Ill. 2023).

**\*4** Whether a statement is deceptive is usually a question of fact. *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1158 (N.D. Ill. 2022). However, a court may dismiss a ICFA claim "if the challenged statement was not misleading as a matter of law." *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015). "Where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Rudy*, 583 F. Supp. 3d at 1158–59 (cleaned up); *see also Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2011) (dismissing a claim of deceptive advertising because the product's label "eliminates any possibility of deception" and "can only be read" in a nondeceptive way).

"Context matters, too." *Curtis v. 7-Eleven, Inc.*, 2022 WL 4182384, at *12 (N.D. Ill. 2022). "[W]hen analyzing a claim under the ICFA, the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005); *see also Bell*, 982 F.3d at 477 ("We stand by the general principle that deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used.") (citing *Davis*, 396 F.3d at 884). And "checking common sense at the door isn't required." *Gardner v. Ferrara Candy Co.*, 2023 WL 4535906, at *4 (N.D. Ill. 2023).

So, the first question is whether the amended complaint alleges a deceptive act or practice within the meaning of the statute. The Court concludes it does not. In its motion to dismiss, Kroger argues that Sorkin's allegations fail to establish plausible deception because (1) nothing in the term "farm fresh eggs" nor the label suggests anything about whether the egg-laying hens were caged, and the term is true; (2) USDA guidance precludes Sorkin's interpretation; and (3) context confirms "farm fresh eggs" does not mean free-roaming hens on a pasture.

Of course, in some cases even a true statement can lead to an ICFA claim—if the true statement creates a false impression. *See Bell*, 982 F.3d at 479; *Beardsall*, 953 F.3d at 973 ("A label is deceptive if it is likely to mislead a reasonable consumer in a material respect, even if it is not literally false."); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 761–62 (7th Cir. 2014) (noting that a deceptive-practices claim under the ICFA "may be satisfied by proof that a statement is likely to mislead a reasonable consumer, even if the statement is literally true."). However, "the few cases which have found a true statement to be actionable under ICFA typically involve a facially obvious omission or deception as to a material fact." *Oettle v. Walmart, Inc.*, 2022 WL 3584944, at *5 (S.D. Ill. 2022).

The key issue is what "farm fresh" means to a reasonable consumer. Sorkin contends the label deceptively conveys to consumers that the eggs came from a farm where the "hens [were] living a natural life ..., pecking and playing in the fields," "with access to open green space to run around and engage in natural hen behaviors like pecking and dusting themselves on the ground," and were "not confined in cages." Dkt. # 19, ¶¶ 32, 86, 61. But the term "farm fresh" does not say or suggest anything about whether the eggs came

from a hen that was caged or not. Sorkin is attempting to "impute meaning that is not fairly derived from the labeling itself." *Matthews*, 2023 WL 4534543, at *9; *see also Zahora v. Orgain LLC*, 2021 WL 5140504, at *4 (N.D. Ill. 2021) ("A reasonable consumer would not read into the label what is simply not there."). Even accepting as true that forty-one percent of the 646 Kroger customers surveyed for the "*Cracking Down*"[3] study believed "farm fresh" meant cage free, the complaint fails to support a reasonable inference that a majority of reasonable consumers would be misled to believe that a statement not referencing the living conditions of the hens implicitly guarantees that the hens that produced the eggs were living on some sort of idyllic farm with a red barn, an abundance of hay, and hens frolicking in elysian green pastures.[4]

*5 Context also supports Kroger's position. "Modern American grocery stores offer a dizzying array of choice. Often, consumers may choose among eggs that are large, medium, or small; eggs that are white, brown, or some other color; eggs from cage-free chickens or ones raised consistent with organic farming standards." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 364 (2023). In contrast to "farm fresh," terms such as "cage-free", "free-range", and "pasture-raised" *do* say something about the living conditions of the hens.[5] The Court agrees with Kroger that "no reasonable consumer would plausibly spin free-roaming hens on a grassy, open field from the term 'farm fresh.' " Dkt. # 21-1, at 14. "Rather, 'Farm Fresh Eggs' means precisely what it says: the eggs are fresh from a farm." *Id.*

As Kroger points out, several of the sources cited in the amended complaint actually undermine Sorkin's interpretation of the term. They say (a) that "experts" "agree[ ] [that] farm fresh means nothing," the term "does not address the health or welfare of the animals," and "[f]arm fresh eggs can come from caged hens in large industrial facilities" (Dkt. # 19, ¶¶ 28, 24), and (b) that farm fresh conveys a "sense of immediacy," "freshness," and that the eggs are "freshly picked" (*id.* ¶¶ 25, 27). And Sorkin's reliance on the "*Cracking Down*" study "cannot rescue [his] claims from the zone of implausibility where implausibility is otherwise so clear." *Nacarino v. Chobani, LLC*, 2021 WL 3487117, at *8 (N.D. Cal. 2021); *see also Puri v. Costco Wholesale Corp.*, 2021 WL 6000078, at *7 (N.D. Cal. Dec. 20, 2021) ("otherwise facially implausible consumer deception claims cannot be redeemed by survey allegations alone.").

