IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DENNIS GROMOV, individually and on behalf of all other similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> BELKIN INTERNATIONAL, INC., <br><br> Defendant. | Case No. 1:22-cv-06918 <br><br> Hon. Franklin U. Valderrama <br><br> Magistrate Judge Gabriel A. Fuentes |

### JOINT STATUS REPORT

Pursuant to the Court's order (Dkt 124), the parties submit the following joint status report.

**Gromov's position:**

Regrettably, the apparent era of cooperation between the parties has broken down again. Belkin is again playing games with discovery. The dispute continues to be over the production of documents and the availability of deposition witnesses.

**Production of documents**

As the Court knows, Gromov's requests for production of written documents were served in April of 2023. Belkin acknowledges that it still has not completed its production. Belkin also has further written discovery responses due next week.

Belkin has been producing documents as recently as August 13. And it continues to do so in the California *Miley v. Belkin* action where its production is also delinquent. The parties agreed that discovery in the *Miley* and *Gromov* actions should be coordinated. The parties have agreed that documents produced in either case can be used in the other, for purposes of depositions. In the *Miley* case, one of Belkin's lawyers has been promising to produce documents for over two weeks

now without doing so. Gromov would like to get the documents *once* and take the depositions *once*. But Belkin stonewalls.

In Gromov, despite Belkin making a production as recently as August 13, there continue to be significant categories of documents just missing:

- **Test results.** The great bulk of Belkin's recent production was test results, but they are mainly irrelevant. Half of them are in the Chinese language and that hasn't made them easy to understand. Gromov has engaged an expert to attempt to read them. The key data that Gromov wants from the test results is **each model's rated capacity**: the amount of power the product can output, so that it can be compared with the marketed capacity on the package. Gromov raised the issue with Belkin several times during this litigation, including on August 6 in an e-mail. Gromov has found perhaps **six test results out of 100** in this case.

- **Marketing materials and web sites.** Part of the issues in this case concern Belkin's representations to consumers. Yet in the *Gromov* action, Belkin has still not produced a single web site in discovery. None. (In the *Miley* action, Belkin has attempted to use its web sites as a defense—as a shield, and Plaintiff can't have it to use as a sword.)

- **Parts lists.** One of Gromov's requests seeks the identity of the components inside Belkin's power banks. Again, this will vary for each of Belkin's 100+ models. Other than stray references embedded in other documents, Belkin has produced none of them.

- **Marketing surveys.** It is relevant to be able to prove that Belkin knows consumers look at technical characteristics when they buy. Belkin produced two such documents in the *Miley* case in 2020. Plaintiffs know that Belkin commissions such surveys. In *Gromov*, however, none has been produced other than these two.

- **Consumer complaints.** Belkin produced dozens of complaints in *Miley* as to 3 of its models. And in this action, has produced *no* complaints as to the other 100 models.

Every time Gromov raises these issues, Belkin either says it has no obligation to produce; is making a rolling production and needs more time; or promises to dribble out a few more documents a couple of weeks later.

It is also not helpful that Belkin has ignored Rule 34(b)(E)(i)'s requirement that Belkin "must organize and label [its documents] to correspond to the categories in the request." Sifting

2

through the document dump and reading literal Chinese is difficult but it would be easier if Belkin would follow the Rule. Gromov asked Belkin to do so and there has been no response.

Gromov is continuing to attempt to meet and confer with Belkin on all these issues. That is why Gromov asked Belkin to defer the depositions.

Gromov's hope is that the parties can confer and reach yet another production date so that fair discovery can be completeld.

**Depositions**

The two depositions Gromov seeks and which had been set for this week did not take place. That is because Gromov took them down and asked for new dates in the week of September 9.

Even if discovery were closed here in *Gromov*, these depositions **will be taken**, because they are going to be noticed in the California state court *Miley* action. The same witnesses will sit in the same chairs and answer largely the same questions. The parties already agreed that, between *Gromov* and *Miley*, these depositions could be used in both actions. Thus there is zero undue burden on Belkin, its lawyers, or the witnesses if the depositions are held in the middle of September instead of the end of August.

Even with the deposition dates, Belkin continues to play Lucy jerking the football away from Charlie Brown. In July, the parties had agreed to take Melody Tecson's deposition on August 1st—on whatever record was then available. However, when Gromov later confirmed the date, Belkin's lawyer wrote: "As far as deposition dates, we reached out to Ms. Tecson to hold the date but found out yesterday that she now has a surgery scheduled for next week, so August 1 no longer works." The August 1 date became August 15, which then shifted because Belkin had promised to produce belatedly-found documents on August 13 (Belkin admits this below).

3

If Belkin complains that the deposition schedule isn't a firm one, it has to admit that it offered a witness who then scheduled surgery on the agreed date and that Belkin keeps producing more documents as a reason to delay depositions. Although fact discovery does not close until next week, Belkin already foreclosed next week as a possibility to re-set the depositions because the witness will be on a trip. Belkin's witnesses routinely are unavailable due to trips, surgeries, and even funerals, for weeks on end.

