### In the United States District Court
### for the Northern District of Illinois
### Eastern Division

| | |
|---|---|
| DENNIS GROMOV, individually and on behalf of all others similarly situated, | |
| Plaintiff, | No. 22-cv-06918 |
| v. | Judge Franklin U. Valderrama |
| BELKIN INTERNATIONAL, INC., | |
| Defendant. | |

## Order

In today's world, portable electronic devices (PEDs) like smartphones, tablets, and laptops are as ubiquitous as they are necessary. PEDs must be charged to operate. But what happens when your PED is running out of battery and there is no electrical outlet in sight? Anxious and desperate, some may relate to Shakespeare's King Richard III, who famously cried out, "A horse, a horse, my kingdom for a horse!" after his horse was slain in battle.[1]

Enter technology companies, like Defendant Belkin (Belkin), who market and sell "power banks"—compact portable chargers that provide an easy way for consumers to power up their PEDs anytime, anywhere. Seeking such convenience, Plaintiff Dennis Gromov (Gromov) purchased Belkin's Pocket Power 10000 (Pocket Power 10K). From Gromov's perspective, however, the Pocket Power 10K did not pack as much charging punch as advertised. So, Gromov sued Belkin individually and on behalf of a class of similarly situated consumers, asserting violations of the Illinois

---

[1] William Shakespeare, *Richard III* act 5, sc. 4.

Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 *et seq*., and nine other state consumer protection statutes, along with claims for breach of express warranty and unjust enrichment. R. 1,[2] Compl.

Belkin filed a motion to dismiss (the Motion) Gromov's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for lack of standing pursuant to Rule 12(b)(1). R. 22, Mot. Dismiss. The Motion is fully briefed and before the Court. R. 30, Resp.; R. 32, Reply.  For the reasons set forth below, the Court grants in part and denies in part the Motion.

## Background

Today's consumers are increasingly dependent on smartphones, tablets, laptops, and other PEDs. Compl. ¶ 2.[3] As with many modern electronic devices, users must periodically recharge their PEDs to keep them powered—a difficult task when no electrical outlet is available. Compl. ¶ 3.

To address this problem, technology companies created power banks, which are small, portable power sources that connect to and charge PEDs. Compl. ¶¶ 4, 5.

A power bank consists of an internal battery (or series of battery cells) and a circuit board that controls the technology. Compl. ¶ 44. When charging a device, a power bank's circuit board converts the internal batteries' charge to a voltage that PEDs can accept. *Id*.  The power bank then sends that voltage to the PEDs, increasing

---

[2]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[3]The Court accepts as true all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of Gromov. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

the PEDs battery power. Compl. ¶ 45. To convert and distribute this power to the PEDs, the power bank must draw power from its own internal batteries. Compl. ¶ 46. This process uses a substantial amount of the power bank's internal battery power. Compl. ¶ 47.

A power bank's charging capability is measured in milliampere-hours (mAh). Compl. ¶ 6. A higher mAh rating indicates an enhanced ability to charge PEDs. *Id.* In other words, a power bank with a higher mAh rating "can deliver more juice." *Id.* Since the primary goal of purchasing a power bank is to obtain more power, consumers prefer and are willing to pay more for power banks with a higher mAh rating. Compl. ¶¶ 9–10.

Belkin is a global technology company that manufactures, markets, and sells a variety of power banks nationwide, including Belkin's Boost Charge, Pocket Power, Power Pack, and Power RockStar. Compl. ¶¶ 1, 11, 26–28. The packaging of Belkin's power banks uniformly includes representations of their mAh ratings. Compl. ¶ 29. Belkin's advertising refers to the mAh ratings as the power bank's "battery capacity," and these ratings are prominently displayed on the packaging. Compl. ¶ 30.

The mAh ratings are also included in the actual names of the products. Compl. ¶ 31. For example, Belkin's Pocket Power 10K is advertised as having an mAh rating of 10,000. Compl. ¶ 55. Gromov submits these mAh representations are false and that testing demonstrates the amount of mAh that Belkin's products actually deliver is substantially lower than what is represented on their packaging. Compl. ¶ 32–33.

In July 2019, Gromov purchased a Belkin Pocket Power 10K for $25.00 in

Illinois. Compl. ¶¶ 54, 56. In doing so, Gromov allegedly read and relied on the representation that the Pocket Power 10K could deliver 10,000 mAh. Compl. ¶ 54. Gromov, however, soon discovered that he needed to recharge the Pocket Power 10K more often than expected. Compl. ¶ 57.

Gromov had an outside laboratory run tests on his Pocket Power 10K as well as on Belkin 5000 and 6600 mAh power bank models to determine the amount of mAh these power banks delivered. Compl. ¶¶ 51–52. The alleged lab results are below:

| mAh Represented | Actual mAh |
|---|---|
| 5000 | 3504 |
| 5000 | 3254 |
| 6600 | 4206 |
| 6600 | 4453 |
| 10000 | 6855 |
| 10000 | 6464 |

Compl. ¶ 52.