Lastly, Sorkin's claims that Kroger violated the Egg Products Inspection Act ("EPIA"), 21 U.S.C. §§ 1031–1032 *et seq.*, hold no water because the EPIA applies to egg products, rather than the shell eggs at issue here. *See Compassion Over Killing v. Food & Drug Admin.*, 2014 WL 7336231, at *5 (N.D. Cal. 2014). Similarly, Sorkin's allegation that the product violates the FTC Act is unavailing. "According to the FTC's Enforcement Policy on Food Advertising ... while the FTC's jurisdiction over unfair or deceptive acts and practices includes unfair or deceptive labeling of foods, the FTC has assumed primary responsibility for regulating food *advertising* and allowed the FDA and USDA to assume primary responsibility for regulating food labeling." *Kuenzig v. Kraft Foods, Inc.*, 2011 WL 4031141, at *10 (M.D. Fla. 2011) (emphasis in original).

At bottom, Sorkin has not plausibly shown that his definition of "farm fresh" aligns with the expectations of a reasonable consumer. "Words don't mean whatever we want them to mean," and "[a] plaintiff cannot sue based on every fanciful idea that springs to mind after reading the label." *Matthews*, 2023 WL 4534543, at *9. Simply put, there is nothing deceptive about "Farm Fresh Eggs." It is about origin and timing, nothing more. Sorkin's claim is based on a legally unreasonable interpretation of the product label. He therefore fails to state a claim under the ICFA.

## CONCLUSION

*6 For the foregoing reasons, Kroger's Motion to Dismiss [21] is granted and the amended complaint is dismissed. Civil case terminated.

It is so ordered.

**All Citations**

Slip Copy, 2024 WL 3673719

## Footnotes

1   The Court takes judicial notice of the Mariano's Fresh Market website search page results that are referenced in Sorkin's amended complaint *and* Kroger's request for judicial notice. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *see also Pennington v. Travelex Currency Services, Inc.*, 114 F. Supp. 3d 697, 703 n.7 (N.D. Ill. 2015). The search results Kroger submitted show "Simply Roundy's Organic Free Range Large Brown Eggs." Dkt. # 21-3, at 7.

2   The Court takes judicial notice of the "*Cracking Down*" study, which is incorporated by reference in Sorkin's amended complaint. *See Brownmark Films*, 682 F.3d at 690.

3   The study involved Kroger brand eggs, not the Roundy's eggs at issue in this case.

4   The two out-of-circuit cases Sorkin relies on to support his claim of deception, *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 232 (S.D.N.Y. 2020), and *Mogull v. Pete & Gerry's Organic, LLC*, 588 F. Supp. 3d 448 (S.D.N.Y. 2022), are readily distinguishable. In both cases, the plaintiffs challenged "Nellies Free Range Eggs," which represented on the label that it contained "free range" eggs from "hens [who] can peck, perch, and play on plenty of green grass" and depicted images of "children playing with hens in open fields." *Lugones*, 440 F. Supp. 3d at 232; *Magull*, 588 F. Supp. 3d at 454. This is a far cry from a label that merely states the product is "farm fresh."

5   According to USDA shell egg labeling guidelines, eggs labeled as "cage free" "are laid by hens that are able to roam vertically and horizontally in indoor houses, and have access to fresh food and water.... They must allow hens to exhibit natural behaviors and include enrichments such as scratch areas, perches and nests." Eggs labeled as "free range" "must be produced by hens that are able to roam vertically and horizontally in indoor houses, and have access to fresh food and water, and continuous access to outdoors during their laying cycle.... They must allow hens to exhibit natural behaviors and include enrichments such as scratch areas, perches and nests." https://www.ams.usda.gov/sites/default/files/media/ShellEggLabelingUSDAGrademarkedProduc t.pdf (last visited July 17, 2024).

---

End of Document                                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.