The status of the other witness, Norbert Von Boode, is also a subject of dispute. He no longer works for Belkin, but as a global product designer, he had important responsibility for these products. Belkin's lawyers have **refused** to provide his contact information and have maintained it would unethical to communicate with him because they "represent him." This makes it impossible for Gromov to speak with him about his availability.

Gromov wants to reset the depositions within the week of September 9 or as soon thereafter as is possible. Gromov endeavors to make as much progress on documents—including continuing to confer on the test reports issue he raised on August 6—and conduct the depositions on what is available.

It is also important to note: The Rule 30(b)(6) deposition at issue will be the *first* time Gromov has been able to ask a designated witness about the location of documents or identity of other witnesses. If that information comes to light, it would be a basis for Gromov to seek to extend fact discovery.

Gromov also wants to point out that **Belkin has never served affirmative defenses** due to the pending motion to dismiss. There is no answer on file. Belkin (below) wants fact discovery to close, but the pleadings aren't even in yet. That would be unfair to say the least. Gromov is entitled to discovery on any affirmative defense Belkin raises.

**Settlement prospects**

No settlement discussions are occurring. It is possible that that the Court's involvement could benefit settlement.

**Request for relief**

Gromov understands that this is only a status report, but in the past the Court has treated status reports as fully-briefed motions for relief. Gromov contemplates seeking the following from Belkin:

1. A final meet and confer with Belkin on its document production.

2. Resetting deposition dates in this case during the week of September 9 or as soon thereafter. Belkin refuses to provide any other dates (and for Mr. Von Boode, blocks Gromov from learning his availability independently).

Gromov contemplates seeking the following from the Court after further contact with Belkin:

3. After meeting and conferring with Belkin again, an extension in the deadlines that would permit Belkin's production, the depositions, and anything left.

4. An in-person conference with the Court if the parties just cannot reach agreement.

**Belkin's position:**

Belkin provided a draft status report to Plaintiff at 12:40 p.m. CT on August 29, but received no response. Belkin emailed Plaintiff again to follow-up on August 30 at 11:20 a.m. CT. Plaintiff then sent its lengthy report set forth above, including the statements about what documents Plaintiff is apparently now seeking in discovery, for the first time 25 minutes prior to the filing deadline. Belkin has not had an opportunity to review Plaintiff's statements in detail to respond but provides its position below to meet the Court's deadline.

On April 1, 2024, the Court ordered that Belkin provide deposition dates for Melody Tecson, its Rule 30(b)(6) witness, and former employee, Norbert von Boode, by May 24, 2024. (Dkt. 103.) Belkin met this deadline and provided dates for depositions in June. Plaintiff did not accept those deposition dates and instead demanded that the parties first agree to a protocol for the deposition process that would apply to this case and the *Miley* action that is pending in California Superior Court.

As previously reported to the Court, the parties ultimately agreed to procedural terms for the depositions and submitted a joint filing reporting that Belkin's Rule 30(b)(6) witness would be deposed on August 15 and that Belkin's former employee, Norbert von Boode, would be deposed on August 30.[1] (Dkt. 123.) On that basis, the parties requested that the Court amend the Case Management Order such that the fact discovery cutoff would be continued to from July 18 to September 6. (*Id*.) The Court granted the parties' request and commended the parties on reaching agreement. (Dkt. 124.)

Unfortunately, that agreement had to be modified. In preparing for the August 15 deposition, Belkin identified a small set of documents (less than 100) responsive to Plaintiff's Requests for Production Nos. 4 and 5 (regarding product design and testing) that had been inadvertently omitted from its May 2024 production. Belkin informed Plaintiff that those documents would be produced immediately on August 13 and offered to continue the 30(b)(6) deposition to August 29 so that Plaintiff would have time to review the documents and the deposition could be on a day adjacent to the scheduled deposition of Mr. von Boode, thereby saving Plaintiff's counsel an additional trip to California. Plaintiff reluctantly elected not to proceed with

---

[1] Belkin had offered to set both depositions on consecutive days (August 29 and 30) to minimize travel for Plaintiff's counsel, but Plaintiff rejected that offer and demanded that the 30(b)(6) representative be deposed sooner.

the deposition on August 15 and accepted Belkin's offer. Plaintiff's counsel also indicated that he would review the documents produced on August 13 and provide "a list of what appears to be missing" the following day. (Ex. 1.) Plaintiff's counsel also stated that he intended to take the depositions at the offices of a third-party law firm in Los Angeles, not at the offices of Belkin's counsel which had been offered as a deposition location. (*Id.*) Belkin responded by indicating that the production included test results and product specifications and offered to further meet and confer the following day to address any outstanding issues. Later that day, Belkin produced the 98 documents that had been inadvertently omitted from the May 2024 production.