Gromov sued Belkin on his own behalf and on behalf of two putative classes: (1) all consumers who purchased Belkin power banks in Illinois (the Illinois Class); and (2) all consumers who purchased Belkin power banks in Florida, Massachusetts, Missouri, New Jersey, New York, North Carolina, Ohio, Washington, and Wisconsin (the Multistate Class). Compl. ¶ 77. Gromov asserts violations of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 (ICFA) on behalf of himself and the Illinois Class (Count I), *id*. ¶¶ 103–115; breach of the express warranty on behalf of himself and the Illinois Class (Count II), *id*. ¶¶ 116–127;

violations of various states consumer fraud statutes on behalf of himself and the Multistate Class (Count III), *id*. ¶¶ 128–144; breach of express warranty on behalf of himself and the Multistate Class (Count IV), *id*. ¶¶ 145–158; and unjust enrichment on behalf of himself, the Illinois Class, and the Multistate Class (Count V), *id*. ¶¶ 159–171.

Belkin now moves to dismiss Gromov's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and under Federal Rule of Civil Procedure 12(b)(1) for lack of standing. *See generally*, Mot. Dismiss.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Federal Rule of Civil Procedure 8, a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Hallinan*, 570 F.3d at 820. Standing is an "essential component of Article III's case-or-controversy requirement," and the plaintiff "bears the burden of establishing standing . . . in the same way as any other matter on which the plaintiff bears the burden of proof . . . ." *Apex Digit., Inc. v. Sears Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—"the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Apex Digit.*, 572 F.3d at 443–44).

## Analysis

## I.    Belkin's Rule 12(b)(6) Motion

### A.    ICFA

In Count I, Gromov asserts that Belkin violated the ICFA by deceptively advertising the mAh capacity of a power bank, which does not deliver the claimed amount of mAH. Compl. ¶¶ 103–115.

The ICFA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices . . . in the conduct of any trade or commerce." 15 ILCS 505/2. The

ICFA is a "regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002).

To state a claim under the IFCA, a plaintiff must allege: (1) a deceptive or unfair practice by the defendant; (2) the defendant's intent that the plaintiff relies on the deception; (3) that the unfair or deceptive act occurred during a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff. *Kahn v. Walmart, Inc.*, 107 F.4th 585, 598 (7th Cir. 2024) (cleaned up).[4] Under the ICFA, a claim can be based on either deceptive conduct, unfair conduct, or both. V*anzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). Here, Gromov alleges a deceptive act or practice by Belkin.

"A practice is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (cleaned up). "Courts apply a 'reasonable consumer' standard to analyze the likelihood of deception." *Id*. "When analyzing a claim under the ICFA, the allegedly deceptive act must be looked upon in the light of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005).

Belkin argues that Gromov fails to plead an ICFA violation because he fails to allege: (l) a deceptive act; (2) actual damage; and (3) actual deception. *See generally*

---

[4] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

Mot. Dismiss. The Court addresses each argument in turn.

### 1. Deceptive Act

To start, Belkin argues that Gromov's ICFA claim fails because he does not plead a deceptive act or practice by Belkin.[5] Mot. Dismiss at 4. Belkin's primary argument here is that the Pocket Power 10K's packaging clearly indicates that the 10,000 mAh rating refers to the capacity of its internal batteries. Mot. Dismiss at 4. Thus, from Belkin's perspective, the Pocket Power 10K's packaging never represented that it would deliver 10,000 mAh to Gromov's devices. *Id*. at 5. In fact, Belkin asserts, the packaging never even refers to the amount of power the Pocket Power 10K can deliver in terms of mAh; rather, the packaging refers to the amount of power delivered in terms of "approximately how many times a user can charge their PEDs from a fully-charged" Pocket Power 10K. *Id*. At bottom, Belkin insists that the Pocket Power 10K packaging conveys two pieces of information: (1) the internal capacity of the battery (10,000 mAh) and (2) the maximum number of times a user can expect to charge their phone from a fully charged Pocket Power 10K (3 times). *Id*. at 6. Belkin maintains that Gromov fails to allege either representation is false or misleading. *Id*.

[5]Gromov's ICFA claim is premised on deceptive conduct and is therefore "analyzed under the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b)." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *see also Kahn*, 107 F.4th at 601 ("A deceptive practices claim under the ICFA must meet Rule 9(b)'s heightened pleading standard"); *Vanzant*, 934 F.3d at 738 ("If the claim rests on allegations of deceptive conduct, then Rule 9(b) applies). Rule 9(b) requires a pleading to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). However, Belkin does not argue that Gromov's ICFA claim fails to meet this heightened standard, and therefore the Court does not address the issue.