  Plaintiff's counsel did not follow-up further. Therefore, Belkin understood that the issues Plaintiff had raised regarding the production of testing documents had been resolved by the August 13 production and the depositions would go forward on August 29 and 30. Belkin's 30(b)(6) witness, Vice President of Product Management Melody Tecson, and former employee Mr. von Boode, cleared their calendars so that they could appear and be deposed. When Belkin contacted Plaintiff's counsel on the morning of August 27 to confirm the start time and address of the depositions (because the third party law firm identified by Plaintiff has multiple locations in the Los Angeles area), Plaintiff's counsel responded late that afternoon that he did not intend to move forward with the depositions, as agreed, and instead requested that the depositions go forward the week of September 9. Plaintiff also asserted that additional documents "in the areas of design materials and communications; marketing info and representations; labeling; and test results" were not provided. (Ex. 2.) Belkin responded that the witnesses are planning to appear for the depositions as agreed, informed Plaintiff that Ms. Tecson was travelling out of the country the week of September 9, that Mr. von Boode is no longer a Belkin employee so Belkin cannot control his schedule, suggested that Plaintiff proceed with the depositions on August 29 and 30 as

7

planned, and asked that Plaintiff confirm that he will proceed with the depositions by the next morning 9 a.m. Pacific time. Belkin also informed Plaintiff that if it did not hear from him, it would release the witnesses and would not agree to them being deposed again. (Ex. 3.) Plaintiff did not respond by the 9 a.m. deadline. Therefore, around Noon Pacific time, Belkin told the witnesses that Plaintiff would not be proceeding with the depositions and informed Plaintiff that it had done so. (*Id.*)

Fact discovery in the case has been extended three times and now[2] closes on September 6, 2024. Belkin objects to producing witnesses for deposition after the close of fact discovery and to any further delay by Plaintiff as Plaintiff now requests. Belkin's production has been complete as of August 13 (with the vast majority of documents being produced long before that) and Belkin has advised Plaintiff of that, including that the August 13 production includes the available testing documents that Plaintiff had previously identified and requested. Plaintiff's counsel elected not to meet and confer by phone on August 14 as suggested by Belkin, or at any time thereafter. It is therefore not clear to Belkin what, if any, additional documents Plaintiff believes must be produced or why. It is also not clear why Plaintiff refused to proceed with the two depositions as scheduled so that they could be completed before the close of fact discovery.

Belkin notes that the parties previously agreed to meet and confer as to whether additional written discovery would be needed after the depositions go forward. That agreement, however, did not give Plaintiff license to drag out the deposition process itself. Moreover, Belkin's witnesses have also had to hold multiple dates for depositions that Plaintiff elected not to take, which has caused substantial disruption to their ordinary business duties.

---

[2] On October 10, 2023, the Court ordered that the extension of fact discovery to February 28, 2024 was "declared final" (*see* Dkt. 55) but that deadline has been extended twice since then.

Belkin respectfully submits that deadlines must now be enforced. Plaintiff has had plenty of opportunities to take the depositions of Belkin's witnesses (dates were first offered in March), but he has continuously elected not to do so, instead making unreasonable demands about the process and citing only vague assertions that documents have not been produced but without making any meaningful efforts to meet and confer. Indeed, Plaintiff has already deposed both Ms. Tecson and Mr. von Boode in the *Miley* case. As previously agreed by the parties and ordered by the Court, fact discovery closes on September 6 after being extended three times, and there is no good cause to continue that deadline once again.

With respect to settlement, the parties have engaged in preliminary discussions but Belkin does not believe that a settlement conference with the magistrate judge would be productive at this time.

Dated: August 30, 2024

Respectfully submitted,

/s/ William F. Cash III

William F. Cash III (Ill. Bar No. 6330856)
bcash@levinlaw.com
Matthew D. Schultz (*pro hac vice*)
mschultz@levinlaw.com
**LEVIN, PAPANTONIO, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY, P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Phone: 850-435-7059

Seyed Abbas Kazerounian (Ill. Bar No. 6316129)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Phone: 800-400-6808

9

Jason A. Ibey (Bar. No. 16691)
jason@kazlg.com
**KAZEROUNI LAW GROUP, APC**
321 N. Mall Drive, Suite R108
St. George, Utah 84790
Phone: 800-400-6808

D. Greg Blankinship (*pro hac vice*)
gblankinship@fbfglaw.com
Bradley F. Silverman (*pro hac vice*)
bsilverman@fbfglaw.com
**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
1 North Broadway, Suite 900
White Plains, NY 10601
Phone: 914-298-3290

*Attorneys for Plaintiff Dennis Gromov*

 */s/ Michael T. Boardman*
Edward Totino (admitted *pro hac vice*)
Nancy Nguyen Sims (admitted *pro hac vice*)
Michael T. Boardman (admitted *pro hac vice*)
BAKER & MCKENZIE LLP
10250 Constellation Blvd., Ste. 1850
Los Angeles, CA 90067
Telephone: (310) 210-4725
edward.totino@bakermckenzie.com
nancy.sims@bakermckenzie.com
michael.boardman@bakermckenzie.com

Laura A. Kelly
BAKER & MCKENZIE LLP
300 East Randolph Street, Suite 5000
Chicago, IL 60601
Telephone: (312) 861-8000
laura.kelly@bakermckenzie.com

*Counsel for Defendant Belkin International, Inc.*