Additionally, Belkin argues that Gromov has not plausibly alleged that the Pocket Power 10K's packaging is "likely to deceive reasonable consumers." Mot. Dismiss at 7.

Gromov responds that he has indeed adequately pled a claim under the ICFA. Resp. at 3. In support of this contention, Gromov notes he alleged that Belkin's packaging prominently displays the amount of mAh a power bank supposedly provides, when, in fact, the power bank does actually deliver that amount of mAh. Resp. at 4 (citing Compl. ¶ 17). Further, Gromov posits he alleged that "[r]easonable consumers interpret the packaging's mAh statement to represent how much electricity a power bank can actually provide to charge devices." *Id*. Therefore, from Gromov's point of view, he has sufficiently alleged a deceptive act. *Id*. In support of this contention, Gromov cites two "almost identical" in-district cases in which complaints related to "the same type of mAh representations . . . survived motions to dismiss." *Id*. at 1 (citing *Geske v. PNY Techs., Inc.*, 503 F.Supp. 3d 687 (N.D. Ill. 2020) and *Bonahoom v. Staples, Inc.*, 2021 WL 1020986 (N.D. Ill. Mar. 17, 2021)).

In reply, Belkin argues that contrary to Gromov's assertion, *Geske* and *Bonahoom* are factually distinguishable and therefore do not warrant denial of its motion to dismiss.

*Geske*, however, is instructive here. In *Geske*, the plaintiff sued the defendant, a manufacturer of the PowerPack 5200, alleging that the defendant misrepresented the amount of power that product could deliver. Much like the circumstances here, the plaintiff alleged that the PowerPack 5200's packaging "prominently declared that

9

it offered 5200 mAh of available power for 3x CHARGES" and that she read and relied upon this representation in purchasing the PowerPack 5200. *Geske*, 503 F.Supp. 3d at 692–93. Much to the plaintiff's chagrin, she discovered that the PowerPack 5200 delivered significantly less mAh than allegedly advertised, requiring her to recharge the product more often than expected. *Id*. The plaintiff then sued the defendant, asserting an ICFA claim.

The defendant moved to dismiss the ICFA claim on the basis that the plaintiff failed to allege a deceptive act. *Geske*, 503 F.Supp. 3d at 705. The defendant made arguments similar to those Belkin makes here: (1) it was clear that the 5200 mAh representation on the packaging referred to the PowerPack 5200's internal battery capacity and (2) the packaging's reference to "3x CHARGES" cured any confusion regarding the amount of power the PowerPack 5200 delivered. *Id*. at 705–06.

The court denied the motion. Regarding the defendant's first argument, the court viewed it as a difference of plausible interpretation: the plaintiff offered one plausible reading of the packaging, and the defendant offered another. *Geske*, 503 F.Supp. 3d at 705. The court concluded that the "existence of a competing narrative, without more, is not enough to defeat a claim when plaintiff's theory of the cause is plausible." *Id*. at 706.

As for the defendant's second argument, the court found that "there is no obvious connection between the number of charges and the amount of mAh," and that the phrase "3x CHARGES" did "not fully explain the reference to the number of mAh." *Id*. Ultimately, "[d]rawing all influences in [the plaintiff's] favor," the court found that

it was "plausible that a reasonable consumer would understand that the mAh featured in a power bank's name and listed prominently on its packaging represented the amount of power that the power bank could transfer to another device." *Geske*, 503 F.Supp. 3d at 707.

The Court agrees with Gromov that the facts and arguments presented in *Geske* are remarkably similar to those before the Court. The Court sees no reason to depart from *Geske*'s sound reasoning and, drawing all inferences in Gromov's favor, finds that he has plausibly alleged a deceptive act.[6]

### 2. Actual Damage

Next, Belkin asserts that Gromov fails to allege that he was actually damaged. Mot. Dismiss at 7. Belkin contends that Gromov purchased a Pocket Power 10K in reliance on the representation that it had 10,000 mAh, but never alleges that the Pocket Power 10K could not store 10,000 mAh in its internal battery. *Id*. In other words, Belkin maintains that Gromov was not damaged because his allegations demonstrate he purchased the Pocket Power 10K because he wanted a power bank with 10,000 mAh, and that is exactly what he received. *Id*.

Of course, this argument is only successful if the Court finds that Belkin's interpretation of its packaging is the only plausible interpretation—like the

---

[6]Plaintiff also cites to *Bonahoom v. Staples, Inc.*, 2021 WL 1020986 (N.D. Ill. Mar. 17, 2021). While this case is somewhat distinguishable, as the defendant is a retailer as opposed to a manufacturer, the Court agrees with Gromov that it also stands for the proposition that it is reasonable for a consumer to believe that the mAh featured on a power bank's packaging represented the amount of power that could be transferred to another device, as opposed to the internal battery capacity of the power bank itself. *Bonahoom*, 2021 WL 1020986, at *4–5.

11

defendant in *Geske*, Belkin essentially asks the Court to find as a matter of law that Gromov is an unreasonable consumer. The Court declines to do so. Again, Gromov has plausibly alleged that "a reasonable consumer would understand that the mAh featured in a power bank's name and listed prominently on its packaging represented the amount of power that the power bank could transfer to another device." *Geske*, 503 F.Supp.3d at 707. And by alleging that he purchased the Pocket Power 10K based on this reasonable understanding, Gromov has plausibly alleged that he was deceived and consequently suffered actual damage.

### 3. Actual Deception

Last, Belkin maintains that Gromov fails to allege that he was actually deceived as Gromov got exactly what he paid for—a power bank with a 10,000 mAh capacity. Mot. Dismiss at 8. Again, this argument is only successful if the Court finds that Belkin's interpretation of the packaging is the only reasonable one. The Court has already rejected this argument and declines to address it further. *Supra.*

### B. Breach of Express Warranty

In Count II, Gromov asserts a claim for breach of an express warranty. Compl. ¶¶ 116–127.

"To state a claim for breach of an express warranty under Illinois law, a plaintiff must allege that a seller (1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *O'Connor v. Ford Motor Co.,* 477 F.Supp.3d 705, 714 (N.D. Ill. 2020).

Here, Belkin only argues that Gromov has failed to allege the first element for breach of an express warranty: an affirmation of fact or promise. Mot. Dismiss at 8–9. As such, the Court limits its analysis to this element.

Specifically, Belkin insists that the Pocket Power 10K's packaging makes no reference to the amount of power that it can deliver to a device, and therefore "Belkin never made the purported promise that [Gromov] alleged." Mot. Dismiss at 9. Thus, Belkin asserts, Gromov bases his warranty claim "not on the language of any promise made by Belkin, but on his unreasonable interpretation of Belkin's packaging." *Id.* (citing *Akers v. Costco Wholesale Corp.*, 631 F. Supp. 3d 625, 632 (S.D. Ill. 2022)).

Gromov, on the other hand, insists that he has plausibly pled a breach of express warranty, arguing that Belkin seeks dismissal based on its own interpretation of the language on the label, which is impermissible. Resp. at 7–8 (citing *Bonahoom*, 2021 WL 1020986, *7) ("While [the defendant] argues that [the plaintiff's] allegations 'are contradicted by the actual language of the label,' this Court has concluded that the label could plausibly be read by a reasonable consumer to promise 5,000 mAh in power *delivered*, rather than power *stored*.") (emphasis in original); *Geske*, 503 F.Supp 3d. at 710 ("At best, [the defendant] offers a different gloss on the meaning of its packaging.").

Again, the Court finds that Gromov has plausibly alleged that a reasonable consumer could read Pocket Power 10K's packaging to promise that it could deliver 10,000 mAh to a device. "Here, [Gromov's] allegations about the existence of an express warranty and the breach of that warranty are adequate for the same reasons

13

his ICFA allegations were adequate." *Bonahoom*, 2021 WL 1020986, *7. Accordingly, the Court finds that Gromov has plausibly alleged a breach of express warranty.

### C. Unjust Enrichment

In Count V, Gromov asserts an unjust enrichment claim, seeking restitution from Belkin and a disgorgement order. Compl. ¶¶ 159–171.

"To state a claim for unjust enrichment under Illinois law, 'a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Banco Panamericano, Inc. v. City of Peoria, Ill.*, 880 F.3d 329, 333 (7th Cir. 2018) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). "[W]here there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Block v. Lifeway Foods, Inc.*, 2017 WL 3895565, at *7 (N.D. Ill. Sept. 6, 2017) (quoting *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. 2005)). "Thus a plaintiff may not recover on both a claim of unjust enrichment and a claim that relies on the existence of a contract, such as breach of warranty." *Id.*; *see also Hernandez v. Illinois Inst. of Tech.*, 63 F.4th 661, 671 (7th Cir. 2023) ("a plaintiff may not recover under an unjust enrichment theory if there is an enforceable contract that governs the relevant subject matter.").

However, at the pleading stage, a party may plead breach of contract and unjust enrichment claims in the alternative. *See Hernandez*, 63 F.4th at 671; *Gociman v. Loyola Univ. of Chi.*, 41 F. 4th 873, 886 (7th Cir. 2022); *Mashallah, Inc.*

*v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 325 (7th Cir. 2021); *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013). While a plaintiff is permitted to plead unjust enrichment in the alternative, he "may not incorporate by reference allegations of the existence of a contract between the parties in the unjust enrichment count." *Gociman*, 41 F. 4th at 886 (citing *Mashallah*, 20 F.4th at 325); *see also Van Zeeland v. Rand McNally*, 532 F.Supp. 3d 557, 573 (N.D. Ill. 2021) (dismissing unjust enrichment count where the plaintiff "re-alleged and incorporated by reference all the prior allegations in the [c]omplaint."); *Block*, 2017 WL 3895565, at *7 (a plaintiff "is permitted to plead unjust enrichment as long as he does not include allegations of an express contract in the count for unjust enrichment.") (cleaned up).

Belkin argues that Gromov's unjust enrichment claim fails because it is based on an express contract. Mot. Dismiss at 10. More specifically, Belkin contends that Gromov bases his unjust enrichment claim on a purported breach of an express warranty, and because express warranties are contractual in nature, Gromov fails to state a claim as a matter of law. *Id*. Predictably, Gromov disagrees, stating that while he may not recover under both theories, he "may plead claims based on the existence of a contract and a claim of unjust enrichment in the alternative, even though he may not ultimately recover under both theories." Resp. at 8 (quoting *Block*, 2017 WL 3895565, at *7. Moreover, Gromov asserts he has not incorporated any breach of express warranty allegations into his unjust enrichment count. Resp. at 9.

The Court agrees with Gromov and finds that he has adequately pled an unjust enrichment claim in the alternative. Gromov has not incorporated his breach of

express warranty allegations into his unjust enrichment claim. Rather, Gromov's unjust enrichment claim only incorporates by reference and re-alleges ¶¶ 1-102, none of which allege the existence of a contract between the parties or that Belkin breached an express warranty. *See* Compl. ¶ 159. Accordingly, Gromov's unjust enrichment claim survives.[7]

## II.     Rule 12(b)(1) Motion

### A.     Standing to Assert Claims Under Other State Consumer Protection Laws

In Count III, Gromov alleges that Belkin violated the consumer protection laws of Florida, Massachusetts, Missouri, New Jersey, New York, North Carolina, Ohio, Washington, and Wisconsin. Compl. ¶¶ 128–144.

Belkin challenges Gromov's standing to bring these claims. Mot. Dismiss at 11–12. Specifically, Belkin argues that the Court should dismiss Gromov's state consumer law claims because he does not allege to have purchased a power bank in any state other than Illinois. Mot. Dismiss at 12. *Id*. Therefore, reasons Belkin, Gromov could not have sustained an injury in any other state and thus cannot establish standing in states in which he neither resided nor purchased products. *Id*. (citing *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000, at

---

[7]"When a claim of unjust enrichment arises out of the same conduct alleged in another claim, the unjust enrichment claim stands or falls with the other claim." *Aliano v. Louisville Distilling Co., LLC*, 115 F. Supp. 3d 921, 934 (N.D. Ill. 2015) (citing *Cleary v. Phillip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)). Although Belkin argues that Gromov's ICFA claim fails, it does not argue that Gromov's unjust enrichment claim must fail for that reason. In any case, the Court has determined that Gromov has put forth sufficient allegations to state an ICFA claim. These same allegations support his claim of unjust enrichment.

*3 (N.D. Ill. Aug. 23, 2013)). Gromov counters that he may assert claims under the laws of other states, and that this is not an issue of standing, but one to be decided under Rule 23 at the class certification stage. Resp. at 9 (citing *Van Zeeland*, 532 F.Supp. 3d at 571). Indeed, notes Gromov, other courts in the Northern District of Illinois have also found that claims under other states' laws should proceed to the class certification stage. *Id*. (citing *Bonahoom*, 2021 WL 1020986; *Alea v. Wilson Sporting Goods Co.*, 2017 WL 5152344 (N.D. Ill. Nov. 7, 2017)). The Court agrees with Gromov.

"Courts [in this district] are split as to the appropriate time to consider a challenge to a named plaintiff's ability to represent a class with respect to claims under laws of states in which the named plaintiff does not reside." *Bietsch v. Sergeant's Pet Care Prods., Inc.*, 2016 WL 1011512, at *9 (N.D. Ill. Mar. 15, 2016) (collecting cases). Some courts in this district view such a challenge as related to standing and address it as a threshold issue, while others view it as a question related to class certification and defer resolution until that stage. *Id*.; *see also Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 998–1000 (N.D. Ill. 2017) (collecting cases). Although neither party acknowledges it directly, this Court encountered and rejected Belkin's argument here in *Van Zeeland*, 532 F.Supp. 3d at 571.

In *Van Zeeland*, the named plaintiff asserted a claim on behalf of himself and a multi-state consumer class for violations of various state consumer protection statutes. *Van Zeeland*, 532 F.Supp. 3d at 571. The defendant argued, as Belkin does here, that the plaintiff lacked standing to pursue claims arising under other states'

17

laws except Wisconsin, because he did not live in any other state and because he did not purchase the offending product in any other state except Wisconsin. *Id*. The Court viewed this argument to be "an attack not on [a named plaintiff's] Article III standing *per se* . . . but rather on [a named plaintiff's] ability under Rule 23 to represent the multi-state class." *Id*. (quoting *Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1009 (N.D. Ill. 2015). Such a question, the Court found, is "best deferred to the class certification stage." *Id*.

In support of its argument, Belkin cites several cases in this district that are on the opposite side of the split—that is, cases that have addressed this issue as a threshold argument and dismissed class claims where the named plaintiffs seek to represent proposed class members from other states. However, the mere fact that cases in this district have ruled in a different fashion does not in and of itself persuade this Court to reject its reasoning in *Van Zeeland*.

The acknowledgement of a split in authority—a fact this Court is well aware of—is far different than setting forth substantive argument as to why this Court should address Gromov's ability to represent a multi-state class as an issue of standing and not class certification. Simply put, Belkin has not presented the Court with any basis to deviate from its reasoning in *Van Zeeland*.

Accordingly, the Court finds that whether Gromov has standing to pursue a claim under the laws of states other than Illinois is "best deferred to the class certification stage." *Van Zeeland,* 532 F.Supp. 3d at 571.

## B.     Standing to Assert Claims Based on Products Not Purchased

Belkin next argues that Gromov lacks Article III "standing to assert claims for products other than the one he purchased." Mot. Dismiss at 12–13 (citing W*illard v. Tropicana, Mfg. Co.*, 577 F.Supp.3d 814 (N.D. Ill. 2021); *Pearson v. Target Corp.*, 2012 WL 7761986 (N.D. Ill. Nov. 9, 2012); *Cowens v. Lenny & Larry's Inc.*, 2017 WL 4572201 (N.D. Ill. Oct. 12, 2017)). Further, Belkin contends that Gromov cannot establish standing by arguing that the products are substantially similar, as he alleges no facts that the unpurchased power bank products are similar to the purchased Pocket Power 10K. Mot. Dismiss at 13–14 (citing *Porter v. NBTY, Inc.*, 2016 WL 6948379 ((N.D. Ill. Nov. 28, 2016); *Benson v. Fannie May Confessions Brands, Inc.*, 2018 WL 1087639 (N.D. Ill. Feb., 28, 2018), rev'd in part on other grounds, 944 F. 3d 639 (7th Cir. 2019)).

Gromov counters that the weight of authority is that "named plaintiffs may assert claims with respect to substantially similar products that they did not purchase so long as the injuries suffered by purchasers of those other products implicate a similar set of concerns." Resp. at 10 (citing *Geske*, 503 F. Supp. 3d at 700 and *Bonahoom*, 2021 WL 1020986, *8).

Courts in this district are yet again split as to whether the issue here is one of Rule 23 class certification or one of standing. *See Liston*, 254 F. Supp. 3d at 998–99. Courts that have found the issue to be one of Rule 23 class certification rather than Article III standing have allowed claims regarding products not purchased to survive until the class certification stage. *See Texas Hill Country Landscaping, Inc. v.*

*Caterpillar, Inc.*, 522 F. Supp. 3d 402, 408–09 (N.D. Ill. 2021); *Daly v. FitLife Brands Inc.*, 2023 WL 6388112 (N.D. Ill. Sept. 29, 2023). Others—including this Court—have considered the issue to be one of standing and have found that named plaintiffs lack standing with respect to products they have not purchased. *See Bakopoulos v. Mars Petcare US, Inc.*, 2021 WL 2915215, at \*3 (N.D. Ill. July 12, 2021) ("Plaintiffs have no injury-in-fact caused by products that they did not buy, and therefore lack standing with respect to those products."); *Willard*, 577 F.Supp. 3d at 823–25; *Raya v. Mead Johnson Nutrition Co.*, 2024 WL 4953687, at \*4 (N.D. Ill. Dec. 2, 2024) (joining cases that hold that a class plaintiff lacks standing to pursue claims for products she did not purchase); *Gibson v. Albertsons Co.*, 2024 WL 4514041 (N.D. Ill. Oct. 17, 2024) (same).

Article III standing is an issue of subject matter jurisdiction, consisting of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The complaint "need only plausibly suggest each element of standing." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (internal citations omitted). When evaluating Article III standing, the Court is bound by Seventh Circuit precedent, to the extent it exists. *See Int'l Ass'n of Sheet Metal, Air, Rail & Transportation Workers, Transportation Div. v. BNSF Ry. Co.*, 2021 WL 2709143, at \*3 (N.D. Ill. July 1, 2021). Here, the parties do not cite—and the Court is unaware of—existing Seventh Circuit

law directly on point.

Unlike the question of a named plaintiff asserting claims under the laws of other states,[8] the Court has previously determined that whether a plaintiff can assert class claims regarding products not purchased is not a question of whether that plaintiff "may be an adequate class representative for absent class members." *Willard*, 577 F.Supp. 3d at 824 (cleaned up) (quoting *Bakopoulos*, 2021 WL 2915215, at *3). Rather, this issue pertains to Article III standing, and this Court has found that named plaintiffs lack standing to assert class claims related to unpurchased products because such products cannot cause them an injury-in-fact. *Id*.

Gromov has not advanced any basis for this Court to alter its previous conclusion. As this Court found in *Willard*, class action plaintiffs cannot create standing by piggybacking on the injuries of unnamed class members. *Id*. at 823–24 (citing *Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("[A] person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action.").

Belkin does not argue that Gromov lacks standing to assert claims relating to the power banks he *did* purchase, however. Accordingly, the Court finds that Gromov

---

[8]The Court recognizes that at first blush it may appear inconsistent to find that the nationwide class claims are a Rule 23 issue while the class claims for other products implicate standing. However, as stated above, a legal theory (that is, what state statute or common law provides the basis for the claim) does not implicate Article III, *see Porter*, 2016 WL 6948379, at *4, whereas a plaintiff cannot establish an injury-in-fact caused by a product that he did not purchase or use, *see Flaherty*, 2021 WL 5299773, at *4. Other courts similarly have found that a plaintiff lacks standing to bring claims for products he or she did not purchase, while also finding that nationwide class claims are appropriately addressed at class certification. *See, e.g.*, *Flaherty*, 2021 WL 5299773, at *4–6; *Porter*, 2016 WL 6948379, at *3–4.

has satisfied the standing requirements as to purchased products by alleging that he "would not have paid as high a price for the Products, or bought the product[] at all, but for Belkin's false promotion of the Products' mAh." Compl. ¶ 109; *see Muir v. Playtex Prod., LLC*, 983 F. Supp. 2d 980, 986 (N.D. Ill. 2013) (citing *In re Aqua Dots Products Liability Litigation*, 654 F.3d 748 (7th Cir. 2011)); *see also Gross v. Vilore Foods Co., Inc.*, 2021 WL 1428487, at *3 (S.D. Cal. Apr. 15, 2021).

The Court finds that Gromov lacks standing to assert claims over any power banks that he *did not* actually purchase, and all such claims are dismissed. Gromov does, however, have standing to assert claims based on any power banks he *did* purchase.

### C.    Standing for Injunctive Relief

Last, Belkin argues that Gromov lacks Article III standing to seek injunctive relief, as he does not allege that he faces a real and immediate threat of future harm from Belkin's alleged wrongful conduct. Mot. Dismiss at 14. Gromov counters that while he knows of Belkin's deception, "injunctive relief may still be available for class members who are unaware of the deception." Resp. at 14. Gromov further argues that he has indeed alleged a threat of future harm, as he has alleged that "he would purchase Belkin's Products in the future" if "Belkin's power banks delivered the represented mAh or were priced appropriately." Resp. at 14–15; (citing *Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 932022 (N.D. Ill. Feb. 26, 2019); *Curran v. Bayer Healthcare LLC.*, 2019 WL 398685 (N.D. Ill. Jan. 31, 2019); *Shirley v. Reynolds Consumer Prods., LLC*, 636 F.Supp.3d 907, 914 (N.D. Ill. 2022)); *see also* Compl. ¶ 72–

74. In its reply, Belkin insists that Gromov's "bald allegation that he would purchase Belkin's Products in the future is simply not enough to create the imminent harm necessary to support an injunctive relief claim because the threat of future injury must be imminent, not conjectural." Reply at 11 (citing *Geske*, 503 F. Supp. 3d at 703) (cleaned up).

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). To establish standing for injunctive relief, Gromov must allege a "real and immediate" threat of future injury from Belkin's misleading labels. *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). The equitable remedy of injunctive relief is unavailable absent a showing of irreparable injury, "a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

"When considering this requirement in the context of consumer fraud claims, the majority of courts in this district concluded that a plaintiff's awareness of the alleged misrepresentations makes any future harm speculative, precluding that plaintiff from pursing injunctive relief." *In re Beyond Meat, Inc., Protein Content Mktg. & Sales Practices Litig.*, 2024 WL 726838, at *4 (N.D. Ill. Feb. 21, 2024) (collecting cases). The Seventh Circuit case of *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014) supports this approach. In *Camasta*, the Seventh Circuit noted that a plaintiff who is aware of a defendant's deceptive practice is not likely to be harmed by those practices in the future and thus lack standing for injunctive relief.

*Id.* at 741.[9]

Gromov's argument in support of standing relies on the reasoning of a Ninth Circuit case, *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–72 (9th Cir. 2018). In *Davidson*, the Ninth Circuit held that the plaintiff had standing for injunctive relief because, like Gromov, she alleged that she still wanted to buy the offending product from the manufacturer. *Id.* at 971. If the Court was writing on a blank slate, perhaps it would be receptive to this reasoning. However, the Seventh Circuit foreclosed this line of reasoning in *Camasta* in stating that a plaintiff who is "aware of [a defendant's] sales practices," is "not likely to be harmed by the practices in the future." *Camasta*, 761 F.3d at 740–41.

Gromov alleges that he will purchase Belkin products when he can trust the packaging. This allegation is insufficient to establish, beyond mere conjecture, the likelihood that future injury will result without an injunction. S*ee Simic,* 851 F.3d at 738 ("To have standing for prospective relief, a plaintiff must face a real and immediate threat of future injury as opposed to a threat that is merely conjectural or hypothetical.") (cleaned up). Gromov does not allege that he is at imminent risk of further deception because "he is likely to keep buying products from [Belkin] with the knowledge of their allegedly deceptive practices." *Demedicis v. CVS Health Corp.*, 2017 WL 569157, at *2 (N.D. Ill. Feb. 13, 2017). Nor does Gromov allege that he "has

---

[9]To the extent one considers this statement dicta, it is nevertheless telling. See, *In re Herbal Supplements Mktg. & Sales Pracs. Litig.*, 2017 WL 2215025, at *8 (N.D. Ill. May 19, 2017) (noting that even if treated as dicta, *Camasta's* reasoning regarding Article III standing is persuasive.).

no choice but to purchase this product," which would certainly place him at risk of further deception. *Agee v. Kroger Co.*, 2023 WL 3004628, at *8 (N.D. Ill. Apr. 19, 2023).

In short, Gromov's allegations do not indicate that he is at imminent risk of purchasing a Belkin product and being deceived once more. Just the opposite— Gromov's allegations amount to an admission that, based on his knowledge of Belkin's alleged deception, he will avoid this deception by not purchasing Belkin products. In the Seventh Circuit, such an allegation precludes Gromov from injunctive relief. *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 2023 WL 3585759, at *6 (N.D. Ill. May 22, 2023) (plaintiff's allegation that she "would be willing to purchase [the products] in the future if [she] could be certain that [the products] were safely manufactured" served to "confirm[] that she is now aware of the alleged omissions and will not be harmed by them in the future."); *Rice v. Dreyer's Grand Ice Cream, Inc.*, 624 F. Supp. 3d 922, 926 (N.D. Ill. 2022) ("[The plaintiff argues that he faces a threat of future harm because he 'intends to . . . purchase the [p]roduct again when he can do so with the assurance' that the front label's 'representations are consistent with [the product's] composition.' This argument simply confirms that [the plaintiff] will not again purchase the product while being deceived by its front label."); *Curtis v. 7-Eleven, Inc.*, 2022 WL 4182384, at *10 (N.D. Ill. Sept. 13, 2022) ("The complaint does not allege that [the plaintiff] plans to purchase the products again, and *even if she did*, she wouldn't be fooled. Without a risk of future injury, there is no basis for an injunction protecting her from injury.") (emphasis added);

*Geske*, 503 F.Supp. 3d at 701–03 ("Most courts to address similar circumstances have held that absent some concrete basis to conclude that the plaintiffs *will* or *must* purchase the product again in the future and be deceived, they cannot meet the standing requirements for injunctive relief claims.") (emphasis added).

As for Gromov's argument that "injunctive relief may still be available for class members who are unaware of the deception," Resp. at 14, this Court agrees with Belkin that "[a] named plaintiff who lacks standing for injunctive relief cannot seek an injunction on behalf of a class, even if the class does not yet know that it was duped." *Curtis*, 2022 WL 4182384 at *11 (citing *Spokeo*, 578 U.S. at 338 n.6) ("That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.") (cleaned up). "[A] person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action." *Payton*, 308 F.3d at 682. Thus, "[b]ecause [Gromov] fails to plausibly allege a risk of an imminent injury to *himself*, he lacks standing to seek injunctive relief for unnamed class members who might face that risk." *Rice*, 624 F.Supp. 3d at 927 (emphasis in original); *see also Castillo v. Unilever United States, Inc.*, 2022 WL 704809, at *4 (N.D. Ill. Mar. 9, 2022) (same).

Accordingly, Gromov's claims are dismissed for lack of standing to the extent that they seek injunctive relief.

**Conclusion**

For the foregoing reasons, the Court grants in part and denies in part Belkin's Motion to Dismiss [22]. The Court's dismissal of the above-mentioned claims is without prejudice, and the Court grants Gromov leave to file an amended complaint on or before March 21, 2025. If Gromov files an amended complaint on or before March 21, 2025, the Court directs Belkin to answer or otherwise plead in response on or before April 2, 2025.

Dated: March 7, 2025

United States District Judge
Franklin U. Valderrama